# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **IN RE: BARD IVC FILTERS PRODUCTS LIABILITY LITIGATION** | MDL No. 2641 |
| **This Order Relates to: All Actions** | **CASE MANAGEMENT ORDER NO. 1** |

### I.     Plaintiffs' Leadership Counsel Appointments

The Court having considered all of the applications submitted and other relevant information, appoints the following plaintiffs' counsel to leadership positions, as indicated and to be known as "Plaintiffs Leadership Counsel":

| Plaintiffs' Co-Lead/Liaison Counsel and State/Federal Liaison Counsel | |
|---|---|
| Robert W. Boatman | Gallagher & Kennedy, PA 2575 E. Camelback Rd., Ste. 1100 Phoenix, AZ 85016 |
| Ramon R. Lopez | Lopez McHugh, LLP 100 Bayview Cir., Ste. 5600 Newport Beach, CA 92660 |

| Plaintiffs' Steering Committee (PSC) | |
|---|---|
| Shannon Clark | Gallagher & Kennedy, PA<br>2575 E. Camelback Rd., Ste. 1100<br>Phoenix, AZ 85016 |
| John A. Dalimonte | Karon & Dalimonte, LLP<br>85 Devonshire St., Ste. 1000<br>Boston MA, 02109 |
| Troy A. Brenes | Brenes Law Group<br>16A Journey<br>Aliso Viejo, CA 92656 |
| Ben C. Martin | Law Offices of Ben C. Martin<br>3219 McKinney Ave., Ste. 100<br>Dallas, TX 75204 |
| Joseph R. Johnson | Babbitt & Johnson, PA<br>1641 Worthington Rd., #100<br>West Palm Beach, FL 33409 |
| Julia Reed Zaic | Heaviside Reed Zaic<br>312 Broadway St., Ste. 203<br>Laguna Beach, CA 92651 |
| Howard L. Nations | The Nations Law Firm<br>3131 Briarpark Dr., #208<br>Houston, TX 77042 |
| Russell W. Budd | Baron & Budd, P.C.<br>3102 Oak Lawn Ave., Ste. 1100<br>Dallas, TX 75219 |
| Thomas P. Cartmell | Wagstaff & Cartmell, LLP<br>4740 Grand Ave., #300<br>Kansas City, MO 64112 |
| Turner W. Branch | Branch Law Firm<br>2025 Rio Grande Blvd, NW<br>Albuquerque, NM 87104 |
| Wendy R. Fleishman | Lieff, Cabraser, Heimann & Bernstein, LLP<br>250 Hudson St., 8th Floor<br>New York, NY 10013 |
| Donald A. Migliori | Motley Rice, LLC<br>321 South Main St., 2nd Floor<br>Providence, RI 02903 |
| Sheila M. Bossier | Freese & Goss, PLLC<br>1520 North State St.<br>Jackson, MS 39202 |

| Stuart L. Goldenberg | Goldenberg Law, PLLC<br>800 Lasalle Ave., #2150<br>Minneapolis, MN 55402 |
|---|---|
| Christopher T. Kirchmer | Provost Umphrey Law Firm, LLP<br>490 Park St., P.O. Box 4905<br>Beaumont, TX 77704 |
| Michael A. Kelly | Walkup, Melodia, Kelly & Schoenberger<br>650 California St.<br>San Francisco, CA 94108 |
| Matthew McCarley | Fears Nachawati Law Firm<br>4925 Greenville Ave., Ste. 715<br>Dallas, TX 75206 |
| Hadley L. Matarazzo | Faraci Lange, LLP<br>First Federal Plaza<br>28 East Main St., Ste. 1100<br>Rochester, NY 14614 |
| Eric M. Terry | TorHoerman Law, LLC<br>101 W. Vandalia<br>Edwardsville, IL 62025 |
| Joseph A. Osborne | Osborne & Associates Law Firm, PA<br>433 Plaza Real, Ste. 271<br>Boca Raton, FL 33432 |
| Michael T. Gallagher | The Gallagher Law Firm, LLP<br>2905 Sackett Street<br>Houston, TX 77098 |
| Nate Van Der Veer | Farris, Riley & Pitt LLP<br>The Financial Center<br>505 20th Street North<br>Birmingham, AL 35203 |

## II.     Responsibilities

### A.     Procedural Matters

1.      As noted in this Court's previous Order Setting Initial Case Management Conference dated September 15, 2015, the Clerk of this Court will maintain a master docket case file under the style "*In Re: Bard IVC Filters Products Liability Litigation*" and the  identification "MDL No. 2641."  Lead/Liaison will be (a) the only attorneys permitted to file in the Master Docket as to all actions, and (b) the only attorneys receiving Notices of Electronic Filing for pleadings and orders filed in the Master Docket for all actions.

2.      With regard to the Master Docket, Plaintiffs' Lead/Liaison Counsel shall:

      a.      Serve as the recipient for all Court orders.

      b.      Coordinate service and filings for all plaintiffs whether presently included or subsequently added.

      c.      Maintain and distribute to co-counsel and to Defendants' Counsel an up-to-date service list.

      d.      Maintain responsibility for service upon all other attorneys and parties as to filings made in the master docket. Specifically, Lead/Liaison Counsel shall receive and distribute, to all other Plaintiffs' counsel, pleadings orders, and motions by email, overnight courier service, or telecopier, within two days after receipt, unless such service has been waived, in writing, by a receiving counsel.

      e.      Coordinate discovery and litigation with similar cases outside of this Court's jurisdiction.

3.      Lead/Liaison Counsel is only responsible for service with regard to filings in the Master Docket.  With regard to case-specific filings, all attorneys of record in the relevant member action will receive a Notice of Electronic Filing from the Court.

4.      New counsel for later-filed or later-transferred cases that become part of this MDL shall be responsible for checking the Master Docket for all orders previously entered that may have relevance to such new cases.

**B.      <u>Responsibilities Specific to Lead/Liaison Counsel</u>**

In addition to the responsibilities identified above, Plaintiffs' Lead/Liaison Counsel shall:

1.      Coordinate the establishment of a document depository, real or virtual, to be available to all participating plaintiffs' counsel;

2.      Maintain and make available to all participating plaintiffs' counsel of record, at reasonable hours, a complete file of all documents served by or upon each party (except documents as may be available at a document depository);

3.      Prepare agendas for court conferences and periodically report regarding the status of the case; and

4.      Carry out such other duties as the Court may order.

**C.      Responsibilities Applicable to all Plaintiffs' Leadership Counsel**

Plaintiffs Leadership Counsel shall have the following responsibilities:

1.      Discovery

a.      Initiate, coordinate, and conduct all pretrial discovery on behalf of plaintiffs in all actions which are consolidated with this MDL.

b.      Develop and propose schedules for the commencement, execution, and completion of all discovery on behalf of all plaintiffs.

c.      Cause to be issued in the name of all plaintiffs the necessary discovery requests, motions and subpoenas pertaining to any witnesses and documents needed to properly prepare for the pretrial of relevant issues found in the pleadings of this litigation.

d.      Conduct all discovery in a coordinated and consolidated manner on behalf and for the benefit of all plaintiffs.

2.      Hearings and Meetings

a.      Call meetings of counsel for plaintiffs for any appropriate purpose, including coordinating responses to questions of other parties or of the Court. Initiate proposals, suggestions, schedules or joint briefs, and any other appropriate matters pertaining to pretrial proceedings.

- 5 -

b. Examine witnesses and introduce evidence on behalf of plaintiffs at hearings.

c. Act as spokespersons for all plaintiffs at pretrial proceedings and in response to any inquiries by the Court, subject to the right of any plaintiff's counsel to present non-repetitive individual or different positions.

3. Miscellaneous

a. Submit and argue all verbal and written motions presented to the Court on behalf of Plaintiff's Leadership Counsel as well as oppose when necessary any motion submitted by defendants or other parties which involve matters within the sphere of the responsibilities of Plaintiffs' Leadership Counsel.

b. Negotiate and enter into stipulations with defendants regarding this litigation. All stipulations entered into by Plaintiffs' Leadership Counsel, except for strictly administrative details such as scheduling, must be submitted for Court approval and will not be binding until ratified by the Court. Any attorney not in agreement with a non-administrative stipulation shall file with the Court a written objection within five (5) days after he/she knows or should have reasonably become of aware of the stipulation. Failure to object within the term allowed shall be deemed a waiver and the stipulation will automatically be binding on that party.

c. Explore, develop, and pursue all settlement options pertaining to any claim or portion thereof of any case filed in this litigation.

       d.    Maintain adequate files of all pretrial matters, including establishing and maintaining a document or exhibit depository, in either real or virtual format, and having those documents available, under reasonable terms and conditions for examinations by all MDL plaintiffs or their attorneys.

       e.    Perform any task necessary and proper for Plaintiffs Leadership Counsel to accomplish its responsibilities as defined by the Court's orders, including organizing subcommittees comprised of plaintiffs' lawyers not on Plaintiffs' Leadership Counsel.

       f.    Work with Lead/Liaison Counsel to coordinate the responsibilities of Plaintiffs' Leadership Counsel meetings, keep minutes or transcripts of these meetings, appear at periodic Court-noticed status conferences, perform other necessary administrative or logistic functions of Plaintiffs' Leadership Counsel, and carry out any duty as ordered by the Court.

       g.    Perform other such functions that may be expressly authorized by further Court Orders.

    **D.**    **Reimbursement of Costs Expended**

Plaintiffs' Leadership Counsel shall be entitled to seek reimbursement for costs expended at the time and in a manner approved by the Court. Reimbursements will be governed by a further case management order to be proposed by Plaintiffs' Leadership Counsel and entered by the Court.

**III.    Term of Appointments.**

Appointments to leadership positions in this order shall last for a term of one year from the date of this order unless terminated earlier by the Court. Thirty days before the expiration of this one-year term, Lead/Liaison Counsel shall file a memorandum

1  notifying the Court of the need to make further appointments and making

2  recommendations regarding those appointments.

3      Dated this 30th day of October, 2015.

4

5

6

7  _____

8  David G. Campbell
   United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **IN RE: BARD IVC FILTERS PRODUCTS LIABILITY LITIGATION** | MDL No. 2641 |
| **This Order Relates to: All Actions** | **CASE MANAGEMENT ORDER NO. 2** |

 The Court held a lengthy case management conference with the parties on October 29, 2015. Before the conference, the parties submitted a proposed agenda and a memorandum setting forth positions of Plaintiffs and Defendants on various issues. Doc. 174. The Court entered an order with a more detailed agenda on October 19, 2015. Doc. 203. This order will generally follow the topics set forth in the Court's agenda.

**I. Identification and Selection of Parties' Leadership.**

 The Court has entered Case Management No. 1, which establishes Plaintiffs' Leadership Counsel. By **November 6, 2015**, Plaintiffs' Lead/Liaison Counsel shall submit to the Court a proposed Case Management Order concerning: (a) the duties and authority of Plaintiffs' Leadership Counsel in coordinating pretrial practice in this MDL; (b) the establishment and operation of a common fund for eventual payment and reimbursement of attorneys and their firms for common benefit work; (c) a procedure for auditing the common benefit work of Plaintiffs' attorneys and their firms; (d) a procedure for making quarterly reports to the Court regarding the audits and the common benefit work performed by attorneys and their firms; (e) guidelines for eventual fee applications and cost reimbursement, including record-keeping requirements, time-keeping

requirements (*see*, *e.g.*, Local Rule of Civil Procedure 54.2(e)), staffing limitations for various tasks, acceptable hourly rates, when travel time can be billed, reimbursable expenses (what is and is not reimbursable), and acceptable levels of expense reimbursement; (f) procedures or agreements designed to avoid the duplication of common benefit discovery already completed in some of the MDL cases; and (g) periodic status reports on coordination with state cases and other relevant matters.

**II.** **Protective and Rule 502 Orders.**

By **November 6, 2015**, the parties shall jointly submit to the Court a proposed protective order, including Rule 502 provisions, for all cases in this MDL. If the order addresses the filing of confidential documents in court, it shall not say that such documents may be filed under seal. Instead, it should say that any party seeking to file a confidential document under seal shall comply with Local Rule of Civil Procedure 5.6.

**III.** **ESI Protocol.**

By **November 30, 2015**, the parties shall jointly present to the Court an ESI Protocol addressing format of production, preservation, and other relevant ESI-discovery matters. If the parties are unable to reach agreement on all aspects of the ESI Protocol, they shall file a joint report setting forth the areas of agreement and disagreement and recommending a procedure for resolving disagreements.

**IV.** **Discovery.**

    **A.** **Discovery Relevant Only to Individual Cases.**

By **November 6, 2015**, the parties shall propose to the Court profile forms to be completed by Plaintiffs and Defendants with respect to each new case added to this MDL. The intent will be to provide the parties with basic and relevant information about each new case. With the exception of bellwether cases, the Court generally will not oversee discovery relevant only to individual cases. It is anticipated that such discovery will be conducted in transferor districts after this MDL is completed.

/ / /

/ / /

**B.** **Binding Effect of Completed Discovery.**

The parties will discuss whether agreement can be reached on the binding effect already-completed discovery will have in cases filed after the date of the discovery. If the parties are able to reach agreement, they shall jointly submit a stipulation to the Court by **December 18, 2015**. If the parties are unable to reach agreement, each side shall file a 10-page memorandum setting forth its position with respect to the effect of the already-completed discovery by **December 18, 2015**. Each side may file a 5-page response memorandum by **January 8, 2016**.

**C.** **First-Phase Discovery.**

By **January 15, 2016**, the parties shall complete a first phase of MDL discovery which includes the following:

1. Defendants shall provide an updated production of complaint (adverse event) files relating to the Recovery, G2, G2X, and G2 Express filters, and shall produce complaint (adverse event) files relating to the Eclipse, Meridian, and Denali filters.

2. Defendants shall produce updated versions of Bard's Adverse Event Tracking System for the various filters set forth immediately above.

3. By **November 10, 2015**, Defendants shall produce the documents described by defense counsel during the case management conference related to the FDA investigation and warning letter.

4. Plaintiffs may take a Rule 30(b)(6) deposition with respect to the FDA investigation and warning letter.

5. Kay Fuller shall be deposed.

**D.** **Conferences Regarding Second Phase of Discovery.**

The parties shall meet and confer with respect to the following discovery issues, and, by **January 20, 2016**, provide the Court with a joint report regarding their discussions. Areas of agreement and disagreement will be clearly identified, and each

Case 1:20-cv-00287-KG-KK Document 1-8 Filed 04/01/20 Page 12 of 335

party's position shall be set forth. The parties shall propose, jointly if possible, procedures for resolving their disagreements.

1.     Updated collections and productions of previously searched "custodians" and ESI sources. In discussing this topic, the parties should avoid duplicative discovery, but relevant information not previously searched for should be considered as a possible subject of discovery.

2.     Production of ESI from custodians involved with later-generation filter devices or employed at later time frames.

3.     Further discovery related to the FDA inspection and warning letter.

4.     ESI and documents that have been previously withheld, if any, as to Defendant's later-generation devices, such as the Eclipse, Meridian, and Denali filters.

5.     Discovery related to the Simon Nitinol filter.

6.     Discovery regarding the Recovery Cone Removal System design, design changes, corrective actions, reasons why design changes were made, regulatory communications, and adverse event reports.

7.     Custodial files and other discovery with respect to sales and marketing personnel. In addressing this issue, the parties should consider whether discovery focusing on higher-level sales and marketing personnel should be undertaken before discovery of lower-level personnel. The parties should also consider whether sales and marketing discovery should be postponed until case-specific discovery is undertaken with respect to bellwether cases.

8.     Pending Rule 30(b)(6) deposition notices in cases consolidated in this MDL or state-court cases.

9.     Additional depositions of corporate and third party witnesses.

10.    Rule 26 expert disclosures and expert depositions.

11.    Discovery related to ESI preservation issues.

/ / /

/ / /

**V.      Issues to be Briefed.**

      **A.      Lehmann Report.**

      Defendants shall file a motion for protective order with respect to the Lehmann Report, including evidentiary material, by **November 30, 2015**.  Plaintiffs shall file a response, including evidentiary material, by **December 18, 2015**.  Defendants shall file a reply by **January 8, 2016**.  The parties' briefs should address whether the Lehmann Report constitutes work product, whether an evidentiary hearing is needed, and what effect the Court's ruling should have in cases where this issue has already been decided.

      **B.      Privilege Logs.**

      By **November 13, 2015**, Defendants shall provide to Plaintiffs the current version of all privilege logs.  By the same date, Defendants shall identify for Plaintiffs all documents that previously were listed on privilege logs but subsequently were produced to Plaintiffs.  A chart showing privilege log control numbers and bates numbers of produced documents likely would be most helpful.

      Between November 13, 2015 and early January, 2016, the parties should engage in the informal privilege log exchange proposed by Defendants during the case management conference.  The purpose of this exchange will be to see if the parties can reach agreement on privilege log issues.  For purposes of the informal exchange, the parties should apply the work product law set forth in the magistrate judge's decision in the Nevada case, unless they agree upon different legal standards.  This paragraph will not preclude parties from arguing for a different legal standard if privilege log issues must be resolved by the Court.

      By **January 20, 2016**, the parties shall provide the Court with a joint report on their privilege log efforts, identifying areas of agreement and disagreement, setting forth the parties' positions on the disagreements, and proposing procedures for resolution of any remaining outstanding issues.

/ / /

/ / /

Case 1:20-cv-00287-DAE-KK Document 128 Filed 04/01/20 Page 14 of 335

## VI. Pleading and Filing Procedures.

By **November 30, 2015** the parties shall provide to the Court a master complaint drafted by Plaintiffs, a master answer drafted by Defendants, and templates of short-form complaints and answers agreed upon by the parties. The parties shall also submit to the Court a proposed case management order which provides that the master complaint and master answer will be filed in the master docket in this MDL proceeding; that new cases may be filed in the District of Arizona using the short-form complaint; that filing of a short-form complaint in the District of Arizona will not mean that the trial in that case will be held in Arizona, but instead will mean that the case will be transferred to the appropriate home district at the conclusion of this MDL; that Defendants may file a short-form answer in response to a short-form complaint; and that service of process in cases filed in the District of Arizona using the short-form complaint may be made by email on defense counsel.[1]

The parties shall include in the jointly-submitted case management order a provision identifying cases in which the master complaint and master answer will not become the operative pleadings – where the existing complaints and answers will remain the operative pleadings. The master complaint and answer will become the operative pleadings in all other cases in this MDL.

## VII. Handling of Advanced Cases.

This MDL includes some cases in which discovery and motion practice has been completed. The Court does not intend to reopen already-decided *Daubert* motions or motions for summary judgment in these cases. The parties agree, however, that these cases should not be remanded to transferor courts at the present time. Rather, they will remain a part of the MDL and will be considered as possible bellwether cases in the future.

---

[1] The parties should address an additional issue in their November 30 filing. If cases are filed in Arizona under such a case management order, what is the legal basis upon which they later would be transferred to their home district? Because they would not originally have been filed in another district, transfer under 28 U.S.C. § 1407(a) presumably would not be available.

## VIII.  Coordination with State Court Litigation.

Plaintiffs' Lead/Liaison Counsel shall, through the Plaintiffs' Steering Committee, coordinate discovery and motion practice in this MDL proceeding with state court cases. As an immediate matter, Plaintiffs' counsel shall coordinate discovery of Hill & Knowlton with state cases.

## IX.  Next Case Management Conference.

The Court will hold a second case management conference on **January 29, 2016 at 9:00 a.m.**  The parties should file a joint report and proposed agenda by **January 20, 2016**, identifying issues to be addressed at the conference.[2]  The purpose of the conference will be to address matters raised in the joint report and the various filings identified above.  The Court will establish a second phase of fact discovery on the basis of the parties' submissions and discussions at the case management conference.  The Court will also confer with the parties about a schedule for expert disclosures, depositions, and *Daubert* motions.  Because many of the cases in this MDL proceeding have involved no expert discovery, the Court concludes that full Rule 26 disclosures, followed by depositions and *Daubert* motions, should be conducted in this MDL.  The effect of that discovery and motion practice in cases where experts have already been disclosed will be addressed later.

## X.  Other Matters.

A.  <u>Settlement Talks</u>.  After conferring with the parties, the Court concluded that it should not require global settlement talks at this stage of the litigation.  The number and nature of cases to be added to this MDL is yet to be determined, and the scale of this litigation will be an important factor in settlement efforts.  The Court will raise this issue with the parties in the future.

B.  <u>Discovery Disputes</u>.  The parties shall not file written discovery motions without leave of Court.  If a discovery dispute arises, the parties promptly shall contact

---

[2] Among other topics, the joint report should identify pending motions in all MDL cases and set forth the parties' recommendation as to what the Court should do with those motions.

the Court to request a telephone conference concerning the dispute. The Court will seek to resolve the dispute during the telephone conference, and may enter appropriate orders on the basis of the telephone conference. The Court may order written briefing if it does not resolve the dispute during the telephone conference.[3] Parties shall not contact the Court concerning a discovery dispute without first seeking to resolve the matter through personal consultation and sincere effort as required by Local Rule of Civil Procedure 7.2(j).

C. <u>Briefing Requirements</u>. All memoranda filed with the Court shall comply with Local Rule of Civil Procedure 7.1(b) requiring 13 point font in text and footnotes. Citations in support of any assertion in the text shall be included in the text, not in footnotes.

D. <u>Rule 34 Responses</u>. Rule 34 responses shall comply with the amended Rule 34 to become effective on December 1, 2015.

Dated this 30th day of October, 2015.


_David G. Campbell_
_____
David G. Campbell
United States District Judge

---

[3] The prohibition on "written discovery motions" includes any written materials delivered or faxed to the Court, including hand-delivered correspondence with attachments.

- 8 -

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:  Bard IVC Filters Products Liability Litigation | No. MDL 15-02641 |
| | **PRETRIAL ORDER NO. 3** |
| THIS  ORDER  RELATES  TO  ALL ACTIONS: | (Non-Waiver Order Pursuant to Rule 502(d) of the Federal Rules of Evidence) |

WHEREAS:

(A)   The parties seek to resolve disputes related to entries on past and future privilege logs of Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") withheld pursuant to the attorney-client privilege, the work-product doctrine, and/or other privileges;

(B)   In furtherance of this goal, Plaintiffs and Bard have entered into negotiations, and counsel for the parties are meeting and conferring regularly regarding Bard's privilege logs;

(C)   As part of the meet and confer process, Bard is reviewing certain privilege log entries identified by Plaintiffs.  Bard may provide the Plaintiffs with a small number of these identified items for inspection from time to time to further the meet and confer discussions; and

(D)   As part of the meet and confer process, Bard may choose to withdraw certain claims of attorney-client privilege, the work-product doctrine, and/or other privilege(s), and produce the previously withheld items.

Therefore, the parties have agreed, and

**IT IS ORDERED**:

1.      The parties' discussions, Bard's disclosure or production of the contents or copies of the documents or items on its past and/or future privilege logs as part of the meet and confer process shall not, pursuant to Federal Rule of Evidence 502(d), constitute any waiver of any privilege and/or work-product protection in this MDL, or in any other federal or state proceeding.

2.      This Order does not alter or amend Section VII, Paragraph 31 of the Stipulated Protective Order (Doc. 269), entitled "Inadvertent Production."

Dated this 1st day of December, 2015.


_____
David G. Campbell
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC<br><br>**CASE MANAGEMENT ORDER NO. 4**<br><br>**(Master Complaint, Master Responsive Pleading, Use of Short Form Complaint, and Waiver of Service for Bard Defendants)** |

The parties have submitted a Master Long Form Complaint and Jury Demand (previously docketed as Doc. 303-1) and a Master Responsive Pleading (previously docketed as Doc. 303-3). The Court has reviewed these proposed pleadings, finds them sufficient, and directs the Clerk to file them as separate documents in the Court's docket.[1] The parties have also submitted a proposed Short Form Complaint, a copy of which is attached to this order. The Court also finds this proposed pleading to be sufficient.

**IT IS ORDERED:**

All allegations pled in the Master Complaint and all responses pled in the Master Responsive Pleading are deemed pled in any previously filed Complaint and Responsive Pleading in this MDL proceeding, except as expressly noted below. They are also deemed pled in any Short Form Complaint and Entry of Appearance filed after the entry of this

---

[1] The reference to "Federal Rule of Evidence 8" on the first page of the Master Complaint shall be deemed to be a reference to Federal Rule of Civil Procedure 8.

order, except that the Master Complaint applies only against the Defendant or Defendants identified in such future-filed Short Form Complaints.

The following cases will not be governed by the Master Complaint and Master Responsive Pleading, but will continue to be governed by the complaints (including any amended complaints) and answers filed in the various transferor courts prior to transfer:

| Plaintiff | Original Jurisdiction |
|---|---|
| 1. Cason, Pamela | GA – N.D. Ga. 1:12-cv-1288 |
| 2. Coker, Jennifer | GA – N.D. Ga. 1:13-cv-515 |
| 3. Conn, Charles | TX – S.D. Tex. 4:14-cv-298 |
| 4. Ebert, Melissa | PA – E.D. Pa. 5:12-cv-1253 |
| 5. Fox, Susan | TX – N.D. Tex. 3:14-cv-133 |
| 6. Henley, Angela | WI – E.D. Wis. 2:14-cv-59 |
| 7. Keen, Harry | PA – E.D. Pa. 5:13-cv-5361 |
| 8. Milton, Gary | GA – M.D. Ga. 5:14-cv-351 |
| 9. Mintz, Jessica | NY – E.D.N.Y. 2:14-v-4942 |
| 10. Ocasio, Denise | FL – M.D. Fla. 8:13-cv-1962 |

| Plaintiff | Original Jurisdiction |
|-----------|----------------------|
| 11. Rivera (McClarty), Vicki | MI – E.D. Mich.<br>4:14-cv-13627 |
| 12. Smith, Erin | TX – E.D. Tex.<br>1:13-cv-633 |
| 13. Tillman, Lessie | FL – M.D. Fla.<br>3:13-cv-222 |

On or after **December 28, 2015**, any plaintiff whose case would be subject to transfer to MDL 2641 may file his or her case directly in this Court by using the Short Form Complaint. If such a case is filed in this Court without the use of the Short Form Complaint, Plaintiffs' Co-Lead Counsel shall promptly advise the filing party to file an amended complaint using the Short Form Complaint. If the filing party fails to do so, Plaintiffs' Co-Lead Counsel shall promptly notify the Court.

Defendants are not required to file answers to Short Form or Amended Short Form Complaints. An Entry of Appearance shall constitute a denial of all allegations in the Short Form or Amended Short Form Complaints except as herein provided, and an assertion of all defenses included in the Master Responsive Pleading. By filing an Entry of Appearance in response to a Short Form Complaint, in lieu of an answer, Defendants do not waive any defenses, including jurisdictional and service defenses.

Defendants shall have 60 days from the entry of this order to file any motion for failure of the Master Complaint to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) and 12(h)(2), and Plaintiff's shall have 30 days to respond.

Civil actions in this MDL were transferred to this Court by the Judicial Panel on Multidistrict Litigation for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Upon completion of the pretrial proceedings related to a civil action as determined by this Court, the case shall be transferred pursuant to 28 U.S.C. § 1404(a) or § 1406(a) to the District Court identified in the Short Form Complaint, provided the

parties choose not to waive *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). The fact that a case was filed directly in this District and MDL proceeding shall not constitute a determination by this Court that jurisdiction or venue are proper in this District, and shall not result in this Court being deemed the "transferor court" for purposes of this MDL. In addition, filing a Short Form Complaint in this District shall have no impact on the conflict of law rules to be applied to the case. Instead, the law of the jurisdiction where the case is ultimately transferred will govern any conflict of law. Prior to transfer, Defendants may object to the district specified in the Short Form Complaint, based on venue or jurisdiction (including a lack of personal jurisdiction based on *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014)), and propose an alternative jurisdiction for the Court's consideration.

Subject to the conditions set forth in this order, Defendant C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") waive service of process in cases filed in this Court using the Short Form Complaint and in which they are named as defendants and one or more IVC filter products either manufactured or distributed by Bard is alleged to be at issue. For such cases, Plaintiffs shall send a Short Form Complaint and a request for waiver of service pursuant to the provisions of Fed. R. Civ. P. 4 to Richard B. North, Jr. by email to richard.north@nelsonmullins.com; maria.turner@nelsonmullins.com; and matthew.lerner@nelsonmullins.com. Counsel for Bard shall return the signed waiver requests to the Court within the time permitted by Fed. R. Civ. P. 4. Plaintiffs submitting a request for waiver shall not seek to hold Bard in default for failure to timely answer or otherwise respond to a complaint in which service has been accomplished pursuant to the terms of this order without first giving Bard written notice of the alleged default and ten business days in which to cure any alleged default.

Prior to a Plaintiff's attorney filing a Short Form Complaint in this Court, that attorney must register for or already have a District of Arizona CM/ECF log-in name and password. If the Plaintiff's attorney does not already have a District of Arizona CM/ECF log-in name and password, that attorney **must** file the Short Form Complaint in paper

form with the Clerk of Court and simultaneously file an Application of Attorney for Admission to Practice Pro Hac Vice pursuant to LRCiv 83.1(b)(2) (including all necessary attachments and filing fee).

Dated this 17th day of December, 2015.

_David G. Campbell_
David G. Campbell
United States District Judge

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

IN RE BARD IVC FILTERS
PRODUCTS LIABILITY LITIGATION

No. MD-15-02641-PHX-DGC

**MASTER SHORT FORM COMPLAINT
FOR DAMAGES FOR INDIVIDUAL
CLAIMS**

Plaintiff(s) named below, for their Complaint against Defendants named below,

incorporate the Master Complaint for Damages in MDL 2641 by reference (Doc.\_\_\_).

Plaintiff(s) further show the Court as follows:

1.      Plaintiff/Deceased Party:

_____

2.      Spousal Plaintiff/Deceased Party's spouse or other party making loss of

consortium claim:

_____

3.      Other Plaintiff and capacity (i.e., administrator, executor, guardian,

conservator):

_____

4.      Plaintiff's/Deceased Party's state(s) [if more than one Plaintiff] of residence at

the time of implant:

_____

GALLAGHER & KENNEDY, P.A.
2575 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9225
(602) 530-8000

5.  Plaintiff's/Deceased Party's state(s) [if more than one Plaintiff] of residence at the time of injury:

_____

6.  Plaintiff's current state(s) [if more than one Plaintiff] of residence:

_____

7.  District Court and Division in which venue would be proper absent direct filing:

_____

8.  Defendants (check Defendants against whom Complaint is made):
    ☐   C.R. Bard Inc.
    ☐   Bard Peripheral Vascular, Inc.

9.  Basis of Jurisdiction:
    ☐   Diversity of Citizenship
    ☐   Other: _____
    a.  Other allegations of jurisdiction and venue not expressed in Master Complaint:

_____
_____
_____

10. Defendants' Inferior Vena Cava Filter(s) about which Plaintiff(s) is making a claim (Check applicable Inferior Vena Cava Filter(s)):
    ☐   Recovery® Vena Cava Filter
    ☐   G2® Vena Cava Filter

-2-

€　　G2® Express (G2®X) Vena Cava Filter

€　　Eclipse® Vena Cava Filter

€　　Meridian® Vena Cava Filter

€　　Denali® Vena Cava Filter

€　　Other: _____

11.　Date of Implantation as to each product:

_____

_____

12.　Counts in the Master Complaint brought by Plaintiff(s):

☐　　Count I:　　Strict Products Liability – Manufacturing Defect

☐　　Count II:　　Strict Products Liability – Information Defect (Failure to Warn)

☐　　Count III:　　Strict Products Liability – Design Defect

☐　　Count IV:　　Negligence - Design

☐　　Count V:　　Negligence - Manufacture

☐　　Count VI:　　Negligence – Failure to Recall/Retrofit

☐　　Count VII:　　Negligence – Failure to Warn

☐　　Count VIII:　　Negligent Misrepresentation

☐　　Count IX:　　Negligence *Per Se*

☐　　Count X:　　Breach of Express Warranty

☐　　Count XI:　　Breach of Implied Warranty

☐　　Count XII:　　Fraudulent Misrepresentation

☐    Count XIII:   Fraudulent Concealment

☐    Count XIV:   Violations of Applicable _____ (insert state) Law Prohibiting Consumer Fraud and Unfair and Deceptive Trade Practices

☐    Count XV:   Loss of Consortium

☐    Count XVI:   Wrongful Death

☐    Count XVII: Survival

☐    Punitive Damages

☐    Other(s): _____ (please state the facts supporting this Count in the space immediately below)

_____

_____

_____

_____

_____

RESPECTFULLY SUBMITTED this _____ day of November, 2015.

**GALLAGHER & KENNEDY, P.A.**

By: ___/s/_____

 Robert W. Boatman
 Mark S. O'Connor
 Paul L. Stoller
 Shannon L. Clark
 C. Lincoln Combs
 2575 East Camelback Road
 Phoenix, Arizona  85016-9225

**LOPEZ McHUGH LLP**

 Ramon Rossi Lopez (CA Bar No. 86361)
 (admitted *pro hac vice*)
 100 Bayview Circle, Suite 5600
 Newport Beach, California 92660

   *Attorneys for Plaintiffs*

I hereby certify that on this _____ day of November, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

___/s/_____

1

2

3

4

5

6 **IN THE UNITED STATES DISTRICT COURT**

7 **FOR THE DISTRICT OF ARIZONA**

8 **IN RE:  BARD IVC FILTERS**      No. MDL-15-02641-PHX-DGC
**PRODUCTS LIABILITY LITIGATION**

9      **CASE MANAGEMENT ORDER NO. 5**

10

11      **(Plaintiff and Defendant Profile Forms)**

12

13      The parties have agreed upon the use of an abbreviated Plaintiff Profile Form ("PPF")

14 (Exhibit 1) attached to this Order.  Except as expressly noted herein, the PPF shall be

15 completed in each currently pending case, and in all cases that become part of this MDL by

16 virtue of being filed in, removed to, or transferred to this Court on or after the date of this

17 Order.

18      Each plaintiff in currently filed cases (except as noted herein) shall submit a completed

19 PPF to defendants within 60 days of the date of this Order.  In cases that have been filed in,

20 removed to, or transferred to this MDL on or after the date of this Order, each plaintiff shall

21 submit a completed PPF to defendants within 60 days of filing the complaint.  Each plaintiff

22 is required to provide defendants with a PPF that is substantially complete in all respects,

23 answering every question in the PPF, even if a plaintiff can answer the question in good faith

24 only by indicating "not applicable" or "unknown."  The PPF shall be signed by the plaintiff

25 under penalty of perjury.  If a plaintiff is suing in a representative or derivative capacity, the

26 PPF shall be completed by the person with the legal authority to represent the estate or the

27 person under legal disability.  Plaintiff spouses with a claim for loss of consortium shall also

28 sign the PPF, attesting that the responses made to the loss of consortium questions in the PPF

1  are true and correct to the best of his or her knowledge, information and belief, formed after

2  due diligence and reasonable inquiry.

3      A completed PPF shall be considered interrogatory answers under Fed. R. Civ. P. 33

4  and responses to requests for production under Fed. R. Civ. P. 34, and will be governed by

5  the standards applicable to written discovery under Federal Rules 26 through 37. The

6  interrogatories and requests for production in the PPF shall be answered without objection as

7  to the question posed in the agreed upon PPF.  This section does not prohibit a plaintiff from

8  withholding or redacting information from medical or other records provided with the PPF

9  based upon a recognized privilege.  If information is withheld or redacted on the basis of

10  privilege, plaintiff shall provide defendants with a privilege log that complies with Fed. R.

11  Civ. P. 26(b)(5) simultaneously with the submission of the PPF.

12      If a plaintiff does not submit a PPF within the time specified in this Order, defendants

13  shall mail an overdue letter by e-mail and U.S. mail to Plaintiffs' Co-Lead Counsel and the

14  plaintiffs' individual representative counsel, stating that defendants may move to dismiss that

15  plaintiff's case within 20 days of receipt of the letter.  If no PPF is received within those 20

16  additional days, defendants may move immediately to dismiss that plaintiff's case.   If

17  defendants receive a PPF that is not substantially complete, defendants' counsel shall send a

18  deficiency letter within 14 days of receipt of a PPF, as applicable by e-mail and U.S. mail to

19  Plaintiffs' Co-Lead Counsel and the plaintiffs' individual representative counsel, identifying

20  the purported deficiencies.  Plaintiff shall have 20 days from receipt of that letter to serve a

21  PPF that is substantially complete in all respects.  This letter shall include sufficient detail for

22  the parties to meet and confer regarding the alleged deficiencies.

23      Within 45 days of receipt of a substantially complete PPF for an individual plaintiff,

24  the defendants shall provide the plaintiff with a completed Defendants' Profile Form

25  (Exhibit 2) attached to this order.

26      The procedures outlined in this Order shall not apply to the following cases:

27  ///

28  ///

| Plaintiff | Original Jurisdiction |
|---|---|
| 1. Cason, Pamela | GA – N.D. Ga.<br>1:12-cv-1288 |
| 2. Coker, Jennifer | GA – N.D. Ga.<br>1:13-cv-515 |
| 3. Conn, Charles | TX – S.D. Tex.<br>4:14-cv-298 |
| 4. Ebert, Melissa | PA – E.D. Pa.<br>5:12-cv-1253 |
| 5. Fox, Susan | TX – N.D. Tex.<br>3:14-cv-133 |
| 6. Henley, Angela | WI – E.D. Wis.<br>2:14-cv-59 |
| 7. Keen, Harry | PA – E.D. Pa.<br>5:13-cv-5361 |
| 8. Milton, Gary | GA – M.D. Ga.<br>5:14-cv-351 |
| 9. Mintz, Jessica | NY – E.D.N.Y.<br>2:14-v-4942 |
| 10. Ocasio, Denise | FL – M.D. Fla.<br>8:13-cv-1962 |
| 11. Rivera (McClarty), Vicki | MI – E.D. Mich.<br>4:14-cv-13627 |
| 12. Smith, Erin | TX – E.D. Tex.<br>1:13-cv-633 |
| 13. Tillman, Lessie | FL – M.D. Fla.<br>3:13-cv-222 |

The parties are relieved from preparing or exchanging profile forms in those particular cases.

On or before January 15, 2016, the parties shall submit proposed Plaintiffs' and Defendants' Fact Sheets for the Court's consideration. These forms will provide the parties with more detailed information about each plaintiff and his or her case. Those forms will be completed and exchanged only in cases designated for further discovery or for consideration as a bellwether case. The court will issue a subsequent Order outlining the procedures applicable to those more detailed forms.

Dated this 17th day of December, 2015.

_____
David G. Campbell
United States District Judge

**EXHIBIT 1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

*MDL No. 2641*
*In Re Bard IVC Filter Products Liability Litigation*

In completing this **Plaintiff Profile Form**, you are under oath and must provide information that is true and correct to the best of your knowledge. The Plaintiff Profile Form shall be completed in accordance with the requirements set forth in the applicable Case Management Order.

### 1. CASE INFORMATION

**Caption:** _____ **Date:** _____

**Docket No.:** _____

**Plaintiff's attorney and Contact information:**

_____

_____

_____

### 2. PLAINTIFF INFORMATION

**Name:** _____

**Maiden Name:** _____

**Address:** _____

**Date of birth:** _____

**Social Security No.:** _____

**Occupation:** _____

**Spouse:** _____

**Is Spouse Making Claim for Loss of Consortium?** ☐ Yes ☐ No

### 3. DEVICE INFORMATION

   **A. Filter Model (e.g., Recovery®, G2®, etc.):** _____

   **B. Lot Number:** _____

   **C. Date of Bard IVC Filter implant:** _____

   **D. Attach medical evidence of product identification and operative report for filter placement.**

**E. Please check all the reasons why you believe your Bard Filter was placed:**

☐ Filter Placed After Being Diagnosed with Deep Vein Thrombosis/Pulmonary Embolism

☐ Filter Placed in Conjunction with or before Orthopedic Procedure

☐ Filter Placed in Conjunction with Trauma Situation/Motor vehicle accident

☐ Filter Placed in Conjunction with or before Bariatric Procedure

☐ Other Reason(s) for implant (explain): _____

_____

☐ Unknown

☐ See medical records attached

**F. Provide the name and address of both the doctor who implanted the Bard Filter and the hospital or medical facility at which the filter was placed:**

Doctor:_____

_____

Hospital/MedicalFacility:_____

_____

## 4. FAILURE MODE ALLEGED

**Please check all failure mode(s) that you allege apply to your Bard Filter:**

☐ Fracture
☐ Perforation of filter strut(s) into organs
☐ Migration of entire filter to heart
☐ Tilt with filter embedded in wall of the IVC
☐ Device unable to be retrieved
☐ Bleeding
☐ Other failure mode(s)
  If other, please describe _____
  _____

## 5. REMOVAL INFORMATION

**A. Has your Bard Filter been removed?**

☐Yes

☐ No

2

☐ Unknown

B. **If your Bard <u>Filter</u> has been removed or a doctor has attempted to remove your Filter, please check <u>all</u> that apply regarding the removal or attempted removal procedure(s):**

☐Removed percutaneously

☐ Removed via an open abdominal procedure

☐ Removed via an open chest procedure

☐ Attempted but unsuccessful percutaneous removal procedure

☐ Attempted but unsuccessful open abdominal procedure

☐ Attempted but unsuccessful open chest procedure

☐ Unknown

☐ See medical records attached

C. **Provide the name(s) and address(es) of both the doctor(s) who removed your Bard Filter (or attempted to remove it) and the hospital or medical facility where removal/attempted removal occurred:**

**Filter Removal/Attempted Removal #1**

Doctor:_____

Hospital/MedicalFacility:_____

**Filter Removal/Attempted Removal #2**

Doctor:_____

Hospital/MedicalFacility:_____

## 6.  FRACTURED STRUTS

A. **Do you claim that your Bard Filter <u>fractured?</u>**
   ☐ Yes

   ☐ No

   **If you answered YES, answer the below questions in this section.**

   **If you answered NO, skip the rest of Section 6 and go below to section 7 - "Outcome Attributed to Device."**

3

**B. Are any fractured filter struts retained in your body?**

☐ Yes

☐ No

☐ Unknown

If yes, identify the location(s) within your body of each retained filter strut.

_____

_____

**C. Have any fractured filter struts been removed from your body?**

☐ Yes

☐ No

☐ Unknown

**D. If any fractured filter <u>strut</u> has been removed (or a doctor has attempted to remove any strut), please check <u>all</u> that apply regarding the removal / attempted removal procedure(s):**

☐ Removed percutaneously

☐ Removed via an open abdominal procedure

☐ Removed via an open chest procedure

☐ Attempted but unsuccessful percutaneous removal procedure

☐ Attempted but unsuccessful open abdominal procedure

☐ Attempted but unsuccessful open chest procedure

☐ Other, Describe_____

☐ Unknown

**E. Provide the name and address of both the doctor who removed (or attempted to remove) the <u>filter strut(s)</u> and the hospital or medical facility at which it was removed (or attempted to be removed)**

**Filter <u>Strut</u> Removal/Attempted Removal #1**

Doctor:_____

4

Hospital/MedicalFacility:_____

**Filter Strut Removal/Attempted Removal #2**

Doctor:_____

Hospital/MedicalFacility:_____

## 7. OUTCOME ATTRIBUTED TO DEVICE

A. **Do you claim to be suffering from any bodily injuries, including psychological injuries that are above and beyond usual pain and suffering and mental anguish, related to the Filter?**

☐ Yes

☐ No

If your answer is "**Yes**," please list all symptoms and injuries you claim to have suffered :

_____

_____

Of the injuries/symptoms you listed above, which do you claim to be suffering from at the current time:

_____

_____

**\*\*\***

Plaintiff reserves the right to supplement any and all responses upon the receipt of additional information.

_____     _____
Date                         Signature of Plaintiff


_____     _____
Date                         Signature of Plaintiff – Spouse (signature only necessary if Loss of Consortium is alleged)

5

.

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

IN RE: BARD IVC FILTERS          MDL No. 2641
PRODUCTS LIABILITY LITIGATION

---

## DEFENDANT BARD CASE PROFILE FORM

For each case, the Bard Defendants must complete this Defendant Profile Form ("DPF") in accordance with the schedule established by the Court's Pretrial Order. In completing this Profile Form, you must answer every question.

### I.    CASE INFORMATION

This defendant profile form pertains to the following case:

Case caption: _____

Civil Action No.: _____

Court in which action was originally filed: _____

### II.    CONTACTS WITH IMPLANTING AND REMOVING PHYSICIANS

Plaintiff has identified each healthcare provider who implanted, removed and/or attempted to remove Bard's Filter. With respect to each of those healthcare providers, provide the following information:

A.    CONSULTATION AGREEMENT

    1. As to the identified healthcare providers, state whether Bard has consulting agreement with the healthcare provider relating to IVC filters that Bard has been able to locate after a reasonable and diligent search.

    _____

    _____

B.    SALES REPRESENTATIVE AND OTHER RELATED CONTACTS
    As to each sales representative, territory manager and district manager who had any contact with an identified physician or healthcare provider, set forth the following:

    1.    Identity and last known address and telephone number of Representative(s):

1

_____

_____

As to the individual who Bard believes was the territory manager and district manger for the territory where the filter was implanted at the time of implant, set forth the following:

2.   Identify the name of the territory manager and district manger, the dates of employment for each, and, if no longer employed by Bard, provide the last known address:

Territory Manager:

Name: _____

Employment Dates: _____

If former, last known address: _____

District Manager:

Name: _____

Employment Dates: _____

If former, last known address: _____

### III.   MANUFACTURING INFORMATION

A.   Identify the lot number(s) for the Bard filter implanted in Plaintiff:
_____

B.   Identify the lot number for the Bard device used to remove or used to attempt to remove the Bard Filter implanted into Plaintiff:
_____

C.   Identify the location and date of manufacture for each lot set forth in response to A and B above: _____

### IV.   DOCUMENTS

A.   Please produce the following:

1.   The Device History Record (DHR) for the Bard filter at issue, or, if already produced, provide the bates number for the DHR.

2

2. The Bard complaint file relating to plaintiff's claims, or, in the alternative if already produced, provide the bates number for the complaint.

3. The bates numbers for any documents previously produced that reference the implanting physician and/or the hospital or facility where the device as placed, that Bard is able to identify after a reasonable and diligent search.

4. Any consulting agreement relating to IVC filters that Bard has entered with the physician that implanted the filter.

5. With regard to the plaintiff, any Med Watch Adverse Event Reports in Bard's possession.


_____

Attorney for C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.


_____

[Signature]

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE:  BARD IVC FILTERS PRODUCTS LIABILITY LITIGATION | MDL No. 2641 |
| | **CASE MANAGEMENT ORDER NO. 6** |
| This Document Relates To All Actions | **(RULES, POLICIES, PROCEDURES, GUIDELINES RELATING TO ESTABLISHING COMMON BENEFIT FEE AND EXPENSE FUND)** |

## I.  SCOPE OF ORDER

This Order is entered to provide for the fair and equitable sharing among plaintiffs, and their counsel, of the burden of services performed and expenses incurred by attorneys acting for the common benefit of all plaintiffs in this complex litigation.

### A.  Governing Principles and the Common Benefit Doctrine

The governing principles are derived from the United States Supreme Court's common benefit doctrine, as established in *Trustees v. Greenough*, 105 U.S. 527 (1881); refined in, *inter alia*, *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); and approved and implemented in the MDL context, in *inter alia*, *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1019-21 (5th Cir. 1977); and *In re MGM Grand Hotel Fire Litigation*, 660 F.Supp. 522, 525-29 (D. Nev. 1987).  Common benefit work product includes all work performed for the benefit of all plaintiffs,

including pre-trial matters, discovery, trial preparation, a potential settlement process, and all other work that advances this litigation to conclusion.

**B.    Application of this Order**

This Order applies to all cases now pending, as well as to any case later filed in, transferred to, or removed to this Court and treated as part of the coordinated proceeding known as *In re Bard IVC Filters Products Liability Litigation*, No. MD-15-02641-PHX-DGC.  This Order further applies to each attorney who represents a plaintiff with a case now pending in or later filed in, transferred to, or removed to this Court, regardless of whether the plaintiff's attorney signs the "Participation Agreement" attached hereto as Exhibit A, and/or the "Joint Prosecution And Confidentiality Agreement" ("Joint Prosecution Agreement") attached hereto as Exhibit B.

This Order shall also apply to any private lienholder who obtains reimbursement from any plaintiff whose case is subject to this Order, because that lienholder is benefiting from the common benefit work performed by Participating Counsel.  Such entities shall be subject to this Order regardless of execution of the Participation Agreement or the Joint Prosecution Agreement, as they are seeking to obtain part of the recovery obtained by a plaintiff who is subject to this Order and the jurisdiction of this Court.  Counsel for any private lienholder shall pay amounts consistent with the terms of Paragraph IV(B)(3) of this Order into the Bard IVC Filters Fee Fund and the Bard IVC Filters Expense Fund (as those terms are defined herein).  Private lienholders' counsel shall not be eligible to make a claim to receive any distribution from the Common Benefit Fee Fund or the Common Benefit Cost Fund.

**C.    Participation Agreement (Exhibit A) And Joint Prosecution Agreement (Exhibit B)**

Exhibits A and B, attached hereto and incorporated herein, are voluntary agreements between and among plaintiffs' attorneys who have cases pending in the MDL and/or in state court.  Said agreements are private and cooperative agreements between and among plaintiffs' attorneys only ("Participating Counsel"); and not Defendants or Defendants' counsel.  Participating Counsel shall automatically include all present and

future members of the "Plaintiffs' Leadership Counsel" (as designated in CMO No. 1) by virtue of their appointment by the Court as Plaintiffs' Co-Lead/Liaison Counsel and State/Federal Liaison Counsel ("Plaintiffs' Co-Lead Counsel"), the Plaintiffs' Steering Committee (the "PSC"), State-Federal Liaisons, and any other plaintiff's attorneys who execute the Participation Agreement (Exhibit A hereto), and the Joint Prosecution and Confidentiality Agreement (Exhibit B hereto).  All plaintiffs' attorneys who currently have cases pending in this Court or in any state court shall, within 30 days of this Order, designate whether or not they are a Participating Counsel or a Non-Participating Counsel by signing the appropriate section of each Agreement.  Any plaintiffs' attorney who does not yet have a Bard IVC Filters case filed in any federal or state court shall designate whether or not they are a Participating Counsel or a Non-Participating Counsel by signing the appropriate section of the Participation Agreement:  (a) within 30 days of the date their first case is filed in or otherwise docketed in this Court via direct filing, transfer or removal; or (b) within 30 days of the date their first case is filed in any state court, if that lawyer intends to voluntarily become a Participating Counsel at the fee and expense percentages set forth herein.  Failure to execute Participation Agreement and Joint Prosecution Agreement indicating that an attorney will be a Participating Counsel within the time frame set forth in this paragraph may result in higher percentages for common benefit assessment as a result of such later participation.  Any such higher percentages must be approved by the Court.

Participating Counsel shall be entitled to receive all the common benefit work product of those counsel who have also signed the Participation Agreement and Joint Prosecution Agreement.  Counsel who choose not to execute said agreements are not entitled to receive common benefit work product and may be subject to an increased assessment on all Bard IVC Filters cases in which they have a fee interest if they receive common benefit work product or otherwise benefit by the work performed by Participating Counsel.

The Court recognizes the jurisdictional rights and obligations of the state courts to conduct their state court litigation as they so determine and that the state court litigations

may include counsel who are Participating Counsel. The Participation Agreement, Joint Prosecution Agreement, and this Order shall not be cited by a party to either agreement for any other court in support of a position that adversely impacts the jurisdictional rights and obligations of the state courts and state court Participating Counsel.

## II.    COMMON BENEFIT EXPENSES

### A.    Qualified Time and Expenses Eligible for Reimbursement

In order to be eligible for reimbursement, common benefit time and expenses must meet the requirements of this section and the limitations set forth in the Participation Agreement and Joint Prosecution and Confidentiality Agreement. Specifically, the time and expenses must be: (a) for the common benefit; (b) appropriately authorized (as defined in footnote 1 of the Participation Agreement); (c) timely submitted within the defined limitations set forth in this Order; and (d) verified by a partner or shareholder in the submitting firm.

Time and expense submissions are to be made on the 15th day of each month, beginning on January 15, 2016, at which date all qualifying time and expenses up to and including December 31, 2015 must be submitted to Plaintiffs' Co-Lead Counsel. Thereafter, each submission should contain all time and expenses incurred during the calendar month prior to the submission date (i.e., the February 15, 2016 submission should include all time and expenses incurred during the month of January, 2016), all time and expense submissions should be accompanied by contemporaneous records and verified by a partner or shareholder in the submitting firm. Submissions of time and expense made after the 15th day of the month following the month in which the time or expense were incurred may be rejected. Only time and expense as defined in the Participation Agreement and the Joint Prosecution Agreement will be considered and recognized for common benefit consideration. As to Plaintiffs' Counsel who are not among those described as Consortium Attorneys in the Joint Prosecution and Confidentiality Agreement whose prior work product will be considered as common benefit time and expenses predating the formation of this MDL, their and other Participating Counsel's time and expense for new work product will be considered for

4

common benefit fees and expenses commencing September 15, 2015, the date of the issuance of this Court's Order Setting Initial Case Management Conference. Moreover, only that time and those expenses incurred for the common benefit of all cases, consistent with the terms of this Order (e.g., activities associated with completing the items to comply with CMO #1), shall be considered for common benefit reimbursement at the end of the litigation.

Plaintiffs' Counsel described as Consortium Attorneys in the Joint Prosecution Agreement whose prior work product will be considered as common benefit time and expenses predating the formation of this MDL shall submit all such common benefit time and expenses on January 15, 2016.

## B. Shared and Held Common Benefit Expenses

### 1. Shared Costs

Shared Costs are costs incurred for the common benefit of all plaintiffs. Shared Costs will be paid out of a separate Bard IVC Filters Operating Expense Fund established and administered by Plaintiffs' Co-Lead Counsel and funded by all members of the PSC and others as determined by Plaintiffs' Co-Lead Counsel. All Shared Costs must be approved by Plaintiffs' Co-Lead Counsel prior to payment. Shared Costs include: (a) certain filing and service costs; (b) deposition, court reporter, and video technician costs for non-case-specific depositions; (c) costs necessary for creation and maintenance of a document depository, the operation and administration of the depository, the search, categorization and organization of documents, depositions and evidence, and any equipment required for the depository; (d) Plaintiffs' Co-Lead Counsel administrative matters (e.g., expenses for equipment, technology, courier services, telecopier, electronic service, photocopy and printing, secretarial/temporary staff, etc.); (e) PSC group administration matters such as meetings and conference calls; (f) accountant and administrative consult and auditing fees; (g) generic expert witness and consultant fees and expenses; (h) printing, copying, coding, scanning (out of house or extraordinary firm cost); (i) research by outside third-party vendors/consultants/ attorneys; (j) translation costs; (k) bank or financial institution charges; (l) certain investigative services,

(m) special master and/or mediator charges, and (n) such other costs as the Court deems appropriate for the efficient prosecution of this MDL common to all plaintiffs.

### 2. Held Costs

Held Costs are those that will be carried by each Participating Counsel in MDL 2641. Held Costs are those that do not fall into any of the above categories of shared costs, but are incurred for the benefit of all plaintiffs. Held costs can also include unreimbursed, but authorized, shared costs. No specific client-related costs shall be considered as Held Costs, unless the case is determined by Plaintiffs' Co-Lead Counsel to be a "common benefit case," e.g., certain bellwether cases as determined by Plaintiffs' Co-Lead Counsel.

### C. Authorization and Submission

The Participation Agreement sets forth the guidelines for authorizing and submitting expenses for the common benefit. All Participating Counsel seeking reimbursement of Held Expenses shall follow those guidelines.

### D. Limitations on Expenses

#### 1. Travel Limitations

Except in extraordinary circumstances approved in advance by Plaintiffs' Co-Lead Counsel, all travel reimbursements are subject to the following limitations:

    i.    <u>Airfare</u>: Only the price of a coach seat for a reasonable itinerary will be reimbursed. Business/First Class Airfare will not be fully reimbursed, except for international flights, which requires prior approval by Plaintiffs' Co-Lead Counsel in order to be considered for reimbursement. Use of a private aircraft will not be reimbursed. If Business/First Class Airfare is used on domestic flights, then the difference between the Business/First Class Airfare must be shown on the travel reimbursement form, and only the coach fare will be reimbursed.

    ii.    <u>Hotel</u>: Hotel room charges for the average available room rate of a business hotel, including the Hyatt, Westin, and Marriott hotels, in the city in which the stay occurred will be reimbursed. Luxury hotels will not be fully reimbursed but will be reimbursed at the average available rate of a business hotel.

    iii.    <u>Meals</u>: Meal expenses, including gratuities, must be reasonable, and shall not exceed $75 per day per person.

There will be no reimbursement for alcoholic beverages, mini-bar items, or movies.

iv.   <u>Cash Expenses</u>:  Miscellaneous cash expenses for which receipts generally are not available (tips, luggage handling, pay telephone, etc.) will be reimbursed up to $50.00 per trip, as long as the expenses are properly itemized.

v.   <u>Rental Automobiles</u>:  Luxury automobile rentals will not be fully reimbursed, unless only luxury automobiles were available.  If luxury automobiles are selected when non-luxury vehicles are available, then the difference between the luxury and non-luxury vehicle rates must be shown on the travel reimbursement form, and only the non-luxury rate may be claimed, unless such larger-sized vehicle is needed to accommodate several counsel, or equipment.

vi.   <u>Mileage</u>:  Mileage claims must be documented by stating origination point, destination, total actual miles for each trip, and the rate per mile paid by the member's firm.  The maximum allowable rate will be the maximum rate allowed by the IRS (currently 50.5¢ per mile).

**2.   Non-Travel Limitations**

i.   <u>Shipping, Courier, and Delivery Charges</u>:  All claimed expenses must be documented with bills showing the sender, origin of the package, recipient, and destination of the package.

ii.   <u>Postage Charges</u>:  A contemporaneous postage log or other supporting documentation must be maintained and submitted. Postage charges are to be reported at actual cost.

iii.   <u>Telefax Charges</u>:  Contemporaneous records should be maintained and submitted showing faxes sent and received. The per-fax charge shall not exceed $1.00 per page.

iv.   <u>In-House Photocopy</u>:  A contemporaneous photocopy log or other supporting documentation must be maintained and submitted.  The maximum copy charge is 15¢ per page.

v.   <u>Computerized Research – Lexis/Westlaw</u>:  Claims for Lexis or Westlaw, and other computerized legal research expenses, should be in the exact amount charged to or allocated by the firm for these research services.

**E.   Verification**

The forms detailing expenses shall be certified by a senior partner in each firm attesting to the accuracy of the submissions.  Attorneys shall keep receipts for all

7

expenses. Credit card receipts are an appropriate form of verification if accompanied by a declaration from counsel that the expense was incurred and paid for the common benefit.

## III. COMMON BENEFIT WORK

### A. Qualified Common Benefit Work Eligible for Reimbursement

Only Participating Counsel are eligible for reimbursement for time and efforts expended for the common benefit. Participating Counsel shall be eligible for reimbursement for time and efforts expended for common benefit work if said time and efforts are: (a) for the common benefit; (b) appropriately authorized (as described in footnote 1 of the Participation Agreement); (c) timely submitted; and (d) verified by a partner or shareholder in the submitting firm. Common benefit work and expenses of the Consortium Attorneys (as defined in the Joint Prosecution Agreement) will be evaluated pursuant to the same criteria, scrutiny, audit and guidelines as common benefit work and expenses are evaluated and qualified for work commencing September 15, 2015. In evaluating whether to pay for common benefit work and expenses incurred by Consortium Attorneys before September 15, 2015, the Court will consider the extent to which the work and expenses truly benefited plaintiffs who joined the MDL, the extent to which the work and expenses were duplicated by work and expenses incurred after September 15, 2015 and submitted for reimbursement, the extent to which Consortium Attorneys received compensation for the work and expenses from settlements completed before September 15, 2015, and other relevant factors.

### B. Compensable Common Benefit Work Defined

As the litigation progresses and common benefit work product continues to be generated, Plaintiffs' Co-Lead Counsel may assign Participating Counsel with common benefit work; common benefit work shall include only work specifically assigned. Examples of common benefit work include, but are not limited to, legal research and briefing, authorized court appearances, special projects, meetings, conference calls, maintenance and working in the depository; review and document coding; preparing, responding to, and dealing with common-benefit discovery; expert retention and development authorized by Co-Lead Counsel; preparing for and conducting authorized

depositions of Defendants, third-party witnesses, and experts; and activities associated with preparation for trial and the trial of any cases designated as "common benefit trials" by Plaintiffs' Co-Lead Counsel.

### C. Authorization and Time Keeping

All time must be authorized and accurately and contemporaneously maintained. Time shall be kept according to the guidelines set forth in the Participation Agreement and approved by Plaintiffs' Co-Lead Counsel.

## IV. PLAINTIFFS' LITIGATION FEE AND EXPENSE FUNDS

### A. Establishing the Fee and Expense Funds

At an appropriate time, Plaintiffs' Co-Lead Counsel shall ask the Court to direct that two interest-bearing accounts be established to receive and disburse funds as provided in this Order (the "Funds"). The first fund shall be designated the "Bard IVC Filters Fee Fund" and the second fund shall be designated the "Bard IVC Filters Expense Fund." These funds will be held subject to the direction of this Court.

By subsequent Order of this Court, the Court will appoint a qualified certified public accountant (the "CPA") to serve as escrow agent over the Funds and to keep detailed records of all deposits and withdrawals and to prepare tax returns and other tax filings in connection with the Funds. Such subsequent Order shall specify the hourly rates to be charged by the CPA and for the CPA's assistants, who shall be utilized where appropriate to control costs. The CPA shall submit quarterly detailed bills to the Court and to Plaintiffs' Co-Lead Counsel. Upon approval by the Court, the CPA's bills shall be paid from the Bard IVC Filters Expense Fund and shall be considered a shared cost. The Plaintiffs' Liaison Counsel shall provide a copy of this Order and later orders to the CPA.

### B. Payments into the Fee and Expense Funds

#### 1. General Standards

All plaintiffs and their attorneys who are subject to this Order and who agree to settle, compromise, dismiss, or reduce the amount of a claim or, with or without trial, recover a judgment for monetary damages or other monetary relief, including

compensatory and punitive damages, with respect to Bard IVC Filters claims are subject to an assessment of the gross monetary recovery, as provided herein.

### 2.      Gross Monetary Recovery

Gross monetary recovery includes any and all amounts paid to plaintiffs (either directly or through plaintiffs' counsel) by Defendants through a settlement or pursuant to a judgment.  In measuring the "gross monetary recovery," the parties are to (a) exclude court costs that are to be paid by the Defendants; (b) include any payments to be made by the Defendants on an intervention asserted by third-parties, such as to physicians, hospitals, or other healthcare providers in subrogation related to treatment of a plaintiff, and any governmental liens or obligations (e.g., Medicare/Medicaid); and (c) include the present value of any fixed and certain payments to be made in the future.  The assessment shall apply to all of the cases of the plaintiffs' attorneys who are subject to this Order, whether as sole counsel or co-counsel, including cases pending in the MDL, pending in state court, unfiled, or tolled.

### 3.      Assessment Amount

The assessment amount is 8%, which includes 6% for attorneys' fees and 2% for expenses.  The assessment represents a holdback (*In re Zyprexa Prods. Liab. Litig.*, 267 F.Supp.2d 256 (E.D.N.Y. 2006)) and shall not be altered.  However, if any counsel fails to timely execute the Participation Agreement and Joint Prosecution and Confidentiality Agreement, such counsel and members of his/her firm may be subject to an increased assessment.  Moreover, if a Non-Participating Counsel receives common benefit work product or otherwise benefits from the common benefit work product, such counsel and the cases in which she/he has a fee interest may be subject to an increased assessment.

### 4.      Defendants' Obligations

Upon learning of a case being filed in any state court, Defendants' Counsel promptly shall forward a copy of the state-court complaint to Plaintiffs' Co-Lead Counsel so that Plaintiffs' Co-Lead Counsel can notify the state-court attorneys of this Order and offer them the opportunity to become Participating Counsel.

The Plaintiffs' Co-Lead Counsel shall provide the Defendants' Counsel, the CPA, and the Court or its designee with a list of cases and/or counsel who have entered into written agreements with the PSC by executing the Participation Agreement and Joint Prosecution and Confidentiality Agreement. This same list shall be made available to all plaintiffs' counsel with cases in this MDL, as well as any other plaintiffs' counsel who signs the Participation Agreement and Joint Prosecution and Confidentiality Agreement, upon request. In the event there is a dispute as to whether a case should be on the list, Plaintiffs' Co-Lead Counsel shall seek to resolve the matter with the particular plaintiff's counsel informally, and if that is unsuccessful, upon motion to the Court.

Defendants and their counsel shall not distribute any settlement proceeds to any plaintiff (or anyone on behalf of a plaintiff, including plaintiff's counsel) until after (1) Defendants' counsel notifies Plaintiffs' Co-Lead Counsel in writing of the existence of a settlement and the name of the individual plaintiff and plaintiff's attorney (without disclosing the amount of the settlement), and (2) Plaintiffs' Co-Lead Counsel has advised Defendants' counsel in writing whether or not the individual plaintiff's attorney's cases are subject to an assessment and the amount (stated as a percentage of the recovery) of the assessment pursuant to this Order. Plaintiffs' Co-Lead Counsel shall share this information only with each other and shall otherwise keep this information confidential. For cases subject to an assessment, Defendants are directed to withhold an assessment from any and all amounts paid to plaintiffs and their counsel and to pay the assessment directly into the Funds as a credit against the settlement or judgment. No orders of dismissal of any plaintiff's claim, subject to this Order, shall be entered unless accompanied by a certificate of plaintiff's and defendants' counsel that the assessment, if applicable, will be withheld and will be deposited into the Funds at the same time the settlement proceeds are paid to settling counsel. If, for any reason, the assessment is not or has not been so withheld, the plaintiff and his/her counsel are jointly responsible for paying the assessment into the Fund promptly.

Plaintiffs' Co-Lead Counsel shall keep track of settlements and deposits into the Funds for those settlements. Plaintiffs' Co-Lead Counsel shall provide the Court monthly

reports showing the aggregate of the monthly deposits, disbursements, interest earned, financial institution charges, if any, and current balance.  If necessary, Plaintiffs' Co-Lead Counsel may request that the Court require Defendants to disclose to the Court the amounts of the settlements reached with each plaintiff in order to confirm that appropriate assessments have been deposited in the Funds.

## V.   DISTRIBUTIONS

### A.   Court Approval

The amounts deposited into the Bard IVC Filters Fee Fund and the Bard IVC Filters Expense Fund shall be available for distribution to Participating Counsel who have performed professional services or incurred expenses for the common benefit in accordance with this Order, the Participation Agreement, and the Joint Prosecution Agreement.  No amounts will be disbursed without review and approval by the Court, or such other mechanism as the Court may order.   Specifically, such sums shall be distributed only upon Order of this Court.  This Court retains jurisdiction over any common benefit award or distribution.

### B.   Application for Distribution

Each Participating Counsel who does common benefit work has the right to present their claim(s) for compensation and/or reimbursement prior to any distribution approved by this Court.  Any Counsel who does not sign the Participation Agreement and Joint Prosecution Agreement shall not be eligible to receive common benefit payments for any work performed or expenses incurred.

At the appropriate time, this Court shall request that Plaintiffs' Co-Lead Counsel make recommendations to this Court for distributions to Participating Counsel who have performed common benefit work.  Plaintiffs' Co-Lead Counsel shall employ the services of an agreed-upon independent expert, and after approval of the Court, will serve in an advisory and consulting capacity to Co-Lead Counsel and the PSC to periodically audit the time submissions of Participating Counsel whose consultation and advice regarding billing practices will be shared with Participating Counsel so as to ensure the appropriate methods, content, and substance of time submissions consistent with the guidelines set

forth in this Order. Plaintiffs' Co-Lead Counsel, in consultation with the independent third-party expert, shall determine the most fair and efficient manner by which to evaluate all of the time and expense submissions in making its recommendation to this Court. This Court will give due consideration to the recommendation of the Plaintiffs' Co-Lead Counsel in conjunction with such expert consultation, advice and recommendations.

To the extent that the billing records of any Participating Counsel or any plaintiff's attorney are shared with Plaintiffs' Co-Lead Counsel, the CPA, the retained independent expert, or the Court (subject to appropriate protections when filing), they retain their status as work product materials and are not discoverable by Defendants.

## VI. QUARTERLY REPORTS TO THE COURT.

Plaintiffs' Co-Lead Counsel shall provide the Court with quarterly reports on the fees and expenses submitted by various plaintiffs' counsel for eventual reimbursement from the common fund in this case. The reports shall be organized so the Court can review the attorneys' fees incurred for various categories of work in the case, and the attorneys who incurred them, and so the Court can review the expenses submitted for reimbursement. The first report shall be provided at the end of the second full week of May, 2016, and shall cover through March of 2016, with successive reports to be submitted at the end of the second full week of August, November, February, and May thereafter, continuing until the conclusion of this case and covering the preceding quarter.

Dated this 17th day of December, 2015.

_____
David G. Campbell
United States District Judge

.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **IN RE:  BARD IVC FILTERS PRODUCTS LIABILITY LITIGATION** | MDL No. 2641 |
| **This Document Relates To All Actions** | |

### EXHIBIT A TO CMO ___
#### (Common Benefit Participation Agreement)

THIS AGREEMENT is made this _____ day of _____, 2015, by and between the Plaintiffs' Leadership Counsel appointed by the United States District Court for District of Arizona in MDL 2641 and [Name of the Firm Executing the Agreement] (the "Participating Counsel").

WHEREAS, the United States District Court District of Arizona has appointed (LIST ALL HERE FROM CMO 1) Plaintiffs' Leadership Counsel (consisting of Co-Lead Counsel, State-Federal Liaison Counsel, and the Plaintiffs' Steering Committee or "PSC"), to facilitate the conduct of pretrial proceedings in the federal actions relating to the use, marketing, and sales of Bard IVC Filters; and

WHEREAS, the Plaintiffs' Leadership Counsel, in association with other attorneys working for the common benefit of plaintiffs, have developed or are in the process of developing work product that will be valuable in all proceedings and benefit all plaintiffs alleging injury caused by use of the medical device Bard IVC Filters ("Common Benefit Work Product"); and

1

WHEREAS, the Participating Counsel are desirous of acquiring the Common Benefit Work Product and establishing an amicable, working relationship with the Plaintiffs' Leadership Counsel for the mutual benefit of their clients;

NOW THEREFORE, in consideration of the covenants and promises contained herein, and intending to be legally bound hereby, the parties agree as follows:

## I.   SCOPE OF AGREEMENT

### A.   Purpose

This Participation Agreement is a private cooperative agreement between plaintiffs' attorneys to share Common Benefit Work Product pursuant to the Order Establishing Common Benefit Fee and Expense Fund and this Participation Agreement. Any plaintiffs' attorney who executes this Agreement ("Participating Counsel") is entitled to receive the Common Benefit Work Product created by those attorneys who have also executed, or have been deemed to have executed, the Participation Agreement and Joint Prosecution Agreement, regardless of the venue in which the attorney's cases are pending.

### B.   Rights and Obligations of Participating Counsel

Upon execution of this Participation Agreement and the Joint Prosecution and Confidentiality Agreement, the Plaintiffs' Leadership Counsel will provide Participating Counsel access to the Common Benefit Work Product, including access to the document depository, and full access and availability of work product within the private, secure and confidential plaintiffs-only website.  Participating Counsel agrees that all cases in which Participating Counsel has a fee interest, including unfiled cases, tolled cases, and/or cases filed in state and/or federal court, are subject to the terms of this Participation Agreement. Participating Counsel shall produce a list that correctly sets forth the name of each client represented by Participating Counsel and/or in which Participating Counsel has an interest in the attorney fee, regardless of what that interest is, who has filed a civil action arising from the use, marketing, and/or sale of Bard IVC Filters.  Such list shall include the court and docket number of each such case. Participating Counsel shall also produce a list that contains the name of each client represented by Participating Counsel and/or in which

Participating Counsel has an interest in the attorney fee, regardless of what that interest is, who has not yet filed a civil action but who has a claim against Defendants arising from the use, marketing, and/or sale of Bard IVC Filters. Participating Counsel shall supplement the lists on a quarterly basis and provide the lists to Plaintiffs' Co-Lead Counsel. The initial list shall be provided within 15 days of signing this Agreement and must be supplemented every 90 days thereafter.

## II.    AGREEMENT TO PAY AN ASSESSMENT ON GROSS RECOVERY

Subject to the terms of this Agreement, the provisions set forth below, and the terms of CMO, all plaintiffs and their attorneys who agree to settle, compromise, dismiss, or reduce the amount of a claim, or with or without trial, recover a judgment for monetary damages or other monetary relief, including compensatory and punitive damages, for any Bard IVC Filters claims are subject to an assessment of the Gross Monetary Recovery, as provided herein.

### A.    Assessment Amount

The assessment amount shall be eight (8) percent of the Gross Monetary Recovery in each case, six (6) percent for common benefit attorneys' fees and two (2) percent for common benefit expenses, and represents a holdback. (*See In re Zyprexa Prods. Liab. Litig.*, 267 F.Supp.2d 256 (E.D.N.Y. 2006)). By entering this Participation Agreement, the undersigned understands and avers to not move, join, or otherwise support a motion that seeks a common benefit fee assessment in excess of 6%, nor a motion that seeks common benefit costs in excess of 2%, unless it should become apparent that fees in excess of 6% or costs and expenses in excess of 2% are required to reasonably and adequately advance the litigation.

However, to obtain the benefit of this assessment amount, all plaintiffs' counsel with a case pending in this MDL or in any state court shall execute this Participation Agreement within 30 days of the entry of the Common Benefit Order. Any plaintiffs' attorney who does not yet have a Bard IVC Filters case filed in any state or federal court shall execute this Participation Agreement (a) within 30 days of the date their first case is filed in or otherwise docketed in this Court via transfer or removal, or (b) within 30 days

of the date their first case is filed in any state court. Failure to execute the Participation Agreement within these time frames may result in an increased assessment as determined by Plaintiffs' Co- Lead counsel and subject to the Court's approval.

**B.     Gross Monetary Recovery Defined**

Gross Monetary Recovery includes any and all amounts paid to plaintiffs (directly or through plaintiffs' counsel) by Defendants through a settlement or pursuant to a judgment.  In measuring the Gross Monetary Recovery, the parties are to (a) exclude court costs that are to be paid by the Defendant; (b) include any payments to be made by the defendant on an intervention asserted by third-parties, such as to physicians, hospitals, or other healthcare providers in subrogation related to treatment of a plaintiff, and any governmental liens or obligations (e.g., Medicare/Medicaid); and (c) include the present value of any fixed and certain payments to be made in the future.

**C.     Covered Cases**

The assessment amount set forth above and in the related Order shall apply to all cases now pending or later filed in, transferred to, or removed to this Court and treated as part of the coordinated proceeding known as *In re: Bard IVC Filters Products Liability Litigation*, MDL 2641, regardless of whether the plaintiff's attorney is either Participating or Non-Participating Counsel.  Counsel who sign this Participation Agreement further agree that the assessment shall apply to all un-filed cases, tolled cases, and/or cases filed in state court in which they have a fee interest, regardless of the size of that fee interest.

Non-Participating Counsel are not required to pay an assessment on state court cases or on un-filed cases.  However, counsel who do not sign the Participation Agreement are not entitled to receive Common Benefit Work Product, and may be subject to an increased assessment on all Bard IVC Filters cases in which they have a fee interest if they receive any Common Benefit Work Product or otherwise benefit from the work product created by Plaintiffs' Leadership Counsel and other Participating Counsel working with the MDL.  Non-Participating Counsel shall not be eligible to receive Common Benefit payments for any work performed or expenses incurred.

### D.     Attorney Fee Lien

With respect to each client represented in connection with Bard IVC Filters related claims that are filed or pending in any Federal court, are un-filed, or are subject to a tolling agreement, consistent with I.B. and I.C. of the associated Case Management Order Establishing Common Benefit Fee and Expense Fund (Case Management Order #___), each Participating Counsel shall agree to have Defendants deposit or cause to be deposited in the Bard IVC Filters Fee and Expense Funds established by the District Court in the MDL a percentage of the gross amount recovered by each such client that is equal to the assessment amount. In the event Defendants do not deposit the assessed percentage into the Funds, Plaintiff and Plaintiff's Participating Counsel shall deposit or cause to be deposited in the Bard IVC Filters Fee and Expense Funds established by the District Court in the MDL a percentage of the gross amount recovered by each such client that is equal to the assessment amount.  Participating Counsel, on behalf of themselves, their affiliated counsel, and their clients, hereby grant and convey to Plaintiffs' Leadership Counsel a lien upon and/or a security interest in any fee generated as a result of any recovery by any client who they represent in connection with any Bard IVC Filters-induced injury and Bard IVC Filters marketing and sales practices, to the full extent permitted by law, in order to secure payment in accordance with the provisions of this Agreement. Participating Counsel will undertake all actions and execute all documents that are reasonably necessary to effectuate and/or perfect this lien and/or security interest.

### E.     Attorney-Client Contracts

Both the Plaintiffs' Leadership Counsel and Participating Counsel recognize the importance of individual cases and the relationship between case-specific clients and their attorneys.  Regardless of the type of settlement or conclusion eventually made in either state or federal cases, Plaintiffs' Leadership Counsel will recommend to this Court that appropriate consideration will be given to individual case contracts between attorneys and their clients.

### III.   COMMON BENEFIT EXPENSES

#### A.   Qualified Expenses Eligible for Reimbursement

In order to be eligible for reimbursement of common benefit expenses, said expenses must be: (a) for the common benefit; (b) appropriately authorized[1] and timely submitted; (c) within the defined limitations set forth in this Participation Agreement and associated Order; and (d) verified by a partner or shareholder in the submitting law firm.

#### B.   Authorization and Submission of Expenses

Participating Counsel must submit expenses consistent with the Order of this Court. Expenses incurred on matters common to all claimants in MDL 2641 and assigned by Plaintiffs' Co-Lead Counsel of the MDL may be submitted for reimbursement.

#### C.   Verification

The forms detailing expenses shall be certified by a senior partner in each firm, and such certification should attest to the accuracy of the submissions. Attorneys shall keep receipts for all expenses. Credit card receipts are an appropriate form of verification if accompanied by a declaration from counsel that the expense was incurred and paid for the common benefit.

Cost records shall be electronically submitted to CPA and Plaintiffs' Co-Lead Counsel on a monthly basis. Untimely submission of cost records will result in a waiver of said costs. Unsubstantiated costs may be disallowed, as recommended by the CPA and/or Plaintiffs' Co-Lead Counsel.

### IV.   COMMON BENEFIT WORK

#### A.   Common Benefit Work Eligible for Reimbursement

In order to be eligible for reimbursement, time expended must be: (a) for the common benefit; (b) appropriately authorized (see Footnote 1 supra); (c) timely submitted; and (d) verified by a partner or shareholder in the submitting law firm. Moreover, if counsel fails to timely submit capital contributions as may be requested by Plaintiffs' Co-Lead Counsel throughout this litigation, such counsel and members of

---

[1] For the purposes of this Participation Agreement, "authorized" or "approved" in terms of common benefit expenses and common benefit work shall mean authorized and approved by Plaintiffs' Co-Lead Counsel.

his/her firm shall not be allowed to submit common benefit time or expenses for reimbursement. Unsubstantiated costs may be disallowed, as recommended by the CPA and/or Co-Lead Counsel.

## B. Counsel Involved

Participating Counsel are prohibited from sharing Common Benefit Work Product with Non-Participating Counsel, as defined herein. Counsel eligible to perform common benefit work includes Plaintiffs' Co-Lead Counsel, members of the PSC, Co-Chairs and authorized members of MDL Committees, and other Participating Counsel.

## C. Authorization

Time spent on matters common to all claimants in the MDL must be assigned by Plaintiffs' Co-Lead Counsel, directly or via authority specifically provided by Plaintiffs' Co-Lead Counsel to a Chair or Co-Chair of a sanctioned committee to be eligible for consideration as common benefit time. No time spent on developing or processing individual issues in any case for an individual client (claimant) will be considered or should be submitted; nor should time spent on unauthorized work be submitted for consideration.

### (1) Examples of Authorized and Unauthorized Work:

a. <u>Depositions of corporate witnesses</u>: Any attorney not designated as one of the authorized questioners or otherwise authorized to attend a deposition on behalf of the PSC shall not submit time or expenses for preparing for or attending such deposition, as such attendance is deemed to be on behalf of that attorney's individual clients.

b. <u>Periodic PSC, MDL, or Full-Committee Conference Calls and Meetings</u>: Such calls and meetings are held so that individual attorneys are kept up-to-date on the status of the litigation, therefore participation by listening to such calls is not common benefit work. Each attorney has an obligation to stay informed about the litigation so that they can best represent

7

their clients, and that is a reason to participate in such calls and meetings. The attorneys designated by Plaintiffs' Co-Lead Counsel to run those calls are working for the common benefit by keeping other lawyers informed and educated about the case, and their time will be considered common benefit time. Nothing in this paragraph shall be construed to prevent members of the PSC from submitting common benefit time for participation in PSC communications that are germane to all members of the PSC and are necessary to fulfill their PSC obligations.

c. <u>Periodic Status Conferences</u>: Periodic status conferences are held so that the litigation continues to move forward and legal issues are resolved with the Court. Individual attorneys are free to attend any status conference held in open court in order to keep up-to-date on the status of the litigation, but participation by attending and listening to such conferences is not common benefit work. Each attorney has an obligation to stay informed about the litigation so that they can best represent their clients. Mere attendance at a status conference will not be considered a common benefit expense or common benefit time, nor shall participation in such status conferences via telephone be considered common benefit time. The attorneys designated by Plaintiffs' Co-Lead Counsel to address issues that will be raised at a given status conference or requested by Plaintiffs' Co-Lead Counsel to be present at a status conference are working for the common benefit and their time will be considered common benefit time.

d.      Identification and Work Up of Experts:      Participating
        Attorneys are encouraged to identify experts in consultation
        with the Co-Chairs of the responsible committees.   If a
        Participating Attorney travels to and retains an expert without
        the knowledge and approval of Plaintiff's Co-Lead Counsel,
        the MDL may not need or use that expert, and the associated
        time and expense may not be considered common benefit
        expenses/work, and therefore may not be compensable.

e.      Attendance at Various Seminars:  Attendance at a seminar that
        has as an agenda item about the Bard IVC Filters litigation is
        not common benefit work or a common benefit expense.

f.      Document Review:   In the MDL, only document review
        specifically assigned to an attorney and authorized by
        Plaintiffs' Co-Lead Counsel or one of the co-chairs of a
        sanctioned Committee will be considered common benefit
        work.  If an attorney elects to review documents that have not
        been assigned to that attorney by Plaintiffs' Co-Lead Counsel
        or one of the Committee Co-Chairs, that review is not
        considered common benefit work.

g.      Review of Pleadings and Orders:   Each attorney has an
        obligation to stay informed about the litigation so that they can
        best represent their clients, and review of pleadings and orders
        is part of that obligation.  Only those attorneys designated by
        Plaintiffs' Co-Lead Counsel to review and summarize those
        pleadings or orders for the MDL are working for the common
        benefit, and their time will be considered common benefit
        time.   All other counsel are reviewing those pleadings and
        orders for their own benefit and the benefit of their own
        clients, and the review is not considered common benefit

work.  Nothing in this paragraph shall be construed to prevent members of the PSC from submitting common benefit time for reviewing orders that are germane to all members of the PSC and review of which is necessary to fulfill their PSC obligations.

h.    <u>Review of Discovery Responses</u>:    Each attorney has an obligation to stay informed about the litigation so that they can best represent their clients, and that is a reason to review discovery responses served in this litigation.    Only those attorneys designated by Plaintiffs' Co-Lead Counsel to review and summarize discovery responses for the MDL are working for the common benefit, and their time will be considered common benefit time.  All other counsel are reviewing those discovery responses for their own benefit and the benefit of their own clients, and the review is not considered common benefit work.

i.    <u>Bellwether Trials</u>:  While the work-up of individual cases is not considered common benefit work, in the event that a case is selected as part of an approved bellwether trial process in the MDL, or state court proceeding, the time and expenses in trying the case (including work performed as part of the approved bellwether process) may be considered common benefit work at the discretion of Plaintiffs' Co-Lead Counsel to the extent it complies with the other provisions of this Order and Participation Agreement.

### D. Time Keeping and Submission of Time Records

All time must be accurately and contemporaneously maintained. Participating Counsel shall keep a daily record of time spent in connection with common benefit work on this litigation, indicating with specificity the hours, location and particular activity (such as "conducted deposition of John Doe"). Time entries must include task-based billing and allocate time to particular tasks; block billing of time will not be accepted. Time entries that are not sufficiently detailed may not be considered for common benefit payments. All common benefit work time for each firm shall be maintained in tenth-of-an-hour increments. Time submissions will be audited by Plaintiffs' Co-Lead Counsel and a retained independent expert.

These guidelines are intended for all activities performed and expenses incurred by Participating Counsel in MDL 2641:

1. All time submissions must be incurred only for work authorized under this Participation Agreement, or as set forth in the Joint Prosecution Agreement.

2. All time submissions must be made in the form provided or in the manner required by the PSC.

3. Time and expense submissions are to be made on the 15th day of each month, beginning on January 15, 2016. Each submission should contain all time and expenses incurred during the calendar month prior to the submission date (i.e., the February 15, 2016 submission should include all time and expenses incurred during the month of January 2016), though the first submission should include all time and expenses incurred through December 31, 2015. All time and expense submissions should be accompanied by contemporaneous records and verified by a partner or shareholder in the submitting firm. Submissions of time and expense made after the 15th day of the month following the month in which the time or expense were incurred may be rejected.

11

4.      As to Plaintiffs' Counsel who are not among those described as Consortium Attorneys in the Joint Prosecution and Confidentiality Agreement whose prior work product will be considered as common benefit time and expenses predating the formation of this MDL, their and other Participating Counsel's time and expense for new work product will be considered for common benefit fees and expenses commencing September 15, 2015, the date of the issuance of this Court's Order Setting Initial Case Management Conference. Moreover, only that time and those expenses incurred for the common benefit of all cases, consistent with the terms of this Order (e.g., activities associated with completing the items to comply with CMO #1), shall be considered for common benefit reimbursement at the end of the litigation.  Moreover, only that time and those expenses incurred for the common benefit of all cases, consistent with the terms of the Common Benefit Order and this Participation Agreement, shall be considered.

5.      All time submissions must be electronically sent in the designated form to the attention of Plaintiffs' Co-Lead Counsel so they can be reviewed, compiled, and submitted to the Court at the appropriate time.

6.      Failure to provide submissions in a timely manner may result in a waiver of attorney fees and expenses claimed for the time period that is the subject of the submission.  Failure to submit time and expense records in the format approved by Plaintiffs' Co-Lead Counsel and the PSC will result in a notice of deficiency, after which the submitting firm shall have 15 days to cure the deficient submission. Absent prior approval from Plaintiffs' Co-Lead Counsel or special circumstances, failure to cure the deficiency within the fifteen-day period shall result in (a) that month's submission being rejected, and

12

(b) the submitting firm waiving compensation for the time and expenses submitted that month.  Upon a determination by Plaintiffs' Co-Lead Counsel that a Participating Law Firm repeatedly fails to comply with the requirement to timely submit time and expense records in the required format, that Participating Law Firm may be barred from performing future common benefit work.

7. Time spent compiling the data for the time and expense submissions is not considered common benefit time and shall not be submitted.

**E. Distribution of Fees**

1. <u>No Individual Right to the Funds</u>:  No party or attorney has any individual right to any common benefit funds except to the extent directed by Order of this Court.  Common benefit funds will not constitute the property of any party or attorney or be subject to garnishment or attachment for the debts of any party or attorney except when and as directed by court order.  These limitations do not preclude a party or attorney from transferring, assigning, or creating a security interest in potential disbursements from the fund if permitted by applicable state laws and if subject to the conditions and contingencies of this Agreement.

2. <u>Court Approval</u>:  The amounts deposited in the Bard IVC Filters Fee Fund shall be available for distribution to attorneys who have performed professional services or incurred expenses for the common benefit.  The MDL Court retains jurisdiction over any common benefit award. Each Participating Counsel who does common benefit work has the right to present their claim(s) for compensation and reimbursement prior to any recommendation to the Court.  It is expected that due consideration of payment of common benefit fees and expenses will be given to the recommendation of Plaintiffs' Co-

Lead Counsel, after consultation and recommendations of court-approved third-party special master, by the MDL Court.

Dated:_____        _____
                                     Firm Name:
                                     Attorney's Name:

                                     PLAINTIFFS' LEADERSHIP COUNSEL

Dated:_____        _____
                                     Ramon Rossi Lopez
                                     Plaintiffs' Co-Lead Counsel

Dated:_____        _____
                                     Robert W. Boatman
                                     Plaintiffs' Co-Lead Counsel

5119171v3/26997-0001

# EXHIBIT B

## JOINT PROSECUTION AND CONFIDENTIALITY AGREEMENT
### In re Bard IVC Filters Litigation

This Joint Prosecution Agreement ("Agreement") is made and entered into by and between (1) the attorneys that have been litigating actions relating to inferior vena cava filters manufactured by C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. since 2011, hereinafter known as the Consortium Lawyers (*previously identified as Lopez McHugh LLP, Babbitt Johnson, Karon & Dalimonte, Heaviside Reed Zaic, and Law Offices of Ben C. Martin) and (2) _____ ("the Member Attorney/Firm" or "Member Attorneys/Firms").

**WHEREAS,** all federal actions relating to Bard manufactured inferior vena cava filters have been consolidated before and transferred to Judge David G. Campbell in MDL No. 2641.

**WHEREAS,** Judge David G. Campbell has ordered that Plaintiffs establish their leadership structure to facilitate the conduct of pretrial proceedings in MDL No. 2641.

**WHEREAS,** Consortium Lawyers and Member Attorneys have agreed to a proposed leadership structure for MDL No. 2641, involving Lead Co-Counsel and a Plaintiff Steering Committee.

**WHEREAS**, the Consortium Lawyers have completed a significant amount of discovery and trial preparation work product that will be beneficial to the litigation of state and federal court proceedings involving Bard IVC Filter, including:

1. Taking corporate depositions and creating page-line summaries thereof,

2. Creating and maintaining a document depository,

3. reviewing multiple document productions,

4. Creating a database and spreadsheet of most relevant documents

5. Preparing and arguing discovery motions,

6. Challenging privilege claims of work product and attorney-client privilege,

7. Vetting and retaining multi-disciplinary experts all of whom have submitted multiple Rule 26 reports and been deposed multiple times

8. Deposing all defense experts,

9. Researching, responding and arguing summary judgment motions,

10. Preparing and arguing motions in limine in multiple jurisdictions,

11. Preparing trial deposition cuts for multiple trials,

12. Objections to deposition testimony designated by defense

13. Preparing exhibit lists, and marked exhibits (electronic and hard copy) for submission to trial court

14. Creating trial ready video testimony presentations with incorporated exhibits,

15. opening statements,

16. demonstrative boards and videos,

17. 11 days of trial with trial transcript, and

18. Post-settlement briefing obtaining order by Federal Court trial judge that all testimony and exhibits admitted into evidence are now in the public domain.

**WHEREAS**, the undersigned Member Attorney represents individual claimants who have been or may be injured as a consequence

of their Bard manufactured IVC Filter and the Member Attorney has filed either or both a state court and/or federal court action on behalf of one or more clients, or are in the process of doing so.

**WHEREAS**, the undersigned Member Attorney and all members of the proposed Plaintiff leadership in MDL No. 2641 are desirous of acquiring the above described work product created by Consortium Lawyers and establishing an amicable, working relationship with Consortium Lawyers.

**NOW THEREFORE**, in consideration of the covenants and mutual promises contained herein, and intending to be legally bound hereby, the parties agree as follows:

1. To the extent consistent with the best interest of his or her individual client, the undersigned Consortium and Member Attorney agrees to assist in a cooperative effort to investigate, prepare and conduct discovery in State and Federal Court litigations regarding Bard manufactured IVC Filters ("Subject Litigation") in order to achieve the common interest of minimizing cost, maximizing judicial efficiency and assuring the just and speedy resolution of the undersigned Member Attorney's individual claim and the other similar claims which collectively comprise the Subject Litigation.

2. In support these common interests:

    (a) The undersigned Consortium Lawyers and Member Attorney agrees to share information with other Member Attorneys, within their professional discretion, including discovery materials concerning the common issues involved in the Subject Litigation except where restricted by the terms of a valid and operative protective order.

(b) The undersigned Member Attorney agrees to take whatever action (including internal procedures and legal action) that is necessary and appropriate to preserve both the work product status and confidentiality of the identity and contents of materials or information provided to them as a result of this Agreement.

(c) To enforce the mutual obligations of this Agreement.

3.       The undersigned Member Attorney agrees to maintain the confidential status of all confidential information acquired in furtherance of this Agreement and agrees that all such information (including but not limited to the identity and contents of material contained in or selected from a document database, confidential communications with other Member Attorneys, confidential information acquired at seminars, and all correspondence, memoranda, notes and other materials based on or reflecting the identity or content of such information) shall be maintained in absolute confidence

4.       In an effort to maintain the confidential status of all information generated by, developed by and/or acquired from Consortium Lawyers, Member Attorneys agree that they will not disclose that they have received any materials from other Consortium Attorneys. The source of the acquisition of relevant data while not germane to a member's lawsuit is germane to Consortium Attorneys status and usefulness in preparing data bases and other materials.

5.       In the event that a Member Attorney has any data received from consortium Attorneys and is compelled by a Court to produce or disclose said information, the Member Attorney must immediately move for the imposition of a protective order which precludes the attorneys in the subject case from disseminating the data to anyone (attorneys or non-attorneys) outside the confines of the subject case; the protective order shall further restrict the use of these materials and require the return of the original and any copies of these materials at the

completion of the case.

9.      To the extent that the undersigned Member Attorney discloses information in violation of this Agreement, or otherwise waives protection available to the undersigned Member Attorney (including but not limited to entitlement to protection under the work product doctrine), such waiver shall not extend to other Member Attorneys or to Consortium Attorneys.

10.     The undersigned Member Attorney authorizes and designates Consortium Lawyers to act on his or her behalf in his or her capacity as a Member Attorney for the purpose of entering into and enforcing the mutual obligations of this Agreement.

11.     No provision of this Agreement shall be construed as requiring the undersigned Member Attorney to pay to any other Member Attorney any additional fees or costs not contemplated by this Agreement. Furthermore, this Agreement shall have no effect on any current or outstanding obligation of the undersigned Member Attorney to pay any other Member Attorney fees or costs. This Paragraph does not have any effect on any other agreements or orders (including assessment orders) that now or hereinafter exist relating to payment for any common benefit work performed by Consortium Lawyers.

12.     Any obligation assumed under this Agreement shall survive the dismissal, settlement or other resolution of any individual claim handled by the undersigned Member Attorney.

13.     In addition to any other agreements contained herein relating to keeping materials confidential and preventing disclosure to defendants, Member Attorneys expressly agree not to release the materials provided hereunder to any other attorney or Bard IVC Filters claimant whose claims are not represented by Member Attorneys herein or who are not otherwise a

signatory to this Agreement.

14.     This Agreement shall apply to each and every claim or action arising from the defective Bard IVC Filters in which the Member Attorneys have a right to a fee recovery and shall encompass all claims, filed or unfiled, wherein the Member Attorneys or their respective law firms have been directly retained by a client in connection with a Bard IVC Filters related claim, or, alternatively, are associated as co-counsel or otherwise.

15.     In the event that a Member Attorney fails to comply with any provision set forth herein, his or her Membership shall be subject to immediate termination.

16.     Consortium Attorneys and the Member Attorneys agree to consent to the jurisdiction of Judge David G. Campbell in the United States District Court for the District of Arizona for the resolution of any disputes arising from or related to this Agreement.

17.     The Undersigned Member Attorney agrees to honor any common benefit holdback or assessment from settlement or judgment proceeds in any Bard IVC Filter case they have an interest in, which has been or may be ordered by Judge David G. Campbell in the United States District Court for the District of Arizona. The Undersigned Member Attorney further agree to recognize the work product created by Consortium Lawyers prior to said order as counting towards common benefit time, as to those categories and subject matters that are commonly recognized as common benefit activities in state and/or federal coordinated actions, whether or not said work was created prior to or after the consolidation. The recognitions, value and qualifications of such common benefit activities will be subject to the same scrutiny, protocol, policies, procedures and evaluations sanctioned by the MDL court for all past, pending and future common benefit work, which will be the subject of a future Case Management Order,

MEMBER  ATTORNEY

Date                 _____

CONSORTIUM ATTORNEY

Date:             _____

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **IN RE: BARD IVC FILTERS PRODUCTS LIABILITY LITIGATION,** | MDL No. 2641 |
| | CASE MANAGEMENT ORDER NO. 7 |
| | (Stipulation and Order Concerning Redactions of Material from Additional Adverse Event Reports, Complaints, and Other Documents) |

In accordance with the Stipulation of the Parties and to protect the confidential information of non-parties,

**IT IS ORDERED** as follows:

The Defendants anticipate producing additional and updated adverse event reports and complaint files maintained pursuant to 21 U.S.C. § 360i, 21 C.F.R. § 803.18, and 21 C.F.R. § 820.1 - .250 as well as documents relating to those adverse events and complaints files. To the extent that Defendants are able to identify whether these reports and complaint files relate to a particular named Plaintiff at the time they are produced in this litigation, the parties and their attorneys have consented to and agreed that the Defendants shall refrain from redacting the following identifiable information, as defined in 21 C.F.R. § 20.63(f), in the below three circumstances:

(1)     Identifiable information of a Plaintiff in this litigation shall not be redacted, pursuant to 21 C.F.R. § 20.63(f)(1)(iii);

(2)    Identifiable information of a Plaintiff in litigation pending in other state or federal courts shall not be redacted, pursuant to 21 C.F.R. § 20.63(f)(1)(iii), if the attorney or law firm representing that Plaintiff is of record in this multi-district proceeding and the other litigation involves a personal injury claim regarding any of Bard's inferior vena cava (IVC) filters unless, prior to production by Defendants, counsel of record for a particular plaintiff requests in writing to counsel for Defendants redaction in accordance with the agreed redaction protocol attached as Exhibit A to this Order;

(3)    Identifiable information of a voluntary reporter shall not be redacted, pursuant to 21 C.F.R. § 20.63(f)(1)(i), where the reporter is an attorney from any of the law firms of record in this multi-district litigation proceeding.

Otherwise, in accordance with 21 CFR § 20.63(f) and other applicable laws, statutes, and regulations, the Defendants shall only redact such information as is set forth in the agreed protocol attached to this Order as Exhibit A, and Plaintiffs shall have the right to object to any redactions made.

The parties acknowledge that this Stipulated Order is intended to and does satisfy the written consent requirement of the federal regulations.

Any documents containing any reporter or personal identifying information shall be designated and branded as confidential in accordance with the protective order entered in this case.

This Order shall govern all cases transferred, filed, or pending in the above-captioned litigation.

Dated this 5th day of January, 2016.

_____
David G. Campbell
United States District Judge

# EXHIBIT A

**Redaction Protocol for Bard Complaint Files**

1) Redactions under the Health Insurance Portability Act of 1996 (HIPAA) and under 21 CFR 20.63, redact the following:

**Redact the following for the patient, relatives, household members, or employers:**

(1) Names

- Names of the individuals associated with the corresponding health information (i.e., the subjects of the records) and of their relatives, employers, and household members are redacted. Do not redact doctors, nurses, etc. for HIPAA.

(2) County, City and Street address and last two digits of zip code

- DO NOT REDACT COUNTRY, STATE, OR FIRST THREE DIGITS OF ZIP CODE.
- Washington, DC is considered a state for HIPAA redaction purposes.

(3) Birthdates and dates of death

- DO NOT REDACT THE YEAR

(4) Telephone numbers

(5) Fax numbers

(6) Email addresses

(7) Social security numbers (even if it is only a portion, or the full number but most is X'd out – redact it all)

(8) Medical record numbers, Accession Numbers, EMR (Electronic Medical Record Number), PHR (Personal Health Record), PMR (Personal Medical Record), Clinical Trial Record Numbers

(9) Health plan beneficiary numbers, Group Policy IDs, Policy Numbers, etc. (but not the name or address of insurance companies)

(10) Account numbers

(11) Certificate/license numbers

(12) Vehicle identifiers (license plate numbers, VINs, etc.)

(13) Serial numbers of devices

(14) URLs, folder paths, file locations if they include patient identifying information or the patient's employer

(15) IP Addresses if they belong to the patient or the patient's employer

(16) Biometric identifiers such as fingerprints, patient chart barcodes

(17) Full face images (not side profiles)

(18) Any other unique identifier

- This can include anything that is unique enough to identify the person "President of the United States", "current Provost of the University of Tennessee", "first man to walk on the moon", "first heart transplant recipient"

**NOT REDACTED:**

- Bard Complaint IDs
- Information about a person who has been dead 50 years or more
- Autopsy reports

---

### 2) Redactions of Reporter Information - 21 CFR 20.63

The names, address (including city, state, and country), of any reporter (except if it is a Bard Employee or FDA representative), including the names of

(1) Names of any doctor, nurse, intern, or employee of the reporter institution. This includes initials.

(2) Name of the hospital/institution.

(3) All geographic information including city, state, country, zip code, etc.

(4) Phone numbers, fax numbers, or pager numbers for the institution, doctor, etc.

(5) Email addresses, websites for the hospital, etc.

- Bard Employees are not redacted because not considered voluntary reporters
- If reporter is an attorney or law firm subject to parties' stipulation regarding redaction, do not redact the attorney/law firm as the reporter.

1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

8
9

IN RE:  Bard IVC Filters Products Liability
Litigation,

MDL 15-02641-PHX DGC

10
11
12

**CASE MANAGEMENT
ORDER NO. 8**

13
14
15

The Court held a second case management conference with the parties on January 29, 2016.  The conference was scheduled to address a number of issues identified in Case Management Order No. 2 ("CMO 2") (Doc. 249).

16

**I.     Second-Phase Discovery.**

17
18
19
20

The parties have largely completed the first phase of discovery outlined in CMO 2. The Court adopts the following schedule for the second phase of discovery in this MDL proceeding.  The discovery shall include all common fact and expert issues in this  MDL, but not case-specific issues to be resolved in individual cases after remand.

21

A.     Fact Discovery**.**

22
23
24

The deadline for completing fact discovery, including discovery by subpoena, shall be **October 28, 2016**.  To ensure compliance with this deadline, the following rules shall apply:

25
26
27

1.     Depositions:  All depositions shall be scheduled to commence at least **five working days** prior to the discovery deadline.  A deposition commenced five days prior to the deadline may continue up until the deadline, as necessary.

28

2. Written Discovery: All interrogatories, requests for production of documents, and requests for admissions shall be served at least **45 days** before the discovery deadline.

3. The parties may mutually agree in writing, without Court approval, to extend the time provided for discovery responses in Rules 33, 34, and 36 of the Federal Rules of Civil Procedure. Such agreed-upon extensions, however, shall not alter or extend the discovery deadlines set forth in this order.

B. <u>Expert Disclosures and Discovery</u>.

1. Plaintiffs shall provide full and complete expert disclosures as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure no later than **December 16, 2016.**

2. Defendant(s) shall provide full and complete expert disclosures as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure no later than **February 3, 2017.**

3. Rebuttal expert disclosures, if any, shall be made no later than **March 3, 2017.** Rebuttal experts shall be limited to responding to opinions stated by initial experts.

4. Expert depositions shall be completed no later than **May 19, 2017.**

5. Disclosures under Rule 26(a)(2)(A) must include the identities of treating physicians and other witnesses who will provide testimony under Federal Rules of Evidence 702, 703, or 705, but who are not required to provide expert reports under Rule 26(a)(2)(B). Rule 26(a)(2)(C) disclosures are required for such witnesses on the dates set forth above. Rule 26(a)(2)(C) disclosures must identify not only the subjects on which the witness will testify, but must also provide a summary of the facts and opinions to which the expert will testify. The summary, although clearly not as detailed as a

Rule 26(a)(2)(B) report, must be sufficiently detailed to provide fair notice of what the expert will say at trial.[1]

6. As stated in the Advisory Committee Notes to Rule 26 (1993 Amendments), expert reports under Rule 26(a)(2)(B) must set forth "the testimony the witness is expected to present during direct examination, together with the reasons therefor." Full and complete disclosures of such testimony are required on the dates set forth above; absent extraordinary circumstances, parties will not be permitted to supplement expert reports after these dates. The Court notes, however, that it usually permits parties to present opinions of their experts that were elicited by opposing counsel during depositions of the experts. Counsel should depose experts with this fact in mind.

C. Mature Cases.

In CMO 4 (Doc. 363), the Court identified 13 mature cases. The Court and parties concluded at the conference that these cases should not be subject to a separate discovery track, but that some or all of them may be ready for remand before other cases in this MDL proceeding. The parties should confer and agree on additional discovery or motion practice needed for these 13 cases, and shall file a stipulation identifying the specific litigation steps to be taken with respect to these cases. The purpose will be to remand these cases as soon as reasonably possible, rather than postponing their disposition until the end of this MDL proceeding. The parties' stipulation shall be filed by **March 1, 2016**.

II. **Bellwether Selection Process.**

The parties will confer and seek to agree on procedures to govern the selection of bellwether cases. The parties shall file a stipulation or joint submission on this issue by

---

[1] In *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817 (9th Cir. 2011), the Ninth Circuit held that "a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment." *Id.* at 826. Thus, for opinions formed outside the course of treatment, Rule 26(a)(2)(B) written reports are required. *Id.* For opinions formed during the course of treatment, Rule 26(a)(2)(C) disclosures will suffice.

**March 1, 2016.**   The submission shall include proposed forms of Plaintiffs' and Defendants' fact sheets, as were previously to be submitted on January 15, 2016.  In this respect, the Court grants the parties' stipulation at Doc. 436.

**III.    ESI and Previously Searched Custodians.**

The Court held an extended discussion with the parties on electronically stored information ("ESI") previously produced in this case, Plaintiffs' desire for additional information on the ESI, and related matters.  The Court enters the following orders.

A.    <u>System Architecture</u>.

1.    Defendants shall provide Plaintiffs, in an interview or Rule 30(b)(6) deposition, information regarding Defendants' corporate structure and corporate information systems.  The purpose of these disclosures will be to aid Plaintiffs in understanding the locations of information relevant to this litigation.

2.    After obtaining this general information, Plaintiffs may conduct an interview or a Rule 30(b)(6) deposition focusing on the architecture of Defendants' information systems that are reasonably likely to contain information relevant to the products at issue in this MDL proceeding.   The Court deems this discovery as comparable to the kind of location discovery that was expressly permitted by Rule 26(b)(1) before December 1, 2015, and removed from the language of the rule only because the Advisory Committee concluded that it was unnecessary because such discovery is routinely granted.

B.    <u>Defendants' ESI Collection Efforts</u>.

1.    Defendants shall provide Plaintiffs with the following categories of information in the form of interrogatory answers:  A reasonably detailed description of the kinds of information defense counsel obtained from Bard witnesses interviewed as part of Defendants' document and ESI collection efforts in 2005 and 2006; a reasonably detailed description of update efforts Defendants have undertaken with respect to those custodians; reasonably detailed information regarding steps Defendants have taken to locate and produce relevant information from their shared document management

systems, including QUMAS and Master Control; all combinations of keyword search terms used by Defendants when searching for ESI, including instructions within these combinations of search terms; and any testing Defendants have done to determine whether their searches for ESI have been over-inclusive or under-inclusive.

2.    Once the foregoing information has been exchanged, the parties shall meet and confer about additional information sought by Plaintiffs.  Plaintiffs shall identify, *with specificity*, the categories of additional information they seek regarding Defendants' ESI-collection efforts.  If the parties are unable to agree, they shall submit to the Court a matrix that contains a separate line for each *specific* category of information Plaintiffs seek, with two columns on each line.  The left column shall set forth Plaintiffs' specific information request and an explanation of why it is relevant and discoverable.  The second column shall set forth Defendants' response and explanation as to why the information is not discoverable.  The parties shall complete this process and, if necessary, submit the matrix to the Court by **March 18, 2016**.

C.    <u>Preservation Discovery</u>.

The Court concludes that it is premature for the parties to engage in discovery focused primarily on Defendants' alleged failure to preserve ESI.  Thus far, there has been no demonstration that ESI has been lost.  In addition, under Rule 37(e), parties should seek to find allegedly lost ESI through additional discovery efforts before a Court is to take corrective or punitive measures.  If Plaintiffs later develop a good faith basis for concluding that relevant ESI has been lost and that some remedy is appropriate under Rule 37(e), they may raise the issue with the Court.  This ruling does not foreclose Plaintiffs, during a deposition of a witness, from asking where information relevant to that witness's testimony is located.

**IV.    Document and ESI Discovery from New Custodians.**

A.    Defendants shall provide to Plaintiffs, in the form of interrogatory answers, the identification of employees who were involved with the Eclipse, Meridian, and Denali filters and whose documents and ESI have not yet been searched.

B.     With this information in hand, Plaintiffs shall identify the specific custodians from whom they seek ESI discovery using the search terms already established in prior cases, and any additional search terms upon which the parties agree. If the parties are unable to reach agreement on custodians, they shall include the specific identifications of these custodians, and the searches Plaintiffs seek with respect to the custodians, in the matrix to be provided to the Court by **March 18, 2016**.

## V.     FDA Inspection and Warning Letter.

On or before **February 10, 2016**, the parties shall file 15-page memoranda addressing the relevancy and discoverability of information related to the FDA inspection and warning letter.  The purpose will be to aid the Court in determining whether further discovery with respect to the letter is warranted in this case.  As part of the briefing, Plaintiffs should describe the specific discovery they seek with respect to the letter.

## VI.     Discovery Regarding Recovery Cone Removal System.

The briefing described in the preceding paragraph shall include a discussion of the Recovery Cone Removal System, why it is or is not relevant in this case, and why discovery regarding the system is or is not warranted.

## VII.     Discovery Regarding Simon Nitinol Filter.

Plaintiffs shall identify the specific discovery they seek to take regarding the Simon Nitinol Filter ("SNF").  The parties shall meet and confer regarding this requested discovery.  If the parties are unable to reach agreement, they shall include Plaintiffs' *specific* discovery requests, and Defendants' objections, in the matrix to be filed by **March 18, 2016**, as discussed above.

## VIII.  Discovery Regarding Sales and Marketing Personnel.

Discovery may begin with respect to Defendants' national sales and marketing practices.  If, after completion of this discovery, Plaintiffs feel that discovery is needed of Defendants' regional sales and marketing practices, they shall discuss their specific discovery requests with Defendants.  If the parties are unable to reach agreement, they shall raise this issue with the Court.  The Court will not set a deadline for this issue to be

raised, but it should not be raised so late in the fact discovery schedule to afford insufficient time for discovery to be completed.

## IX. Pending Rule 30(b)(6) Notices in Consolidated Cases.

Issues regarding discovery of sales and marketing practices have been dealt with above. Discovery regarding the remaining issues in current notices – the FDA warning letter, regulatory affairs and communications, and post-market surveillance and adverse events reporting – should be addressed by the parties after the Court rules on the discoverability of the FDA warning letter. Existing notices are deemed moot, and may be re-issued during the discovery period if warranted. Disagreements should be brought to the Court's attention.

## X. Depositions of Previously-Deposed Witnesses.

Defendants have noted that approximately 80 witnesses have been deposed in connection with these cases before establishment of the MDL. Defendants generally oppose re-deposing these witnesses on topics already covered. Plaintiffs agree that there would be no purpose in re-asking the same questions of the same witnesses who were previously deposed. The parties have filed memoranda on the question of what discovery taken in Bard filter cases before this MDL proceeding should be deemed binding in this proceeding.

As the Court observed during the conference, this is not a matter governed by Rule 32(a)(8). That rule concerns the use of depositions in later proceedings; it does not place a limit on depositions in later proceedings. Although Rule 30(a) generally permits deposition of witnesses, Rule 26(b)(2)(C) provides that the Court must limit discovery "otherwise allowed by these rules" if "the discovery sought is unreasonably cumulative or duplicative, or might be obtained from some other source that is more convenient, less burdensome, or less expensive," or if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).

The Court declined to place a numerical limit on the number of fact depositions Plaintiffs may conduct in this MDL. The Court also declined to place an hours limit on

depositions.  At the same time, the Court strongly agrees that the parties should not spend time asking the same questions of the same witnesses who have been deposed in these or previous filter cases.  The Court establishes the following procedure for resolving disagreements about whether previously-deposed witnesses may be deposed again.

A.     If Plaintiffs conclude that a previously-deposed witness should be deposed again, Plaintiffs shall provide Defendants with an explanation of why the witness should be deposed again.  Relevant reasons would include, but are not necessarily limited to, new topics that are relevant to this MDL proceeding and were not addressed in the previous deposition, or new information about topics that were addressed in the previous deposition.  Plaintiffs shall provide Defendants with an approximation of the time for the renewed deposition.  The parties shall confer in good faith to reach agreement with respect to the proposed deposition.

B.     If the parties are unable to agree, Defendants shall bear the burden of seeking a protective order under Rule 26(b)(2)(C).  Defendants shall do so by placing a joint conference call to the Court to discuss the proposed depositions.  The Court hopes the parties will be able to reach agreement on these issues and, if not, that the Court's rulings on a few depositions will provide sufficient guidance for the parties to reach agreement in the future.  The Court will consider appointment of a Special Master if the issues become too numerous, but strongly prefers not to add that additional complexity and expense to this case.

C.     The parties and the Court talked about whether "trial depositions" should be taken in this MDL.  Plaintiffs suggested that such depositions could justifiably address questions and subjects previously covered in depositions.  The Court will not authorize trial depositions at this point.  If Plaintiffs conclude at a later stage that trial depositions of some witnesses should be taken, they may raise the issue with Defendants.  The Court is reluctant, however, to adopt a procedure that will result in the re-deposition of virtually every witness previously deposed in this or related litigation solely for the purpose of capturing trial testimony.

**XI.     Discovery Regarding Kay Fuller Allegations.**

Plaintiffs may depose witnesses Edwards and Vierling in connection with Kay Fuller allegations.  With respect to other witnesses Plaintiffs seek to depose, the parties shall follow the procedures set forth in section X above.

**XII.     Early Consideration of Equitable Tolling.**

The Court and the parties discussed whether this MDL proceeding is the correct venue to address or decide equitable tolling issues.  Such issues may implicate case-specific matters such as state law, when a particular Plaintiff knew or should have known of his or her claim, and other case-specific equitable factors.  If it is possible to address this issue on an MDL-wide basis that would advance the litigation, however, it should be considered.  Defendants stated that they will discuss this issue further with Plaintiffs and bring it to the Court's attention if they wish to propose a method for considering equitable tolling in this proceeding.

**XIII.  Pending Motions in Individual Cases.**

Exhibit 7 to the parties' joint report (Doc. 451-7) identifies a number of motions pending in cases that have been transferred to this MDL.  The Court concluded that these motions should be denied without prejudice to the parties' reasserting them in the individual cases after this MDL proceeding is resolved, or asserting them as part of non-case-specific issues and motions to be resolved in this proceeding.  The Court shall deny these motions without prejudice, making reference to this Case Management Order.

**XIV.  Privilege Log Issues.**

The parties advised the Court that they may be able to reach agreement on the best method for resolving their disagreements with respect to privilege logs.  The parties shall advise the Court by **February 12, 2016**, whether they have been able to reach agreement and, if not, their recommended procedure for resolving the issues.

**XV.     ESI Protocol.**

The Court will enter the parties' stipulated order at Doc. 438.  The Court directed the parties, however, to engage in additional discussions about whether they can agree on

a stipulated order dealing with preservation, including by Plaintiffs.  The parties shall notify the Court on or before **February 12, 2016**, as to whether they have reached agreement on this issue.  If they have, they shall submit a stipulated order to the Court.

**XVI.  Next Case Management Conference.**

       The next Case Management Conference will be held on **March 31, 2016 at 10:00 a.m.**  The parties shall provide the Court with a joint status report, and any issues they wish to address at the conference, by **March 25, 2016.**  The parties' submission should include a proposed agenda for the conference.

       Dated this 2nd day of February, 2016.

_____
David G. Campbell
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. MD-15-02641-PHX-DGC |
| | **AMENDED CASE MANAGEMENT ORDER NO. 5** |
| | **(Plaintiff and Defendant Profile Forms)** |

The parties have agreed upon the use of an abbreviated Plaintiff Profile Form ("PPF") (Exhibit 1) attached to this Order.  Except as expressly noted herein, the PPF shall be completed in each currently pending case, and in all cases that become part of this MDL by virtue of being filed in, removed to, or transferred to this Court on or after the date of this Order.

Each plaintiff in currently filed cases (except as noted herein) shall submit a completed PPF to defendants within 60 days of the date of this Order.  In cases that have been filed in, removed to, or transferred to this MDL on or after the date of this Order, each plaintiff shall submit a completed PPF to defendants within 60 days of filing the complaint.

The completed PPF shall be delivered via email to: filterppf-pfs@nelsonmullins.com  and to co-lead counsel via email at wespita@lopezmchugh.com and karin.scheehle@gknet.com .

Each plaintiff is required to provide defendants with a PPF that is substantially complete in all respects, answering every question in the PPF, even if a plaintiff can answer the question in good faith only by indicating "not applicable" or "unknown."  The

PPF shall be signed by the plaintiff under penalty of perjury. If a plaintiff is suing in a representative or derivative capacity, the PPF shall be completed by the person with the legal authority to represent the estate or the person under legal disability. Plaintiff spouses with a claim for loss of consortium shall also sign the PPF, attesting that the responses made to the loss of consortium questions in the PPF are true and correct to the best of his or her knowledge, information and belief, formed after due diligence and reasonable inquiry.

A completed PPF shall be considered interrogatory answers under Fed. R. Civ. P. 33 and responses to requests for production under Fed. R. Civ. P. 34, and will be governed by the standards applicable to written discovery under Federal Rules 26 through 37. The interrogatories and requests for production in the PPF shall be answered without objection as to the question posed in the agreed upon PPF. This section does not prohibit a plaintiff from withholding or redacting information from medical or other records provided with the PPF based upon a recognized privilege. If information is withheld or redacted on the basis of privilege, plaintiff shall provide defendants with a privilege log that complies with Fed. R. Civ. P. 26(b)(5) simultaneously with the submission of the PPF.

If a plaintiff does not submit a PPF within the time specified in this Order, defendants shall mail an overdue letter by e-mail and U.S. mail to Plaintiffs' Co-Lead Counsel and the plaintiffs' individual representative counsel, stating that defendants may move to dismiss that plaintiff's case within 20 days of receipt of the letter. If no PPF is received within those 20 additional days, defendants may move immediately to dismiss that plaintiff's case. If defendants receive a PPF that is not substantially complete, defendants' counsel shall send a deficiency letter within 14 days of receipt of a PPF, as applicable by e-mail and U.S. mail to Plaintiffs' Co-Lead Counsel and the plaintiffs' individual representative counsel, identifying the purported deficiencies. Plaintiff shall have 20 days from receipt of that letter to serve a PPF that is substantially complete in all

respects. This letter shall include sufficient detail for the parties to meet and confer regarding the alleged deficiencies.

Within 45 days of receipt of a substantially complete PPF for an individual plaintiff, the defendants shall provide the plaintiff with a completed Defendants' Profile Form (DPF) (Exhibit 2) attached to this order. A completed DPF shall be considered interrogatory answers under Fed. R. Civ. P. 33 and responses to requests for production under Fed. R. Civ. P. 34, and will be governed by the standards applicable to written discovery under Federal Rules 26 through 37. The interrogatories and requests for production in the DPF shall be answered without objection as to the question posed in the agreed upon DPF. This section does not prohibit a defendant from withholding or redacting information from medical or other records provided with the DPF based upon a recognized privilege. If information is withheld or redacted on the basis of privilege, defendants shall provide plaintiff with a privilege log that complies with Fed. R. Civ. P. 26(b)(5) simultaneously with the submission of the DPF.

If the plaintiff receives a DPF that is not substantially complete, plaintiff's counsel shall send a deficiency letter within 14 days of receipt of a DPF, as applicable by e-mail and U.S. mail to Defendants' Lead Counsel identifying the purported deficiencies. Defendants shall have 20 days from receipt of that letter to serve a DPF that is substantially complete in all respects. This letter shall include sufficient detail for the parties to meet and confer regarding the alleged deficiencies.

The procedures outlined in this Order shall not apply to the following cases:

| Plaintiff | Original Jurisdiction |
|-----------|----------------------|
| 1.  Cason, Pamela | GA – N.D. Ga. 1:12-cv-1288 |
| 2.  Coker, Jennifer | GA – N.D. Ga. 1:13-cv-515 |
| 3.  Conn, Charles | TX – S.D. Tex. 4:14-cv-298 |

| Plaintiff | Original Jurisdiction |
|-----------|----------------------|
| 4.  Ebert, Melissa | PA – E.D. Pa.<br>5:12-cv-1253 |
| 5.  Fox, Susan | TX – N.D. Tex.<br>3:14-cv-133 |
| 6.  Henley, Angela | WI – E.D. Wis.<br>2:14-cv-59 |
| 7.  Keen, Harry | PA – E.D. Pa.<br>5:13-cv-5361 |
| 8.  Milton, Gary | GA – M.D. Ga.<br>5:14-cv-351 |
| 9.  Mintz, Jessica | NY – E.D.N.Y.<br>2:14-v-4942 |
| 10.  Ocasio, Denise | FL – M.D. Fla.<br>8:13-cv-1962 |
| 11.  Rivera (McClarty), Vicki | MI – E.D. Mich.<br>4:14-cv-13627 |
| 12.  Smith, Erin | TX – E.D. Tex.<br>1:13-cv-633 |
| 13.  Tillman, Lessie | FL – M.D. Fla.<br>3:13-cv-222 |

The parties are relieved from preparing or exchanging profile forms in those particular cases.

Dated this 2nd day of March, 2016.

David G. Campbell
United States District Judge

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

*MDL No. 2641*
*In Re Bard IVC Filter Products Liability Litigation*

In completing this **<u>Plaintiff Profile Form</u>**, you are under oath and must provide information that is true and correct to the best of your knowledge. The Plaintiff Profile Form shall be completed in accordance with the requirements set forth in the applicable Case Management Order.

## 1. CASE INFORMATION

**Caption:** _____   **Date:** _____

**Docket No.:** _____

**Plaintiff's attorney and Contact information:**

_____

_____

_____

## 2. PLAINTIFF INFORMATION

**Name:** _____

**Maiden Name:** _____

**Address:** _____

**Date of birth:** _____

**Social Security No.:** _____

**Occupation:** _____

**Spouse:** _____

**Is Spouse Making Claim for Loss of Consortium?**   ☐Yes ☐ No

## 3. DEVICE INFORMATION

   A.  **Filter Model (e.g., Recovery®, G2®, etc.):** _____

   B.  **Lot Number:** _____

   C.  **Date of Bard IVC Filter implant:** _____

   D.  **Attach medical evidence of product identification and operative report for filter placement.**

**E. Please check all the reasons why you believe your Bard Filter was placed:**

☐ Filter Placed After Being Diagnosed with Deep Vein Thrombosis/Pulmonary Embolism

☐ Filter Placed in Conjunction with or before Orthopedic Procedure

☐ Filter Placed in Conjunction with Trauma Situation/Motor vehicle accident

☐ Filter Placed in Conjunction with or before Bariatric Procedure

☐ Other Reason(s) for implant (explain): _____

_____

☐ Unknown

☐ See medical records attached

**F. Provide the name and address of both the doctor who implanted the Bard Filter and the hospital or medical facility at which the filter was placed:**

Doctor:_____

_____

Hospital/MedicalFacility:_____

_____

## 4. FAILURE MODE ALLEGED

**Please check all failure mode(s) that you allege apply to your Bard Filter:**

☐ Fracture
☐ Perforation of filter strut(s) into organs
☐ Migration of entire filter to heart
☐ Tilt with filter embedded in wall of the IVC
☐ Device unable to be retrieved
☐ Bleeding
☐ Other failure mode(s)
   If other, please describe _____

_____

## 5. REMOVAL INFORMATION

**A. Has your Bard Filter been removed?**

☐ Yes
☐ No

2

☐ Unknown

**B.** **If your Bard** <u>**Filter**</u> **has been removed or a doctor has attempted to remove your Filter, please check** <u>**all**</u> **that apply regarding the removal or attempted removal procedure(s):**

☐Removed percutaneously

☐ Removed via an open abdominal procedure

☐ Removed via an open chest procedure

☐ Attempted but unsuccessful percutaneous removal procedure

☐ Attempted but unsuccessful open abdominal procedure

☐ Attempted but unsuccessful open chest procedure

☐ Unknown

☐ See medical records attached

**C.** **Provide the name(s) and address(es) of both the doctor(s) who removed your Bard Filter (or attempted to remove it) and the hospital or medical facility where removal/attempted removal occurred:**

**Filter Removal/Attempted Removal #1**

Doctor:_____

Hospital/MedicalFacility:_____


**Filter Removal/Attempted Removal #2**

Doctor:_____

Hospital/MedicalFacility:_____

---

| **6.  FRACTURED STRUTS** |
|---|

**A.** **Do you claim that your Bard Filter** <u>**fractured?**</u>

☐ Yes

☐ No

**If you answered YES, answer the below questions in this section.**

**If you answered NO, skip the rest of Section 6 and go below to section 7 - "Outcome Attributed to Device."**

3

**B. Are any fractured filter struts retained in your body?**

☐ Yes

☐ No

☐ Unknown

If yes, identify the location(s) within your body of each retained filter strut.

_____

_____

**C. Have any fractured filter struts been removed from your body?**

☐ Yes

☐ No

☐ Unknown

**D. If any fractured filter _strut_ has been removed (or a doctor has attempted to remove any strut), please check _all_ that apply regarding the removal / attempted removal procedure(s):**

☐ Removed percutaneously

☐ Removed via an open abdominal procedure

☐ Removed via an open chest procedure

☐ Attempted but unsuccessful percutaneous removal procedure

☐ Attempted but unsuccessful open abdominal procedure

☐ Attempted but unsuccessful open chest procedure

☐ Other, Describe_____

☐ Unknown

**E. Provide the name and address of both the doctor who removed (or attempted to remove) the _filter strut(s)_ and the hospital or medical facility at which it was removed (or attempted to be removed)**

**Filter _Strut_ Removal/Attempted Removal #1**

Doctor:_____

4

Hospital/MedicalFacility:_____

**Filter <u>Strut</u> Removal/Attempted Removal #2**

Doctor:_____

Hospital/MedicalFacility:_____

## 7. OUTCOME ATTRIBUTED TO DEVICE

A. **Do you claim to be suffering from any bodily injuries, including psychological injuries that are above and beyond usual pain and suffering and mental anguish, related to the Filter?**

☐ Yes

☐ No

If your answer is "**Yes**," please list all symptoms and injuries you claim to have suffered :

_____

_____

Of the injuries/symptoms you listed above, which do you claim to be suffering from at the current time:

_____

_____

\*\*\*

Plaintiff reserves the right to supplement any and all responses upon the receipt of additional information.

_____      _____
Date                                 Signature of Plaintiff

_____      _____
Date                                 Signature of Plaintiff – Spouse (signature only necessary if Loss of Consortium is alleged)

5

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

IN RE: BARD IVC FILTERS           MDL No. 2641
PRODUCTS LIABILITY LITIGATION

---

**DEFENDANT BARD CASE PROFILE FORM**

       For each case, the Bard Defendants must complete this Defendant Profile Form ("DPF") in accordance with the schedule established by the Court's Pretrial Order. In completing this Profile Form, you must answer every question.

      **I.**      **CASE INFORMATION**

This defendant profile form pertains to the following case:

Case caption: _____

Civil Action No.: _____

Court in which action was originally filed: _____

      **II.**     **CONTACTS WITH IMPLANTING AND REMOVING PHYSICIANS**

       Plaintiff has identified each healthcare provider who implanted, removed and/or attempted to remove Bard's Filter. With respect to each of those healthcare providers, provide the following information:

A.     CONSULTATION AGREEMENT

      1. As to the   identified healthcare providers, state whether Bard has consulting agreement with the healthcare provider relating to IVC filters that Bard has been able to locate after a reasonable and diligent search.

        _____

        _____

B.     SALES REPRESENTATIVE AND OTHER RELATED CONTACTS
    As to each sales representative, territory manager and district manager who had any contact with an identified physician or healthcare provider, set forth the following:

      1.      Identity and last known address and telephone number of Representative(s):

1

_____

_____

As to the individual who Bard believes was the territory manager and district manger for the territory where the filter was implanted at the time of implant, set forth the following:

2.  Identify the name of the territory manager and district manger, the dates of employment for each, and, if no longer employed by Bard, provide the last known address:

Territory Manager:

Name: _____

Employment Dates: _____

If former, last known address: _____

District Manager:

Name: _____

Employment Dates: _____

If former, last known address: _____

### III.  MANUFACTURING INFORMATION

A.  Identify the lot number(s) for the Bard filter implanted in Plaintiff:

_____

B.  Identify the lot number for the Bard device used to remove or used to attempt to remove the Bard Filter implanted into Plaintiff:

_____

C.  Identify the location and date of manufacture for each lot set forth in response to A and B above: _____

### IV.  DOCUMENTS

A.  Please produce the following:

1.  The Device History Record (DHR) for the Bard filter at issue, or, if already produced, provide the bates number for the DHR.

2. The Bard complaint file relating to plaintiff's claims, or, in the alternative if already produced, provide the bates number for the complaint.

3. The bates numbers for any documents previously produced that reference the implanting physician and/or the hospital or facility where the device as placed, that Bard is able to identify after a reasonable and diligent search.

4. Any consulting agreement relating to IVC filters that Bard has entered with the physician that implanted the filter.

5. With regard to the plaintiff, any Med Watch Adverse Event Reports in Bard's possession.

_____

Attorney for C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.

_____

[Signature]

3

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MD-15-02641-PHX-DGC<br><br>**AMENDED CASE MANAGEMENT ORDER NO. 4**<br><br>**(Master Complaint, Master Responsive Pleading, Use of Short Form Complaint, Waiver of Service for Bard Defendants, and Answer and General Denial in Cases Subsequently Transferred to MDL 2641)** |

The parties have submitted a Master Long Form Complaint and Jury Demand (previously docketed as Doc. 303-1) and a Master Responsive Pleading (previously docketed as Doc. 303-3). The Court has reviewed these proposed pleadings, finds them sufficient, and directs the Clerk to file them as separate documents in the Court's docket.[1] The parties have also submitted a proposed Amended Short Form Complaint, a copy of which is attached to this order. The Court also finds these proposed pleadings to be sufficient.

**IT IS ORDERED:**

All allegations pled in the Master Complaint and all responses pled in the Master Responsive Pleading are deemed pled in any previously filed Complaint and Responsive Pleading in this MDL proceeding, except as expressly noted below. They are also deemed

---

[1] The reference to "Federal Rule of Evidence 8" on the first page of the Master Complaint shall be deemed to be a reference to Federal Rule of Civil Procedure 8.

pled in any Short Form Complaint (attached to CMO No. 4, Doc. 363) or Amended Short Form Complaint (attached to this Order) and Entry of Appearance filed after the entry of Doc. 363, except that the Master Complaint applies only against the Defendant or Defendants identified in such Short Form Complaints or Amended Short Form Complaints.

The following cases will not be governed by the Master Complaint and Master Responsive Pleading, but will continue to be governed by the complaints (including any amended complaints) and answers filed in the various transferor courts prior to transfer:

| Plaintiff | Original Jurisdiction |
|-----------|----------------------|
| 1.  Cason, Pamela | GA – N.D. Ga.<br>1:12-cv-1288 |
| 2.  Coker, Jennifer | GA – N.D. Ga.<br>1:13-cv-515 |
| 3.  Conn, Charles | TX – S.D. Tex.<br>4:14-cv-298 |
| 4.  Ebert, Melissa | PA – E.D. Pa.<br>5:12-cv-1253 |
| 5.  Fox, Susan | TX – N.D. Tex.<br>3:14-cv-133 |
| 6.  Henley, Angela | WI – E.D. Wis.<br>2:14-cv-59 |
| 7.  Keen, Harry | PA – E.D. Pa.<br>5:13-cv-5361 |
| 8.  Milton, Gary | GA – M.D. Ga.<br>5:14-cv-351 |
| 9.  Mintz, Jessica | NY – E.D.N.Y.<br>2:14-v-4942 |

| Plaintiff | Original Jurisdiction |
|---|---|
| 10. Ocasio, Denise | FL – M.D. Fla. 8:13-cv-1962 |
| 11. Rivera (McClarty), Vicki | MI – E.D. Mich. 4:14-cv-13627 |
| 12. Smith, Erin | TX – E.D. Tex. 1:13-cv-633 |
| 13. Tillman, Lessie | FL – M.D. Fla. 3:13-cv-222 |

On or after **December 28, 2015**, any plaintiff whose case would be subject to transfer to MDL 2641 may file his or her case directly in this Court by using the Short Form Complaint (Doc. 363). After **February 23, 2016**, Plaintiffs may use the Amended Short Form Complaint attached to this Order. If such a case is filed in this Court without the use of the Short Form Complaint or Amended Short Form Complaint, Plaintiffs' Co-Lead Counsel shall promptly advise the filing party to file an amended complaint using the Short Form Complaint or Amended Short Form Complaint. If the filing party fails to do so, Plaintiffs' Co-Lead Counsel shall promptly notify the Court.

Defendants are not required to file answers to Short Form Complaints or Amended Short Form Complaints. An Entry of Appearance shall constitute a denial of all allegations in the Short Form Complaints or Amended Short Form Complaints except as herein provided, and an assertion of all defenses included in the Master Responsive Pleading. By filing an Entry of Appearance in response to a Short Form Complaint or Amended Short Form Complaint, in lieu of an answer, Defendants do not waive any defenses, including jurisdictional and service defenses.

Civil actions in this MDL were transferred to this Court by the Judicial Panel on Multidistrict Litigation for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Upon completion of the pretrial proceedings related to a civil action as

determined by this Court, the case shall be transferred pursuant to 28 U.S.C. § 1404(a) or § 1406(a) to the District Court identified in the Short Form Complaint or Amended Short Form Complaint, provided the parties choose not to waive *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). The fact that a case was filed directly in this District and MDL proceeding shall not constitute a determination by this Court that jurisdiction or venue are proper in this District, and shall not result in this Court being deemed the "transferor court" for purposes of this MDL. In addition, filing a Short Form Complaint or Amended Short Form Complaint in this District shall have no impact on the conflict of law rules to be applied to the case. Instead, the law of the jurisdiction where the case is ultimately transferred will govern any conflict of law. Prior to transfer, Defendants may object to the district specified in the Short Form Complaint or Amended Short Form Complaint, based on venue or jurisdiction (including a lack of personal jurisdiction based on *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014)), and propose an alternative jurisdiction for the Court's consideration.

Subject to the conditions set forth in this order, Defendant C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") waive service of process in cases filed in this Court using the Short Form Complaint or Amended Short Form Complaint and in which they are named as defendants and one or more IVC filter products either manufactured or distributed by Bard is alleged to be at issue. For such cases, Plaintiffs shall send a Short Form Complaint or Amended Short Form Complaint and a request for waiver of service pursuant to the provisions of Fed. R. Civ. P. 4 to Richard B. North, Jr. by email to richard.north@nelsonmullins.com; maria.turner@nelsonmullins.com; and matthew.lerner@nelsonmullins.com. Counsel for Bard shall return the signed waiver requests to the Court within the time permitted by Fed. R. Civ. P. 4. Plaintiffs submitting a request for waiver shall not seek to hold Bard in default for failure to timely answer or otherwise respond to a complaint in which service has been accomplished pursuant to the

terms of this order without first giving Bard written notice of the alleged default and ten business days in which to cure any alleged default.

Prior to a Plaintiff's attorney filing a Short Form Complaint or Amended Short Form Complaint in this Court, that attorney must register for or already have a District of Arizona CM/ECF log-in name and password. If the Plaintiff's attorney does not already have a District of Arizona CM/ECF log-in name and password, that attorney **must** file the Short Form Complaint or Amended Short Form Complaint in paper form with the Clerk of Court and simultaneously file an Application of Attorney for Admission to Practice Pro Hac Vice pursuant to LRCiv 83.1(b)(2) (including all necessary attachments and filing fee).

Additionally, with respect to cases which are originally filed in courts other than this Court which are then subsequently transferred to MDL 2641 pursuant to 28 U.S.C. § 1407, Defendants may file an Answer and General Denial with Respect to Cases Subsequently Transferred to MDL 2641, incorporating the defenses and denials set forth in the Master Responsive Pleading and generally denying the plantiffs' allegations. This short-form answer shall serve as the responsive pleading. Defendants shall have 60 days from the date any such case is opened in this Court to file any motion for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) and 12(h)(2), and the plaintiff(s) shall have 30 days to respond.

Dated this 16th day of March, 2016.

David G. Campbell
United States District Judge

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| IN RE BARD IVC FILTERS PRODUCTS LIABILITY LITIGATION | No. MD-15-02641-PHX-DGC |
|---|---|
| | **AMENDED MASTER SHORT FORM COMPLAINT FOR DAMAGES FOR INDIVIDUAL CLAIMS AND DEMAND FOR JURY TRIAL** |

Plaintiff(s) named below, for their Complaint against Defendants named below, incorporate the Master Complaint for Damages in MDL 2641 by reference (Doc. 364). Plaintiff(s) further show the Court as follows:

1.    Plaintiff/Deceased Party:

_____

2.    Spousal Plaintiff/Deceased Party's spouse or other party making loss of consortium claim:

_____

3.    Other Plaintiff and capacity (i.e., administrator, executor, guardian, conservator):

_____

4.　　Plaintiff's/Deceased Party's state(s) [if more than one Plaintiff] of residence at the time of implant:

_____

5.　　Plaintiff's/Deceased Party's state(s) [if more than one Plaintiff] of residence at the time of injury:

_____

6.　　Plaintiff's current state(s) [if more than one Plaintiff] of residence:

_____

7.　　District Court and Division in which venue would be proper absent direct filing:

_____

8.　　Defendants (check Defendants against whom Complaint is made):

☐　　C.R. Bard Inc.

☐　　Bard Peripheral Vascular, Inc.

9.　　Basis of Jurisdiction:

☐　　Diversity of Citizenship

☐　　Other: _____

a.　　Other allegations of jurisdiction and venue not expressed in Master Complaint:

_____

_____

_____

10. Defendants' Inferior Vena Cava Filter(s) about which Plaintiff(s) is making a claim (Check applicable Inferior Vena Cava Filter(s)):

 ☐  Recovery® Vena Cava Filter

 ☐  G2® Vena Cava Filter

 ☐  G2® Express (G2®X) Vena Cava Filter

 ☐  Eclipse® Vena Cava Filter

 ☐  Meridian® Vena Cava Filter

 ☐  Denali® Vena Cava Filter

 ☐  Other: _____

11. Date of Implantation as to each product:

_____

_____

12. Counts in the Master Complaint brought by Plaintiff(s):

 ☐  Count I:  Strict Products Liability – Manufacturing Defect

 ☐  Count II:  Strict Products Liability – Information Defect (Failure to Warn)

 ☐  Count III:  Strict Products Liability – Design Defect

 ☐  Count IV:  Negligence - Design

 ☐  Count V:  Negligence - Manufacture

 ☐  Count VI:  Negligence – Failure to Recall/Retrofit

 ☐  Count VII:  Negligence – Failure to Warn

 ☐  Count VIII: Negligent Misrepresentation

-3-

□      Count IX:     Negligence *Per Se*

□      Count X:      Breach of Express Warranty

□      Count XI:     Breach of Implied Warranty

□      Count XII:     Fraudulent Misrepresentation

□      Count XIII:    Fraudulent Concealment

□      Count XIV:    Violations of Applicable _____ (insert state) Law Prohibiting Consumer Fraud and Unfair and Deceptive Trade Practices

□      Count XV:     Loss of Consortium

□      Count XVI:    Wrongful Death

□      Count XVII:   Survival

□      Punitive Damages

□      Other(s):      _____ (please state the facts supporting this Count in the space immediately below)

_____

_____

_____

_____

_____

13.    Jury Trial demanded for all issues so triable?

□      Yes

□      No

RESPECTFULLY SUBMITTED this ____ day of March, 2016.

**[SIGNATURE BLOCK]**

By:___*/s/*_____
[Attorney name/address]

I hereby certify that on this ____ day of March, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*/s/*_____

5220248v1/26997-0001

1
2
3
4
5
6 **IN THE UNITED STATES DISTRICT COURT**

7 **FOR THE DISTRICT OF ARIZONA**

8 | **IN RE: BARD IVC FILTERS** | MDL No. 15-02641 PHX DGC
  | **PRODUCTS LIABILITY LITIGATION** |

9 | | **CASE MANAGEMENT ORDER**
  | | **NO. 9 __**

10 | |

11 | | **(ELECTRONICALLY STORED**
   | | **INFORMATION AND DOCUMENT**
   | | **FORM AND FORMAT**

12 | | **PRODUCTION PROTOCOL)**

13

14     This Order shall govern the production of electronically stored information ("ESI")

15 and paper ("hardcopy") documents. Subject to the protective order entered in *In re Bard*

16 *IVC Filters Products Liability Litigation* (this "Action"), this Order applies to all future

17 document productions in this Action, including all cases transferred to this Court in the

18 original Transfer Order from the Judicial Panel on Multidistrict Litigation, those

19 subsequently transferred as tag-along actions, and all cases directly filed in or removed to

20 this MDL.

21 **I.**    <u>**General Provisions**</u>

22 **A.**   <u>**Scope**</u>

23     The procedures and protocols outlined herein govern the production of ESI and

24 paper documents. For any other materials, the Parties shall meet and confer regarding the

25 form and format of production for specific items or categories of items. Nothing in this

26 protocol shall limit a party's right to seek or object to discovery as set out in applicable

27 rules or to object to the authenticity or admissibility of any hardcopy document or ESI

28 produced in accordance with this Order.

Case 1:20-cv-00297-KG-KK Document 1258 Filed 04/04/20 Page 117 of 335

**B.**    <u>**Prior Productions**</u>

For purposes of this Case Management Order, the term "prior productions" means all non-case specific ESI and hardcopy documents previously produced by Defendants to Plaintiffs' Co-Lead Counsel that bear the following Bates prefixes:

- BPV-17
- BPVE
- BPVEFILTER
- BPV-CIV-COMPLAINT
- BPV-COMP
- BPV-COMP-ET
- BPV-COMP-TW
- BPV-DEP
- BPV-EXPERT DISCL
- BPV-DISCOV
- BPV-EXPERT
- BPV-TRIAL-TRANS
- BPV-TRIAL-EXHIBIT
- YH
- YORK-SUBPOENA
- BPV-INSURANCE-POLICIES
- KAUFMAN-SUBPOENA
- FDA_PRODUCTION
- BPV-HEARING-TRANS
- BPV-FULLER

**C.**    <u>**Designated ESI Liaison**</u>

Each side shall designate one or more individuals as Designated ESI Liaison(s) for purposes of meeting and conferring with the other parties and of attending Court hearings on the subject of relevant ESI. The Designated ESI Liaison shall be reasonably prepared

to speak about and to explain the party's relevant electronic systems and capabilities and the technical aspects of the manner in which the party has responded to e-discovery, including (as appropriate) relevant ESI retrieval technology and search methodology.

**D.**    **Inadvertent Production**

The inadvertent production of any material constituting or containing attorney-client privileged information or work-product, or constituting or containing information protected by applicable privacy laws or regulations, shall be governed by provisions contained in the Protective Order entered in this action.

**E.**    **Non-Discoverable ESI and Non-Readily Accessible Data Resources**

1.    The following categories of ESI are presumed to be inaccessible and not discoverable:

      a.    Deleted, "slack," fragmented, or unallocated data on hard drives;

      b.    Random access memory (RAM) or other ephemeral data;

      c.    On-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies.

2.    The parties will meet and confer in good faith regarding the collection and/or production of data from these sources.

**F.**    **Meet and Confer for Disputes**

Prior to bringing any dispute regarding ESI to the Court, the parties must meet and confer in good faith in an attempt to resolve the dispute.

## II.    Electronically Stored Information

**A.**    **Production in Reasonably Usable Form**

1.    <u>Reasonably Usable Form</u>:  The parties shall produce ESI in a reasonably usable form.  Except as stated in Paragraphs B & C below or as agreed hereafter by the parties, such reasonably usable form shall presumptively be the single-page tagged image file format ("TIFF") with extracted or OCR text and associated metadata set out in Attachment A, which is incorporated in full as part of this Order.  A Receiving Party may request production of specifically identified ESI, including ESI produced originally in

TIFF form (identified by beginning and ending Bates numbers), in native form.  If the Producing Party objects to production in native form, the parties shall meet and confer regarding the form of production for the specifically identified ESI.  For any dispute, the Receiving Party shall bear the burden to demonstrate good cause for the production in native form and the Producing Party shall bear the burden of proving any undue hardship.

2.  <u>Redactions</u>:  The Producing Party may redact from any TIFF image, metadata field, or native file material that is protected from disclosure by an applicable privilege or immunity, HIPAA regulations, FDA regulations, or other applicable privacy law or regulation, that contains commercially sensitive, purely personal, or proprietary information not at issue in this Action, or that the Protective Order entered in this Action allows to be redacted.  Each redaction shall be indicated clearly.  Documents that have been redacted on the basis of attorney-client privilege, the work-product doctrine, or any other applicable legal privilege or immunity shall be identified on a party's "privilege log," with a description of the reason(s) for redaction.  For all future productions, documents that are redacted on bases other than the foregoing privileges shall be identified on a separate "redaction log," with a description of the reason(s) for redaction. For all prior productions, if the basis for the redaction is not obvious from the face of the document, Plaintiffs may request that Defendants identify the basis for the redaction of a particular document.  Such request must by identify the document by its beginning and ending Bates numbers.  For each such request, Defendants shall provide clarification within a reasonable time after receiving the request.

3.  <u>Color Documents</u>:  Each party may make requests, for good cause, for production of specifically identified documents (i.e., identified by beginning and ending Bates numbers) in color.

**B.**   **Electronic Spreadsheets, Presentations, and Multimedia Files**

Electronic spreadsheets (e.g., Excel), electronic presentations (e.g., PowerPoint), and audio/video multimedia files that have been identified as responsive shall be produced in native form, unless they are authorized to be redacted in accordance with Paragraph A.2

above.  After such redactions, the Producing Party either shall produce the redacted file in the reasonably usable form set out in Attachment A or shall produce the redacted copy in native format.

**C.**     **Additional Procedures for Native Form Files**

Any party seeking to use, in any proceeding in this Action, files produced in native form shall do so subject to the following: The original production number and confidentiality designation shall be stamped on each page of any TIFF image or hardcopy document representing the original native-format file.  Use of a file in native form or use of a TIFF image or hardcopy document representing the original native-form file shall constitute a representation that the file being used is an accurate depiction of the original native-form file.

**D.**     **Email Threading**

1.     Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the party's electronic files.  A most inclusive email thread is one that contains all of the prior or lesser-included emails, including attachments, for that branch of the email thread.  Each party may produce (or list on any required privilege log) only the most inclusive email threads as long as the most inclusive email thread includes all non-produced emails that are part of the same string.

2.     Following production of the most-inclusive email threads, a Receiving Party may request the metadata associated with individual prior or lesser-included emails within the identified most-inclusive email threads.  The Producing Party shall cooperate reasonably in responding to any such requests.

**E.**     **Avoidance of Duplicate Production**

"Duplicate ESI" means files that are exact duplicates using an industry-accepted file hash algorithm.  The Producing Party need produce only a single copy of responsive Duplicate ESI.  A Producing Party shall take reasonable steps to de-duplicate ESI globally (i.e., both within a particular custodian's files and across all custodians).  Entire document

5

families may constitute Duplicate ESI. De-duplication shall not break apart families. When the same Duplicate ESI exists in the files of multiple custodians, the Producing Party shall include with the load file for the ESI the names of all Custodians associated with the duplicate ESI.

### III.    Documents That Exist Only in Hardcopy (Paper) Form

A party may produce documents that exist only in hardcopy form either (a) in their original hardcopy form or (b) scanned and produced in TIFF form as set out in Attachment A.  If the Producing Party elects to scan and to produce hardcopy documents, the scanning must be done such that the resulting image includes all information on the original hardcopy document.  The production of original hardcopy documents in TIFF form does not otherwise require that the scanned images be treated as ESI.

Dated this 31st day of March, 2016.


_____
David G. Campbell
United States District Judge

**Attachment A:**

The following protocols apply to any ESI or hardcopy documents produced in this litigation:

(a)  Image Files:  Files produced in *.tif image form will be single page black and white *.tif files at 300 DPI, Group IV compression.  To the extent possible, original orientation will be maintained (i.e., portrait-to-portrait and landscape-to-landscape).  Each *.tif file will be assigned a unique name matching the production number of the corresponding page.  Production ("Bates") numbers shall be endorsed on the lower right corner of all images.  This number shall be a unique, consistently formatted identifier that will:

      i.     be consistent across the production;

      ii.    contain no special characters; and

      iii.   be numerically sequential within a given file.

Bates numbers should include an alpha prefix and an 8 digit number (e.g., ABC-00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. Notwithstanding the foregoing, continued use of any of the following Bates prefixes shall be permitted under this Protocol:

- BPV-17
- BPVE
- BPVEFILTER
- BPV-CIV-COMPLAINT
- BPV-COMP
- BPV-COMP-ET
- BPV-COMP-TW
- BPV-DEP
- BPV-EXPERT DISCL
- BPV-DISCOV
- BPV-EXPERT

7

- BPV-TRIAL-TRANS
- BPV-TRIAL-EXHIBIT
- YH
- YORK-SUBPOENA
- BPV-INSURANCE-POLICIES
- KAUFMAN-SUBPOENA
- FDA_PRODUCTION
- BPV-HEARING-TRANS
- BPV-FULLER

Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file

(b)     File Text:  Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, full extracted text will be provided in the form of a single *.txt file for each file (i.e., not one *.txt file per *.tif image).  Where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'd and file-level OCR text will be provided in lieu of extracted text.  Searchable text will be produced as file-level multi-page ASCII text files with the text file named to match the beginning production number of the file.  The full path of the text file must be provided in the *.dat data load file.

(c)     Word Processing Files:  Word processing files, including without limitation Microsoft Word files (*.doc and *.docx), will be produced in *.tif image form, as described in subsection (a).  If a word processing file includes any tracked changes or comments in its native form, the *.tif image will include any tracked changes and comments.  If the Receiving Party requests the native form production of any word processing file that includes tracked changes or comments in its native form (identified by beginning and ending Bates numbers), the Producing Party shall produce the particular file in native form unless the Producing Party demonstrates that the request is

8

unreasonable or unduly burdensome.  Each party may make requests, for good cause, for production of other specifically identified Word Processing Files in native format in accordance with Section II.A.1 of this Order.

(d)  <u>Presentation Files</u>:  Presentation files, including without limitation Microsoft PowerPoint files (*.ppt and *.pptx), will be produced in native form.  To the extent that such files are produced as *.tif images, in accordance with subsection (a), for purposes of redaction and such files contain comments, hidden slides, speakers' notes, and similar data, the presentation files shall be produced in the following formats: (i) first, as *.tif images of "clean" final versions of each slide (after all animations, etc.) in the presentation, and (ii) second, as *.tif images that display all comments, hidden slides, speakers' notes, and similar data in such files.  The second version shall be produced and bates labeled immediately following the "clean" version of the file.

(e)  <u>Spreadsheet or Worksheet Files</u>:  Spreadsheet files, including without limitation Microsoft Excel files (*.xls or *.xlsx), will be produced in native form.  To the extent that such files are produced as *.tif images, in accordance with subsection (a), for purposes of redaction and such files contain hidden rows, columns, and worksheets, the spreadsheet files shall be produced in the following formats:  (i) first, as *.tif images of "clean" versions of the file without hidden rows, columns, and worksheets; and (ii) second, as *.tif images that display hidden rows, columns, and worksheets, if any, in such files.  The second version shall be produced and bates labeled immediately following the "clean" version of the file.

(f)  <u>Parent-Child Relationships</u>:  Parent-child relationships (e.g., the associations between emails and their attachments) shall be preserved.  Email and other ESI attachments will be produced as independent files immediately following the parent email or ESI record.  Parent-child relationships will be identified in the data load file pursuant to Paragraph (n) below.

(g)  <u>Dynamic Fields</u>:  Where documents have an automatically updated date and time, file names, files paths, or similar information that, when processed, would be

9

inaccurate for how the document was used in the ordinary course of business, the Producing Party shall use best efforts to produce the document with placeholders for those fields such as: "Auto Date," "Auto File Name," "Auto File Path," or similar words that describe the automatic field.

(h) <u>English Language</u>: If no English version of a file is available, the Producing Party shall not have an obligation to produce an English translation of the data.

(i) <u>Embedded Objects</u>: Some Microsoft Office and .RTF files may contain embedded files, including but not limited to Microsoft Excel, Word, PowerPoint, Project, Outlook, Access, and PDF. Subject to claims of privilege and immunity, as applicable, the Producing Party shall use reasonable efforts to extract as separate files those identified file types, where appropriate, and those shall be produced as attachments to the file in which they were embedded.

(j) <u>Compressed Files</u>: Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files. Files included in compressed file type that are attached to another file shall be individually identified as related to the "parent" document in the data load file pursuant to Paragraph (n) below.

(k) <u>Encrypted Files</u>: The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable ESI that exists in encrypted format (e.g., because password-protected) and that can be reasonably unencrypted.

(l) <u>Non-Viewable Files</u>: During document review, certain documents are opened that are not viewable in the default HTML rendered format. In such instances, the Producing Party shall attempt to create a TIFF image with a viewable image. If unsuccessful, the Producing Party shall attempt to open the document with a native viewer. If the file cannot be viewed via any of these methods, the Producing Party shall attempt to procure a replacement of the file from the original source location. If the replacement yields the same issues, the Producing Party shall (i) identify the file in a log

of "corrupt files" to be produced to the Receiving Party and (ii) maintain the native file for

request for production or review by the Receiving Party in accordance with this Order.

    (m)   Scanned Hardcopy Documents:

          i.    In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., hard copy documents should be logically unitized).

          ii.    If a Producing Party is requested, and agrees, to provide OCR text for scanned images of hard copy documents, OCR should be performed on a document level and be provided in document-level *.txt files named to match the production number of the first page of the document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file. Except where hard copy documents contain text that has been redacted under assertion of privilege or other protection from disclosure, a Producing Party may not withhold from production any OCR text that the party has in its possession, custody or control for scanned images of hard copy documents that the party is producing. Where hard copy documents contain text that has been redacted under assertion of privilege or other protection from disclosure, and the Producing Party has in its possession OCR text for said documents, the redacted *tif image will be OCR'd and file-level OCR text will be provided in lieu of the original OCR text.

          iii.    In the case of an organized compilation of separate hardcopy documents -- for example, a binder containing several separate documents behind numbered tabs -- the document behind each tab should be scanned separately, but the relationship among the

documents in the binder should be reflected in proper coding of the family fields set out below.

(n)     Production Numbers:  The Producing Party shall take reasonable steps to ensure that attachments to documents or electronic files are assigned production numbers that directly follow the production numbers on the documents or files to which they were attached.  If a production number or set of production numbers is skipped, the skipped number or set of numbers shall be noted. In addition, wherever possible, each *.tif image will have its assigned production number electronically "burned" onto the image.

(o)     Data and Image Load Files for ESI:

i.     Load Files Required:  Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format produced in ASCII and an image load file in Opticon (*.opt) format.

ii.     Load File Formats:

a)     Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

b)     Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

c)     Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

iii.     Metadata Fields to Be Included in Data Load File:  For all ESI produced, the following metadata fields for each file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-

product immunity or otherwise prohibited from disclosure by law or regulation, shall be provided in the data load file, except to the extent that a file has been produced with redactions:

a) FileName /FILENAME

b) DocEmailFolder/LOCATIONS

c) CreatedDateTime

d) DocCreatedDateTime

e) DateRecieved/DATERCVD and TIMERCVD (email only)

f) StartBates/BEGDOC

g) EndBates/ENDDOC

h) StartAttach/BEGATTACH

i) EndAttach/ENDATTACH

j) PageCount/PGCOUNT

k) FileExt/DOCEXT

l) ModifiedDate/DATELASTMOD and TIMELASTMOD

m) DateSent/DATESENT (email only)

n) To/TO (email only)

o) BCC (email only)

p) CC (email only)

q) AttachName (email only)

r) Hash or MD5HASH

s) Custodian/CUSTODIAN

t) DocLink/NATIVEFILE

u) TextLink/TEXTFILE

v) AuthorFrom/DOCAUTHOR

w) TitleEmailSubject/EMAIL SUBJECT

x) RECORDTYPE

y) DOCTYPE

z)     DOCDATE

aa)    PARENTDATE

bb)    DATELASTPRINT and TIMELASTPRINT

cc)    ORGANIZATIONS

dd)    COMMENTS

ee)    LASTAUTHOR

ff)    REVISION.

(p)   <u>Data and Image Load Files for Hardcopy Productions</u>:

    i.   <u>Load Files Required</u>:  Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) or Ipro (*.lfp) format.

    ii.   <u>Load File Formats</u>:

       a)   Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

       b)   Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be used as multi-entry separator.

       c)   Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

    iii.   <u>Fields to Be Included in Data Load File</u>:  For all hardcopy documents produced in *.tif format, the following fields, if available, shall be provided in the data load file:

       a)   StartBates

       b)   EndBates

14

c)   StartAttach

d)   EndAttach

e)   Custodian

(q)   <u>Files Produced in Native Format</u>:  Any electronic file produced in native file format shall be given a file name consisting of a unique Bates number and, as applicable, a confidentiality designation; for example, "ABC00000002_Confidential."  For each native file produced, the production will include a *.tif image slipsheet indicating the production number of the native file and the confidentiality designation, and stating "File Provided Natively." To the extent that it is available, the original file text shall be provided in a file-level multi-page UTF-8 text file with a text path provided in the *.dat file; otherwise the text contained on the slipsheet shall be provided in the *.txt file with the text path provided in the *.dat file.

(r)   <u>Production of Media</u>:  Unless otherwise agreed, documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive.  Volumes should be numbered consecutively (ABC001, ABC002, etc.).  Deliverable media should be labeled with the name of this action, the identity of the Producing Party, and the following information: Volume name, production range(s), and date of delivery.

(s)   <u>Encryption of Production Media</u>:  To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the Producing Party.  In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

5184438v3/26997-0001

15

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

IN RE: Bard IVC Filters Products Liability Litigation,

No. MDL 15-02641-PHX DGC

**CASE MANAGEMENT ORDER NO. 10**

The Court held a third case management conference with the parties on March 31, 2016. The conference was scheduled to address ongoing matters and a number of issues identified in Case Management Order No. 8 ("CMO 8") (Doc. 519).

**I.    Second Phase Discovery.**

A.    Fact Discovery.

Fact discovery is under way. The parties reported that they have scheduled seven depositions and are in the process of scheduling more. The parties also continue to discuss a number of discovery issues that will be addressed later in this Order. The parties are encouraged to continue exchanging relevant information on discovery topics on which they agree, even if other issues need to be presented to the Court.

The Court asked the parties whether special deposition scheduling is needed, such as blocking out specific weeks for depositions and double-tracking or triple-tracking depositions. Counsel stated they do not believe such deposition scheduling is needed at this time. The parties should provide an update on this issue in the status report to be filed before the next case management conference.

B.   <u>Mature Cases</u>.

Case Management Order No. 4 (as amended) identifies 13 mature cases that are not governed by the Master Complaint and Master Responsive Pleading and that are not generally subject to ongoing discovery. After further discussion, the parties have agreed that the *Conn*, *Milton*, and *Mintz* cases identified in Case Management Order No. 4 (Doc. 1108) should no longer be treated as mature cases. Rather, they will be treated as all other cases in this MDL. The remaining 10 cases identified in CMO 4 will continue to be treated as mature cases under that CMO. The parties should address these cases in the joint status report they file before the next case management conference, and particularly when these cases will be ready for remand.

## II.   Bellwether Selection Process.

Consistent with the direction in CMO 8, the parties have addressed an appropriate bellwether selection process. They have submitted a stipulation related to the process (Doc. 923), and a stipulation regarding fact sheets to be exchanged during the process (Doc. 1153).

The Court discussed the proposed procedures and fact sheets with the parties, making some suggestions for modifications. The parties will make modifications to their stipulations and, by **April 15, 2016**, provide the Court with a stipulated case management order to govern the bellwether selection process and fact sheets.

As part of this work, the parties will provide the Court with a stipulated order regarding the collection of records. This stipulated order will be provided by **April 15, 2016**.

While discussing the bellwether process, the Court discussed the issue of *Lexecon* waivers. The parties will confer to see if they can agree on a procedure for dealing with *Lexecon* waivers. Plaintiffs' counsel are of the view that such issues should be addressed up front so as not to interfere with the selection of cases after much work has been invested in the bellwether pool. Defense counsel does not disagree, but expressed concern about choosing the Bellwether pool solely from cases in which Plaintiffs have

agreed to waive *Lexecon*. The Court described for the parties the approaches taken in a number of other MDL cases. The parties will confer to see if they can reach agreement. The Court will also do inquire further into cross-designations for trials in transferor districts under 28 U.S.C. § 292(b) and (d).

**III.    ESI and Previously Searched Custodians.**

The parties have filed a joint motion to extend the deadline in CMO 8 for presenting a matrix to the Court outlining ESI disagreements. Doc. 1151. The motion notes that the parties have been working on this issue diligently, and requests a new deadline for submitting disagreements to the Court by **May 16, 2016**. The Court will grant the joint motion, but advised the parties that it will not be inclined to grant additional extensions. ESI issues need to be resolved soon. ESI production and review tends to take a significant amount of time, and if ESI issues are not resolved soon, there may be too little time remaining in the discovery schedule for a thorough production and review of ESI. The parties will also continue to address the issue of new custodians (CMO 8, § IV) and submit any disagreements to the Court, in a matrix, by **May 16, 2016**.

**IV.    FDA Inspection and Warning Letter.**

The Court has reviewed the memoranda and other materials provided by the parties with respect to discovery related to the FDA warning letter. *See* Docs. 693, 697, 850, 989, 1152. The Court provided initial feedback on the issues raised. The Court views discovery related to under-reporting or non-reporting of problems with retrievable filters to be clearly relevant to this case. Actual failure rates will be relevant to Plaintiffs' negligence and product defect claims. Evidence regarding representations made by Defendants concerning failure rates will be relevant to Plaintiffs' claims for fraud and misrepresentation. The Court does not view discovery on these issues to be disproportionate in light of the factors set forth in Rule 26(b)(1).

At the same time, the Court sees little relevancy in the Recovery Cone issues. The Recovery Cone has always been available for retrieval of Defendants' filters, the FDA has now approved use of the Recovery Cone, and no claim in this case is based on

alleged defects in the Recovery Cone. Defendants have offered to produce Ms. Edwards for a deposition on the Recovery Cone issue, and the Court agrees, but the Court believes that other discovery is not warranted.

In addition to this guidance, the Court noted that the three or four employees who report to Chad Modra should be deposed. They appear to have relevant information.

With this feedback in hand, the parties are to discuss the specific discovery requests of Plaintiffs with respect to the under-reporting issue. If they are unable to reach agreement on appropriate discovery, the parties should provide the Court with a matrix setting forth their specific areas of disagreement by **April 15, 2016**.

**V.      Discovery Regarding Simon Nitenol Filter ("SNF").**

The Court has reviewed the matrix provided by the parties on this issue. Doc. 1161. The Court provided guidance during the case management conference.

The Court does not believe that discovery related to the design or testing of the SNF is relevant to this case. Plaintiffs do not contend that the SNF is defective. To the contrary, they intend to argue that the SNF was a safe and effective product, that retrievable filters were less safe, and that Defendants made misrepresentations to the FDA and the public when they asserted that the retrievable filters were substantially equivalent to the SNF or as safe as the SNF. In light of these positions, the actual design and testing of the SNF will not be at issue in this case.

The Court also concludes, however, that sales and marketing materials related to the SNF, documents comparing filter performance and failure rates to the SNF, and internal communications on these subjects are relevant. At the same time, it would be unduly burdensome to require Defendants to produce every document related to sales and marketing of SNF over its 20-plus year life, or every communication related to that subject. The Court instructed the parties to confer and attempt to reach agreement on appropriate discovery with respect to these subjects. If the parties are unable to agree, they should include this subject in the matrix to be submitted to the Court on **April 15, 2016**. Plaintiffs should be precise in the discovery they seek so that the matrix

- 4 -

will be as focused as possible.

The parties have reached agreement on regulatory communications relating to the SNF.  Defendants will be providing discovery on this issue.

**VI.    Depositions of Previously Deposed Witnesses.**

The parties are in the process of negotiating a deposition protocol for the case. This protocol presumably will include agreement on depositions of previously deposed witnesses and witnesses related to the Kay Fuller issue.  The parties will provide a stipulated deposition protocol to the Court by **April 15, 2016**.

**VII.   Privilege Log Issues.**

The Court appreciates the parties' efforts to resolve privilege log issues.  The Court has reviewed the status reports provided by the parties (s*ee* Docs. 705, 984), as well as Plaintiffs' motion to compel (Doc. 1214).

The parties have been unable to reach agreement on 133 documents identified during their first sampling effort.  Plaintiffs have filed a motion to compel with respect to these documents (Doc. 1214) that identifies several specific legal issues and attaches a spreadsheet identifying the documents and setting forth a summary of Plaintiffs' position with respect to each document.  Rather than simply completing the briefing on this issue, the Court directed the parties to take the following steps.

By the close of business on **April 4, 2016**, Plaintiffs shall identify for Defendants the specific legal issues addressed in Plaintiffs' motion to compel.[1]  In addition, with respect to each of these issues, Plaintiffs shall identify three documents from among the 133 documents still in dispute.

By **April 11, 2016**, Defendants shall file a memorandum with the Court addressing the specific legal categories identified by Plaintiff.  Defendants shall set forth their legal arguments on each of these issues.  On the same day, Defendants shall provide Plaintiffs with the identification of two additional documents for each of the legal

---

[1] The Court sees discrete issues in the following sections of Plaintiffs' motion: IV.B.1, IV.B.2, IV.B.3.a, IV.B.3.b, IV.B.3.c, IV.B.3.d, IV.B.3.e, and IV.C, but Plaintiffs are free to narrow the list.

categories, chosen from the 133 documents in dispute, as well as a draft matrix setting forth Defendants' arguments (in summary form – the memoranda need not be repeated) with respect to the five documents chosen by the parties for each legal category.

By **April 22, 2016**, Plaintiffs shall file a reply memorandum which addresses the specific legal issues identified for Defendants on April 4, 2016. Plaintiffs shall attach to the memorandum the matrix which sets forth, in summary form, the parties' respective arguments with respect to the five documents chosen for each of the legal issues addressed in the briefing. Plaintiffs' counsel shall provide defense counsel with a draft of the matrix two days before this filing so that defense counsel can make any needed adjustments to their section of the matrix. On **April 22, 2016**, Defendants shall provide the Court with *in camera* copies of the documents listed in the matrix.

The Court will enter an order on the legal issues and the five documents chosen for each issue. The intent will be to provide guidance to the parties concerning the Court's view of privilege and work product issues, hopefully to help the parties in resolving additional disagreements.

The Court and parties also discussed part B of the parties' joint report. Doc. 705. The Court directed the parties to engage in the process described in part B, but only with respect to Plaintiffs' seven proposed categories. The Court sees no purpose in addressing Bard's proposed categories. The Court agrees that the parties should provide a joint report to the Court by **May 27, 2016**, describing their progress and the number of documents that remain in dispute. If the number is large, the Court most likely will appoint a special master to work with the parties in resolving the privilege log issues.

**VIII. Equitable Tolling.**

Defendants have filed a brief on this issue. Doc. 1146. The parties will brief this issue under the time limits set forth in the relevant rules. The Court will rule on it in due course.

**IX.    Next Case Management Conference.**

The next Case Management Conference will be held on **June 22, 2016 at**

**10:00 a.m.**   The parties shall provide the Court with a joint status report on issues mentioned in this order and any issues they wish to address at the conference by **June 15, 2016**.  If issues arise in the meantime that require prompt decision, the parties should place a conference call to the Court.

Dated this 1st day of April, 2016.

_____
David G. Campbell
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-DGC<br><br>**SECOND AMENDED CASE MANAGEMENT ORDER NO. 4**<br><br>**(Master Complaint, Master Responsive Pleading, Use of Short Form Complaint, Waiver of Service for Bard Defendants, and Answer and General Denial in Cases Subsequently Transferred to MDL 2641)** |

The parties previously submitted a Master Long Form Complaint and Jury Demand (previously docketed as Doc. 303-1) and a Master Responsive Pleading (previously docketed as Doc. 303-3). The Court has reviewed these proposed pleadings, finds them sufficient, and directs the Clerk to file them as separate documents in the Court's docket.[1] The parties have also submitted a proposed Second Amended Short Form Complaint, a copy of which is attached to this order. The Court also finds this proposed pleading to be sufficient.

**IT IS ORDERED:**

All allegations pled in the Master Complaint and all responses pled in the Master Responsive Pleading are deemed pled in any previously filed Complaint and Responsive Pleading in this MDL proceeding, except as expressly noted below. They are also deemed pled in any Short Form Complaint (attached to CMO No. 4, Doc. 363) or Second

---

[1] The reference to "Federal Rule of Evidence 8" on the first page of the Master Complaint shall be deemed to be a reference to Federal Rule of Civil Procedure 8.

Amended Short Form Complaint (attached to this Order) and Entry of Appearance filed after the entry of this order, except that the Master Complaint applies only against the Defendant or Defendants identified in such future-filed Short Form or Second Amended Short Form Complaints.

The following cases will not be governed by the Master Complaint and Master Responsive Pleading, but will continue to be governed by the complaints (including any amended complaints) and answers filed in the various transferor courts prior to transfer:

| Plaintiff | Original Jurisdiction |
|---|---|
| 1.  Cason, Pamela | GA – N.D. Ga. 1:12-cv-1288 |
| 2.  Coker, Jennifer | GA – N.D. Ga. 1:13-cv-515 |
| 3.  Ebert, Melissa | PA – E.D. Pa. 5:12-cv-1253 |
| 4.  Fox, Susan | TX – N.D. Tex. 3:14-cv-133 |
| 5.  Henley, Angela | WI – E.D. Wis. 2:14-cv-59 |
| 6.  Keen, Harry | PA – E.D. Pa. 5:13-cv-5361 |
| 7.  Ocasio, Denise | FL – M.D. Fla. 8:13-cv-1962 |
| 8.  Rivera (McClarty), Vicki | MI – E.D. Mich. 4:14-cv-13627 |
| 9.  Smith, Erin | TX – E.D. Tex. 1:13-cv-633 |
| 10. Tillman, Lessie | FL – M.D. Fla. 3:13-cv-222 |

On or after **December 28, 2015,** any plaintiff whose case would be subject to

transfer to MDL 2641 may file his or her case directly in this Court by using the Short Form Complaint (Doc. 363). After **April 20, 2016**, Plaintiffs may use the use the Second Amended Short Form Complaint attached to this Order. If such a case is filed in this Court without the use of the Second Amended Short Form Complaint, Plaintiffs' Co-Lead Counsel shall promptly advise the filing party to file an amended complaint using the Second Amended Short Form Complaint. If the filing party fails to do so, Plaintiffs' Co-Lead Counsel shall promptly notify the Court.

Defendants are not required to file answers to Short Form, Amended Short Form, or Second Amended Short Form Complaints. An Entry of Appearance shall constitute a denial of all allegations in the Short Form, Amended Short Form, or Second Amended Short Form Complaints except as herein provided, and an assertion of all defenses included in the Master Responsive Pleading. By filing an Entry of Appearance in response to a Short Form, Amended Short Form, or Second Amended Short Form Complaints, in lieu of an answer, Defendants do not waive any defenses, including jurisdictional and service defenses.

Civil actions in this MDL were transferred to this Court by the Judicial Panel on Multidistrict Litigation for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. Upon completion of the pretrial proceedings related to a civil action as determined by this Court, the case shall be transferred pursuant to 28 U.S.C. § 1404(a) or § 1406(a) to the District Court identified in the Short Form, Amended Short Form, or Second Amended Short Form Complaints, provided the parties choose not to waive *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). The fact that a case was filed directly in this District and MDL proceeding shall not constitute a determination by this Court that jurisdiction or venue are proper in this District, and shall not result in this Court being deemed the "transferor court" for purposes of this MDL. In addition, filing a Short Form, Amended Short Form, or Second Amended Short Form Complaint in this District shall have no impact on the conflict of law rules to be applied to

the case. Instead, the law of the jurisdiction where the case is ultimately transferred will govern any conflict of law. Prior to transfer, Defendants may object to the district specified in the Short Form, Amended Short Form, or Second Amended Short Form Complaint, based on venue or jurisdiction (including a lack of personal jurisdiction based on *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014)), and propose an alternative jurisdiction for the Court's consideration.

Subject to the conditions set forth in this order, Defendant C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard") waive service of process in cases filed in this Court using the Short Form, Amended Short Form, or Second Amended Short Form Complaint and in which they are named as defendants and one or more IVC filter products either manufactured or distributed by Bard is alleged to be at issue. For such cases, Plaintiffs shall send a Short Form, Amended Short Form, or Second Amended Short Form Complaint and a request for waiver of service pursuant to the provisions of Fed. R. Civ. P. 4 to Richard B. North, Jr. by email to richard.north@nelsonmullins.com; maria.turner@nelsonmullins.com; and matthew.lerner@nelsonmullins.com. Counsel for Bard shall return the signed waiver requests to the Court within the time permitted by Fed. R. Civ. P. 4. Plaintiffs submitting a request for waiver shall not seek to hold Bard in default for failure to timely answer or otherwise respond to a complaint in which service has been accomplished pursuant to the terms of this order without first giving Bard written notice of the alleged default and ten business days in which to cure any alleged default.

Prior to a Plaintiff's attorney filing a Short Form, Amended Short Form, or Second Amended Short Form Complaint in this Court, that attorney must register for or already have a District of Arizona CM/ECF log-in name and password. If the Plaintiff's attorney does not already have a District of Arizona CM/ECF log-in name and password, that attorney **must** file the Short Form, Amended Short Form, or Second Amended Short Form Complaint in paper form with the Clerk of Court and simultaneously file an Application of Attorney for Admission to Practice Pro Hac Vice pursuant to LRCiv 83.1(b)(2)

(including all necessary attachments and filing fee).

Additionally, with respect to cases which are originally filed in courts other than this Court which are then subsequently transferred to MDL 2641 pursuant to 28 U.S.C. § 1407, Defendants' may file an Answer and General Denial with Respect to Cases Subsequently Transferred to MDL 2641, incorporating the defenses and denials set forth in the Master Answer and generally denying the plaintiffs' allegations. This short-form answer shall serve as the responsive pleading. Defendants shall have 60 days from the date any such case is opened in this Court to file any motion for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) and 12(h)(2), and the plaintiff(s) shall have 30 days to respond.

Dated this 20th day of April, 2016.

David G. Campbell
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE BARD IVC FILTERS PRODUCTS LIABILITY LITIGATION | No. 2:15-MD-02641-DGC |
| | **SECOND AMENDED MASTER SHORT FORM COMPLAINT FOR DAMAGES FOR INDIVIDUAL CLAIMS AND DEMAND FOR JURY TRIAL** |

Plaintiff(s) named below, for their Complaint against Defendants named below, incorporate the Master Complaint for Damages in MDL 2641 by reference (Doc. 364). Plaintiff(s) further show the Court as follows:

1. Plaintiff/Deceased Party:

   _____

2. Spousal Plaintiff/Deceased Party's spouse or other party making loss of consortium claim:

   _____

3. Other Plaintiff and capacity (i.e., administrator, executor, guardian, conservator):

   _____

4. Plaintiff's/Deceased Party's state(s) [if more than one Plaintiff] of residence at the time of implant:

   _____

5. Plaintiff's/Deceased Party's state(s) [if more than one Plaintiff] of residence at the time of injury:

_____

6. Plaintiff's current state(s) [if more than one Plaintiff] of residence:

_____

7. District Court and Division in which venue would be proper absent direct filing:

_____

8. Defendants (check Defendants against whom Complaint is made):

☐    C. R. Bard Inc.

☐    Bard Peripheral Vascular, Inc.

9. Basis of Jurisdiction:

☐    Diversity of Citizenship

☐    Other: _____

a.    Other allegations of jurisdiction and venue not expressed in Master Complaint:

_____

_____

_____

10. Defendants' Inferior Vena Cava Filter(s) about which Plaintiff(s) is making a claim (Check applicable Inferior Vena Cava Filter(s)):

☐    Recovery® Vena Cava Filter

☐    G2® Vena Cava Filter

☐    G2® Express Vena Cava Filter

☐    G2® X Vena Cava Filter

☐    Eclipse® Vena Cava Filter

☐    Meridian® Vena Cava Filter

- 2 -

1  □ Denali® Vena Cava Filter

2  □ Other: _____

3  11. Date of Implantation as to each product:

4  _____

5  _____

6  12. Counts in the Master Complaint brought by Plaintiff(s):

7  □ Count I: Strict Products Liability – Manufacturing Defect

8  □ Count II: Strict Products Liability – Information Defect (Failure

9  to Warn)

10 □ Count III: Strict Products Liability – Design Defect

11 □ Count IV: Negligence - Design

12 □ Count V: Negligence - Manufacture

13 □ Count VI: Negligence – Failure to Recall/Retrofit

14 □ Count VII: Negligence – Failure to Warn

15 □ Count VIII: Negligent Misrepresentation

16 □ Count IX: Negligence *Per Se*

17 □ Count X: Breach of Express Warranty

18 □ Count XI: Breach of Implied Warranty

19 □ Count XII: Fraudulent Misrepresentation

20 □ Count XIII: Fraudulent Concealment

21 □ Count XIV: Violations of Applicable _____ (insert

22 state) Law Prohibiting Consumer Fraud and Unfair and

23 Deceptive Trade Practices

24 □ Count XV: Loss of Consortium

25 □ Count XVI: Wrongful Death

26 □ Count XVII: Survival

27 □ Punitive Damages

28

☐    Other(s): _____  (please state the facts supporting this Count in the space immediately below)

_____

_____

_____

_____

_____

_____

13.    Jury Trial demanded for all issues so triable?

☐    Yes

☐    No

RESPECTFULLY SUBMITTED this ____ day of _____, 20___.

**[SIGNATURE BLOCK]**

By: __/s/_____
[Attorney name/address]


I hereby certify that on this ____ day of _____, 20___, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

/s/_____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC |
|---|---|
| | **CASE MANAGEMENT ORDER NO. 11**<br>**(Bellwether Selection Process)** |

     Pursuant to the agreement of the parties (Doc. 1473), the Court enters this Case Management Order No. 11 regarding the process for the selection of and discovery in the first set of bellwether cases for this MDL.

**I.    Initial Plaintiff Pool.**

    A.    The **Initial Plaintiff Pool** for this bellwether process includes all cases filed and properly served upon Defendants in MDL 2641 as of April 1, 2016.[1]

    B.    The parties will provide Plaintiff Profile Forms ("PPF") and Defendants Profile Forms ("DPF") for each of the **Initial Plaintiff Pool** cases. For purposes of the **Initial Plaintiff Pool** cases, the deadlines established in CMO No. 5 (Doc. 365) will be expedited. All Plaintiff Profile Forms for cases in the **Initial Plaintiff Pool** must be served within thirty (30) days of filing and service, and in no event later than May 1, 2016; and the Defendants Profile Forms shall be served within forty (40) days after the date of receipt of the PPF and, in no event later than June 9, 2016. Cases filed after April 1, 2016 shall continue to be governed by the deadlines established in CMO No. 5 (Doc. 365). In order to make the process as efficient as possible, the parties shall

---

[1] The **Initial Plaintiff Pool** does not, however, include those cases which make up the group of "Mature Cases" referenced in Case Management Order No. 8, Para. 1 (C) [Doc. 519], with the exception of the *Conn*, *Milton*, and *Mintz* cases, which the Court removed from that list in Case Management Order No. 10 [Doc. 1319].

provide their PPFs and DPFs on a rolling basis, as they are completed.

**II.     PFS/DFS Group 1**.

A.     By not later than June 29, 2016, the parties shall make a simultaneous exchange of lists identifying twenty-four (24) representative cases each selected from the **Initial Plaintiff Pool** .  Those forty-eight (48) cases shall constitute **PFS/DFS Group 1**. The lists exchanged by the parties shall be organized alphabetically by plaintiffs' last name and shall include the civil action number for each case.

B.     Should Plaintiffs and Defendants select one or more of the same cases among their twenty-four (24) cases selected for **PFS/DFS Group 1**, thus resulting in a total pool of fewer than forty-eight (48) plaintiffs, the parties will alternate to identify additional plaintiffs to bring the pool to forty-eight (48), with Plaintiffs having the first selection.  The parties shall make simultaneous exchange of the additional selections to complete the pool within 3 days of the initial simultaneous exchange set forth above.

C.     It is important for the use of the bellwether process that is contemplated by this Order that both sides waive applicable venue and forum non conveniens challenges for the cases in **PFS/DFS Group 1** and stipulate that the initial scheduled trials can be conducted in the District of Arizona without remanding any case to the transferor forum under *Lexecon v. Milberg Weiss* ("Lexecon Waiver").  Accordingly, the selection of any case for inclusion in **PFS/DFS Group 1** constitutes a Lexecon Waiver by the side/party selecting the case.  Upon receipt of the list of cases from opposing counsel, each side will have five (5) business days to notify the other side if they do not agree to waive Lexecon with respect to any of the cases selected by the other side. Plaintiffs' Co-Lead Counsel and the Plaintiffs' Steering Committee shall use best efforts to secure a Lexecon Waiver for any case selected to be included in **PFS/DFS Group 1** by Defendants.  Defendants' counsel shall use best efforts to secure a Lexecon Waiver by Defendants for any case selected to be included in **PFS/DFS Group 1** by Plaintiffs.

If a plaintiff in a case selected for inclusion in **PFS/DFS Group 1** by Defendants does not provide a Lexecon Waiver, the plaintiff or his/her counsel shall show cause why

a Lexecon Waiver is not being made. If Defendants do not provide a Lexecon Waiver for any case selected for inclusion in **PFS/DFS Group 1** by Plaintiffs, Defendants' counsel shall show cause why a Lexecon waiver is not being made in that particular case. Any party required to show cause must appear in person or by telephone before the Court to explain why a Lexecon Waiver may not be made in the particular case.

For any case removed from **PFS/DFS Group 1** because the Court determines that a Lexecon Waiver is not possible, the side that selected the case shall have the right to select a replacement case within five (5) business days following the Court's determination. Thereafter, the parties shall proceed with the Lexecon Waiver process under this Section for that particular case.

**III.    Plaintiff Fact Sheets ("PFS") and Defendants Fact Sheets ("DFS").**

A PFS and a DFS will be completed for each case in **PFS/DFS Group 1**.

A.    Timing of services of Fact Sheets.

Plaintiffs shall serve on counsel for Defendants all PFS for the **PFS/DFS Group 1** by no later than July 29, 2016.

Defendants shall serve on Plaintiffs' Co-Lead/Liaison Counsel the DFS for a particular matter no later than thirty (30) days after service of the PFS and all DFS shall be served by no later than August 29, 2016.

The parties shall provide completed PFS/DFS on a rolling basis as they are completed.

B.    Completion of Fact Sheets.

A completed PFS and DFS shall be considered interrogatory answers under Fed. R. Civ. P. 33, responses to requests for production under Fed. R. Civ. P. 34, and will be governed by the standards applicable to written discovery under Fed. R. Civ. P. 26 and Fed. R. Civ. P. 37. The PFS and DFS questions and document requests shall be answered without objection. This section does not prohibit a party from withholding or redacting information based on a recognized privilege; however, if information is withheld or redacted, the party so withholding or redacting information shall provide opposing party

with a privilege log.

The parties will provide a PFS or DFS that is substantially complete in all respects.  "Substantially complete in all respects" requires that:

       (a)    Every question in the PFS or DFS be answered, even if a party can only answer the question in good faith by indicating "not applicable" or "I don't know";

       (b)    Plaintiffs shall provide the requested records authorizations accompanying the PFS;

       (c)    The parties will produce the documents requested in the PFS and DFS, or provide a statement certifying that there are no responsive documents; and

       (d)    Plaintiffs shall sign the PFS and provide verification that the information contained therein is true and correct to the best of Plaintiff's knowledge, information, and belief, formed after due diligence and reasonable inquiry.  If a plaintiff is suing in a representative or derivative capacity, the PFS shall be completed by the person with the legal authority to represent the estate or the person under legal disability.  Plaintiff spouses with a claim for loss of consortium shall also sign the PFS, attesting that the responses made to the loss of consortium questions in the PFS are true and correct to the best of his or her knowledge, information, and belief, formed after due diligence and reasonable inquiry.

    C.    <u>Fact Sheet Deficiencies</u>.

If a plaintiff fails to timely submit a PFS, or submits a PFS within the allotted time which Defendants deem not to be substantially complete, Defendants shall mail an overdue/deficiency letter by e-mail and U.S. mail to Plaintiffs' Co-Lead Counsel and the plaintiff's individual representative counsel, stating whether the PFS is overdue or deemed deficient, in which case the letter shall identify the purported deficiencies.  The letter shall include sufficient detail for the parties to meet and confer regarding the alleged deficiencies.  The plaintiff receiving such deficiency letter shall have fifteen (15) days from receipt of that letter to meet and confer in an effort to resolve the dispute.  Should the meet-and-confer process not resolve the dispute, the parties shall arrange a

call with the Court to resolve it.

Similarly, if Defendants do not submit a DFS within the time specified in this Order, or submit a DFS within the allotted time which Plaintiffs deem not to be substantially complete, Plaintiffs shall mail an overdue/deficiency letter by e-mail and U.S. mail to Defendants' Lead Counsel, stating whether the DFS is overdue or deemed deficient, in which case the letter shall identify the purported deficiencies. The letter shall include sufficient detail for the parties to meet and confer regarding the alleged deficiencies. Defendants shall have fifteen (15) days from receipt of such a letter to meet and confer in an effort to resolve the dispute. Should the meet-and-confer process not resolve the dispute, the parties shall arrange a call with the Court to resolve it.

D.  Records Discovery in **PFS/DFS Group 1**.

Records discovery for **PFS/DFS Group 1** will proceed in accordance with the separate Case Management Order relating to Joint Records Collection to be entered by the Court.

Upon receipt of a plaintiff's PFS, Defendants may commence immediately to obtain records for that plaintiff pursuant to the provisions for the records vendor process.

**IV.  Discovery Group 1**.

A.  Selection Process.

1.  By December 9, 2016, the parties shall exchange lists of ten (10) cases selected from **PFS/DFS Group 1**, selected in a manner consistent with the goal of identifying representative cases. The parties can each designate four (4) cases on those lists for automatic inclusion in **Discovery Group 1**. After exchange of lists, the parties will meet and confer in an effort to identify from the exchanged lists the remaining four (4) additional cases that will be included in **Discovery Group 1**. By December 16, 2016, the parties will complete their meet and confer process and submit to the Court a list of twelve (12) cases they jointly recommend as **Discovery Group 1**.

2.  On December 16, 2016, the parties shall file a joint submission identifying each of Plaintiffs' and Defendants' selections of cases as well as all additional

cases on which the parties have agreed for inclusion in **Discovery Group 1**. If the parties are unable to agree upon all four (4) additional cases for **Discovery Group 1**, they shall on December 16, 2016 each submit to the Court, outside of the ECF system, their proposed list of additional cases to include in **Discovery Group 1** with a memorandum in support of their selections. Within seven (7) business days of such submission, the parties may submit a response to the opposing party's memorandum regarding selection of cases. The Court will then select the remaining cases to be included in the twelve (12) cases to constitute **Discovery Group 1**.

3. **Discovery Group 1** will be governed by a scheduling order and case management order that will be determined at the time the group is selected. The parties will meet and confer in an effort to agree upon such scheduling order.

**V.** **Bellwether Group 1**.

A. Selection Process.

1. The initial bellwether cases for trial will be selected from **Discovery Group 1**.

2. After having met and conferred, and by March 1, 2017, the parties shall exchange lists of six (6) proposed selections from **Discovery Group 1** for bellwether plaintiffs, and order of trials. The parties will meet and confer in an effort to agree upon a group of six (6) cases to constitute **Bellwether Group 1**, which shall be done in a manner consistent with achieving the goal of proportionate identification of representative cases. If the parties are unable to agree on six (6) cases, the parties shall submit to the Court, outside of the ECF system, by March 5, 2017, their proposed lists and a memorandum in support of their selections and in opposition, if applicable, to the opposing party's selections. Within seven (7) business days of such submission, the parties may submit a response to the opposing party's memorandum regarding selection of cases. The parties propose that the Court then select the final group of six (6) cases to form **Bellwether Group 1**.

3. **Bellwether Group 1** will be governed by a scheduling order and

case management order that will be determined at the time the group is selected. The parties will meet and confer in an effort to agree upon such scheduling order with the goal of completing remaining case-specific discovery as close as possible to the completion of common-issue discovery.

   B. <u>Remedies for Diminishment of Discovery Group and/or Bellwether Group 1.</u>

    1. Should Plaintiffs withdraw, settle, or dismiss without prejudice a case from **Discovery Group 1**, such case will be replaced. The party that originally designated the eliminated case shall select the replacement. However, if the eliminated case was one of the cases chosen by the Court, the Court will select the substitute cases from a list of four (4) cases nominated by the parties (two from Plaintiffs and two from Defendants).

    2. Should Plaintiffs withdraw, settle, or dismiss without prejudice a case from **Bellwether Group 1**, such case will be replaced by a case from **Discovery Group 1** selected by the Court from a list of four (4) cases nominated by the parties (two from each side).

**VI. Future Discovery and Bellwether Groups.**

   The selection, discovery, and trial of future bellwether cases will be the subject of a future case management order or orders.

   Dated this 5th day of May, 2016.


                   David G. Campbell
                  United States District Judge

- 7 -

1
2
3
4
5
6           IN THE UNITED STATES DISTRICT COURT
7           FOR THE DISTRICT OF ARIZONA
8
IN RE:  Bard IVC Filters Products Liability          No. MDL 15-02641-PHX DGC
9   Litigation,
                                                     **CASE MANAGEMENT ORDER**
10                                                   **NO. 12**
                                                     **(Joint Record Collection)**
11
12
13          Based upon the stipulation and agreement of the parties (Doc. 1470),

14          **IT IS ORDERED** as follows:

15          1.      The parties to this litigation have jointly agreed to use The Marker Group,

16   Inc. ("Marker") to collect medical, insurance, Medicare, Medicaid, prescription, Social

17   Security, workers' compensation, and employment records for individual plaintiffs from

18   third-parties designated as custodians for such records by Plaintiffs or Defendants C.R.

19   Bard, Inc. and Bard Peripheral Vascular ("Bard").

20          2.      All plaintiffs who are included in the PFS/DFS Group 1 of the Bellwether

21   process (as set forth in Case Management Order No. 11, Doc. 1662) must complete, date,

22   and execute the agreed upon forms of party authorizations attached to this Order as

23   Exhibit A (the "Authorizations").  Those plaintiffs may not object to the form, execution,

24   or issuance of the Authorizations.  In completing the authorizations, the individual

25   plaintiff shall authorize production of records from the date five years prior to implant for

26   all records described in the Authorizations.

27          3.      Each Plaintiff required to execute Authorizations under this Order must

28   provide the original completed and executed Authorizations to Marker on the date that

his or her Plaintiff Fact Sheet ("PFS") is due to be served on Bard. Each Plaintiff must also serve copies of the same to Defendants with his or her PFS.

4.     If a custodian to whom an Authorization is presented refuses to provide records in response to the Authorization, Marker will notify the parties (in accordance with its vendor agreement with the parties).  The individual plaintiff's attorney shall attempt to resolve the issue with the custodian, such that the necessary records are promptly provided.  To the extent any custodian requires a release other than the Authorizations, the individual plaintiff whose records are sought must complete the custodian-specific authorization form within ten (10) days after it has been provided by Marker or Bard unless he or she objects to the form.  If the individual plaintiff objects to the custodian-specific form, the parties shall meet and confer in an effort to resolve the objection.

5.     Marker will send all custodians from whom records are sought the form of certificate of acknowledgment attached as Exhibit B (the "Acknowledgement").  The Acknowledgement will serve as evidence of authenticity and satisfy the requirements of authentication under Federal Rule of Evidence 901(a).  All other evidentiary objections are preserved, and any party retains the right to offer proof that the certified documents are not complete or are otherwise inaccurate.

6.     Marker will obtain records and host them in a secure database, accessible to Plaintiffs and Bard, according to the parties' vendor agreement with Marker.  Any party may request any ancillary services from Marker at its own expense.

7.     Upon receipt of records and placement into the secure database, Marker will notify designated individuals for Plaintiffs and Bard (via email) that documents have been posted for Plaintiffs' review on Marker's website. Plaintiffs shall have ten (10) calendar days after such notice from Marker (the "Review Grace Period") to review records for privilege and compliance with the applicable date range for the records. During the Review Grace Period, Plaintiffs will identify any documents for which they claim a privilege exists or that fall outside of the applicable date range for the records. In

the event that Plaintiffs' counsel in good faith finds that the volume or content of the documents posted cannot be sufficiently reviewed within the Review Grace Period, Plaintiffs will notify Bard and Marker, within the applicable Review Grace Period, of a request for extension of time to review the documents. Thereafter, the parties will meet and confer regarding Plaintiffs' request for an extension. If the parties are unable to agree, Plaintiffs will apply to the Court for relief during the Review Grace Period. Such application shall extend the Review Grace Period until resolution by the Court.

8. Prior to the end of the Review Grace Period, Plaintiffs will notify Bard and Marker if they contend that there are privileged documents within the group or that there are documents that fall outside of the applicable date range for the records.

9. Absent notification by Plaintiffs to Marker of a claimed privilege, agreement to extend the Review Grace Period, or a request for relief made to the Court within the Review Grace Period, Marker will automatically make the documents accessible to Bard on the day after the Review Grace Period ends.

10. If Plaintiffs notify Bard of a privilege claim, Plaintiffs' counsel will produce to Bard, via email, a privilege log identifying the documents as to which privilege is asserted, the bases for the claimed privilege, and whether Plaintiffs will be producing redacted versions of any of the documents within five (5) business days of the notice. Plaintiffs will contemporaneously produce to Marker any redacted documents and instruct Marker in writing to either make the redacted documents available to both parties on Marker's website or to withhold from Bard the entire set or portion of records based upon Plaintiffs' claim of privilege until further notice.

11. In the event that Plaintiffs inadvertently fail to claim a legal privilege they contend attaches to any record, Plaintiffs shall request a clawback of those documents by Bard, meet and confer with Bard counsel regarding those documents, and, if the parties agree, direct Marker to destroy the designated records.

12. If Plaintiffs notify Bard of a claim that certain documents fall outside of the applicable date range for the records, Plaintiffs' counsel will produce to Bard, via email,

- 3 -

a log identifying all such documents (including their dates). Plaintiffs will contemporaneously instruct Marker in writing to withhold those documents from Bard until further notice based upon Plaintiffs' claim that they fall outside of the applicable date range for such records.

13. The parties will meet and confer on any claims that documents are privileged or fall outside of the applicable date range for the records, and if not resolved, and if not resolved, place a joint call to the Court to seek resolution of the issue.

14. Bard will pay the total costs associated with records collection from each custodian, including the records-copying and provision charges from the custodians and Marker's collection service fees. Plaintiffs may download collected records from the repository by paying Marker's fees for a copy of those records without contributing to the costs incurred by Bard to obtain the records from custodians. In the event that Bard believes that Plaintiffs' downloading of records exceeds that which the parties contemplated in agreeing to this Order, Bard may meet and confer with Plaintiffs' Co-Lead Counsel. If the parties cannot resolve the dispute, they shall contact the Court on how to resolve the issue.

15. Any party may choose to discontinue the use of the joint vendor, Marker, at any time upon thirty (30) days' notice to the other parties. The withdrawing party will remain responsible for the costs of any records ordered prior to the withdrawal to the extent otherwise required by this Order.

16. Each party retains the right to issue subpoenas and to employ other means for discovery if required by any custodian to obtain records.

Dated this 5th day of May, 2016.


_____
David G. Campbell
United States District Judge

- 4 -

# EXHIBIT A

**AUTHORIZATION TO DISCLOSE EMPLOYMENT INFORMATION**

To:

I, the undersigned, hereby authorize and request the above-named entity to disclose to the agents or designees of the law firm of Nelson Mullins Riley & Scarborough, LLP, and/or to The Marker Group, Inc., any and all records, since **[Date]**, containing employment information, including those that may contain protected health information (PHI) regarding **[Plaintiff]**, including records created after the date of signature. This authorization should also be construed to permit agents or designees of Nelson Mullins Riley & Scarborough, LLP and/or The Marker Group, Inc. to copy, inspect and review any and all such records. Records requested may include, but are not limited to:

all applications for employment, resumes, records of all positions held, job descriptions of positions held, payroll records, W-2 forms and W-4 forms, performance evaluations and reports, statements and reports of fellow employees, attendance records, worker's compensation files; all hospital, physician, clinic, infirmary, nurse, dental records; test results, physical examination records and other medical records; any records pertaining to medical or disability claims, or work-related accidents including correspondence, accident reports, injury reports and incident reports; insurance claim forms, questionnaires and records of payments made; pension records, disability benefit records, and all records regarding participation in company-sponsored health, dental, life and disability insurance plans; material safety data sheets, chemical inventories, and environmental monitoring records and all other employee exposure records pertaining to all positions held; and any other records concerning employment with the above-named entity. I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information.

Unless revoked in writing, this authorization shall expire two years after it is signed. A copy of this authorization may be used in place of and with the same force and effect as the original. The purpose of this authorization is for civil litigation.

NOTICE
- **The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to Nelson Mullins Riley & Scarborough, LLP and/or The Marker Group, Inc.; 13105 Northwest Freeway, Suite 300, Houston, TX 77040, except to the extent that the entity has already relied upon this Authorization to disclose protected health information (PHI).**
- **The individual signing this authorization understands that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.**
- **The individual signing this authorization understands that protected health information (PHI) disclosed pursuant to this authorization may be subject to redisclosure by the recipients and that, in such case, the disclosed PHI no longer will be protected by federal privacy regulations.**
- **The individual signing this authorization understands information authorized for release may include records that may indicate the presence of a communicable disease.**

I have read this Authorization and understand that it will permit the entity identified above to disclose PHI to Nelson Mullins Riley & Scarborough, LLP and/or to The Marker Group, Inc.

[Plaintiff]
_____
Name of Employee

_____
Former/Alias/Maiden Name of Employee

_____
Employee's Date of Birth

_____
Employee's Social Security Number

_____
Employee's Address

_____
Signature of Employee or Employee Representative

_____
Date

_____
Name of Employee Representative

_____
Description of Authority

## AUTHORIZATION TO DISCLOSE INSURANCE INFORMATION

To:

I, the undersigned, hereby authorize and request the above-named entity to disclose to the agents or designees of the law firm of Nelson Mullins Riley & Scarborough, LLP, and/or to The Marker Group, Inc., any and all records, since **[Date]**, containing health or disability insurance information, including those that may contain protected health information (PHI) regarding **[Plaintiff]**, including records created after the date of signature. This authorization should also be construed to permit agents or designees of Nelson Mullins Riley & Scarborough, LLP and/or The Marker Group, Inc. to copy, inspect and review any and all such records. Records requested may include, but are not limited to:

> applications for insurance coverage and renewals; all insurance policies, certificates and benefit schedules regarding the insured's coverage, including supplemental coverage; health and physical examination records that were reviewed for underwriting purposes, and any statements, communications, correspondence, reports, questionnaires, and records submitted in connection with applications or renewals for insurance coverage, or claims; all physicians', hospital, dental reports, prescriptions, correspondence, test results, radiology reports and any other medical records that were submitted for claims review purposes; any claim record filed; records of any claim paid; records of all litigation; and any other records of any kind concerning or pertaining to the insured. I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information.

Unless revoked in writing, this authorization shall expire two years after it is signed. A copy of this authorization may be used in place of and with the same force and effect as the original. The purpose of this authorization is for civil litigation.

NOTICE
- **The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to Nelson Mullins Riley & Scarborough, LLP and/or The Marker Group, Inc.; 13105 Northwest Freeway, Suite 300, Houston, TX 77040, except to the extent that the entity has already relied upon this Authorization to disclose protected health information (PHI).**
- **The individual signing this authorization understands that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.**
- **The individual signing this authorization understands that protected health information (PHI) disclosed pursuant to this authorization may be subject to redisclosure by the recipients and that, in such case, the disclosed PHI no longer will be protected by federal privacy regulations.**
- **The individual signing this authorization understands information authorized for release may include records that may indicate the presence of a communicable disease.**
- **This authorization shall expire within 1 year from the date of execution.**

I have read this Authorization and understand that it will permit the entity identified above to disclose PHI to Nelson Mullins Riley & Scarborough, LLP, and/or to The Marker Group, Inc.

[Plaintiff]
_____
Name of Individual

_____
Former/Alias/Maiden Name of Individual

_____
Individual's Date of Birth

_____
Individual's Social Security Number

_____
Individual's Address

_____
Signature of Individual or Individual Representative

_____
Date

_____
Name of Individual Representative

_____
Description of Authority

## AUTHORIZATION TO DISCLOSE MEDICAID INFORMATION

To:

I, the undersigned, hereby authorize and request the above-named entity to disclose to the agents or designees of the law firm of Nelson Mullins Riley & Scarborough, LLP, and/or to The Marker Group, Inc., any and all records, since **[Date]**, containing Medicaid information, including those that may contain protected health information (PHI) regarding **[Plaintiff]**, including records created after the date of signature. This authorization should also be construed to permit agents or designees of Nelson Mullins Riley & Scarborough, LLP and/or The Marker Group, Inc. to copy, inspect and review any and all such records. Records requested may include, but are not limited to:

all Medicaid records, including explanations of Medicaid benefit records and claims records; any statements, communications, pro reviews, denials, appeals, correspondence, reports, questionnaires or records submitted in connection with claims; all reports from physicians, hospital, dental providers, prescriptions; correspondence, test results and any other medical records; records of claims paid to or on the behalf of **[Plaintiff]**; records of litigation and any other records of any kind. I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information.

Unless revoked in writing, this authorization shall expire two years after it is signed. A copy of this authorization may be used in place of and with the same force and effect as the original. The purpose of this authorization is for civil litigation.

NOTICE

- **The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to** Nelson Mullins Riley & Scarborough, LLP **and/or The Marker Group, Inc.; 13105 Northwest Freeway, Suite 300, Houston, TX 77040, except to the extent that the entity has already relied upon this Authorization to disclose protected health information (PHI).**
- **The individual signing this authorization understands that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.**
- **The individual signing this authorization understands that protected health information (PHI) disclosed pursuant to this authorization may be subject to redisclosure by the recipients and that, in such case, the disclosed PHI no longer will be protected by federal privacy regulations.**
- **The individual signing this authorization understands information authorized for release may include records that may indicate the presence of a communicable disease.**

I have read this Authorization and understand that it will permit the entity identified above to disclose PHI to Nelson Mullins Riley & Scarborough, LLP and/or to The Marker Group, Inc.

[Plaintiff]
_____          _____
Name of Individual                                       Signature of Individual or Individual Representative

_____          _____
Former/Alias/Maiden Name of Individual          Date

_____          _____
Individual's Date of Birth                              Name of Individual Representative

_____          _____
Individual's Social Security Number               Description of Authority

_____
Individual's Address

### AUTHORIZATION TO DISCLOSE MEDICAL INFORMATION

To:

I, the undersigned, hereby authorize and request the Custodian above-named entity to disclose to the agents or designees of the law firm of Nelson Mullins Riley & Scarborough, LLP, and/or to The Marker Group, Inc., any and all medical records, since **[Date]**, including those that may contain protected health information (PHI) regarding **[Plaintiff]**, including records created after the date of signature. This authorization should also be construed to permit agents or designees of Nelson Mullins Riley & Scarborough, LLP and/or The Marker Group, Inc. to copy, inspect and review any and all such records. Records requested may include, but are not limited to:

> all medical records, physician's records, surgeon's records, pathology/cytology reports, physicals and histories, laboratory reports, operating room records, discharge summaries, progress notes, patient intake forms, consultations, prescriptions, nurses' notes, birth certificate and other vital statistic records, communicable disease testing and treatment records, correspondence, prescription records, medication records, orders for medications, therapists' notes, social worker's records, insurance records, consent for treatment, statements of account, itemized bills, invoices and any other papers relating to any examination, diagnosis, treatment, periods of hospitalization, or stays of confinement, or documents containing information regarding amendment of protected health information (PHI) in the medical records, copies (NOT originals) of all x-rays, CT scans, MRI films, photographs, and any other radiological, nuclear medicine, or radiation therapy films and of any corresponding reports, all pathology/cytology specimens, slides, wet tissue, tissue blocks, pathology/cytology reports and requisition records, and any other materials in its possession relating to any and all medical diagnoses, medical examinations, medical and surgical treatments or procedures. I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information.

Unless revoked in writing, this authorization shall expire two years after it is signed. A copy of this authorization may be used in place of and with the same force and effect as the original. The purpose of this authorization is for civil litigation.

NOTICE
- The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to Nelson Mullins Riley & Scarborough, LLP and/or The Marker Group, Inc.; 13105 Northwest Freeway, Suite 300, Houston, TX 77040 except to the extent that the entity has already relied upon this Authorization to disclose protected health information (PHI).
- The individual signing this authorization understands that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.
- The individual signing this authorization understands that protected health information (PHI) disclosed pursuant to this authorization may be subject to redisclosure by the recipients and that, in such case, the disclosed PHI no longer will be protected by federal privacy regulations.
- The individual signing this authorization expressly authorizes the above-named entity to disclose HIV/AIDS records and information to Nelson Mullins Riley & Scarborough, LLP and/or The Marker Group, Inc., and authorizes re-disclosure of said records and information to consultants, experts, agents, and/or other counsel in this litigation.
- The individual signing this authorization understands information authorized for release may include records that may indicate the presence of a communicable disease.
- This authorization shall expire within 1 year from the date of execution.
- This authorization does NOT authorize the requesting party (Nelson Mullins Riley & Scarborough, LLP, The Marker Group, Inc. or their agents) to discuss the patient's care, treatment or prognosis with recipient of this authorization.

I have read this Authorization and understand that it will permit the entity identified above to disclose PHI to Nelson Mullins Riley & Scarborough, LLP and/or to The Marker Group, Inc.

[Plaintiff]
_____        _____
Name of Patient                                    Signature of Patient or Individual Representative


_____        _____
Former/Alias/Maiden Name of Patient       Date


_____        _____
Patient's Date of Birth                           Name of Patient Representative


_____        _____
Patient's Social Security Number              Description of Authority


_____
Patient's Address

## AUTHORIZATION TO DISCLOSE MEDICAL INFORMATION
### SPECIFIC AUTHORIZATION FOR RELEASE OF INFORMATION PROTECTED BY STATE OR FEDERAL LAW

In addition to the authorization and other provisions contained above, hereby incorporated by reference, I authorize: (i) the release of data and information to Nelson Mullins Riley & Scarborough LLP and/or to The Marker Group, Inc.; and (ii) Nelson Mullins Riley & Scarborough LLP and/or to The Marker Group, Inc.'s re-disclosure of the data and information to its consultants, experts, agents, and/or other counsel; any and all data, notes, records, reports, and/or any other documents and information relating to:

__ 1. Substance Abuse (Alcohol/Drug) __2. Mental Health (includes psychological testing) __3. HIV-related information (AIDS related testing)

This form does not authorize re-disclosure of medical information beyond the limits of this consent. Where information has been disclosed from records protected by federal law for alcohol/drug abuse records or by state law for mental health records, federal requirements (42 C.F.R. Part 2) and state requirements prohibit further disclosure without specific written consent of the patient, or as otherwise permitted by such law and/or regulations. A general authorization for the release of medical or other information is not sufficient for these purposes. Civil and/or criminal penalties may attach for unauthorized disclosure of alcohol/drug abuse or mental health information. Federal regulations state that any person who violates any provision of this law shall be fined not more than $500, in the case of a first offense, and not more than $5000 in the case of each subsequent offense. Drug Abuse Office and Treatment Act of 1972 (21 U.S.C. 1175); Comprehensive Alcohol Abuse Alcoholism Prevention, Treatment and Rehabilitation Act of 1970 (42 U.S.C. 4582).

**[Plaintiff]**

_____        _____
Name of Patient                         Date

_____        _____
Signature of Patient or Individual Representative        Date

**AUTHORIZATION TO DISCLOSE PRESCRIPTION INFORMATION**

To:

I, the undersigned, hereby authorize and request the above-named entity to disclose to the agents or designees of the law firm of Nelson Mullins Riley & Scarborough, LLP, and/or to The Marker Group, Inc., any and all prescription records, since **[Date]**, including those that may contain protected health information (PHI) regarding **[Plaintiff]**, including records created after the date of signature. This authorization should also be construed to permit agents or designees of Nelson Mullins Riley & Scarborough, LLP and/or The Marker Group, Inc. to copy, inspect and review any and all such records. Records requested may include, but are not limited to:

> complete copies of all prescription profile records, prescription slips, medication records, orders for medication, payment records, insurance claims forms correspondence and any other records. I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information.

Unless revoked in writing, this authorization shall be expire two years after it is signed. A copy of this authorization may be used in place of and with the same force and effect as the original. The purpose of this authorization is for civil litigation.

NOTICE
- **The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to Nelson Mullins Riley & Scarborough, LLP and/or The Marker Group, Inc.; 13105 Northwest Freeway, Suite 300, Houston, TX 77040 except to the extent that the entity has already relied upon this Authorization to disclose protected health information (PHI).**
- **The individual signing this authorization understands that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.**
- **The individual signing this authorization understands that protected health information (PHI) disclosed pursuant to this authorization may be subject to redisclosure by the recipients and that, in such case, the disclosed PHI no longer will be protected by federal privacy regulations.**
- **The individual signing this authorization understands information authorized for release may include records that may indicate the presence of a communicable disease.**
- **This authorization shall expire within 1 year from the date of execution.**
- **This authorization does NOT authorize the requesting party (Nelson Mullins Riley & Scarborough, LLP, The Marker Group, Inc. or their agents) to discuss the patient's care, treatment or prognosis with recipient of this authorization.**

I have read this Authorization and understand that it will permit the entity identified above to disclose PHI to Nelson Mullins Riley & Scarborough, LLP and/or to The Marker Group, Inc.

[Plaintiff]
_____        _____
Name of Patient                                        Signature of Patient or Patient Representative


_____        _____
Former/Alias/Maiden Name of Patient              Date


_____        _____
Patient's Date of Birth                                Name of Patient Representative


_____        _____
Patient's Social Security Number                     Description of Authority


_____
Patient's Address

**AUTHORIZATION TO DISCLOSE WORKERS' COMPENSATION INFORMATION**

To:

I, the undersigned, hereby authorize and request the above-named entity to disclose to the agents or designees of the law firm of Nelson Mullins Riley & Scarborough, LLP, and/or to The Marker Group, Inc., any and all records, since **[Date]**, containing Workers' Compensation information, including those that may contain protected health information (PHI) regarding **[Plaintiff]**, including records created after the date of signature. This authorization should also be construed to permit agents or designees of Nelson Mullins Riley & Scarborough, LLP and/or The Marker Group, Inc. to copy, inspect and review any and all such records. Records requested may include, but are not limited to:

> all workers' compensation claims, including claim petitions, judgments, findings, notices of hearings, hearing records, transcripts, decisions and orders; all depositions and reports of witnesses and expert witnesses; employer's accident reports; all other accident, injury, or incident reports; all medical records; records of compensation payment made; investigatory reports and records; applications for employment; records of all positions held; job descriptions of any positions held; salary records; performance evaluations and reports; statements and comments of fellow employees; attendance records; all physicians', hospital, medical, health reports; physical examinations; records relating to health or disability insurance claims, including correspondence, reports, claim forms, questionnaires, records of payments made to physicians, hospitals, and health institutions or professionals; statements of account, itemized bills or invoices; and any other records relating to the above-named individual. Copies (NOT originals) of all x-rays, CT scans, MRI films, photographs, and any other radiological, nuclear medicine, or radiation therapy films of any corresponding reports. I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information.

Unless revoked in writing, this authorization shall be expire two years after it is signed. A copy of this authorization may be used in place of and with the same force and effect as the original. The purpose of this authorization is for civil litigation.

NOTICE
- **The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to Nelson Mullins Riley & Scarborough, LLP and/or The Marker Group, Inc.; 13105 Northwest Freeway, Suite 300, Houston, TX  77040, except to the extent that the entity has already relied upon this Authorization to disclose protected health information (PHI).**
- **The individual signing this authorization understands that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.**
- **The individual signing this authorization understands that protected health information (PHI) disclosed pursuant to this authorization may be subject to redisclosure by the recipients and that, in such case, the disclosed PHI no longer will be protected by federal privacy regulations.**
- **The individual signing this authorization understands information authorized for release may include records that may indicate the presence of a communicable disease.**
- **This authorization shall expire within 1 year from the date of execution.**
- **This authorization does NOT authorize the requesting party (Nelson Mullins Riley & Scarborough, LLP, The Marker Group, Inc. or their agents) to discuss the patient's care, treatment or prognosis with recipient of this authorization.**

I have read this Authorization and understand that it will permit the entity identified above to disclose PHI to Nelson Mullins Riley & Scarborough, LLP and/or to The Marker Group, Inc.

[Plaintiff]
_____              _____
Name of Individual                                     Signature of Individual or Individual Representative


_____              _____
Former/Alias/Maiden Name of Individual         Date


_____              _____
Individual's Date of Birth                           Name of Individual Representative


_____              _____
Individual's Social Security Number             Description of Authority


_____
Individual's Address

**1-800-MEDICARE Authorization to Disclose Personal Health Information**

Use this form if you want 1-800-MEDICARE to give your personal health information to someone other than you.

1. _____     _____     _____
   **Print Name**                                 **Medicare Number**                      **Date of Birth**
   (First and last name of the person with Medicare)   (Exactly as shown on the Medicare Card)   (mm/dd/yyyy)

2. Medicare will only disclose the personal health information you want disclosed.

   **2A:  Check only _one_ box below to tell Medicare the specific personal health information you want disclosed:**

   ☐ Limited Information (go to question 2b)

   ☒ Any Information (go to question 3)

   **2B:  Complete _only_  if you selected "limited information". Check all that apply:**

   ☐ Information about your Medicare eligibility

   ☐ Information about your Medicare claims

   ☐ Information about plan enrollment (e.g. drug or MA Plan)

   ☐ Information about premium payments

   ☐ Other Specific Information (please write below; for example, payment  information)

   _____

3. **Check only _one_ box below indicating how long Medicare can use this  authorization to disclose your personal health information**  (subject to applicable  law—for example, your State may limit how long Medicare may give out your  personal health information):

   ☐ Disclose my personal health information indefinitely

   ☒ Disclose my personal health information for a specified period only
      beginning:  (mm/dd/yyyy) _____  and ending: (mm/dd/yyyy) Two years after date of
                                                                        signature

4. **Fill in the name and address of the person(s) or organization(s) to whom you want Medicare to disclose your personal health information. Please provide the specific name of the person(s) for any organization you list below:**

1. Name:     Marker Group, Inc.

   Address:     13105 Northwest Freeway, Suite 300

              Houston, TX 77040

2. Name:     Nelson Mullins Riley & Scarborough LLP

   Address:     201 17th Street NW, Suite 1700

              Atlanta, GA 30363

3. Name: _____

   Address: _____

   _____

5.

> **I authorize 1-800-MEDICARE to disclose my personal health information listed above to the person(s) or organization(s) I have named on this form. I understand that my personal health information may be re-disclosed by the person(s) or organization(s) and may no longer be protected by law.**
>
> _____    _____    _____
> Signature                  Telephone Number        Date (mm/dd/yyyy)
>
> Print the address of the person with Medicare  (Street Address, City, State, and ZIP)
>
> _____
>
> _____
>
> ☐ Check here if you are signing as a personal representative and complete below. Please attach the appropriate documentation (for example, Power of Attorney). This <u>only</u> applies if someone other than the person with Medicare signed above.
>
> Print the Personal Representative's Address (Street Address, City, State, and ZIP)
>
> _____
>
> _____
>
> Telephone Number of Personal Representative: _____
>
> Personal Representative's Relationship to the Beneficiary: _____

6. **Send the completed, signed authorization to:**

Medicare BCC, Written Authorization Dept.
PO Box 1270
Lawrence, KS 66044

7. **Note:**

You have the right to take back ("revoke") your authorization at any time, in writing, except to the extent that Medicare has already acted based on your permission. If you would like to revoke your authorization, send a written request to the address shown above.

Your authorization or refusal to authorize disclosure of your personal health information will have no effect on your enrollment, eligibility for benefits, or the amount Medicare pays for the health services you receive.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is **0938-0930**. The time required to complete this information collection is estimated to average **15 minutes** per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Mail Stop C4-26-05, Baltimore, Maryland 21244-1850.

**Social Security Administration**
Consent for Release of Information

Form Approved
OMB No. 0960-0566

<u>Instructions for Using this Form</u>

Complete this form only if you want to give information or records about you, a minor, or a legally incompetent adult, to an individual or group (for example, a doctor or an insurance company). If you are the natural or adoptive parent or legal guardian, acting on behalf of a minor, you may complete this form to release only the minor's non-medical records. If you are requesting information for a purpose not directly related to the administration of any program under the Social Security Act, a fee may be charged.

NOTE:   Do not use this form to:

* Request us to release the medical records of a minor. Instead, contact your local office by calling 1-800-772-1213 (TTY-1-800-325-0778), or

* Request information about your earnings or employment history. Instead, complete form SSA-7050-F4 at any Social Security office or online at www.ssa.gov/online/ssa-7050.pdf.

<u>How to Complete this Form</u>

We will not honor this form unless all required fields are completed. An asterisk (*) indicates a required field. Also, we will not honor blanket requests for "all records" or the "entire file." You must specify the information you are requesting and you must sign and date this form.

* Fill in your name, date of birth, and social security number or the name, date of birth, and social security number of the person to whom the information applies.

* Fill in the name and address of the individual (or organization) to whom you want us to release your information.

* Indicate the reason you are requesting us to disclose the information.

* Check the box(es) next to the type(s) of information you want us to release including the date ranges, if applicable.

* You, the parent or legal guardian acting on behalf of a minor, or the legal guardian of a legally incompetent adult, must sign and date this form and provide a daytime phone number where you can be reached.

* If you are not the person whose information is requested, state your relationship to that person. We may require proof of relationship.

### PRIVACY ACT STATEMENT

Section 205(a) of the Social Security Act, as amended, authorizes us to collect the information requested on this form. The information you provide will be used to respond to your request for SSA records information or process your request when we release your records to a third party. You do not have to provide the requested information. Your response is voluntary; however, we cannot honor your request to release information or records about you to another person or organization without your consent.

We rarely use the information provided on this form for any purpose other than to respond to requests for SSA records information. However, in accordance with 5 U.S.C. § 552a(b) of the Privacy Act, we may disclose the information provided on this form in accordance with approved routine uses, which include but are not limited to the following: 1. To enable an agency or third party to assist Social Security in establishing rights to Social Security benefits and/or coverage; 2. To make determinations for eligibility in similar health and income maintenance programs at the Federal, State, and local level; 3. To comply with Federal laws requiring the disclosure of the information from our records; and, 4. To facilitate statistical research, audit, or investigative activities necessary to assure the integrity of SSA programs.

We may also use the information you provide when we match records by computer. Computer matching programs compare our records with those of other Federal, State, or local government agencies. Information from these matching programs can be used to establish or verify a person's eligibility for Federally-funded or administered benefit programs and for repayment of payments or delinquent debts under these programs.

Additional information regarding this form, routine uses of information, and other Social Security programs are available from our Internet website at www.socialsecurity.gov or at your local Social Security office.

### PAPERWORK REDUCTION ACT STATEMENT

This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the <u>Paperwork Reduction Act of 1995</u>. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 3 minutes to read the instructions, gather the facts, and answer the questions. SEND OR BRING THE COMPLETED FORM TO YOUR LOCAL SOCIAL SECURITY OFFICE. You can find your local Social Security office through SSA's website at www.socialsecurity.gov. Offices are also listed under U.S. Government agencies in your telephone directory or you may call 1-800-772-1213 (TTY 1-800-325-0778). *You may send comments on our time estimate above to: SSA, 6401 Security Blvd., Baltimore, MD 21235-6401. Send only comments relating to our time estimate to this address, not the completed form.*

Form SSA-3288  (07-2010) EF (07-2010) Destroy Prior Editions

**Social Security Administration**
Consent for Release of Information

Form Approved
OMB No. 0960-0566

*SSA will not honor this form unless all required fields have been completed (\*signifies required field).*

TO:  Social Security Administration

_____    _____    _____
\*Name                      \*Date of Birth             \*Social Security Number

I authorize the Social Security Administration to release information or records about me to:

| \*NAME | \*ADDRESS |
|---|---|
| Marker Group, Inc. | 13105 Northwest Freeway, Suite 300 |
| | Houston, TX 77040 |
| Nelson Mullins Riley & Scarborough LLP | 201 17th Street, NW, Suite 1700, Atlanta, GA 30363 |

\*I want this information released because:    Litigation
*There may be a charge for releasing information.*

_____

**\*Please release the following information selected from the list below:**
*You must check at least one box.  Also, SSA will not disclose records unless applicable date ranges are included.*

☐ Social Security Number

☐ Current monthly Social Security benefit amount

☐ Current monthly Supplemental Security Income payment amount

☐ My benefit/payment amounts from _____ to _____

☐ My Medicare entitlement from _____ to _____

☐ Medical records from my claims folder(s) from _____ to _____
*If you want SSA to release a minor's medical records, do not use this form but instead contact your local SSA office.*

☐ Complete medical records from my claims folder(s)

☒ Other record(s) from my file (e.g. applications, questionnaires, consultative examination reports, determinations, etc.)

Disability claims of any sort, including but not limited to, statements, applications, disclosures, correspondence, notes, settlements, agreements, contracts or other documents in the file from _____ - Present

I am the individual to whom the requested information/record applies, or the parent or legal guardian of a minor, or the legal guardian of a legally incompetent adult.  I declare under penalty of perjury in accordance with 28 C.F.R. § 16.41(d)(2004) that I have examined all the information on this form, and on any accompanying statements or forms, and it is true and correct to the best of my knowledge.  I understand that anyone who knowingly or willfully seeking or obtaining access to records about another person under false pretenses is punishable by a fine of up to $5,000.  I also understand that any applicable fees must be paid by me.

\*Signature: _____    \*Date: _____

Relationship *(if not the individual)*: _____    \*Daytime Phone: _____

Form SSA-3288 (07-2010) EF (07-2010)

# EXHIBIT B

| RECORDS PERTAINING TO: | Patient Name |
|---|---|
| AKA: | |
| DOB: | M/D/YYYY |
| SSN: | XXX-XX-3421 |
| SCOPE: | any and all medical records. |

**\*\*\*\*\*\*\*\* AFFIDAVIT FOR CERTIFICATION OF RECORDS \*\*\*\*\*\*\*\***

My name is _____ and I am personally acquainted with the facts herein stated:

I am the Custodian of Records of {**Location Name**}.  The _____ page(s) attached to this Affidavit are true and accurate reproductions and copies of all of the records held by this office.  These records are kept by our facility in the regular course of business, and it was in the regular course of business for an employee or representative of our facility with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the records or to transmit information thereof to be included in such record; and the record was made at or near the time of the act, event, condition, opinion or diagnosis.  The records attached hereto are the original or exact duplicates of the original.

_____   I have released an exact duplicate of the original records as requested, including but not limited to all medical records, third party records and any other written materials in my possession relating to any and all medical diagnoses, medical examinations, medical and surgical treatment or procedures, attached hereto.

_____   I have omitted or redacted the following information and/or documents from the copy of records attached:
_____
_____

_____   I have omitted or redacted the above-listed information and/or documents from the copy of records attached hereto for the following reasons:
_____
_____

**We normally destroy records after _____ years.**
I declare under penalty of perjury that the foregoing is true and correct.  Executed on _____.

_____
Custodian of Records

**\*\*\*\*\*\*\*\* NO RECORDS CERTIFICATION \*\*\*\*\*\*\*\***

My name is _____ and I am personally acquainted with the facts herein stated:

I am the Custodian of Records of {**Location Name**}.

A thorough search of both our active and archived files, carried out under my direction revealed no documents, records or other materials called for in the authorization, for the following reason:

[  ]   All records for the time period in question have been destroyed in accordance with our document retention policy.  We normally destroy records after _____ years.

[  ]   A thorough search of both our active and archived files has been performed and no such records were found.

[  ]   Other: _____

I declare under penalty of perjury that the foregoing is true and correct.  Executed on _____.

_____
Custodian of Records

Order No. XXXXXX-XX

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC<br><br>**CASE MANAGEMENT ORDER NO. 13** |

The Court held a fourth Case Management Conference with the parties on June 21, 2016. The conference was scheduled to address ongoing matters and a number of issues identified in Case Management Order No. 10 (Doc. 1319).

**A.      ESI Discovery.**

The Court addressed the discovery dispute identified in the parties' matrix regarding ESI discovery and custodians. Doc. 1756. The parties have made considerable progress in agreeing on custodians to be searched or revisited, and the development of search terms. After considering arguments from the parties about the matrix dispute, the Court concluded that Defendants' ESI searches should include the regional sales managers identified in the matrix. *See* Doc. 1756 at 5. The Court is persuaded that these regional sales managers had direct responsibility for Defendants' sales force throughout the nation and likely will possess relevant information.

**B.      FDA Warning Letter.**

The Court addressed issues raised by the parties in a matrix of disputes related to the FDA warning letter. Doc. 1471. The first, second, and fourth issues raised in the matrix (Plaintiffs' deposition request no. 7, Plaintiffs' deposition request no. 8, and Plaintiffs' request for production no. 35) concern discovery of internal communications

related to the FDA warning letter and related actions. Counsel advised the Court that Defendants have agreed to include in the ESI discovery search 11 of the 17 individuals identified by Plaintiffs, and that the parties will continue discussing the remaining six individuals Plaintiffs have identified. As a result, the parties agreed that the Court need not rule on this issue.

The Court addressed the fourth dispute (Plaintiffs' request for production no. 26) regarding Plaintiffs' request for the complete employment files of Messrs. Modra, Uebelocker, Wheeler, and Ludwig. After listening to the parties' arguments, the Court concluded that Defendants need not produce the entire employment files for these individuals. But Defendants shall produce, under the protective order, documents from the files relating to any internal discipline, reprimands, adverse consequences, negative employment reviews, or comparable information, taken against any of these four individuals on the basis of under-reporting or non-reporting addressed in the FDA warning letter.

The final issue raised in the matrix concerned Plaintiffs' request for the "files" of Messrs. Ring, Williamson, and Gaede related to the FDA investigation and warning letter. Defense counsel have agreed to produce ESI from Messrs. Williamson and Gaede, and the parties are discussing the production of ESI from Mr. Ring. The Court concluded that Plaintiffs' request for the "files" of these individuals is vague and imprecise. Plaintiffs should craft more specific requests for production. The Court agreed that ESI to or from these individuals related to the FDA warning letter is relevant and should be produced, but further production will depend on Plaintiffs' issuance of more precise document requests.

**C.** **Deposition Protocol.**

The Court reviewed the deposition protocol submitted by the parties. Doc. 1472. The Court will make some minor modifications and issue the protocol shortly.

**D.** **Confidentiality Designations.**

The parties' joint report for the status conference (Doc. 1756) noted that Plaintiffs

disagree with confidentiality designations Defendants have applied to some documents under the Court's protective order. Plaintiffs have been identifying the designations with which they disagree, pursuant to paragraph 22 of the protective order, and asked whether the Court wishes to rule on these disagreements now or later in the litigation. The Court directed the parties to raise these issues later in the litigation, when documents are to be used in connection with dispositive motions. At that point in the case, a different standard for protection of information will apply and the Court's decision will be informed by the nature of the dispositive motions being filed by each side. In the meantime, if a confidentiality designation creates problems in discovery, the parties should call the Court immediately for a resolution.

**E.**    **Discovery Schedule.**

The Court discussed the existing October 28, 2016 fact discovery deadline with the parties. *See* CMO 8, Doc. 519. Both sides stated that discovery was proceeding well and that the deadline does not present concerns.

**F.**    **Mature Cases.**

The Court requested an update on the 10 mature cases that are likely to be remanded before other cases in this MDL. *See* Doc. 1485 at 2. In the joint report to be filed before the next Case Management Conference, the parties should address these cases and identify projected dates by which they will be returned to their original districts.

**G.**    **Recently Filed Class Action.**

The parties advised the Court that Plaintiffs' counsel recently have filed a medical monitoring class action, which was assigned to this Court. *See Barraza, et al. v. CR Bard, Inc.*, *et al.*, Case No. CV-16-1374-PHX-DGC (D. Ariz. May 5, 2016). The parties stipulated on the record that the class action may be consolidated with this MDL. The Court will enter a separate order consolidating the cases. The parties also agreed that the fact discovery deadline of October 28, 2016, will apply to the class action. In the joint report to be filed before the next Case Management Conference, the parties shall provide

the Court with a proposal regarding the remaining litigation schedule for the class action. Specifically, the parties should address when a motion for class certification will be filed, what expert discovery is needed before that motion is filed, and whether other deadlines in the MDL, such as the deadlines for disclosure of merits-related expert reports, will apply in the class action.

**H.** **Next Case Management Conference.**

The Court will hold the next Case Management Conference on **August 23, 2016 at 10:00 a.m.** The parties shall provide the Court with a joint status report on issues mentioned in this Order and any issues they wish to address at the conference on or before **August 17, 2016**.

Dated this 21st day of June, 2016.

_____

David G. Campbell
United States District Judge

- 4 -

1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

8
9
10
11
12
13

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation,<br><br>**THIS DOCUMENT RELATES TO: ALL CASES** | No. MDL 15-02641-PHX DGC<br><br>**CASE MANAGEMENT ORDER NO. 14**<br><br>**(Deposition Protocols)** |

14        Pursuant to the parties' stipulation (Doc. 1472),

15        **IT IS ORDERED** that the following deposition protocols shall be followed in

16 depositions conducted in the above-referenced MDL.

17 A.    Deposition Notices

18        1.    This Order applies to all depositions in MDL-2641, which will be noticed

19 and conducted pursuant to Fed. R. Civ. P. ("FRCP") 30 and this Order.

20        2.    This Order, in its entirety, shall be attached to any non-party subpoena or

21 deposition notice.

22 B.    Cross-Notices Between State Court Cases and These Proceedings

23        Any depositions originally noticed in this MDL may be cross-noticed in any state

24 court cases pending at the time of the deposition.

25 C.    Number of Depositions Allowed

26        Any Federal Rule of Civil Procedure and/or Local Rule purporting to limit the

27 number of depositions shall not apply in this MDL proceeding.  If either side believes

28 that the other is taking unnecessary or irrelevant depositions they may bring the issue to

the Court for appropriate resolution, after first making a good faith effort to resolve the issue without the Court's involvement.

D.  Scheduling of Depositions

1.  Absent extraordinary circumstances, counsel shall cooperate with opposing counsel and counsel for proposed deponents in an effort to schedule depositions at mutually convenient times and locations in accordance with the schedule established in this case.

2. Lead and Liaison Counsel shall be responsible for providing posted notice of any deposition in this MDL to counsel.

E.  Location of Depositions

The parties shall endeavor to schedule all depositions at locations within a reasonable distance from the place of residence of the deponent, or at such other location as is agreed to by all counsel involved and the deponent.

F.  Attendance at Deposition

1.  In order to arrange for adequate deposition space, counsel wishing to attend in person a deposition noticed in MDL-2641 shall provide notice to Plaintiffs' Co-Lead Counsel or Defendants' Lead Counsel of their intention to attend in person three days in advance of the deposition. Plaintiffs' Co-Lead Counsel and Defendants' Lead Counsel shall consult two days prior to the deposition to ensure that there is adequate space for the deposition.

2.  In the event that a party wishes to participate in a deposition remotely, that is, either by telephone or internet, that party shall notify the party noticing the deposition (either Plaintiff' Co-Lead Counsel or Defendants' Lead Counsel) two days in advance of the start of the deposition and make the arrangements necessary to participate in the deposition. Any party seeking to participate remotely must agree to be bound by applicable Protective Order in this case and agree not to re-record the deposition, by video or audio means.

3.      While a deponent is being examined about any information subject to the Protective Order entered in this litigation, persons to whom disclosure is not authorized shall be excluded whether in person or telephonically.

G.      Conduct of Depositions

1.      There should ordinarily be no more than two examining attorneys per side, who shall confer prior to the deposition regarding the allocation of time to question. Counsel for Plaintiffs shall cooperate so that examinations by multiple attorneys for the MDL do not exceed the allotted time. Under no circumstances will Plaintiffs' failure to allocate time among themselves (or to enforce such an allocation during the deposition) result in the extension of a deposition.

2.      All deposition objections are reserved, except as to the form of the question and the answer. Counsel shall otherwise comply with Fed. R. Civ. P. 30(c)(2) concerning objections at depositions. An objection by one party reserves the objection for all parties.

H.      Duration and Time Allocation of Deposition

1.      The time limitations on depositions imposed by Fed. R. Civ. P. 30(d)(1) shall apply in the MDL unless the parties agree to a different time limitation in the MDL or the Court establishes a different time limitation in this Order or for a particular deposition or depositions. The Parties shall negotiate in good faith regarding any request by any Party for an extended length of time for a particular deposition.  If the Parties cannot agree on the length of a deposition, a Party may move for an extension of the seven hour limit; provided that in no event may a deposition last more than seven hours in a given day absent agreement of counsel or order of this Court.

2.      The party noticing the deposition of an opposing party, its officers, present employees, present agents, and present consultants shall be entitled to the full time allowed under Fed. R. Civ. P 30(d)(1).  The deposed party (or party whose officers, employees, or agents are deposed) may extend the deposition beyond the time allowed under Fed. R. Civ. P 30(d)(1) in order to examine the witness; however, the noticing

party shall presumptively be entitled to an additional amount of deposition time equal to half the time used by the extending party.

3.      For the depositions of former employees, agents, or consultants of Bard both sides shall have the opportunity to examine the witnesses on common issues for up to a total of eight (8) hours.  The deposition time shall be allocated as follows: six (6) hours to Plaintiffs, and two (2) hours to Bard.  If Bard believes unusual circumstances exist to alter the allocation of time, it shall notify Plaintiffs' Co-Lead Counsel not later than ten (10) days prior to the deposition date and the parties shall meet and confer as to whether to reallocate time and, if so, on the reallocation.

4.      For all other fact witnesses, both sides shall have equal time to examine the witnesses.

5.      Depositions should normally be completed by no later than 7:30 p.m. on the date noticed.  If for some reason the deposition cannot be completed by 7:30 p.m., the parties and the witness may agree to extend the deposition beyond 7:30 p.m.  However, if both parties and the witness are not in agreement to extend the deposition beyond 7:30 p.m., the parties and witness shall meet and confer regarding the date and time for completion of the deposition.

I.      Supplemental Depositions

Parties added to this MDL after a deposition has been taken may, within sixty (60) days after becoming a party in this Court, request permission to conduct a supplemental deposition of the deponent. If permitted, the deposition shall be treated as the resumption of the deposition originally noticed. Supplemental depositions may not be taken without leave of court or agreement of the parties.

J.      Deposition Disputes

Disputes arising during depositions that cannot be resolved by agreement and that, if not immediately resolved, will significantly disrupt the discovery schedule, require rescheduling of the deposition, or possibly result in the need to conduct a supplemental deposition, shall be presented to the Court by telephone. In the event the Court is not

available, the parties will continue with the deposition making a full reservation of rights on the record concerning the dispute at issue to preserve it for a ruling by the Court at the earliest possible time.

Dated this 21st day of June, 2016.

_David G. Campbell_

_____
David G. Campbell
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC<br><br>**CASE MANAGEMENT ORDER NO. 15** |

13 The Court held a fifth case management conference with the parties on August 23,

14 2016. The conference addressed ongoing matters and issues identified in Case

15 Management Order No. 13 (Doc. 2238).

16 **A.     Bellwether Selection.**

17 The parties have made good progress in selecting bellwether cases for PFS/DFS

18 Group 1. *See* Doc. 1662. Two Plaintiffs among the cases selected by Defendants have

19 declined to provide *Lexecon* waivers. At the case management conference, counsel for

20 these Plaintiffs explained the Plaintiffs' reasons for not providing waivers. After hearing

21 the reasons, and comments by defense counsel, the Court concluded that Plaintiffs are not

22 attempting to manipulate the bellwether selection process by strategically withholding of

23 waivers, and that counsel for the two Plaintiffs provided colorable reasons for declining

24 waivers. Based on these findings, the Court could identify no basis upon which to order

25 these Plaintiffs to waive their rights under *Lexecon*. As a result, Defendants should

26 identify two more cases and the parties should continue to follow the procedures in Case

27 Management Order No. 11 (Doc. 1662).

28

**B.    ESI Discovery.**

The parties have encountered some difficulties with respect to the discovery of ESI from "shared" space on Defendants' servers and computers.  The Court expressed concern that this issue remains unresolved so late in the litigation.  To ensure that the issue is resolved promptly, the Court entered the following order.  The parties will meet (as they had already planned to do) today to address this issue.  Defense experts will be present to propose a method for locating relevant ESI on shared space.  If the parties have not reached agreement on this issue by August 30, 2016, the Court will hold a conference call on **August 31, 2016, at 10:00 a.m.**  The Court intends to appoint a Special Master if a dispute remains, and to require the Special Master to render a decision on this issue no later than September 16, 2016, so production can occur by the end of September.  If the parties reach agreement, they can simply notify the Court that a conference call is not necessary on August 31, 2016.  In all events, the Court expects Defendants to complete production of ESI from the shared space by the end of September.

The parties addressed Plaintiffs' request to obtain ESI discovery from Defendants' overseas operations.  Specifically, Plaintiffs want to obtain marketing materials or regulatory communications, from entities operating in foreign countries, that differ from marketing and regulatory statements Defendants have made in the United States.  Plaintiffs have not identified any reason to believe that such different communications have occurred, and Mr. Carr apparently testified that Defendants' marketing and regulatory communications all originate in Defendants' United States operations.  The Court is inclined to conclude that the chances of finding relevant and helpful information through such discovery are simply too remote to justify the effort required to search electronic communications in 15 to 20 overseas companies in order to find statements that might be inconsistent with the myriad marketing and regulatory communications Defendants have issued in the United States.  To ensure that the Court makes a fully-informed decision on this issue, however, Plaintiffs may file a short memorandum by the close of business on **August 25, 2016**, stating their reasons for believing either that Mr.

Carr's description is incorrect or that there is good reason to suspect that relevant information can be obtained from foreign sources without undue burden. If the Court concludes that a response is required by Defendants, the Court will order Defendants to provide that response promptly. Otherwise, Defendants need not respond, and the Court will issue a ruling on this matter.

**C. Mature Cases.**

The parties have indicated that remand of the mature cases identified in previous Case Management Orders should await completion of expert discovery in this case because such discovery may be relevant in the trials of the mature cases. The parties asked whether any case-specific discovery should occur in this MDL with respect to mature cases, and the Court concluded that it should not. Case-specific discovery should occur after remand.

**D. Class Action Schedule.**

The Court and the parties discussed a schedule for class certification discovery and briefing in the *Barraza* case, No. CV16-1374. The Court established a schedule that will be contained in a separately issued Case Management Order.

**E. Beasley Deposition.**

The Court concludes that Mr. Beasley, who is a Group President at C.R. Bard, qualifies for consideration under the apex deposition doctrine. The relevant inquiry, therefore, is (1) whether he has unique, first-hand, non-repetitive knowledge of the facts at issue in this case, and (2) whether Plaintiffs have exhausted other less-intrusive discovery methods. *See Klungvedt v. UNUM Grp.*, 2013 WL 551473, at *2 (D. Ariz. Feb. 13, 2013). The parties shall file three page memoranda by the close of business on **August 26, 2016**, addressing these issues.

**F. Multi-Plaintiff Cases.**

The Court discussed with the parties a multi-plaintiff case recently transferred to this MDL (CV16-2442), and a second multi-plaintiff case that may be transferred in the future. Defendants have filed a motion to dismiss in the recently transferred case. *See*

No. CV16-2442, Docs. 9, 10. Plaintiffs shall file a response to this motion no later than **September 2, 2016**, and Defendants shall file a reply on or before **September 13, 2016.** The Court will deal with the coming multi-plaintiff case when it arrives.

**G.      Privilege Issues.**

The parties shall resolve remaining privilege issues by **September 28, 2016**. If the issues are not resolved by that date, the parties promptly shall place a conference call to the Court.

**H.      Duplicative Filings.**

The parties stated that three Plaintiffs have appeared in at least two cases, represented by different attorneys, in this MDL. The Court directed the Plaintiffs' Steering Committee to confer with the attorneys representing these Plaintiffs in an effort to obtain agreement regarding dismissal of one of the duplicative cases. Plaintiffs shall report on this effort in the joint report to be filed before the next Case Management Conference. If duplicative filings remain, the parties should propose a motion method and schedule under which the Court can resolve this issue.

**I.      Plaintiffs' Objections.**

Plaintiffs have objected to discovery of communications between Plaintiffs and the FDA related to the FDA warning letter, communications between Plaintiffs and NBC related to NBC news stories about the products at issue in this case, and third-party financing that may be in place with respect to Plaintiffs in this MDL. The Court discussed these issues with the parties, and decided that focused briefing is needed. By the close of business on **September 2, 2016**, the parties shall file nine-page memoranda addressing these three issues.

**J.      Deceased Plaintiffs.**

The Court has, unfortunately, received notices of the deaths of three Plaintiffs: John L. Kuhn, Jr. (Doc. 2332), Olan Jones (Doc. 2850), and Anthony C. Docimo (Doc. 3101). The Plaintiffs' Steering Committee shall contact Plaintiffs' counsel in these cases. Before the next status conference, Plaintiffs' counsel shall decide whether the

cases survive the death of the Plaintiff in each case, and shall file documents with respect to their position on the survival of claims. Plaintiffs' counsel shall report on the status of these cases and any additional cases that may arise at the next Case Management Conference.

**K.     PSC Report.**

Plaintiffs' counsel stated that a report from the Plaintiffs' Steering Committee is due at the end of September 2016, and requested an extension to October 31, 2016 for the filing of the report. The Court agreed. After the hearing, the Court reviewed Case Management Order No. 6 (Doc. 372) and noted that the most recent quarterly report was due at the end of the second week of August (Doc. 372 at 13). The Court is not certain what report Plaintiffs' counsel were referring to at the conference, or whether the report required in Case Management Order No. 6 has been provided. Plaintiffs' counsel shall, within the next week, communicate with the Court regarding this issue.

**L.     Next Case Management Conference.**

The Court will hold the next Case Management Conference on **October 14, 2016 at 10:00 a.m.** The parties shall provide the Court with a joint status report on issues mentioned in this Order and any issues they wish to address at the conference on or before **October 10, 2016.**

Dated this 24th day of August, 2016.

David G. Campbell
United States District Judge

- 5 -

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC |
| THIS DOCUMENT RELATES TO<br>*Barraza, et al. v. C. R. Bard, Inc., et al.*,<br>Case No. CV-16-1374-PHX-DGC. | **CASE MANAGEMENT ORDER NO. 16**<br><br>**(Deadlines Related to *Barraza, et al. v. C. R. Bard, Inc., et al.*)** |

The Court enters the following Case Management Order regarding certain deadlines in the case *Barraza, et al. v. C. R. Bard, Inc., et al.*, Case No. CV-16-1374-PHX-DGC:

A.      Class Certification Fact Discovery

1.      Fact discovery related to class certification shall be completed no later than **January 9, 2017.**

B.      Class Certification Expert Disclosures and Discovery

1.      With respect to experts relied upon to support class certification, Plaintiffs shall provide full and complete expert disclosures and reports as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure no later than **January 13, 2017**.

2.      With respect to experts relied upon to oppose class certification, Defendants shall provide full and complete expert disclosures and reports as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure no later than **February 24, 2017**.

3.      With respect to rebuttal experts relied upon to support or oppose class certification, if any, the party so relying shall submit full and complete expert disclosures

1   and reports as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure

2   no later than **March 24, 2017**.

3       4.    Depositions of class certification-related experts shall be completed no later

4   than **April 28, 2017**.

5   C.    <u>Motion for Class Certification</u>

6       1.    A motion for class certification shall be filed no later than **May 12, 2017**.  A

7   response shall be filed no later than **June 9, 2017**.  A reply shall be filed on

8   **June 30, 2017**.  Such motion must comply in all respects with the Federal Rules of Civil

9   Procedure and the Local Rules.

10      A hearing on the motion for class certification shall be held on **July 14, 2017**

11  **at 2:30 p.m.** before the Honorable David G. Campbell, 401 West Washington Street,

12  Courtroom 603, Phoenix, Arizona 85003.

13      Dated this 24th day of August, 2016.

14

15

16  _____
          David G. Campbell

17          United States District Judge

18

19

20

21

22

23

24

25

26

27

28

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MD 15-02641 |
| | **CASE MANAGEMENT ORDER NO. 17** |
| | **(Stipulation and Order Concerning Protective Order and Redactions of Material from Defendants' Expedited ESI Production)** |

To expedite document production of ESI from Defendants, the parties, through their respective counsel, have agreed to a primarily "no-eyes-on" document production as to relevancy while still performing a privilege review for ESI Defendants will be producing subsequent to this Order. That procedure requires certain changes to protection and requirements in the protective order (Doc. 269) and Case Management Order No. 7 and corresponding Exhibit A (Doc. 401) for ESI produced pursuant to this process. To the extent that any of the below provisions are inconsistent with either the protective order (Doc. 269) or Case Management Order No. 7 and corresponding Exhibit A (Doc. 401), the below provisions shall control all documents produced pursuant to this Order.

THEREFORE, IT ORDERED as follows:

The parties have agreed on an ESI production process (the "Process"). All ESI produced by Bard pursuant to the Process will be subject to the following terms:

1    1.     At the time of production, Bard will identify the documents or ESI as being

2  produced pursuant to the Process and subject to the restrictions of this Case Management

3  Order ("CMO").

4    2.     Plaintiffs will maintain all documents and ESI produced pursuant to the

5  Process as confidential and not use the documents or ESI for any purpose outside of their

6  own review and analysis until they have complied with this CMO.

7    3.     Until Plaintiffs identify the documents or ESI for use, access to the

8  documents and ESI is limited to attorneys and staff at PLC firms and their consultants

9  who execute the attached addendum and agree to be subject to the restrictions of this

10  CMO.

11    4.     If Plaintiffs intend to use a document or ESI identified by Defendants as

12  produced pursuant to the Process for any purpose other than as set forth in paragraph 2

13  above, they shall notify Defendants in writing (or by email) of their intent to use the

14  document or ESI, identifying the document or ESI by production Bates number(s).  Once

15  Plaintiffs have done so, the document or ESI shall be deemed conditionally designated as

16  "Confidential" under the protective order (Doc. 269) and subject to the restrictions of that

17  Order (including filing under seal).  Such designation shall not negate the additional

18  protections and procedures afforded by Paragraphs 6, 7, 9, and 10 of this CMO.

19    5.     Defendants shall thereafter have 30 days to affirmatively designate the

20  document or ESI as Confidential pursuant to the Protective Order (doc. 269) in which case

21  it will be treated as Confidential under that Order as of the date of initial production.  Such

22  designation may be made by separate writing that identifies the document or ESI by

23  production Bates number(s).  Plaintiffs may challenge such confidentiality designations in

24  accordance with the terms of the Protective Order (doc. 269).

25    6.     Defendants shall have the right to identify any document, file, or other form

26  of ESI produced pursuant to the Process as both being irrelevant to the matters in dispute

27  in this MDL and containing trade secret or other confidential information and to "claw

28  back" such ESI or documents from the production.  After Plaintiffs identify a particular

document, file, or other ESI for intended use pursuant to Paragraph 4, Defendants shall have 30 days to seek claw back of the particular document pursuant to this paragraph; this latter requirement does not apply to documents, files, and other ESI produced pursuant to the Process that have not been identified for use by Plaintiffs pursuant to Paragraph 4, which may be clawed back at any time.

7. Defendants shall have the right to identify any such documents or ESI as subject to the requirements of CMO No. 7 (Doc. 401) and to require the redaction of the information set forth in that Order; in that event, Defendants shall provide Plaintiffs with a redacted version of the subject documents or ESI with the same production Bates number(s) and Plaintiffs shall destroy any unredacted copies or versions of the document that they possess.

8. Plaintiffs shall have the right to challenge any designation by Defendants under paragraphs 6 or 7 by submission of the ESI or document to the Court under seal and any filings that refer to the protected substance of the ESI or document must, likewise, be made under seal.

9. Federal Rule of Evidence 502(d) protection for privileged information produced pursuant to the Process:

    a. Pursuant to Federal Rule of Evidence 502(d), production or disclosure pursuant to the Process of the substance or content of documents, materials, or other information that is protected by the attorney-client privilege, work-product protection, or any other privilege or protection shall not amount to waiver of the privilege and/or protection in this MDL, or in any other federal or state proceeding.

    b. If Plaintiffs identify a document, material, or other information in the documents and ESI produced pursuant to the Process that reasonably appears to be protected by any privilege or other protection, they shall promptly notify Defendants in writing or email. If the Defendants determine that the document, material, or other information is privileged or

1   otherwise protected, it shall make such an assertion in writing within 30

2   days of receipt of notification.  Once the privilege or protection is asserted,

3   the parties shall follow the process discussed in Federal Rule of Civil

4   Procedure 26(b)(5)(B).  Failure to assert the privilege or protection within

5   30 days of receipt of notification shall amount to waiver of any privilege or

6   protection only of the document, material, or other information identified in

7   the notification, subject to Federal Rule of Evidence 502(a).

8       c.  For any document, material, or other information produced or disclosed

9           during discovery, and not identified pursuant to section (b) of this

10          Paragraph, Defendants shall assert any claim of privilege or protection in

11          writing (including by email) within 30 days after Plaintiffs identify the

12          material for use pursuant to Paragraph 4 of this CMO.  Once the privilege or

13          protection is asserted, the parties shall follow the process discussed in

14          Federal Rule of Civil Procedure 26(b)(5)(B).  Failure to assert the privilege

15          or protection shall amount to waiver of the privilege or protection only of

16          the document, material, or other information used, subject to Federal Rule of

17          Evidence 502(a).

18      d.  Unless waived under sections (b) or (c), at any time, a party that produces

19          any document, material, or other information that it believes to be protected

20          by the attorney-client privilege, work-product protection, or any other

21          privilege or protection may assert the privilege or protection in writing.

22          Once the privilege or protection is asserted in writing, the parties shall

23          follow the process discussed in Federal Rule of Civil Procedure

24          26(b)(5)(B).

25      10.  To the extent that the documents or ESI produced pursuant to the Process

26  contain any adverse event reporter names or information of a patient who is not a party to

27  this litigation and which would otherwise be redacted in accordance with CMO No. 7,

28  Plaintiffs and their counsel and agents shall not contact the patient or reporter of an

4

adverse event unless and until the parties go through the processes outlined in Paragraphs 6 and 8 of this CMO with respect to the redaction of information and this Court determines the information is not subject to redaction.

Dated this 13th day of September, 2016.

_____
David G. Campbell
United States District Judge

1

**EXHIBIT A**

2

**IN THE UNITED STATES DISTRICT COURT**

3

**FOR THE DISTRICT OF ARIZONA**

4

**IN RE:  BARD IVC FILTERS
PRODUCTS LIABILITY LITIGATION**

No. MD-15-02641-PHX-DGC

5

**AGREEMENT TO MAINTAIN
CONFIDENTIALITY**

6

7

8

9       I, _____ (Name), have been given and have read a copy of the

10   Case Management Order No. __, dated _____, 2016 in the case of MDL No.

11   2641, pending in the United States District Court District of Arizona.  I understand and

12   will strictly adhere to the contents of said Order. I understand that produced material

13   disclosed to me is subject to the Order of this Court and that I am prohibited from

14   copying, disclosing, or otherwise using such material except as provided by said court

15   Order.  I understand that my unauthorized disclosure of any information protected by the

16   Order or contact of a patient or reporter of an adverse event in violation of the Order may

17   constitute contempt of court and I agree to be personally subject to the jurisdiction of this

18   Court for the purpose of enforcing my obligations under this Agreement, the Order, and

19   any contempt proceeding that may be instituted for my violation of the terms of this

20   Acknowledgment and the Order.  I also understand that my signature on this "Agreement

21   to Maintain Confidentiality", indicating my agreement to be bound by the terms of the

22   Case Management Order, is required before I may be allowed to receive and review any

23   produced document and materials that are produced pursuant to the Process as set forth in

24   the Case Management Order.

25

26   Date: _____          Print Signature:_____

27                                                      Signature:_____

28

6

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC<br><br>**CASE MANAGEMENT ORDER NO. 18** |

The Court held a sixth case management conference with the parties on October 14, 2016. The conference addressed ongoing matters and issues identified in Case Management Order No. 15 (Doc. 3214) and the parties' joint report (Doc. 3636).

**A.      Adjustment of Discovery Schedule.**

Plaintiffs ask that the discovery schedule be extended by approximately four months in light of substantial document production that has occurred in the last few weeks, the need to review the documents, and the likely need for additional depositions in light of the new documents. Defendants oppose the request.

A case management schedule entered under Rule 16 of the Federal Rules of Civil Procedure "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4); *see Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). Good cause exists when a deadline "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 Advisory Comm. Notes (1983 Am.). Thus, "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609; *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). Where that party has not been diligent, the inquiry ends and

1    the motion is denied.  *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir.2002);
2    *Johnson*, 975 F.2d at 609.

3          On the basis of the discussion at the case management conference and previous
4    conferences, the Court concludes that Plaintiffs have been reasonably diligent in seeking
5    the production of ESI in this litigation.  ESI discovery has been monitored by the Court
6    from the start of this litigation.  *See* Docs. 249 at 2; 519 at 4-5; 1259; 1319 at 3; 2238 at
7    1; 3214 at 2.  Throughout this process, it has appeared that Plaintiffs and Defendants have
8    worked with reasonable diligence to understand the location and nature of ESI and agree
9    upon search methods.  Some of the parties' progress was slowed when Defendants
10   concluded that they must change ESI vendors in August 2016.  Although it is true that
11   final search terms were not arrived at until September 14, 2016, the parties had agreed
12   upon and produced much ESI before that date and worked with reasonable diligence up
13   to that date.

14         Plaintiffs report that they have received production of more than 800,000
15   documents in the last few weeks.  Clearly, Plaintiffs are unable to complete their review
16   of these documents (totaling more than 3 million pages) by the close of discovery on
17   October 28, 2016.  Plaintiffs say they need about six weeks to review the documents, and
18   then 10 to 12 weeks for depositions.  The Court does not agree that this much time is
19   needed for depositions.  The Court will extend the discovery schedule as follows.[1]  **The**
20   **parties are advised that the Court does not intend to grant additional extensions.**

21         Deadline for completing fact discovery:              February 3, 2017
22         Deadline for Plaintiffs' expert disclosures:          March 3, 2017

23

24         [1] Following the case management conference, the Court concluded that review of
25   the documents and additional depositions could be completed in less time, and drafted
     this order accordingly.  The Court then received a conference call from the parties stating
     that Defendants plan to produce an additional one million pages of documents tomorrow.
26   Plaintiffs' counsel stated that this would delay their predictive-coding search of the
     documents by one week.  It also will result in additional documents to review, although,
27   as Defendants have noted, the production has been made without eyes-on review by
     Defendants (to expedite the production, and with Plaintiffs' consent) and therefore
28   includes a potentially large amount of irrelevant material.  Following the conference call,
     the Court decided to grant a longer extension to account for this additional production.

Deadline for Defendants' expert disclosures: April 14, 2017

Deadline for rebuttal expert disclosures: May 12, 2017

Deadline for expert depositions: July 14, 2017

The Court notes that expert disclosures on these dates must be full and complete as required by Rule 26(a)(2)(A)-(C), and rebuttal expert disclosures shall be limited to responding to opinions of initial experts.

**B.     Adjustment of Bellwether Schedule.**

Because the parties likely will be busy completing fact discovery in January, the Court concludes that the bellwether schedule in CMO 11 (Doc. 1662) should be adjusted slightly. The deadlines for forming Discovery Group 1 will remain as set forth in CMO 11, § IV. Section V.A.2 of CMO 11 is amended as follows:

> After having met and conferred, and by **April 21, 2017**, the parties shall exchange lists of six (6) proposed selections from Discovery Group 1 for bellwether plaintiffs, and order of trials. The parties will meet and confer in an effort to agree upon a group of six (6) cases to constitute Bellwether Group 1, which shall be done in a manner consistent with achieving the goal of proportionate identification of representative cases. If the parties are unable to agree on six (6) cases, the parties shall submit to the Court, outside of the ECF system, by **April 28, 2017**, their proposed lists and a memorandum in support of their selections and in opposition, if applicable, to the opposing party's selections. Within seven (7) business days of such submission, the parties may submit a response to the opposing party's memorandum regarding selection of cases. The parties propose that the Court then select the final group of six (6) cases to form Bellwether Group 1.[2]

The parties should confer on the discovery to be completed between the December 2016 selection of Discovery Group 1 and the bellwether selection process set forth above. In the Court's view, all discovery need not be completed in every case in Discovery Group 1 before the bellwether cases are selected, but enough discovery will be needed to

---

[2] The Court set these new dates to fall after each side has made their initial expert disclosures, thus ensuring that the parties can consider the other side's major expert opinions in making their bellwether selections.

ensure that the parties have a reasonably informed basis for making selections. The parties should be prepared at the next case management conference to propose the nature and timing of discovery to occur during this period.

The Court's intention will be complete bellwether selection in early May, and set a schedule that will permit all discovery, and appropriate motion practice, to be completed in time to hold the first bellwether trial in the Fall of 2017. Other bellwether trials may also be possible before the end of 2017.

**C.      Depositions.**

The Court will permit the additional depositions of Drs. Kaufman (4 hours), Venbrux (3 hours), Trerotola (4 hours), and Stavropolous (4 hours). The Court concludes that these doctors have information relevant to the thousand-plus cases that are now part of this MDL and that could not reasonably have been inquired into during their previous, shorter depositions. In scheduling these depositions, the parties should be considerate of the doctors' busy schedules. These depositions may be scheduled any time between now and the new fact discovery deadline of February 3, 2017. If these doctors have filed motions to quash in other districts, the parties should consider the applicability of Rule 45(f). The 2013 Advisory Committee note to Rule 45(f) states that exceptional circumstances – as required in one application of the provision – may exist "in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion[.]"

The Court concludes that Plaintiffs have had ample opportunity to question Dr. Lehmann in the 11 hours of deposition already completed and the Texas hearing at which he testified, and will not permit his further deposition. The re-deposition of John McDermott will not occur for reasons agreed upon during the case management conference.

The Court will permit the following depositions: Kevin Boyle, Scott Randall, Mike Randall, Mark Wilson, Kim Romney, Dr. Lynch, and Dr. Cohen. These depositions may occur between now and the February 3, 2017 deadline. The Court

concludes that each of these witnesses has relevant information, and that their depositions are proportional to the needs of this MDL.

**D.      Special Master.**

The Court will not appoint a special master to oversee depositions. The Court does not believe that the experienced and professional counsel in this case are incapable of conducting a proper deposition without supervision. If problems arise in any deposition, however, the parties should call the Court during the deposition. The Court has instructed staff that the call is to be taken if at all possible. If the undersigned judge is out of town in rules committee or other meetings, staff will be instructed to transfer the call to the judge or arrange a time later that day for a conference call. Such out-of-town calls may not be on the record. The Court will endeavor to make itself available to resolve any issues that arise during depositions.

**E.      Next Case Management Conference.**

The Court will hold the next Case Management Conference on **December 9, 2016 at 3:00 p.m.** The parties shall provide the Court with a joint status report on or before **December 5, 2016.**

Dated this 14th day of October, 2016.

David G. Campbell
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC<br><br>**AMENDED CASE MANAGEMENT ORDER NO. 17**<br><br>(Stipulation and Order Concerning Protective Order and Redactions of Material from Defendants' Expedited ESI Production) |

To expedite document production of ESI from Defendants, the parties, through their respective counsel, have agreed to a primarily "no-eyes-on" document production as to relevancy while still performing a privilege review for ESI Defendants will be producing subsequent to this Order.  That procedure requires certain changes to protection and requirements in the Stipulated Protective Order (Doc. 268) and Case Management Order No. 7 and corresponding Exhibit A (Doc. 401) for ESI produced pursuant to this process.  To the extent that any of the below provisions are inconsistent with either the protective order (Doc. 268) or Case Management Order No. 7 and corresponding Exhibit A (Doc. 401), the below provisions shall control all documents produced pursuant to this Order.

This Amended Case Management Order replaces in its entirety the original Case Management Order No. 17 and any inconsistent provisions in the Stipulated Protective Order (Doc. 268), including the attached revised Exhibit A.THEREFORE, IT ORDERED as follows:

The parties have agreed on an ESI production process (the "Process"). All ESI produced by Defendants pursuant to the Process will be subject to the following terms:

1.     At the time of production, Defendants will identify the documents or ESI as being produced pursuant to the Process and subject to the restrictions of this Case Management Order (the "Process ESI").

2.     The Process ESI shall be subject to the Stipulated Protective Order (Doc. 268) entered in this case and the terms of this CMO. Nothing in this CMO shall prevent the use of any Process ESI in other actions brought by the plaintiff's counsel, so long as a substantially comparable protective order, including both the terms of the Stipulated Protective Order (Doc. 268) and this CMO, is entered in those other actions. Paragraph 12 of the Stipulated Protective Order (Doc. 268) is hereby amended consistent with this Paragraph.

3.     Prior to using any document or ESI from the Process ESI as part of a filing, at a deposition, or at a trial or hearing in this matter, Plaintiffs shall make a good faith effort to identify whether the document or ESI contains any information that is subject to redaction under Case Management Order No 7 and corresponding Exhibit A (Doc. 401) and to redact any such information in accordance with that Order and redaction protocol.

4.     Defendants shall independently have the right to identify any documents or ESI from the Process ESI, including documents identified by Plaintiffs pursuant to Paragraph 3, as subject to the requirements of Case Management Order No. 7 (Doc. 401) and to require the redaction of the information set forth in that Order; in that event, Defendants shall provide Plaintiffs with a redacted version of the subject documents or ESI with the same production Bates number(s) and Plaintiffs shall destroy any unredacted copies or versions of the document that they possess.

5.     Defendants shall have the right to identify any document, file, or other form of ESI produced pursuant to the Process as both being irrelevant to the matters in dispute in this MDL and containing trade secret or other confidential information and to "claw back" such ESI or documents from the production.  After Plaintiffs use a document or ESI

1    from the Process ESI as part of a filing, at a deposition, or at a trial or hearing in this

2    matter, Defendants shall have 30 days to seek claw back of the particular document

3    pursuant to this Paragraph; this latter requirement does not apply to Process ESI that has

4    not been used by Plaintiffs as part of a filing, at a deposition, or at a trial or hearing in this

5    matter, which may be clawed back at any time.

6         6.      Plaintiffs shall have the right to challenge any designation or claw back by

7    Defendants under Paragraphs 4 or 5 by submission of the ESI or document to the Court

8    under seal, and any filings that refer to the protected substance of the ESI or document

9    must, likewise, be made under seal.

10        7.      Federal Rule of Evidence 502(d) protection for privileged information

11   produced pursuant to the Process:

12             a.  Pursuant to Federal Rule of Evidence 502(d), production or disclosure

13                 pursuant to the Process of the substance or content of documents, materials,

14                 or other information that is protected by the attorney-client privilege, work-

15                 product protection, or any other privilege or protection shall not amount to

16                 waiver of the privilege and/or protection in this MDL, or in any other

17                 federal or state proceeding.

18             b.  If Plaintiffs identify a document, material, or other information in the

19                 documents and ESI produced pursuant to the Process that reasonably

20                 appears to be protected by any privilege or other protection, they shall

21                 promptly notify Defendants in writing or email.  If the Defendants

22                 determine that the document, material, or other information is privileged or

23                 otherwise protected, it shall make such an assertion in writing within 30

24                 days of receipt of notification.  Once the privilege or protection is asserted,

25                 the parties shall follow the process discussed in Federal Rule of Civil

26                 Procedure 26(b)(5)(B).  Failure to assert the privilege or protection within

27                 30 days of receipt of notification shall amount to waiver of any privilege or

28

protection only of the document, material, or other information identified in the notification, subject to Federal Rule of Evidence 502(a).

c. For any document, material, or other information produced or disclosed during discovery, and not identified pursuant to section (b) of this Paragraph, Defendants shall assert any claim of privilege or protection in writing (including by email) within 30 days after Plaintiffs use the document or ESI as part of a filing, at a deposition, or at a trial or hearing in this matter. Once the privilege or protection is asserted, the parties shall follow the process discussed in Federal Rule of Civil Procedure 26(b)(5)(B). Failure to assert the privilege or protection shall amount to waiver of the privilege or protection only of the document, material, or other information used, subject to Federal Rule of Evidence 502(a).

d. Unless waived under sections (b) or (c), at any time, a party that produces any document, material, or other information that it believes to be protected by the attorney-client privilege, work-product protection, or any other privilege or protection may assert the privilege or protection in writing. Once the privilege or protection is asserted in writing, the parties shall follow the process discussed in Federal Rule of Civil Procedure 26(b)(5)(B).

8. To the extent that the documents or ESI produced pursuant to the Process contain any adverse event reporter names or information of a patient who is not a party to this litigation and which would otherwise be redacted in accordance with Case Management Order No. 7, Plaintiffs and their counsel and agents shall not contact the patient or reporter of an adverse event unless and until the parties go through the processes outlined in Paragraphs 5 and 7 of this Case Management Order with respect to

redaction of information and this Court determines the information is not subject to redaction.

Dated this 15th day of November, 2016.

_____
David G. Campbell
United States District Judge

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **IN RE: BARD IVC FILTERS**<br>**PRODUCTS LIABILITY LITIGATION** | No. MD-15-02641-PHX-DGC<br><br>**AGREEMENT TO MAINTAIN**<br>**CONFIDENTIALITY** |

I, _____ (Name), as a principal in _____

("Law Firm"), have been given and have read a copy of the Amended Case Management

Order No. 17 and the Stipulated Protective Order (Doc 268) (the "Orders") in the case of

MDL No. 2641, pending in the United States District Court District of Arizona, as have

all members of the Law Firm working on this litigation. We understand and will strictly

adhere to the contents of said Orders. We understand that produced material disclosed to

us is subject to the Orders of this Court and that we are prohibited from copying,

disclosing, or otherwise using such material except as provided by said court Orders. We

understand that any member of the Law Firm's unauthorized disclosure of any

information protected by the Orders or contact of a patient or reporter of an adverse event

in violation of the Orders may constitute contempt of court, and we agree to be personally

subject to the jurisdiction of this Court for the purpose of enforcing our obligations under

this Agreement, the Orders, and any contempt proceeding that may be instituted for the

Law Firm's violation of the terms of this Acknowledgment and the Orders. I also

understand that my signature on this "Agreement to Maintain Confidentiality," indicating

my agreement, the agreement of the members of the Law Firm working on this litigation

and the Law Firm's agreement to be bound by the terms of the Orders, is required before

me and the members of the Law Firm may be allowed to receive and review any produced

document and materials that are protected under the Orders.

Date: _____        Print Signature:_____

                                             Signature:_____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| IN RE: BARD IVC FILTERS | MDL 15-21641 PHX DGC |
|---|---|
| <u>PRODUCTS LIABILITY LITIGATION</u> | **AMENDED CASE MANAGEMENT** |
| This Order Relates to:  All Actions | **ORDER NO. 1** |

This Court set appointments of Plaintiffs' leadership in the original Case Management Order No. 1 (Doc. 248) on October 30, 2015 for a term of one year.  The Court has reviewed Plaintiffs' Co-Lead/Liaison Counsel's Memorandum Re Leadership Appointments (Doc. 3847) and issues this Amended Case Management Order No. 1 for the appointment of individuals to Plaintiffs' leadership in this MDL for the term of this Order.

**I.      Plaintiffs' Leadership Counsel Appointments**

The Court having considered all of the applications submitted and other relevant information, appoints the following plaintiffs' counsel to leadership positions, as indicated and to be known as "Plaintiffs Leadership Counsel" (PLC):

| Plaintiffs' Co-Lead/Liaison Counsel and State/Federal Liaison Counsel | |
|---|---|
| Robert W. Boatman | Gallagher & Kennedy, PA<br>2575 E. Camelback Rd., Ste. 1100<br>Phoenix, AZ 85016 |
| Ramon R. Lopez | Lopez McHugh, LLP<br>100 Bayview Cir., Ste. 5600<br>Newport Beach, CA 92660 |

| Plaintiffs' Executive Committee (PEC) | |
|---|---|
| Julia Reed Zaic | Heaviside Reed Zaic<br>312 Broadway St., Ste. 203<br>Laguna Beach, CA 92651 |
| Howard L. Nations | The Nations Law Firm<br>3131 Briarpark Dr., #208<br>Houston, TX 77042 |
| Russell W. Budd | Baron & Budd, P.C.<br>3102 Oak Lawn Ave., Ste. 1100<br>Dallas, TX 75219 |
| Wendy R. Fleishman | Lieff, Cabraser, Heimann & Bernstein, LLP<br>250 Hudson St., 8th Floor<br>New York, NY 10013 |

| Plaintiffs' Steering Committee (PSC) | |
|---|---|
| Shannon Clark | Gallagher & Kennedy, PA<br>2575 E. Camelback Rd., Ste. 1100<br>Phoenix, AZ 85016 |
| John A. Dalimonte | Karon & Dalimonte, LLP<br>85 Devonshire St., Ste. 1000<br>Boston MA, 02109 |
| Ben C. Martin | Law Offices of Ben C. Martin<br>3219 McKinney Ave., Ste. 100<br>Dallas, TX 75204 |
| Joseph R. Johnson | Babbitt & Johnson, PA<br>1641 Worthington Rd., #100<br>West Palm Beach, FL 33409 |
| Julia Reed Zaic | Heaviside Reed Zaic<br>312 Broadway St., Ste. 203<br>Laguna Beach, CA 92651 |
| Howard L. Nations | The Nations Law Firm<br>3131 Briarpark Dr., #208<br>Houston, TX 77042 |
| Russell W. Budd | Baron & Budd, P.C.<br>3102 Oak Lawn Ave., Ste. 1100<br>Dallas, TX 75219 |

| Thomas P. Cartmell | Wagstaff & Cartmell, LLP<br>4740 Grand Ave., #300<br>Kansas City, MO 64112 |
|---|---|
| Margaret Branch | Branch Law Firm<br>2025 Rio Grande Blvd, NW<br>Albuquerque, NM 87104 |
| Wendy R. Fleishman | Lieff, Cabraser, Heimann & Bernstein, LLP<br>250 Hudson St., 8th Floor<br>New York, NY 10013 |
| Donald A. Migliori | Motley Rice, LLC<br>321 South Main St., 2nd Floor<br>Providence, RI 02903 |
| Sheila M. Bossier | Freese & Goss, PLLC<br>1520 North State St.<br>Jackson, MS 39202 |
| Stuart L. Goldenberg | Goldenberg Law, PLLC<br>800 Lasalle Ave., #2150<br>Minneapolis, MN 55402 |
| Christopher T. Kirchmer | Provost Umphrey Law Firm, LLP<br>490 Park St., P.O. Box 4905<br>Beaumont, TX 77704 |
| Michael A. Kelly | Walkup, Melodia, Kelly & Schoenberger<br>650 California St.<br>San Francisco, CA 94108 |
| Matthew McCarley | Fears Nachawati Law Firm<br>4925 Greenville Ave., Ste. 715<br>Dallas, TX 75206 |
| Hadley L. Matarazzo | Faraci Lange, LLP<br>First Federal Plaza<br>28 East Main St., Ste. 1100<br>Rochester, NY 14614 |
| Eric M. Terry | TorHoerman Law, LLC<br>101 W. Vandalia<br>Edwardsville, IL 62025 |
| Joseph A. Osborne | Osborne & Associates Law Firm, PA<br>433 Plaza Real, Ste. 271<br>Boca Raton, FL 33432 |

| | |
|---|---|
| Michael T. Gallagher | The Gallagher Law Firm, LLP<br>2905 Sackett Street<br>Houston, TX 77098 |
| Nate Van Der Veer | Farris, Riley & Pitt LLP<br>The Financial Center<br>505 20th Street North<br>Birmingham, AL 35203 |
| Matthew Schultz | Levin Papantonio Thomas Mitchell<br>Rafferty Proctor, PA<br>316 S. Baylen St.<br>Suite 600<br>Pensacola FL 32502 |
| Steven Rotman | Hausfeld, LLP<br>1700 K Street NW<br>Suite 650<br>Washington DC 20006 |

## II.    Responsibilities

### A.    Procedural Matters

1.    As noted in this Court's previous Order Setting Initial Case Management Conference dated September 15, 2015, the Clerk of this Court will maintain a master docket case file under the style "*In Re: Bard IVC Filters Products Liability Litigation*" and the identification "MDL No. 2641." Lead/Liaison will be (a) the only attorneys permitted to file in the Master Docket as to all actions, and (b) the only attorneys receiving Notices of Electronic Filing for pleadings and orders filed in the Master Docket for all actions.

2.    With regard to the Master Docket, Plaintiffs' Lead/Liaison Counsel shall:

    a.    Serve as the recipient for all Court orders.

    b.    Coordinate service and filings for all plaintiffs whether presently included or subsequently added.

    c.    Maintain and distribute to co-counsel and to Defendants' Counsel an up-to-date service list.

    d.    Maintain responsibility for service upon all other attorneys

and parties as to filings made in the master docket. Specifically, Lead/Liaison Counsel shall receive and distribute, to all other Plaintiffs' counsel, pleadings orders, and motions by email, overnight courier service, or telecopier, within two days after receipt, unless such service has been waived, in writing, by a receiving counsel.

      e.     Coordinate discovery and litigation with similar cases outside of this Court's jurisdiction.

3.     Lead/Liaison Counsel is only responsible for service with regard to filings in the Master Docket. With regard to case-specific filings, all attorneys of record in the relevant member action will receive a Notice of Electronic Filing from the Court.

4.     New counsel for later-filed or later-transferred cases that become part of this MDL shall be responsible for checking the Master Docket for all orders previously entered that may have relevance to such new cases.

**B.    <u>Responsibilities Specific to Lead/Liaison Counsel</u>**

In addition to the responsibilities identified above, Plaintiffs' Lead/Liaison Counsel shall:

1.     Coordinate the establishment of a document depository, real or virtual, to be available to all participating plaintiffs' counsel;

2.     Maintain and make available to all participating plaintiffs' counsel of record, at reasonable hours, a complete file of all documents served by or upon each party (except documents as may be available at a document depository);

3.     Prepare agendas for court conferences and periodically report regarding the status of the case; and

4.     Carry out such other duties as the Court may order.

**C.    <u>Responsibilities of Plaintiffs' Executive Committee</u>**

The PEC shall assist, advise, and collaborate with Co-Lead Counsel in the discharge of duties of liaison and Co-Lead Counsel outlined in Sections II. A and B

above.  The PEC, with the authority of Co-Lead counsel, and in coordination with their efforts and responsibilities, shall assist and collaborate with Co-Lead Counsel in the administration, organization, and strategic decisions of the PLC.  At the direction of Co-Lead Counsel PEC members shall have the authority to make, supervise and oversee assignments to other PSC members.

**D.**   **Responsibilities Applicable to all Plaintiffs' Leadership Counsel**

Plaintiffs' Leadership Counsel shall have the following responsibilities:

5.   Discovery

    a.   Initiate, coordinate, and conduct all pretrial discovery on behalf of plaintiffs in all actions which are consolidated with this MDL.

    b.   Develop and propose schedules for the commencement, execution, and completion of all discovery on behalf of all plaintiffs.

    c.   Cause to be issued in the name of all plaintiffs the necessary discovery requests, motions and subpoenas pertaining to any witnesses and documents needed to properly prepare for the pretrial of relevant issues found in the pleadings of this litigation.

    d.   Conduct all discovery in a coordinated and consolidated manner on behalf and for the benefit of all plaintiffs.

6.   Hearings and Meetings

    a.   Call meetings of counsel for plaintiffs for any appropriate purpose, including coordinating responses to questions of other parties or of the Court. Initiate proposals, suggestions, schedules or joint briefs, and any other appropriate matters pertaining to pretrial proceedings.

b.     Examine witnesses and introduce evidence on behalf of plaintiffs at hearings.

c.     Act as spokespersons for all plaintiffs at pretrial proceedings and in response to any inquiries by the Court, subject to the right of any plaintiff's counsel to present non-repetitive individual or different positions.

7.     Miscellaneous

a.     Submit and argue all verbal and written motions presented to the Court on behalf of Plaintiff's Leadership Counsel as well as oppose when necessary any motion submitted by defendants or other parties which involve matters within the sphere of the responsibilities of Plaintiffs' Leadership Counsel.

b.     Negotiate and enter into stipulations with defendants regarding this litigation. All stipulations entered into by Plaintiffs' Leadership Counsel, except for strictly administrative details such as scheduling, must be submitted for Court approval and will not be binding until ratified by the Court. Any attorney not in agreement with a non-administrative stipulation shall file with the Court a written objection within five (5) days after he/she knows or should have reasonably become of aware of the stipulation. Failure to object within the term allowed shall be deemed a waiver and the stipulation will automatically be binding on that party.

c.     Explore, develop, and pursue all settlement options pertaining to any claim or portion thereof of any case filed in this litigation.

d. Maintain adequate files of all pretrial matters, including establishing and maintaining a document or exhibit depository, in either real or virtual format, and having those documents available, under reasonable terms and conditions for examinations by all MDL plaintiffs or their attorneys.

e. Perform any task necessary and proper for Plaintiffs Leadership Counsel to accomplish its responsibilities as defined by the Court's orders, including organizing subcommittees comprised of plaintiffs' lawyers not on Plaintiffs' Leadership Counsel.

f. Work with Lead/Liaison Counsel to coordinate the responsibilities of Plaintiffs' Leadership Counsel meetings, keep minutes or transcripts of these meetings, appear at periodic Court-noticed status conferences, perform other necessary administrative or logistic functions of Plaintiffs' Leadership Counsel, and carry out any duty as ordered by the Court.

g. Perform other such functions that may be expressly authorized by further Court Orders.

### E. Reimbursement of Costs Expended

Plaintiffs' Leadership Counsel shall be entitled to seek reimbursement for costs expended at the time and in a manner approved by the Court. Reimbursements will be governed by a further case management order to be proposed by Plaintiffs' Leadership Counsel and entered by the Court.

### III. Term of Appointments.

Appointments to all leadership positions in this order shall last for a term of one year from the date of this order unless terminated earlier by the Court. Thirty days before the expiration of this one-year term, Lead/Liaison Counsel shall file a memorandum

1   notifying the Court of the need to make further appointments and making

2   recommendations regarding those appointments.

3        Dated this 15th day of November, 2016.

4

5

6

7   _____

8   David G. Campbell
    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6 IN THE UNITED STATES DISTRICT COURT

7 FOR THE DISTRICT OF ARIZONA

8

IN RE: Bard IVC Filters Products Liability No. MDL 15-02641-PHX DGC
Litigation,

**AMENDED CASE MANAGEMENT ORDER NO. 16**

THIS DOCUMENT RELATES TO
*Barraza, et al. v. C. R. Bard, Inc., et al.*,
Case No. CV-16-1374-PHX-DGC.

**(Deadlines Related to *Barraza, et al. v. C. R. Bard, Inc., et al.*)**

14   The Court enters the following Amended Case Management Order No. 16

15 regarding certain deadlines in the case *Barraza, et al. v. C. R. Bard, Inc., et al.*, Case No.

16 CV-16-1374-PHX-DGC:

17 A. Class Certification Fact Discovery

18   1. Fact discovery related to class certification shall be completed no later than

19 **February 3, 2017.**

20 B. Class Certification Expert Disclosures and Discovery

21   1. With respect to experts relied upon to support class certification, Plaintiffs

22 shall provide full and complete expert disclosures and reports as required by Rule

23 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure no later than **February 10, 2017**.

24   2. With respect to experts relied upon to oppose class certification, Defendants

25 shall provide full and complete expert disclosures and reports as required by Rule

26 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure no later than **March 17, 2017**.

27   3. With respect to rebuttal experts relied upon to support or oppose class

28 certification, if any, the party so relying shall submit full and complete expert disclosures

and reports as required by Rule 26(a)(2)(A)-(C) of the Federal Rules of Civil Procedure no later than **April 21, 2017**.

  4. Depositions of class certification-related experts shall be completed no later than **May 19, 2017**.

C. <u>Motion for Class Certification</u>

  1. A motion for class certification shall be filed no later than **June 5, 2017**.  A response shall be filed no later than **July 7, 2017**.  A reply shall be filed on **July 28, 2017**. Such motion must comply in all respects with the Federal Rules of Civil Procedure and the Local Rules.

  A hearing on the motion for class certification shall be held on **August 11, 2017 at 2:30 p.m.** before the Honorable David G. Campbell, 401 West Washington Street, Courtroom 603, Phoenix, Arizona 85003.

  Dated this 1st day of December, 2016.

_____
David G. Campbell
United States District Judge

- 2 -

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

IN RE: Bard IVC Filters Products Liability Litigation,

No. MDL 15-02641-PHX DGC

**CASE MANAGEMENT ORDER NO. 19**

The Court held a seventh Case Management Conference on December 9, 2016. The conference addressed ongoing matters identified in the parties' joint report (Doc. 4176).

**A.     ESI.**

Plaintiffs have identified some Defendant custodians from whom they have not received ESI. Defendants have agreed to conduct additional searches with respect to some of these custodians, and are investigating the lack of responsive information from others. Defendants shall produce any additional ESI from these custodians by December 22, 2016. Plaintiffs mentioned that they may consider raising spoliation issues, and the Court directed the parties to Federal Rule of Civil Procedure 37(e) as providing the rules the Court will apply to any ESI-spoliation argument.

**B.     Bellwether Selection.**

Defendants expressed concern that two cases in PFS/DFS Group 1 (*see* CMO 11) have recently been dismissed or shortly will be dismissed by Plaintiffs. Defendants stated that these two cases were to be among the ten cases Defendants intended to identify under paragraph IV.A.1 of CMO 11. After conferring with the parties, the Court struck two cases from Plaintiffs' list of ten (not including the four cases Plaintiffs

intended to designate for automatic inclusion in Discovery Group 1), and directed the parties to exchange their lists of ten without respect to the two stricken cases and the two cases to be dismissed. In effect, the Court reduced the pool from which the parties could choose their ten preferred cases from 48 to 44, and did so in a way that results in each side losing two possible candidates.

By December 16, 2016, the parties shall provide the Court with the 12 cases in Discovery Group 1 if they have been able to reach agreement, and, if not, with the eight cases to be included in Discovery Group 1 (or ten, if the parties have reached agreement on two additional cases), along with memoranda explaining why they believe the Court should pick particular cases to complete Discovery Group 1. The memoranda shall not exceed three pages case. Responses shall be filed on or before **December 22, 2016**.

On or before **December 16, 2016**, the parties shall also provide the Court with a proposed scheduling order to govern Discovery Group 1 between now and March 1, 2017, when Bellwether Group 1 will be selected. *See* CMO 11, ¶ V.A.

**C.      Mature Cases.**

After conferring with the parties, the Court concluded that it is premature to remand mature cases to their home districts. Those cases will involve expert opinions regarding the FDA warning letters and the Kay Fuller allegations, and the Court concludes that disclosure of those opinions, as well as expert discovery and any *Daubert* motions, should be handled in this MDL. This conclusion does not preclude the parties from discussing specific cases which may be subject to remand before the expert work is completed.

**D.      Depositions of Plaintiffs' Counsel.**

Plaintiffs shall file a response to the arguments set forth by Defendants in Doc. 4176 on or before **December 16, 2016**. Defendants shall file a reply on or before **December 22, 2016**.

**E.    30(b)(6) Deposition Notice.**

    After conferring with the parties, the Court concluded that Topic 15 in the Rule 30(b)(6) deposition discussed in Doc. 4176 should read as follows: "Did Defendants ever conduct any studies, formulate any company positions, or adopt any policies addressing whether there was any correlation between indwell times and safety risks?" If the answer to any portion of this question is yes, the Rule 30(b)(6) witness should be prepared to testify about the studies, positions, or policies.

**F.    Next Case Management Conference.**

    The next Case Management Conference will be held on **February 17, 2017 at 10:00 a.m.** The parties shall provide the Court with a joint status report on or before **February 13, 2017.**

    Dated this 13th day of December, 2016.

                                     _____
                                         David G. Campbell
                                     United States District Judge

- 3 -

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. MDL 15-2641-DGC |
| | CASE MANAGEMENT ORDER |
| | NO. 20 |
| | **(Discovery Deadlines for Discovery Group 1 and Bellwether Group 1)** |

Pursuant to Case Management Orders No. 11 (Doc. 1662), 18 (Doc. 3685), and 19 (Doc. 4311), the Court enters this Case Management Order No. 20 regarding scheduling for Discovery Group 1 and Bellwether Group 1.

| Action | Date/Deadline |
|---|---|
| Deadline for Plaintiffs to provide dates for depositions of all Plaintiffs in Discovery Group 1 and spouse or significant family member | Dec. 30, 2016[1] |
| Case-specific fact discovery commences in individual Discovery Group 1 cases | January 5, 2017 |
| Deadline to complete depositions of all Plaintiffs (including those Plaintiffs with loss of consortium claims) | Feb. 16, 2017[2] |
| End of preliminary case-specific fact discovery for Discovery Group 1 cases | April 10, 2017 |
| Parties exchange lists of six (6) proposed | April 17, 2017 |

---

[1] Plaintiffs' counsel shall make a good faith effort to obtain and provide dates on a rolling basis in advance of Dec. 30, 2016 for all Discovery Group 1 cases identified by the Parties on December 16.  For cases chosen by the Court after that date, Plaintiffs will use their best efforts to obtain and provide dates within two weeks after case selection.

[2] The parties may extend this deadline by up to two weeks for cases selected after December 16, 2016.

| | |
|---|---|
| selections from Discovery Group 1 for Bellwether Group 1, and order of trials (per CMO 18, Sec. B). | |
| If the parties are unable to agree on six (6) cases to comprise Bellwether Group 1, the parties shall submit to the Court proposed lists and memorandum in support of their submissions and, if applicable, in opposition to the opposing party's selections (per CMO 18, Sec. B). | April 24, 2017 |
| Responses to opposing party's memorandum regarding selection of cases for inclusion in Bellwether Group 1 (per CMO 18, Sec. B). | April 28, 2017 |
| Commence additional case-specific fact discovery for Bellwether Group 1 | Upon entry of the Court's selection of the final group of six (6) cases to form Bellwether Group 1. |
| Plaintiffs' case-specific expert disclosures for Bellwether Group 1 | May 15, 2017 (or two weeks after Court's selection of Bellwether Group 1, whichever is later) |
| Defendants' expert disclosures for Bellwether Group 1 | June 12, 2017 (or six weeks after Court's selection of Bellwether Group 1, whichever is later) |
| Case-specific rebuttal expert disclosures for Bellwether Group 1 | June 26, 2017 (or eight weeks after Court's selection of Bellwether Group 1, whichever is later) |
| Deadline for completion of additional case-specific fact discovery for Bellwether Group 1 | June 30, 2017 |
| Deadline for case-specific expert depositions (intended to coincide with the end of common expert discovery) for Bellwether Group 1 | July 14, 2017 |

The parties shall place a joint call to the Court on April 28, 2017 to remind it that the selection of Bellwether Group 1 cases should occur promptly in order to keep this schedule on track.

Dated this 22nd day of December, 2016.

David G. Campbell
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-2641-PHX DGC |
| | **CASE MANAGEMENT ORDER NO. 21** |
| | **(Discovery Protocols for Discovery Group 1)** |

Pursuant to Case Management Order No. 11 [Doc. 1662], Case Management Order No. 18 [Doc. 3685], and Case Management Order No. 19 [Doc. 4311], the Court enters this Case Management Order No. 21 regarding the discovery to be conducted for cases in Discovery Group 1.

**I.     DEPOSITION PROTOCOLS GENERALLY**

**A.**     Case Management Order No. 14 shall apply to Discovery Group 1.

**B.**     The additional protocols of this Case Management Order shall also apply to Discovery Group 1.

**C.**     Pursuant to Case Management Order No. 11, Section V.A.3 and Case Management Order No. 18, Section B, the Parties will provide discovery protocols applicable to Bellwether Group 1 by no later than April 28, 2017.

**II.     DEPOSITIONS PERMITTED**

**A.**     Prior to April 10, 2017, the Parties may take the following depositions in each case that is part of Discovery Group I:

1.     The principal Plaintiff and any loss-of-consortium plaintiff;

2.     The spouse or significant family member of the Plaintiff if there is no loss-of-consortium plaintiff;

3.     The implanting physician;

4.     One additional treating physician as selected by Defendants; and

5.     No more than one sales representative and/or supervisor as selected by Plaintiffs.

B.     Examination of treating physicians.

     1.     By no later than February 15, 2017, Plaintiffs shall identify the physicians whom they have a good faith belief they would call as witnesses in their case in chief for each of the Discovery Group 1 cases. By no later than February 24, 2017, Defendants shall identify any physician not identified by Plaintiffs whom they have a good faith belief they would call in their case in chief for each of the Discovery Group 1 cases.

     2.     For any physician deposed in Discovery Group 1:

         a.     Plaintiffs' counsel shall be the first examiner for any physician Plaintiffs have identified by February 15, 2017 as a witness they would call in their case in chief; and

         b.     Defendants' counsel shall be the first examiner for any physician Defendants have identified by February 24, 2017 as a witness they would call in their case in chief.

C.     Nothing in this Order is intended to limit additional fact discovery in cases selected for inclusion in Bellwether Group 1.

## III.    <u>PROTOCOLS RELATING TO TREATING PHYSICIANS</u>

     **A.**     **Ex Parte Communications with Treating Physicians**

         1.     Defendants are prohibited from communicating *ex parte* with Plaintiffs' treating physicians.

2. Plaintiffs' counsel may communicate *ex parte* with treating physicians.

**B.     Disclosure of Documents Prior to Depositions of Treating Physicians**

1. If Plaintiffs' counsel has communicated *ex parte* with a treating physician who will be deposed, Plaintiffs' counsel shall identify by production bates number (or by providing a copy if no such bates numbers exist) to opposing counsel all documents provided, shown, read from, or otherwise specifically described to the witness, other than the physician's records of treatment, at least five (5) days prior to the deposition.

2. For *ex parte* meetings with a physician that take place less than five (5) days prior to the deposition:

   a. at least 24 hours prior to the meeting, Plaintiffs' counsel shall identify by production bates number (or by providing a copy if no such bates numbers exist) to opposing counsel all documents they intend to provide, show, read from, or otherwise specifically describe to the witness, other than the physician's records of treatment;

   b. as soon as practicable after the meeting, Plaintiffs' counsel shall disclose to opposing counsel all documents that were actually provided, shown, read from, or otherwise specifically described to the witness, other than the physician's records of treatment.

3. At least five (5) days prior to a physician deposition, all examining counsel shall provide to opposing counsel and deponent's counsel copies of documents that may be shown to the witness during the deposition or about which counsel expects to examine a deponent,

other than the physician's records of treatment. The obligations of this section include the good faith representations of counsel to identify only those documents actually intended to be utilized during the deposition, not to exceed 40 in number.

Dated this 6th day of February, 2017.

_____
David G. Campbell
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC<br><br>**CASE MANAGEMENT ORDER NO. 22** |

The Court held an 8th case management conference on February 17, 2017.  The conference addressed ongoing matters identified in the parties' joint report (Doc. 4948), and was followed by an *ex parte* meeting with Plaintiffs' counsel, on the record, regarding leadership, accounting, and audit issues related to Plaintiffs' management of this MDL.  The following matters were decided during the case management conference.

**A.    Defense Summary Judgment Motion.**

By **March 17,** 2017, Defendants shall file a motion for summary judgment arguing that Plaintiffs' claims are pre-empted**.**  The parties shall then confer about whether Plaintiffs can respond immediately to the motion or whether Plaintiffs need time to prepare expert responses or conduct other discovery.  (The Court is not implying that other discovery will be permitted.)  The parties shall address their respective positions on this issue in their joint report for the next status conference.  If Plaintiffs believe that additional factual or expert development is needed, they shall attach to the joint report an affidavit or declaration that complies with Rule 56(d) of the Federal Rules of Civil Procedure.  At the status conference, the Court will determine whether additional factual

or expert development is required and will set a schedule to complete briefing.

**B.     Plaintiffs' Expert Reports on Meridian and Denali Filters.**

Plaintiffs seek additional time to produce reports from their experts on Meridian and Denali filters.  Plaintiffs explained that the volume of discovery over the last few months has made it difficult for them to complete expert reports on these filters by the current deadline of March 3, 2017.  To allow additional time for these reports while maintaining the overall discovery schedule, the Court will permit Plaintiffs to make expert disclosures on the Meridian and Denali filters by **April 7, 2017**.  Defense responsive expert reports will be due **May 12, 2017**.  Any rebuttal reports from Plaintiffs will be due **June 9, 2017**.  The terms of Case Management Order No. 8 (Doc. 519) apply to these expert reports.  The experts who produce these reports will be deposed between June 9 and the expert deposition cut-off date of July 14, 2017.

**C.     Further Deposition of Michael Randall.**

The Court will not grant additional deposition time for Michael Randall.  The Court reviewed relevant portions of his previous deposition transcript and concludes that he was not being evasive or answering improperly.  Mr. Randall has been deposed for seven hours as a fact witness and seven hours as a Rule 30(b)(6) witness, and the Court views this time as sufficient.

**D.     Production of Documents for Specific Employees.**

With respect to the six employees listed on page 14 of the joint report (Doc. 4948), Defendants need not produce entire employment files, but shall produce, under the protective order if necessary, documents from the employment files relating to any internal discipline, reprimands, adverse consequences, negative employment reviews, or comparable information, taken against any of these employees on the basis of off-label promotion of Bard IVC filters.

**E.     Outstanding Discovery Disputes.**

The fact discovery period for the MDL has closed.  The parties shall continue to confer about any remaining discovery disputes.  On or before **March 10, 2017**, the

parties shall jointly submit to the Court a matrix setting forth any unresolved discovery issues.

**F.     Future Joint Submissions.**

In the future, as the parties prepare joint reports for status conferences, the parties shall exchange drafts of the joint reports at least **four business days** before the filing deadline and responses to each side's proposed submissions **two days** before the deadline.   Additional matters may be included in the joint report if exceptional circumstances arise.

**G.     Next Status Conference.**

The Court will hold the next status conference on **May 3, 2017 at 3:00 p.m.**  The parties shall provide a joint status report by **April 28, 2017**.

Dated this 17th day of February, 2017.


_____
David G. Campbell
United States District Judge

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation | MDL No. 15-2641 PHX DGC<br><br>**SECOND AMENDED CASE MANAGEMENT ORDER NO. 1** |

This Court set appointments of Plaintiffs' leadership in the original Case Management Order No. 1 (Doc. 248) on October 30, 2015 for a term of one year. The Court entered Amended Case Management Order No. 1 [Doc. 4016] on November 16, 2016, re-appointing Co-Lead Counsel, appointing and re-appointing members of the Plaintiffs' Steering Committee, and appointing a Plaintiffs' Executive Committee for another one-year term. The Court has reviewed Plaintiffs' Co-Lead/Liaison Counsel's Memorandum Requesting Substitution of Leadership Appointments [Doc. 5236] and issues this Second Amended Case Management Order No. 1 for the appointment of individuals to Plaintiffs' leadership in this MDL for the term of this Order.

**I.      Plaintiffs' Leadership Counsel Appointments**

The Court having considered all of the applications submitted and other relevant information, appoints the following plaintiffs' counsel to leadership positions, as indicated and to be known as "Plaintiffs Leadership Counsel" (PLC):

| Plaintiffs' Co-Lead/Liaison Counsel and State/Federal Liaison Counsel | |
|---|---|
| Ramon R. Lopez | Lopez McHugh, LLP<br>100 Bayview Cir., Ste. 5600<br>Newport Beach, CA 92660 |
| Mark S. O'Connor | Gallagher & Kennedy, PA<br>2575 E. Camelback Rd., Ste. 1100<br>Phoenix, AZ 85016 |

| Plaintiffs' Executive Committee (PEC) | |
|---|---|
| Julia Reed Zaic | Heaviside Reed Zaic<br>312 Broadway St., Ste. 203<br>Laguna Beach, CA 92651 |
| Howard L. Nations | The Nations Law Firm<br>3131 Briarpark Dr., #208<br>Houston, TX 77042 |
| Russell W. Budd | Baron & Budd, P.C.<br>3102 Oak Lawn Ave., Ste. 1100<br>Dallas, TX 75219 |
| Wendy R. Fleishman | Lieff, Cabraser, Heimann & Bernstein, LLP<br>250 Hudson St., 8th Floor<br>New York, NY 10013 |

| Plaintiffs' Steering Committee (PSC) | |
|---|---|
| Shannon Clark | Gallagher & Kennedy, PA<br>2575 E. Camelback Rd., Ste. 1100<br>Phoenix, AZ 85016 |
| John A. Dalimonte | Karon & Dalimonte, LLP<br>85 Devonshire St., Ste. 1000<br>Boston MA, 02109 |
| Ben C. Martin | Law Offices of Ben C. Martin<br>3219 McKinney Ave., Ste. 100<br>Dallas, TX 75204 |
| Joseph R. Johnson | Babbitt & Johnson, PA<br>1641 Worthington Rd., #100<br>West Palm Beach, FL 33409 |
| Julia Reed Zaic | Heaviside Reed Zaic<br>312 Broadway St., Ste. 203<br>Laguna Beach, CA 92651 |

| Howard L. Nations | The Nations Law Firm<br>3131 Briarpark Dr., #208<br>Houston, TX 77042 |
|---|---|
| Russell W. Budd | Baron & Budd, P.C.<br>3102 Oak Lawn Ave., Ste. 1100<br>Dallas, TX 75219 |
| Thomas P. Cartmell | Wagstaff & Cartmell, LLP<br>4740 Grand Ave., #300<br>Kansas City, MO 64112 |
| Margaret Branch | Branch Law Firm<br>2025 Rio Grande Blvd, NW<br>Albuquerque, NM 87104 |
| Wendy R. Fleishman | Lieff, Cabraser, Heimann & Bernstein, LLP<br>250 Hudson St., 8th Floor<br>New York, NY 10013 |
| Donald A. Migliori | Motley Rice, LLC<br>321 South Main St., 2nd Floor<br>Providence, RI 02903 |
| Sheila M. Bossier | Bossier & Associates<br>1520 North State Steet<br>Jackson, MS 39202 |
| Stuart L. Goldenberg | Goldenberg Law, PLLC<br>800 Lasalle Ave., #2150<br>Minneapolis, MN 55402 |
| Christopher T. Kirchmer | Provost Umphrey Law Firm, LLP<br>490 Park St., P.O. Box 4905<br>Beaumont, TX 77704 |
| Michael A. Kelly | Walkup, Melodia, Kelly & Schoenberger<br>650 California St.<br>San Francisco, CA 94108 |
| Matthew McCarley | Fears Nachawati Law Firm<br>4925 Greenville Ave., Ste. 715<br>Dallas, TX 75206 |
| Hadley L. Matarazzo | Faraci Lange, LLP<br>First Federal Plaza<br>28 East Main St., Ste. 1100<br>Rochester, NY 14614 |

| Eric M. Terry | TorHoerman Law, LLC<br>101 W. Vandalia<br>Edwardsville, IL 62025 |
| Joseph A. Osborne | Osborne & Associates Law Firm, PA<br>433 Plaza Real, Ste. 271<br>Boca Raton, FL 33432 |
| Michael T. Gallagher | The Gallagher Law Firm, LLP<br>2905 Sackett Street<br>Houston, TX 77098 |
| Nate Van Der Veer | Farris, Riley & Pitt LLP<br>The Financial Center<br>505 20th Street North<br>Birmingham, AL 35203 |
| Matthew Schultz | Levin Papantonio Thomas Mitchell Rafferty<br>Proctor, PA<br>316 S. Baylen St.<br>Suite 600<br>Pensacola FL 32502 |
| Steven Rotman | Hausfeld, LLP<br>1700 K Street NW<br>Suite 650<br>Washington DC 20006 |

## II.    Responsibilities

### A.    Procedural Matters

1.    As noted in this Court's previous Order Setting Initial Case Management Conference dated September 15, 2015, the Clerk of this Court will maintain a master docket case file under the style "*In Re: Bard IVC Filters Products Liability Litigation*" and the identification "MDL No. 2641." Lead/Liaison will be (a) the only attorneys permitted to file in the Master Docket as to all actions, and (b) the only attorneys receiving Notices of Electronic Filing for pleadings and orders filed in the Master Docket for all actions.

2.    With regard to the Master Docket, Plaintiffs' Lead/Liaison Counsel shall:

a.    Serve as the recipient for all Court orders.

b. Coordinate service and filings for all plaintiffs whether presently included or subsequently added.

c. Maintain and distribute to co-counsel and to Defendants' Counsel an up-to-date service list.

d. Maintain responsibility for service upon all other attorneys and parties as to filings made in the master docket. Specifically, Lead/Liaison Counsel shall receive and distribute, to all other Plaintiffs' counsel, pleadings orders, and motions by email, overnight courier service, or telecopier, within two days after receipt, unless such service has been waived, in writing, by a receiving counsel.

e. Coordinate discovery and litigation with similar cases outside of this Court's jurisdiction.

3. Lead/Liaison Counsel is only responsible for service with regard to filings in the Master Docket. With regard to case-specific filings, all attorneys of record in the relevant member action will receive a Notice of Electronic Filing from the Court.

4. New counsel for later-filed or later-transferred cases that become part of this MDL shall be responsible for checking the Master Docket for all orders previously entered that may have relevance to such new cases.

**B. Responsibilities Specific to Lead/Liaison Counsel**

In addition to the responsibilities identified above, Plaintiffs' Lead/Liaison Counsel shall:

1. Coordinate the establishment of a document depository, real or virtual, to be available to all participating plaintiffs' counsel;

2. Maintain and make available to all participating plaintiffs' counsel of record, at reasonable hours, a complete file of all documents served by or upon each party (except documents as may be available at a document depository);

3.    Prepare agendas for court conferences and periodically report regarding the status of the case; and

4.    Carry out such other duties as the Court may order.

**C.    Responsibilities of Plaintiffs' Executive Committee**

The PEC shall assist, advise, and collaborate with Co-Lead Counsel in the discharge of duties of liaison and Co-Lead Counsel outlined in Sections II. A and B above.  The PEC, with the authority of Co-Lead counsel, and in coordination with their efforts and responsibilities, shall assist and collaborate with Co-Lead Counsel in the administration, organization, and strategic decisions of the PLC.  At the direction of Co-Lead Counsel PEC members shall have the authority to make, supervise and oversee assignments to other PSC members.

**D.    Responsibilities Applicable to all Plaintiffs' Leadership Counsel**

Plaintiffs' Leadership Counsel shall have the following responsibilities:

5.    Discovery

a.    Initiate, coordinate, and conduct all pretrial discovery on behalf of plaintiffs in all actions which are consolidated with this MDL.

b.    Develop and propose schedules for the commencement, execution, and completion of all discovery on behalf of all plaintiffs.

c.    Cause to be issued in the name of all plaintiffs the necessary discovery requests, motions and subpoenas pertaining to any witnesses and documents needed to properly prepare for the pretrial of relevant issues found in the pleadings of this litigation.

d.    Conduct all discovery in a coordinated and consolidated manner on behalf and for the benefit of all plaintiffs.

- 6 -

6.      Hearings and Meetings

     a.      Call meetings of counsel for plaintiffs for any appropriate purpose, including coordinating responses to questions of other parties or of the Court. Initiate proposals, suggestions, schedules or joint briefs, and any other appropriate matters pertaining to pretrial proceedings.

     b.      Examine witnesses and introduce evidence on behalf of plaintiffs at hearings.

     c.      Act as spokespersons for all plaintiffs at pretrial proceedings and in response to any inquiries by the Court, subject to the right of any plaintiff's counsel to present non-repetitive individual or different positions.

7.      Miscellaneous

     a.      Submit and argue all verbal and written motions presented to the Court on behalf of Plaintiff's Leadership Counsel as well as oppose when necessary any motion submitted by defendants or other parties which involve matters within the sphere of the responsibilities of Plaintiffs' Leadership Counsel.

     b.      Negotiate and enter into stipulations with defendants regarding this litigation. All stipulations entered into by Plaintiffs' Leadership Counsel, except for strictly administrative details such as scheduling, must be submitted for Court approval and will not be binding until ratified by the Court. Any attorney not in agreement with a non-administrative stipulation shall file with the Court a written objection within five (5) days after he/she knows or should have reasonably become of aware of the stipulation. Failure to object within the term

allowed shall be deemed a waiver and the stipulation will automatically be binding on that party.

c. Explore, develop, and pursue all settlement options pertaining to any claim or portion thereof of any case filed in this litigation.

d. Maintain adequate files of all pretrial matters, including establishing and maintaining a document or exhibit depository, in either real or virtual format, and having those documents available, under reasonable terms and conditions for examinations by all MDL plaintiffs or their attorneys.

e. Perform any task necessary and proper for Plaintiffs Leadership Counsel to accomplish its responsibilities as defined by the Court's orders, including organizing subcommittees comprised of plaintiffs' lawyers not on Plaintiffs' Leadership Counsel.

f. Work with Lead/Liaison Counsel to coordinate the responsibilities of Plaintiffs' Leadership Counsel meetings, keep minutes or transcripts of these meetings, appear at periodic Court-noticed status conferences, perform other necessary administrative or logistic functions of Plaintiffs' Leadership Counsel, and carry out any duty as ordered by the Court.

g. Perform other such functions that may be expressly authorized by further Court Orders.

**E.** **Reimbursement of Costs Expended**

Plaintiffs' Leadership Counsel shall be entitled to seek reimbursement for costs expended at the time and in a manner approved by the Court. Reimbursements will be

governed by a further case management order to be proposed by Plaintiffs' Leadership Counsel and entered by the Court.

**III.    Term of Appointments.**

Appointment of all leadership positions in this order shall last until November 16, 2017 unless terminated earlier by the Court. Thirty days before the expiration of this term, Lead/Liaison Counsel shall file a memorandum notifying the Court of the need to make further appointments and making recommendations regarding those appointments.

Dated this 21st day of March, 2017.


_____
David G. Campbell
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC<br><br>**CASE MANAGEMENT ORDER NO. 23** |

The Court held a 9th case management conference on May 3, 2017. The conference addressed ongoing matters identified in the parties' joint report. Doc. 5708. The following matters were decided.

**A.      Deadline for Expert Depositions.**

The Court extended the deadline for completing expert depositions to **July 31, 2017**.

**B.      Bellwether Cases.**

The Court heard oral arguments on which cases should be selected for bellwether trials. After considering the parties' arguments and their detailed submissions, the Court selects the following five bellwether cases: Mulkey, Hyde, Jones, Kruse, and Booker.

The Court will not choose a sixth bellwether case at this time. The Court finds that Nelson, a strong candidate, is very similar to Jones, and therefore may not provide the range of information hoped for from bellwether trials. The Court finds Peterson to be a strong candidate, but selecting Peterson would mean that 33% of the bellwether trials involve open surgeries when only 6% of the cases in this MDL involve such surgeries, making the overall mix less than fully representative. Tinlin presents the same issue as

Peterson, and also involves an extremely ill plaintiff who would be required to travel from out of state and endure the rigors of trial. For reasons stated on the record, the Court does not view King or Mixson as helpful bellwether cases. The DeWitt case includes some uncertainty due to surgery scheduled this month, but may be a candidate when the sixth case is selected.

The Court will select the sixth bellwether case from Discovery Group 1 after two bellwether trials have been completed.[1] Because each bellwether trial will last up to three weeks, and the Court has a full docket to manage in the interim, it is likely that trials of the bellwether cases will spread over more than one year. Thus, there will be time to complete the case-specific discovery and motion practice for a sixth bellwether trial after two bellwether trials have been completed. In choosing the sixth case, the Court will take into account the results of the first two trials and will endeavor to select a case that will produce the most representative bellwether trials possible from Discovery Group 1.

Plaintiffs want to re-depose doctors in the Hyde case. The parties should address this issue in the joint status report they present for the next status conference. The parties should include relevant examples of testimony or objections from the depositions of Hyde's doctors to illustrate their respective positions.

**C.    *Daubert* and Summary Judgment Motions.**

By **August 21, 2017**, the parties shall file *Daubert* motions and any motions for summary judgment on the five bellwether cases identified above. Responses shall be filed by **September 22, 2017**. Replies shall be filed by **October 13, 2017**.[2]

**D.    Science Day.**

The Court will likely schedule a science day during the next status conference. The science day will be held shortly before oral arguments on the *Daubert* and summary judgment motions.

---

[1] Although the Court declines to order the trials now, it may make sense to try Jones and Booker first in order to facilitate a more informed selection of the sixth case.

[2] This schedule is a bit longer than the parties proposed, due to the large number of possible motions the parties described during the case management conference.

**E.     Defendants' Preemption Motion.**

The Court declines to accept Plaintiffs' proposal that this motion be briefed initially solely on the law. A decision on law-only arguments would not be possible until late June at the earliest, and may need to be followed by discovery and re-briefing. Such potential delay would be unwise in light of the demands on the parties and the Court that will arise this fall due to the *Daubert* and summary judgment motions.

The Court will allow Plaintiffs to depose Mr. Carr and Mr. Van Vleet on matters addressed in Defendants' summary judgment motion. These depositions shall not exceed four hours each. The Court also concludes that Plaintiffs should be permitted to present expert opinions in opposition to Defendants' preemption motion, if they choose. Because the parties did not address a possible schedule for production of relevant expert opinions and depositions of those experts, the Court is unable to set a specific schedule. The Court directs the parties to confer and agree, if possible, on a procedure and schedule for completing the Carr and Van Vleet depositions and necessary expert discovery, followed by completion of briefing on the preemption motion. The parties shall include a briefing schedule for Defendants' motion to seal documents related to the preemption motion. The parties should present their agreement to the Court, or their respective positions if they are unable to agree, by **May 12, 2017**. The Court will review the parties' submissions and set an appropriate schedule.

**F.     Other Matters.**

1.     The Court will set a date for remanding mature cases at a future status conference. The cases cannot be remanded until *Daubert* motions are decided, and the amount of time required to decide those motions is presently unclear.

2.     The Court agreed that Dr. Desai may be deposed on **June 6, 2017** in the *Barazza* class action.

3.     The parties indicated that there may be between 17 and 20 *Daubert* motions filed in August. If so, the Court will not be able to decide all of those motions before the

end of this year.[3]  The Court hopes to have them all decided by year's end.  This will permit bellwether trials to begin in early 2018.

4.     The parties and the Court discussed changes to the proposed bellwether protocol.  If the parties have not already done so, they shall submit a revised version to the Court promptly.

5.     The Court will hold another case management conference on **July 13, 2017 at 4:00 p.m.**  The dial-in information for the case management conference is:  888-240-3210, access code: 2194741.  The parties on the phone are reminded to mute their phones once connected to the conference call line to minimize the amount of background noise.  The parties shall provide a joint status report by **July 7, 2017**.

Dated this 5th day of May, 2017.

David G. Campbell
United States District Judge

___

[3] As the current chair of the Committee on Rules of Practice and Procedure for the federal courts, the undersigned must attend six meetings outside Arizona in September, October, and November.  This travel schedule, plus the Court's regular docket, means the Court will not be able to decide this volume of *Daubert* and summary judgment motions within a month or two.

- 4 -

1
2
3
4
5
6
7
8                   **IN THE UNITED STATES DISTRICT COURT**
9                     **FOR THE DISTRICT OF ARIZONA**
10   IN RE:  Bard IVC Filters Products Liability          No. MDL 15-2641-PHX DGC
     Litigation,
11                                                        CASE MANAGEMENT ORDER
                                                          NO. 23
12
13                                                        **(Discovery  Protocols for Bellwether
                                                          Group 1)**
14

15          Pursuant to Case Management Order No. 11 [Doc. 1662], No. 18 [Doc. 3685],
16   No. 19 [Doc. 4311], No. 20 [Doc. 4335], and No. 21 [Doc. 4866], the Court enters this
17   Case Management Order No. 23 regarding discovery to be conducted specific to the cases
18   in Bellwether Group 1.

19   **I.     DEPOSITION PROTOCOLS GENERALLY**

20          A.     Case Management Order No. 14 shall apply to Bellwether Group 1.

21          B.     The additional protocols of this Case Management Order shall also apply to

22                 Bellwether Group 1 as provided herein.

23   **II.    FACT WITNESS DEPOSITIONS PERMITTED**

24          A.     Commencing three (3) days after the Court's selection of the Bellwether

25                 Group 1 cases, the Parties may each take not more than five depositions of

26                 case relevant fact (non-expert) witnesses in each case that is part of

27                 Bellwether Group I. These depositions may include Bard present or former

28

1    employees only if the depositions will likely produce probative evidence

2    that could not reasonably have been obtained during general discovery.

3    B.    The parties may exceed this number by mutual agreement or Order of the

4          Court.

5    C.    The parties shall make a good faith effort to identify the case relevant fact

6          witnesses they intend to depose in each case in accordance with Section

7          II.A. above, and exchange lists of those witnesses by May 12, 2017.

8    D.    Thereafter, the parties shall make a good faith effort, on a rolling basis, and

9          in accordance with Section II.A. above, to identify any additional case

10         relevant witnesses they intend to depose, as soon as those witnesses become

11         known to them or they determine the need to depose the witness.

12   E.    Should either party object to the taking of a deposition proposed by the

13         other party, including objecting that one or more of the identified case

14         specific depositions are disproportionate to the needs of the case (even if the

15         requesting party has not exceeded the numerical limitation set forth in

16         Section II.A. above), the parties will meet and confer on that issue, and

17         failing resolution, shall notify the Court of their need for a ruling on the

18         propriety of deposing such witness(es).

19   F.    Examination of treating physicians.

20         1.    By no later than five (5) days following the Court's selection of

21               Bellwether Group 1, Plaintiffs shall supplement the list they provided

22               pursuant to CMO 21 of physicians whom they have a good faith

23               belief they would call as witnesses in their case in chief for each

24               Bellwether Group 1 case.  By no later than ten (10) days thereafter,

25               Defendants shall supplement the list they provided pursuant to CMO

26               21 of physicians not identified by Plaintiffs whom Defendants have a

27

28

good faith belief they would call in their case in chief for each Bellwether Group 1 case.

    2.    For any physician deposed in Bellwether Group 1:

        a.  Plaintiffs' counsel shall be the first examiner for any physician Plaintiffs identified in response to Paragraph II.B.1 of CMO 21 or they have identified timely under Para. II. B. 1 to this Order; and

        b.  Defendants' counsel shall be the first examiner for any physician Defendants identified in response to Paragraph II.B.1 of CMO 21 or they have identified timely under Para. II. B. 1 to this Order.

## III.    PROTOCOLS RELATING TO TREATING PHYSICIANS

    A.    **Ex Parte Communications with Treating Physicians**

        1.    Defendants are prohibited from communicating *ex parte* with Plaintiffs' treating physicians.

        2.    Plaintiffs' counsel may communicate *ex parte* with treating physicians.

    B.    **Disclosure of Documents Prior to Depositions of Treating Physicians**

        1.    If Plaintiffs' counsel has communicated *ex parte* with a treating physician who will be deposed, Plaintiffs' counsel shall identify by production bates number (or by providing a copy if no such bates numbers exist) to opposing counsel all documents provided, shown, read from, or otherwise specifically described to the witness, other than the physician's records of treatment, at least five (5) days prior to the deposition, those five days to include and count weekends and holidays.

        2.    For *ex parte* meetings with a physician that take place less than five (5) days prior to the deposition:

a. at least 24 hours prior to the meeting, counting weekends and holidays, Plaintiffs' counsel shall identify by production bates number (or by providing a copy if no such bates numbers exist) to opposing counsel all documents they intend to provide, show, read from, or otherwise specifically describe to the witness, other than the physician's records of treatment;

b. as soon as practicable after the meeting, Plaintiffs' counsel shall disclose to opposing counsel all documents that were actually provided, shown, read from, or otherwise specifically described to the witness, other than the physician's records of treatment.

3. At least five (5) days, counting weekends and holidays, prior to a physician deposition, all examining counsel shall provide to opposing counsel and deponent's counsel copies of documents that may be shown to the witness during the deposition or about which counsel expects to examine a deponent, other than the physician's records of treatment. The obligations of this section include the good faith representations of counsel to identify only those documents actually intended to be utilized during the deposition, not to exceed 40 in number.

## IV.  EXPERT WITNESS DEPOSITIONS

A. Commencing on June 20, 2017 and no later than July 30, 2017, the parties may take the depositions of all case specific expert witnesses disclosed for Bellwether Group 1 cases, limited to their case specific opinions if those witnesses are also experts previously disclosed as general MDL experts.

## V.    **TRIAL DEPOSITIONS**

A.    For good cause shown, and either by stipulation of the Parties or order of the Court, trial preservation testimony of previously deposed witnesses will be permitted.

Dated this 18th day of May, 2017.

_David G. Campbell_
_____
David G. Campbell
United States District Judge

1

2

3

4

5

6

7

8                 **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| 10   IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-2641-PHX DGC |
| 11 | AMENDED |
| 12 | CASE MANAGEMENT ORDER NO. 24 |
| 13 | **(Discovery Protocols for Bellwether Group 1)** |
| 14 | |

15

16        Pursuant to Case Management Order No. 11 [Doc. 1662], No. 18 [Doc. 3685],

17 No. 19 [Doc. 4311], No. 20 [Doc. 4335], and No. 21 [Doc. 4866], the Court enters this

18 Case Management Order No. 24 regarding discovery to be conducted specific to the cases

19 in Bellwether Group 1.

20 **I.**    **DEPOSITION PROTOCOLS GENERALLY**

21     A.    Case Management Order No. 14 shall apply to Bellwether Group 1.

22     B.    The additional protocols of this Case Management Order shall also apply to

23          Bellwether Group 1 as provided herein.

24 **II.**   **FACT WITNESS DEPOSITIONS PERMITTED**

25     A.    Commencing three (3) days after the Court's selection of the Bellwether

26          Group 1 cases, the Parties may each take not more than five depositions of

27          case relevant fact (non-expert) witnesses in each case that is part of

28          Bellwether Group I. These depositions may include Bard present or former

employees only if the depositions will likely produce probative evidence that could not reasonably have been obtained during general discovery.

B.  The parties may exceed this number by mutual agreement or Order of the Court.

C.  The parties shall make a good faith effort to identify the case relevant fact witnesses they intend to depose in each case in accordance with Section II.A. above, and exchange lists of those witnesses by May 12, 2017.

D.  Thereafter, the parties shall make a good faith effort, on a rolling basis, and in accordance with Section II.A. above, to identify any additional case relevant witnesses they intend to depose, as soon as those witnesses become known to them or they determine the need to depose the witness.

E.  Should either party object to the taking of a deposition proposed by the other party, including objecting that one or more of the identified case specific depositions are disproportionate to the needs of the case (even if the requesting party has not exceeded the numerical limitation set forth in Section II.A. above), the parties will meet and confer on that issue, and failing resolution, shall notify the Court of their need for a ruling on the propriety of deposing such witness(es).

F.  Examination of treating physicians.

1.  By no later than five (5) days following the Court's selection of Bellwether Group 1, Plaintiffs shall supplement the list they provided pursuant to CMO 21 of physicians whom they have a good faith belief they would call as witnesses in their case in chief for each Bellwether Group 1 case. By no later than ten (10) days thereafter, Defendants shall supplement the list they provided pursuant to CMO 21 of physicians not identified by Plaintiffs whom Defendants have a

good faith belief they would call in their case in chief for each Bellwether Group 1 case.

2.    For any physician deposed in Bellwether Group 1:

    a.  Plaintiffs' counsel shall be the first examiner for any physician Plaintiffs identified in response to Paragraph II.B.1 of CMO 21 or they have identified timely under Para. II. B. 1 to this Order; and

    b.  Defendants' counsel shall be the first examiner for any physician Defendants identified in response to Paragraph II.B.1 of CMO 21 or they have identified timely under Para. II. B. 1 to this Order.

## III.   PROTOCOLS RELATING TO TREATING PHYSICIANS

### A.   Ex Parte Communications with Treating Physicians

1.    Defendants are prohibited from communicating *ex parte* with Plaintiffs' treating physicians.

2.    Plaintiffs' counsel may communicate *ex parte* with treating physicians.

### B.   Disclosure of Documents Prior to Depositions of Treating Physicians

1.    If Plaintiffs' counsel has communicated *ex parte* with a treating physician who will be deposed, Plaintiffs' counsel shall identify by production bates number (or by providing a copy if no such bates numbers exist) to opposing counsel all documents provided, shown, read from, or otherwise specifically described to the witness, other than the physician's records of treatment, at least five (5) days prior to the deposition, those five days to include and count weekends and holidays.

2.    For *ex parte* meetings with a physician that take place less than five (5) days prior to the deposition:

      a. at least 24 hours prior to the meeting, counting weekends and holidays, Plaintiffs' counsel shall identify by production bates number (or by providing a copy if no such bates numbers exist) to opposing counsel all documents they intend to provide, show, read from, or otherwise specifically describe to the witness, other than the physician's records of treatment;

      b. as soon as practicable after the meeting, Plaintiffs' counsel shall disclose to opposing counsel all documents that were actually provided, shown, read from, or otherwise specifically described to the witness, other than the physician's records of treatment.

3. At least five (5) days, counting weekends and holidays, prior to a physician deposition, all examining counsel shall provide to opposing counsel and deponent's counsel copies of documents that may be shown to the witness during the deposition or about which counsel expects to examine a deponent, other than the physician's records of treatment. The obligations of this section include the good faith representations of counsel to identify only those documents actually intended to be utilized during the deposition, not to exceed 40 in number.

## IV. EXPERT WITNESS DEPOSITIONS

A. Commencing on June 20, 2017 and no later than July 30, 2017, the parties may take the depositions of all case specific expert witnesses disclosed for Bellwether Group 1 cases, limited to their case specific opinions if those witnesses are also experts previously disclosed as general MDL experts.

1  **V.**    **<u>TRIAL DEPOSITIONS</u>**

2         A.    For good cause shown, and either by stipulation of the Parties or order of the

3  Court, trial preservation testimony of previously deposed witnesses will be permitted.

4

5         Dated this 19th day of May, 2017.

6

7                                     *David G. Campbell*

8                              _____

9                                        David G. Campbell
                                      United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC<br><br>**CASE MANAGEMENT ORDER NO. 25**<br><br>**(Bellwether Group 1 Amended Discovery Schedule)** |

Pursuant to the stipulation of the parties to amend the discovery schedule for the cases in Bellwether Group 1,

**IT IS ORDERED** amending the Bellwether Discovery Schedule, the new schedule is as follows:

| Action | Date/deadline |
|---|---|
| Plaintiffs' case-specific expert disclosures | June 5, 2017 |
| Defendants' case-specific expert | July 3, 2017 |
| Case-specific rebuttal expert disclosures for Bellwether Group 1 | July 17, 2017 |
| Deadline for completion of additional case-specific medical witness depositions for Bellwether Group 1 | August 7, 2017 |
| Deadline for case-specific expert | August 7, 2017 |
| Deadline for completion of additional case-specific discovery other than medical witness depositions for Bellwether Group 1 | August 15, 2017 |

This Order amends and replaces the dates set forth in Case Management Order No. 20 with respect to the same deadlines for Bellwether Group 1.

Dated this 6th day of June, 2017.

_____
David G. Campbell
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC<br><br>**CASE MANAGEMENT ORDER NO. 26** |

The Court held a tenth case management conference on July 13, 2017.  The conference addressed ongoing matters identified in the parties' joint report.  Doc. 6599. The following matters are decided.

**A.     Dr. Henry Deposition.**

In order to decide whether Dr. Henry should be re-deposed, the Court must decide whether the objections asserted in his first deposition were appropriate.  On or before **July 28, 2017**, the parties shall file memoranda, not to exceed 12 pages, addressing the following issues:  (1) Does Federal Rule of Evidence 501 apply to the privilege asserted by Dr. Henry's counsel?  (2) If so, what state law supplies the rule of decision within the meaning of Rule 501?   (3) Does the applicable state law support the objection and instruction made by Dr. Henry's attorney?  (4) Even if the instruction and objection were appropriate in the normal case, does assertion of the learned intermediary defense mean that the objection and instruction should not be permitted?

**B.      Proposed Deposition of Dr. Altonaga.**

Case Management Order No. 24 addressed fact depositions in bellwether cases: "These depositions may include Bard present or former employees only if the depositions will likely produce probative evidence that could not reasonably have been obtained during general discovery." Doc. 5883 at 1-2. After considering the parties' arguments, the Court concludes that the evidence Plaintiffs now seek to elicit from Dr. Altonaga could reasonably have been obtained during general discovery. Plaintiffs do not seek facts unique to any of the bellwether cases, but instead to obtain Bard information that existed at the time of the design, sale, and use of the various filters at issue in the bellwether cases. While bellwether cases had not been identified during general discovery, Plaintiffs clearly understood that most of the cases in this MDL concern the G2-series or Eclipse filters, and could have deposed Dr. Altonaga during general discovery regarding facts related to those filters and the years in which they were offered for sale. As a result, the requirement of CMO 24 is not satisfied and the Court will not permit Plaintiffs to depose Dr. Altonaga as part of bellwether-case discovery.

**C.      Communications Among Plaintiffs' Experts.**

The Court and parties held a discussion regarding the discoverability of communications between Plaintiffs' experts, with the Court attempting to provide some guidance on its interpretation of Rule 26(b)(4). Plaintiffs shall produce communications among their experts to Defendants. If Plaintiffs conclude that any such communications are properly withheld, they shall provide Defendants with a privilege log that identifies the specific basis on which Plaintiffs' conclude that the communications are protected under Rule 26(b). If the parties have disagreements after this production has occurred, they should place a conference call to the Court for a resolution.

**D.      Preemption Motion Briefing.**

The Court sets the following schedule for completion of briefing on Defendants' preemption motion for summary judgment:

- Plaintiffs' experts on preemption shall be disclosed by **July 21, 2017**;
- Defense experts on preemption, if sought by Defendants and allowed by the Court after a conference call, shall be disclosed by **August 4, 2017**;
- Preemption experts shall be deposed by **August 18, 2017**;
- Plaintiffs' response to Defendants' motion shall be filed by **September 1, 2017**;
- Defendants' reply shall be filed by **September 22, 2017**.

Defendants' motion to seal exhibits will be briefed on the following schedule:

- Defendants' amended motion to seal shall be filed on or before **July 28, 2017**;
- Plaintiffs' response shall be filed on or before **August 28, 2017**;
- Defendants' reply shall be filed on or before **September 13, 2017**.

### E.  Class Certification Hearing.

The Court will allow 45 minutes per side for oral argument at the class certification hearing on **August 11, 2017**. The Court does not expect this to be an evidentiary hearing.

### F.  Next Case Management Conference and Science Day.

The next case management conference will be held on **October 5, 2017, at 10:00 a.m.** The parties shall file a joint report seven days before the conference.

A science day will also be held on **October 5, 2017.** The Court will set aside two hours per side for science presentations.

### G.  Motions to Disqualify Experts.

Plaintiffs shall respond to the recently filed motion to disqualify Drs. Vogelzang and Desai by **July 28, 2017**. Defendants shall file a reply by **August 4, 2017**. The Court will endeavor to review this motion before the class certification hearing on August 11, 2017.

**H.    Bellwether Trial Issues.**

The Court and the parties discussed preparation for and scheduling of bellwether trials.  The Court advised the parties that it cannot know whether bellwether trials will be possible in the first quarter of 2018 until it sees the volume and substance of the *Daubert* motions and motions for summary judgment to be filed in late August.  The Court and parties will address the scheduling of bellwether trials on October 5, 2017.

The Court advised the parties that it may be very difficult for the Court to conduct all six bellwether trials within a 12 or 18 month period, given the Court's docket and administrative responsibilities.  The Court raised the possibility of enlisting other judges to try some of the bellwether cases.  If such an approach were taken, the trials probably could be scheduled over the course of a year or 18 months, dates could be blocked out, and the other judges could be identified.  The parties should address this issue in the joint report to be filed before the conference on October 5, 2017.

The Court advised the parties of its practices regarding a final pretrial conference and motions in limine.  The Court also stated that it would be willing to entertain the possibility of juror questionnaires.

**I.    Other Matters.**

The Court and parties discussed choice of law issues that might arise in the bellwether cases.  The Court asked the parties to discuss this issue and see if they can agree on a method for briefing.  It may be that such briefing needs to occur as part of the summary judgment briefing, particularly since a choice of law will not be necessary unless the law of the possible jurisdictions is in conflict on specific points raised in the summary judgment briefing.  If the parties need the Court's guidance on this matter before summary judgment briefs are filed, they may place a telephone call to the Court.

The Court will also require the parties to discuss bellwether summary judgment motions before they are filed on August 21, 2017.  The purpose of such discussion will be to identify claims that Plaintiffs intend to assert in each of the bellwether cases and arguments Defendants intend to make with respect to such claims.  The parties should

endeavor to focus and streamline the briefing wherever possible. If issues are to be addressed that apply to some or all of the bellwether cases, they should be briefed only once. The parties should also endeavor to make the statements of fact as efficient as possible.

Dated this 14th day of July, 2017.

David G. Campbell
United States District Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC<br><br>**CASE MANAGEMENT ORDER NO. 27** |

The Court held an eleventh case management conference on October 5, 2017.  The conference addressed ongoing matters identified in the parties' joint report.  Doc. 7854.

### A.     Privilege Issues.

Defendants asked the Court to require Plaintiffs to include in their privilege log any communications withheld from production that occurred between experts, even if they included a lawyer.  After discussion, the Court declined to require a privilege log.  Instead, Plaintiffs shall provide the Court all such communications that they have withheld, for *in camera* review.  The Court will randomly select ten communications and review them for privilege.   Plaintiffs shall provide these documents on or before **October 13, 2017**.

Defendants also expressed concern about the method used for collecting email communications among Plaintiffs' experts at Northwestern University.   The Court directed Plaintiffs' counsel to communicate with these experts, particularly in light of one email that was provided by Defendants at the hearing, to ensure that all communications have been produced.  Plaintiffs shall do so no later than **October 13, 2017**.

**B.  Motion Hearings.**

The Court will hold motion hearings on **November 17, 2017 at 1:00 p.m.**, **December 15, 2017 at 1:00 p.m.**, and **January 19, 2018 at 1:00 p.m.**  These hearings will concern pending *Daubert* motions, motions to disqualify experts, and motions for summary judgment.  The motion for summary judgment on preemption will be heard on **November 17, 2017 at 1:00 p.m.**  The parties shall meet and confer regarding the motions to be heard on these dates and shall submit their joint proposal to the Court by **October 13, 2017.**

**C.  Scheduling of Bellwether Trials.**

The Booker bellwether trial will be held on **March 13-16, 20-23, and 27-30, 2018**.  The Jones bellwether trial will be held on **May 15-18, 22-25, and 29-30, and June 1, 2018.**  The Court will schedule other bellwether trials, and will set dates for final pretrial conference in Booker and Jones, at coming status conferences.

**D.  Science Day.**

The Court held a "science day" on October 5, 2017.  The parties agreed at the beginning of the discussion that it need not be on the record.  Each side presented relevant information in support of their position on various science issues in the case. Each side also presented some information supporting their liability arguments in the case.  The Court listened for the purpose of understanding issues it will need to address in upcoming motions hearings.  The Court formed no view on the question of liability or the merits of any motion as a result of the hearing, and returned all exhibits to the parties at the end of the discussion.

**E.  Plaintiffs' Motion for Partial Summary Judgment.**

Plaintiffs have filed a for summary judgment motion in the Jones case.  Doc. 7363. Defendants stated at the conference that they have no opposition to the granting of the motion.  The Jones Plaintiffs' motion for partial summary judgment on Defendants' thirteenth affirmative defense (Doc. 7363) is therefore **granted**.

1

**F.      Additional Matter.**

2          The Court informed the parties of a matter it was exploring to ensure that recusal

3    was not necessary.  The Court has completed that inquiry and concludes that recusal is

4    not necessary.

5

**G.      Next Status Conference.**

6          The Court will hold a status conference after the motions arguments on

7    November 17, 2017 at 1:00 p.m.  The parties shall file a joint status report on or before

8    **November 14, 2017.**

9          Dated this 10th day of October, 2017.

10

11

12

13    _____

14          David G. Campbell
          United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

IN RE:  Bard IVC Filters Products Liability Litigation,

No. MDL 15-02641-PHX DGC

**CASE MANAGEMENT ORDER NO. 28**

13
14
15
16

The Court held a twelfth case management conference on November 17, 2017. The conference occurred after oral argument on two motions for summary judgment. The conference addressed ongoing matters identified in the parties' joint report. Doc. 8851.

17

**A.      Motion Hearings.**

18
19
20
21
22

The Court heard Defendants' motions for summary judgment on preemption and the Booker case.   In preparation for the motions hearing to be held on **December 15, 2017 at 1:00 p.m.**, the Court will attempt to prepare for the next six motions identified in Doc. 8172.  If the Court is unable to do so, it will endeavor to notify the parties before the December 15 hearing.

23

**B.      Scheduling of Bellwether Trials.**

24
25
26
27
28

Plaintiffs suggested that the Court and the parties be prepared to try the Jones case or another bellwether case in March if the Booker case settles.  This prompted questions from the Court regarding the likelihood of settling bellwether cases.  As the Court stated in more detail on the record, the bellwether cases have been carefully selected to represent cases consolidated in this MDL.  The purpose of the bellwether trials is to give

the parties insight into how their claims and defenses are received by juries, in the hope of helping facilitate a global settlement before the cases are remanded to their original jurisdictions. Selective settlements (or dismissals) of bellwether cases is inconsistent with this purpose. The Court expects to try the five bellwether cases that have been identified so far, and a sixth case if necessary, as mentioned in previous case management orders. If the parties start eliminating bellwether cases through settlement or otherwise, the Court will seriously consider whether further bellwether trials are justified. If the process is not going to result in trial of a representative sample of cases, the Court's likely view will be that the MDL should be terminated and all cases returned to their original districts. The primary purpose of the MDL – common discovery and ruling on common issues – will have been accomplished, and the added benefit of bellwether trials to assist the parties in resolving the litigation globally will be lost if settlements or dismissals skew the representative nature of the bellwether cases.

The Court also stated that it does not see any need to begin working on a second group of bellwether trials. The Court's current view is that the trial of five or six cases should provide the parties with ample information to achieve a global settlement if such a settlement is possible.

**C. Scheduling for the Booker Trial.**

The Booker trial is set to begin on March 13, 2018. This assumes that the Court can resolve the pending *Daubert* motions before that time. The Court will diligently endeavor to do so. Assuming the Court can accomplish this goal, a final pretrial conference will be held on **February 23, 2018 at 2:00 p.m.** In preparation for that conference, the Court enters the following orders:

1. The attorneys who will be responsible for the trial of the case shall attend the final pretrial conference. Counsel shall bring their calendars so that trial scheduling can be discussed.

2. The parties jointly shall prepare a proposed final pretrial order and shall lodge it with the Court no later than **4:00 p.m. on February 15, 2018**. Preparation

and lodging of the proposed final pretrial order in accordance with the requirements of this order shall be deemed to satisfy the disclosure requirements of Rule 26(a)(3) of the Federal Rules of Civil Procedure. The parties shall submit a copy of the proposed final pretrial order to the Court in Word format to Nancy_Outley@azd.uscourts.gov.

3. The proposed final pretrial order shall include the information prescribed in the Joint Proposed Final Pretrial Order form found at www.azd.uscourts.gov under: (1) Judges' Information, (2) Orders, Forms and Procedures, and (3) David G. Campbell. Information shall not be set forth in the form of a question, but shall be presented in concise narrative statements.

4. The Court will not allow the parties to offer any exhibit, witness, or other evidence that was not disclosed in accordance with the provisions of this order and the Federal Rules of Civil Procedure and listed in the proposed final pretrial order, except to prevent manifest injustice. Fed. R. Civ. P. 16(e). Objections to witnesses and documents should also be listed.

5. Plaintiffs shall have the burden of initiating communications concerning the proposed final pretrial order.

6. The parties shall (a) number and mark exhibits in accordance with the Exhibit Marking Instructions at www.azd.uscourts.gov under Judges and Courtrooms and Orders, Forms and Procedures (such numbers shall correspond to exhibits numbers listed in the proposed final pretrial order); (b) meet in person and exchange marked copies of all exhibits to be used at trial no later than **14 days** before the submission deadline for the proposed final pretrial order; and (c) eliminate any duplicate exhibits while meeting to exchange exhibits.

7. The parties shall file and serve all motions in limine no later than **January 26, 2018**. Responses to motions in limine shall be filed on or before **February 9, 2018**. Each motion in limine shall state with precision the evidence that is the subject of the motion. The motions and responses must be concise and shall not exceed three (3) pages in length. No replies shall be filed. Counsel shall be prepared to

argue the merits of such motions at the final pretrial conference. (Each side indicated that it wishes to file one motion in limine longer than 3 pages. Permission is granted for one such motion from each side.)

8. The parties shall complete the following tasks by the time of the lodging of the proposed final pretrial order:

(a) The parties shall file a concise, stipulated description of the case to be read to the jury panel during voir dire (no longer than 2 or 3 paragraphs).

(b) The parties shall jointly file a proposed set of voir dire questions. The voir dire questions shall be drafted in a neutral manner. To the extent possible, the parties shall stipulate to the proposed questions. If the parties have any disagreement about a particular question, they shall state the reason for their objection below the question. The parties shall also provide, for the purposes of voir dire, a joint master list of the witnesses who may be called at trial.

(c) The parties shall file proposed jury instructions in accordance with "Guidelines for Jury Instructions in Civil Cases" found at www.azd.uscourts.gov under: (1) Judges and Courtrooms, (2) Orders, Forms and Procedures, and (3) David G. Campbell.

(d) Each party shall file a proposed form of verdict, including any proposed special verdict forms or juror interrogatories.

(e) The joint statement of the case, proposed voir dire questions, proposed jury instructions, and forms of verdict shall be submitted in Word format to Nancy_Outley@azd.uscourts.gov.

9. In order to facilitate the creation of an accurate record, the parties shall file a "Notice to Court Reporter" **one week before trial** containing the following information that may be used at trial:

(a) Proper names, including those of witnesses.

(b) Acronyms.

(c) Geographic locations.

(d)     Technical (including medical) terms, names or jargon.

(e)     Case names and citations.

(f)     Pronunciation of unusual or difficult words or names.

10.     Counsel shall review Judge Campbell's statement of Trial Conduct and Decorum before the final pretrial conference. A copy can be found on the Court's website at www.azd.uscourts.gov under: (1) Judges and Courtrooms, (2) Orders, Forms and Procedures, and (3) David G. Campbell.

11.     Full and complete compliance with this Order shall be required by the Court.

**D.     Jury Questionnaire.**

The Court and the parties discussed whether a jury questionnaire would be appropriate for the Booker case. The parties will confer on this issue. If they conclude a questionnaire would be helpful, they shall present a proposed questionnaire to the Court prior to the **December 15, 2017** conference discussed below.

**E.     Mature Cases.**

The parties and the Court discussed whether case-specific discovery should occur in what have previously been referred to as "mature cases" – ten or so cases that were close to trial when this MDL was organized. The Court anticipates that the parties and the Court will be busy over the next few months preparing for motions hearings and trial. The Court concludes that case-specific discovery in the mature cases should await their remand, and will not authorize such discovery now.

**F.     Meetings of Counsel in Preparation for Trial.**

Plaintiffs suggested that the Court schedule meetings for the parties to discuss trial preparation and how to expedite trial. The Court will leave it to the parties to schedule such meetings.

**G.     Next Case Management Conference.**

The Court will hold another case management conference after the motions hearing on **December 15, 2017**. The parties shall file a joint status report five days

1    before the conference.

2         Dated this 21st day of November, 2017.

3

4

5

6    _____
          David G. Campbell
7        United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC<br><br>**CASE MANAGEMENT ORDER NO. 29** |

     The Court held a thirteenth case management conference on December 15, 2017. The conference occurred after oral argument on various expert motions, and addressed ongoing matters identified in the parties' joint report.  Doc. 9245.

     **A.**    **Motion Hearings.**

     In preparation for the hearing to be held on **January 19, 2018 at 1:00 p.m.**, the Court will attempt to prepare for the motions related to experts Muehrcke, Hurst, Eisenberg, Betensky, and McMeeking.  *See* Doc. 8172.  The Court will decide, without oral argument, the motions related to experts Morris, Grassi, Garcia/Streiff, and the use of criminal law standards.  This will leave the Ritchie motion to be heard.  The parties should confer and decide whether one of the five motions scheduled for January 19 or the Ritchie motion can be decided without oral argument.  If so, an additional hearing will not be needed.  The Court likely will rule on the motion for summary judgment in the Jones case after the bellwether trial in the Booker case.

     **B.**    **Scheduling of Bellwether Trials.**

     The Booker bellwether trial will begin on March 14, 2018.  This is a day later than originally scheduled and is necessitated by the Court's schedule.  The trial must be completed by March 30, 2018, as the Court is fully committed the week of April 2, 2018.

The Court will allot 27 hours of trial time to Plaintiffs and 25 hours to Defendants. This time will be counted against opening and closing statements, direct examination, and cross-examination. The Court will advise the parties of the time they have used each day at noon and at the end of the day.

**C.    Jury Questionnaire.**

The Court plans to seat nine jurors. The parties have submitted a proposed jury questionnaire. The Court will review the proposal and decide whether a questionnaire should be used and, if so, the form of the questionnaire.

**D.    Motion to Certify Appeal.**

Defendants ask the Court to certify its order on Defendants' preemption motion for summary judgment, dated November 22, 2017, for interlocutory appeal under 28 U.S.C. § 1292(b). Doc. 9244. The parties and the Court discussed this motion at the December 15 conference.

A district court may certify an order for interlocutory appeal if it (1) involves a controlling question of law (2) as to which there is a substantial ground for difference of opinion and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). Although Defendants' preemption argument, if accepted, would constitute a controlling ruling of law, the Court cannot conclude that there is substantial ground for difference of opinion or that an immediate appeal would materially advance the ultimate termination of this litigation.

For reasons stated in its order (Doc. 8872), the Court finds that Plaintiffs' claims are not preempted. The Court does not view this as a close question. Although some jurists have expressed concern about confusion in preemption law, this fact does not, in the Court's view, leave the issue addressed in the Court's ruling open to substantial question.

Further, the Court cannot conclude that an immediate appeal of its order would materially advance the ultimate termination of cases in this MDL. As mentioned during the conference, the Court certified an issue to the Ninth Circuit in August 2015. *See*

- 2 -

*Smilovits v. First Solar Inc.*, 119 F. Supp. 3d 978, 1011 (D. Ariz. 2015). The Court of Appeals accepted review in November 2015, but no decision has been issued. This level of delay is typical of matters addressed in the docket-heavy Ninth Circuit. The Court concludes that there is little prospect that certification of this issue would result in an appellate decision in time to aide in the termination of this litigation. This is true particularly in light of the fact that Defendants hope to pursue this issue to the Supreme Court, a process that would take even longer.

    **E.**    ***Cisson* Motion.**

    Plaintiffs seek leave to file a motion to preclude Defendants from presenting FDA-related evidence at trial. Doc. 9245 at 12. Plaintiffs may file the motion by **January 3, 3018**. Defendants shall respond by **January 17, 2018**, and Plaintiffs shall reply by **January 26, 2018**. The motion and response may be 10 pages long, the reply 5 pages.

    **F.**    **Next Case Management Conference.**

    The Court will hold another case management conference after the motions hearing on **January 19, 2018 at 1:00 p.m.**. The parties shall file a joint status report five days prior to the conference.

    **IT IS ORDERED** that Defendants' motion to certify the Court's preemption order for interlocutory appeal under 28 U.S.C. § 1292(b) (Doc. 9244) is **denied**.

    Dated this 21st day of December, 2017.

_____
David G. Campbell
United States District Judge

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC<br><br>**CASE MANAGEMENT ORDER NO. 30** |

The Court held a fourteenth case management conference on January 19, 2018. The conference occurred after oral argument on various expert motions and addressed ongoing matters identified in the parties' joint report.  Doc. 9645.

**A.     Motion Hearings.**

The Court heard oral argument on motions relating to experts Muehrcke, Hurst, Eisenberg, and Betensky.  The parties and the Court agreed that oral argument is not needed on motions related to experts McMeeking, Morris, Grassi, Garcia/Streiff, criminal law standards, and Ritchie.  The Court will rule on these motions during the month of February.  The Court will also rule on the motion in limine recently filed by Plaintiffs on the use of FDA-related evidence at trial.

**B.     Other Matters.**

Plaintiffs may use up to five pages for a motion in limine on the issue of non-parties at fault.  Defendants may file a five-page response.

Defendants may file a motion in limine of up to ten pages on when evidence regarding the Recovery filter may be introduced.  Plaintiffs may file a ten-page response, and Defendants may file a five-page reply, if needed.

The parties will confer about bifurcating the Booker trial under Georgia law. If such bifurcation occurs, evidence regarding Defendants' net worth, as possibly relevant to the issue of punitive damages, will be postponed until after the jury rules on whether punitive damages should be awarded. If the punitive damages phase is needed, the parties agreed that it will be short and will occur immediately after the jury's general verdict. The Court reminded the parties that any time devoted to this punitive damages portion of the trial must be counted against the hours allotted to each side in Case Management No. 29.

Plaintiffs requested permission to conduct limited punitive damages discovery. The Court concludes that the parties should confer to see if they can agree on an exchange of information, in admissible form, that will eliminate the need for additional discovery. If the parties are unable to reach agreement, Plaintiffs may take one deposition under Rule 30(b)(6) for up to two hours. The deposition will be completed before the final pretrial conference on March 2, 2018.

The final pretrial conference will begin at 10:00 a.m. on March 2, 2018. The Court will reserve the balance of the day to address any and all pretrial matters.

The parties asked that the Court rule on the Jones summary judgment motion as soon as possible, but agreed that the expert motions and the motions in limine to be filed on January 26, 2018, take priority. The Court will use its best effort to rule on the Jones motion before the end of February.

The parties and the Court did not set another status conference. If issues arise that require the Court's attention, the parties should place a joint telephone call to the Court so that such a conference can be scheduled. The next scheduled hearing in this case will be the final pretrial conference.

Dated this 23rd day of January, 2018.

_____
David G. Campbell
United States District Judge

- 2 -

Case 2:15-md-02641-DGC Document 10323 Filed 03/02/18 Page 1 of 3

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC<br><br>**CASE MANAGEMENT ORDER NO. 31** |

The Court held a final pretrial conference on March 2, 2018. This order will reflect matters addressed at the conference.

1. The parties' proposed final pretrial order (Doc. 10255) was approved by the Court as the final pretrial order in this case. The order shall govern the presentation of evidence and other trial issues, and may be modified only to prevent manifest injustice. Fed. R. Civ. P. 16(e).

2. The parties did not object to any of the Court's decisions on excusing jurors for hardship. Jurors identified in the Court's previous order and additional jurors discussed during the conference will be excused.

3. The Court granted challenges for cause to a number of jurors based on questionnaire answers. Those jurors were identified on the record and in an order filed after the conference.

4. The Court concluded that 60 jurors should be called for trial on March 14, 2018. This number will ensure enough qualified jurors to try to the case.

5.     The parties shall prepare a witness list to be handed to jurors on the morning of trial.  The list should be sent to chambers in Word format on or before **March 7, 2018**.

6.     The parties had no objections to the proposed preliminary instructions distributed at the start of the conference.  The parties may propose additional voir dire questions by **March 7, 2018**.

7.     Following the conference, the Court reporter conferred with the parties about transcription of the trial.  The parties requested that the reporter transcribe video deposition evidence presented during the trial.  The reporter has found such transcription very difficult in the past, due to the sometimes poor quality of the video and the pace of questioning.  The Court will not require the reporter to transcribe video deposition testimony.  To create an accurate record of what was shown to the jury, the parties shall jointly prepare a document that recites the pages and line numbers of all deposition testimony played to the jury and shall file it in the docket following the trial.  The parties need not do so for deposition testimony read to the jury – the reporter will record such testimony.

8.     Each side shall, 48 hours in advance, identify the live witnesses it intends to present.

9.     The parties shall provide the Court clerk with impeachment exhibits 24 hours in advance of their potential use.

10.     Trial will occur on March 14-16, 20-23, and 26-30, 2018.  This schedule, which adds March 26 as a trial day, will permit the jury to receive the case for deliberation by mid-day on March 29, 2018.

11.     The Court entered a number of legal rulings during the conference, and provides others now:

a.     For reasons stated in more detail on the record, the Court will not exclude evidence and argument by Defendants that the FDA took no enforcement action with respect to the G2 filter, or evidence regarding the information Defendants provided

- 2 -

to the FDA in connection with the 510(k) process. The Court concludes that evidence regarding a lack of FDA action is relevant to the negligent design and punitive damages claims. *See Browning v. Paccar*, 448 S.E.2d 260, 263 (Ga. 1994) ("The fact that none of such vehicles had been subjected to recall and Paccar had never been subjected to regulatory action with respect to the claimed defect despite the thousands of identical vehicles in use, tends to negate the allegation that the configuration was a dangerous design."). The Court has previously concluded that Defendants' compliance with the 510(k) process is also relevant. Doc. 9881. The Court also finds that Plaintiffs have ample evidence to contest Defendants' assertions that they were fully transparent with the FDA. The Court cannot conclude that the FDA's lack of enforcement was intended by the FDA as an assertion, making it subject to the hearsay rules. Plaintiffs can object at trial to specific evidence they consider inadmissible.

       b.    By **March 6, 2018**, the parties shall file two-page memoranda on why the testimony of withdrawn defense experts is not admissible under Fed. R. Civ. P. 32(a)(4) and Fed. R. Evid. 804(b)(1).

       c.    The Court will permit Plaintiffs to present evidence from Defendants' sales and marketing witnesses. The Court concludes that evidence of what Defendants' sales personnel were not told or were not instructed to convey is relevant to the claim of failure to warn.

       d.    The parties shall confer on the counter-designations that should be presented when deposition testimony is played for the jury. Only counter-designations needed to prevent a misleading presentation should to included. The parties will also confer about the scheduling of live witnesses. Generally, the Court would like to require witnesses to attend trial only once, but this rule may give way if the additional questioning of a witness would seriously interrupt the opponents' case.

       e.    Because he was not disclosed as a witness during discovery, the Court held that Dr. Kandarpa may not be called by Plaintiffs as a witness at trial. Fed. R. Civ. P. 37(e).

f.    Dr. Kinney may be called as a fact witness, but not regarding his work for Bard.  Doc. 9868.

j.    The Court heard argument regarding Defendants' assertion that evidence of cephalad migration by the Recovery filter should not be admitted.  The Court concludes that such evidence will be necessary for the jury to understand the issues that prompted creation and design of the G2, information that is relevant to the design defect claim.   The Court also finds such evidence relevant in responding to Defendants' assertion that the FDA's 510(k) clearance of the G2 amounted to a determination that the G2 was as safe and efficient as the Recovery.  Plaintiffs should be permitted to argue that the Recovery was not safe and efficient, and that the FDA's clearance of the G2 based on the Recovery cannot be viewed as a reliable determination of safety or efficiency.  The Court is concerned, however, that too heavy an emphasis on deaths caused by cephalad migration of the Recovery filter – a kind of migration which did not occur in Ms. Booker's case – would result in unfair prejudice that substantially outweighs the probative value of the cephalad migration evidence.   The Court will not preclude Plaintiffs from introducing evidence of cephalad migration or that deaths occurred as a result, but Defendants may object if they believe Plaintiffs are overemphasizing the cephalad migration deaths.

Dated this 2nd day of March, 2018.


_____
David G. Campbell
United States District Judge

**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX-DGC |
| Doris Jones, an individual, | No. CV-16-00782-PHX-DGC |
| Plaintiff, | |
| v. | |
| C. R. Bard, Inc., a New Jersey corporation; and Bard Peripheral Vascular, Inc., an Arizona corporation, | **CASE MANAGEMENT ORDER NO. 32** |
| Defendants. | |

The Court held a final pretrial conference on May 4, 2018. Doc. 10993. In addition to the transcript of the hearing, this order will capture rulings that were made.

1. All of the jurors previously identified in Doc. 10844 will be excused for hardship. By separate order, the Court will identify additional jurors that will be excused for hardship.

2. The Court heard challenges for cause and granted the challenges with respect to eight jurors. They were identified on the record and will be included in a separate order.

3. The Court and the parties decided that 60 potential jurors will be called to court on May 15, 2018.

4.      The Court will not give Plaintiff's proposed voir dire questions regarding punitive damages.  Doc. 10933.

5.      On or before **May 11, 2018**, the parties shall provide the Court with a list of witnesses to be shared with the prospective jurors before jury selection.

6.      The Court confirmed that Plaintiff has been allotted 28 hours of trial time and Defendants have been allotted 27 hours.  The Court will hold the parties to this time. *See* Doc. 10922.

7.      The Court instructed the parties to resubmit their proposed changes to the final jury instructions.  These changes shall be submitted by **May 8, 2018**.

8.      The Court addressed several matters from the parties' proposed final pretrial order:

a.      Plaintiff has withdrawn her claim of fraudulent concealment.

b.      The defense of failure to mitigate damages will be deemed a part of the final pretrial order.  Plaintiff may argue during trial that the defense should not be submitted to the jury due to lack of evidence.

c.      The Court will not address the availability of punitive damages in light of O.C.G.A. § 51-12-5.1(e)(1).  Defendants may raise that issue in the future if they seek a ruling from the Court.

d.      Defendants may file a motion to seal trial exhibits 21 days after the last trial transcript is placed on the docket.

e.      Plaintiff may present testimony from experts formerly retained by Defendants, but withdrawn by Defendants, in accordance with the requirements in Doc. 10382.

f.      Defendants object to the use of Medhi Syed's deposition because, although Plaintiffs provided Defendants with all designations for Mr. Syed during the Booker trial, she did not provide them in this case.  Doc. 10932 at 24.  The Court will not preclude Plaintiff from using Mr. Syed's deposition if a punitive damages phase is necessary.  The Court will rule on objections in the deposition designations.

g.    The proposed final pretrial order (Doc. 10932), as revised in this order, is approved and adopted as the final pretrial order pursuant to Rule 16(e). Modifications to the order will be permitted only to prevent manifest injustice.

9.    Defendants object to Plaintiff calling Dr. Kandarpa to testify at trial because Plaintiff did not identify him as a witness until well after the close of discovery and shortly before the Booker trial. Doc. 10932 at 3. The Court excluded Dr. Kandarpa from the Booker trial under Rule 37(c) on the ground that he was not identified in any Rule 26(a) disclosure, and this failure was neither substantially justified nor harmless. Doc. 10323 at 3. The parties clarified at the final pretrial conference for the Jones case that Rule 26(a) disclosures have not been exchanged in this MDL, but they agree that Dr. Kandarpa was not disclosed in response to Defendants' interrogatory seeking the identity of witnesses and the subject matter of their testimony. *See* Fed. R. Civ. P. 33(b). Defendants argue that the recent identification of Dr. Kandarpa is much too late, and that they would have deposed him had he been timely disclosed. *Id.* The Court agrees.

Rule 33(b) requires that interrogatories be answered within 30 days of service. Plaintiff identified Dr. Kandarpa as a witness more than a year after Defendants served their interrogatories and well after discovery closed in 2017. Plaintiff provides no justification for the delay, other than noting that Defendants have known about Dr. Kandarpa for years. But mere knowledge that a potential witness exists is no substitute for knowing that one's opponent intends to call him at trial.

Plaintiff asserts that any delay is harmless because, even if she had timely identified Dr. Kandarpa as a witness, there was little time left in the discovery period for Defendants to depose him. But Defendants have made clear that they would have sought to schedule his deposition before the close of discovery and would have sought an extension from the Court if necessary. The Court cannot conclude that the delay in identifying Dr. Kandarpa as a witness is harmless.

Where a party fails to fully answer an interrogatory, the sanctions set forth in Rule 37(b) may be imposed. Fed. R. Civ. P. 37(d)(3). Those sanctions include

prohibiting the party from introducing the non-disclosed matter into evidence. Fed. R. Civ. P. 37(b)(2)(A)(ii). The Court finds that prohibiting Plaintiff from calling Dr. Kandarpa as a witness at trial is an appropriate sanction.

Even if the Court excludes Dr. Kandarpa as a substantive witness, Plaintiff asks that she be permitted to call him solely for the purpose of authenticating certain documents and admitting them in evidence. The Court understands these to be documents Dr. Kandarpa either authored or reviewed at the time of their creation, and concludes that even this limited testimony would not be harmless because Defendants would not have had an opportunity to depose him about the documents. The Court will not permit this limited testimony.

10. Plaintiff objects to Defendants presenting evidence that the FDA took no enforcement action against them and never suggested a recall of their IVC filters. Doc. 10932 at 20. The Court ruled in the Booker trial that this evidence was admissible, but Plaintiff again contends that the evidence lacks probative value and is misleading and highly prejudicial. *Id.* The Court does not agree.

Plaintiff will make many FDA-related arguments. She will assert that the Recovery filter was adulterated and misbranded in violation of federal regulations, that the device should have been recalled, and that it was not substantially equivalent to its predicate device. She will seek to introduce an FDA warning letter and argue that Defendants' mishandling of complaints, including for the Eclipse filter, violated federal regulations and reflects a conscious indifference to patient safety. *See* Docs. 10520 at 3, 10708 at 6. She also will assert that Defendants misled the FDA and failed to disclose relevant information. To counter this evidence and argument regarding the FDA, Defendants should be permitted to present evidence regarding their communications with the FDA and its lack of enforcement action with respect to their filters.

Moreover, the lack of action by the FDA is relevant to the negligent design claim. Doc. 10323 at 3 (citing *Browning v. Paccar*, 448 S.E.2d 260, 263 (Ga. 1994)). Although most product recalls are voluntary, Plaintiffs do not dispute that the FDA has authority to

initiate a recall and other enforcement actions against a manufacturer.  The fact that the FDA did not do so in this case has some probative value.  *See Browning*, 448 S.E.2d at 263.

Plaintiff contends that Defendants should not be permitted to imply that the FDA investigated and reached favorable conclusions regarding the filters.  The Court agrees that the any suggestion about the state of mind of the FDA or its officials would be improper.  If Plaintiff believes that Defendants are crossing this line, she may object.  But the fact that the FDA took no enforcement action is relevant to her claims and theory of the case.

11.    The Court heard argument on whether exclusion of evidence of deaths caused by cephalad migration of Recovery filters will seriously impair Plaintiff's case. The Court will address this issue in a separate order.

Dated this 7th day of May, 2018.

David G. Campbell
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

IN RE: Bard IVC Filters Products Liability Litigation,

No. MDL 15-02641-PHX DGC

**CASE MANAGEMENT ORDER NO. 33**

Following the close of trial in the Jones case, the Court conferred with the parties regarding scheduling matters. On the basis of the conference, the Court enters the following order:

1.    Next Bellwether: Mulkey.

The parties agreed on the Mulkey case as the bellwether trial for September 2018.

2.    Jury Questionnaire and Jury Selection for Mulkey Trial.

a.    By **July 5, 2018**, the parties shall provide the Court with proposed changes to the questionnaire used in the Jones bellwether trial. The Court will consider these proposals in finalizing the questionnaire for the Mulkey trial.

b.    The Clerk shall mail the questionnaire to 200 jurors no later than **July 13, 2018.** The questionnaire will instruct the prospective jurors to return it to the Court no later than **August 10, 2018**.

c.    A thumb drive will be prepared for counsel (one for each side) containing copies of the questionnaires and will be available for pickup at the jury office on **August 17, 2018.** The thumb drive and any paper copies made by counsel must be returned to the Court by counsel on the day of jury selection.

d. On **August 24, 2018**, the Court will provide the parties with a list of prospective jurors the Court proposes to excuse for hardship on the basis of their responses to the first question in the questionnaire.

e. The Court will hold a final pretrial conference in the Mulkey case on **August 30, 2018 at 10:00 a.m.** At the final pretrial conference, counsel will be permitted to challenge the Court's excusal of any of the listed jurors for hardship. If counsel do not object to the Court's proposed excusal of a particular juror for hardship, that juror will be excused from further involvement in this case. After hearing counsel's objections to hardship excusals, the Court will determine which of the challenged jurors should be excused for hardship and which should appear for voir dire. In addition, counsel shall be prepared to make challenges for cause to jurors on the basis of information contained in their questionnaires. These challenges should be limited to jurors who clearly could not serve as a fair juror on the basis of their questionnaire answers. The Court will rule on these challenges at the final pretrial conference. All prospective jurors who returned questionnaires and who have not been excused for hardship or successfully challenged for cause will be candidates for voir dire.

f. On **September 18, 2018, at 9:00 a.m.,** 50 prospective jurors will be called to Court to appear for voir dire. The Court will permit counsel to ask follow-up questions of individual jurors based on information contained in the juror questionnaires. Counsel should not venture into new subjects – they should limit their follow-up questions to the items covered in the questionnaire. Following voir dire, the Court will hear and rule on challenges for cause.

g. The Court will seat 9 jurors. Each side will have 3 pre-emptory strikes.

h. The Court anticipates that opening statements and evidence will begin on the afternoon of **September 18, 2018**.

/ / /

/ / /

- 2 -

3.     <u>Briefing on Specific Issues</u>.

By **June 15, 2018**, the parties should simultaneously file six-page memoranda addressing the following issues:

a.     The Plaintiff for the fourth and fifth bellwether trials (Hyde and Kruse);

b.     The identity of the Plaintiff for the sixth bellwether trial (Peterson, Tinlin, King, Mixson, or DeWitt);

c.     The presence of SNF cases in this MDL and what should happen with them; and

d.     The appropriate time for remand of the "mature" cases discussed in previous Case Management Orders.

4.     <u>Mulkey Motion for Summary Judgment</u>.

The Court will rule on the pending Mulkey motion for summary judgment as soon as possible.

5.     <u>Mulkey Motions in Limine</u>.

Motions in limine, limited to three pages each, shall be filed by **July 27, 2018**. Responses to motions in limine, limited to three pages each, shall be filed by **August 10, 2018**.  No replies shall be filed.

6.     <u>Deposition Designations</u>.

The parties shall provide deposition designations by **August 15, 2018**.

7.     The proposed final pretrial order shall be submitted by **August 17, 2018**. The Court will enter a separate order governing the materials that should be submitted with the final pretrial order.

8.     <u>Trial days</u>.

Trial will be held on September 18-21 and 24-28, and October 1-5.  Plaintiff will be allotted 33 hours of trial time and Defendants will be allotted 30 hours of trial time. These hour allocations are greater than in previous trials, and are undertaken to address Plaintiff's concern that a more complete case could be presented with additional time.

This represents five more hours of trial time for Plaintiff than allotted in the Jones trial and six more hours than allotted in the Booker trial. The Court will consider whether to shorten the allotted time for the fourth bellwether trial. Plaintiff's counsel were more efficient in the Jones trial than the Booker trial, but the Court concludes that greater efficiency could still be achieved without a loss of persuasive effect. The Court nonetheless believes that one purpose of the bellwether trials is to give the parties a fair sense of how cases will be decided in various trials, and will allot this additional time in order to provide information on the result of a trial where more time is allowed. This schedule should allow the case to get to the jury by the morning of October 4, 2018.

9. The Court previously ruled that Plaintiffs could not use Dr. Kandarpa as a witness because of their failure to disclose him during the discovery period. The Court concluded that this failure was not harmless because Defendants would have deposed Dr. Kendarpa had he been properly identified. Doc. 11011 at 3. Because there are more than three months between now and the start of the Mulkey trial, and a deposition of Dr. Kendarpa has already been scheduled in similar state cases for the month of June, the Court concludes that the harm to Defendants can be alleviated through the deposition. As a result, the Court will permit Plaintiff Mulkey to use Dr. Kandarpa as a witness at trial.

10. _Cisson_ Ruling.

The Court previously rejected Plaintiff's _Cisson_ argument. Plaintiff's counsel have asked the Court to reconsider this ruling in light of the state law that will apply to future bellwether cases. Plaintiff may file a five-page memorandum on this subject by **June 15, 2018**, and Defendants may file a five-page response by **June 29, 2018.** No reply shall be filed. The Court will review the original _Cisson_ briefing, as well as these two additional memoranda, and issue a decision during the month of July.

Dated this 1st day of June, 2018.

David G. Campbell
United States District Judge

- 4 -

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

IN RE:  Bard IVC Filters Products Liability Litigation,

No. MDL 15-02641-PHX DGC

**CASE MANAGEMENT ORDER NO. 34**

Following the close of the second bellwether trial, the Court conferred with the parties regarding scheduling matters.  The parties agreed on the Mulkey case as the next bellwether trial for September 2018.  The Court directed the parties to file memoranda addressing other bellwether trials and cases in this MDL.  Doc. 11320.  Having reviewed the memoranda, the Court enters the following order:

**I.      Next Three Bellwether Trials:  Kruse, Hyde, and Mulkey.**

During a recent telephonic conference, counsel for Ms. Mulkey expressed concern about her availability for trial in September due to certain health issues.  Doc. 11549.  Counsel thereafter provided an update on her condition which leaves her availability for trial uncertain.  Doc. 11639.  Defendants have no objection to a different case for the next bellwether, and propose Kruse in lieu of Mulkey.  Doc. 11640.  Plaintiffs propose Hyde as the next bellwether.  Doc. 11553.

Having considered the parties' positions, the Court concludes that the order of the next three bellwether trials should be as follows:  Kruse, Hyde, and Mulkey.  Trial in the Kruse bellwether will begin in **September 2018** as set forth below.  Trial in the Hyde

bellwether will be held on **November 5-9**, **12-16**, and **19-20**. Trial in the Mulkey bellwether will be held in **February 2019**. The Court will set the specific trial dates by separate order.

**II.    Kruse Trial.**

The dates and deadlines set forth in Case Management Order No. 33 for the Mulkey trial will apply to the Kruse bellwether as follows (see Doc. 11320 for further details):

**A.    Jury Questionnaire and Jury Selection for Kruse Trial.**

1.    By **July 5, 2018**, the parties shall provide the Court with proposed changes to the questionnaire used in the Jones bellwether trial. The Court will consider these proposals in finalizing the questionnaire for the Kruse trial.

2.    The Clerk shall mail the questionnaire to 200 jurors no later than **July 13, 2018.** The questionnaire will instruct the prospective jurors to return it to the Court no later than **August 10, 2018**.

3.    A thumb drive will be prepared for counsel (one for each side) containing copies of the questionnaires and will be available for pickup at the jury office on **August 17, 2018.** The thumb drive and any paper copies made by counsel must be returned to the Court by counsel on the day of jury selection.

4.    On **August 24, 2018**, the Court will provide the parties with a list of prospective jurors the Court proposes to excuse for hardship on the basis of their responses to the first question in the questionnaire.

5.    The Court will hold a final pretrial conference in the Kruse case on **August 30, 2018 at 10:00 a.m.** and will address with the parties juror excusals for hardship and challenges for cause. *See* Doc. 11320 at 2, ¶ 2(e).

6.    On **September 18, 2018, at 9:00 a.m.,** 50 prospective jurors will be called to Court to appear for voir dire. Following voir dire, the Court will hear and rule on challenges for cause. The Court will seat 9 jurors. Each side will have 3 pre-emptory strikes. *See* Doc. 11320 at 2, ¶ 2(f).

**B.  Kruse Motion for Summary Judgment.**

The Court will rule on the Kruse summary judgment motion as soon as possible.

**C.  Motions in Limine.**

Motions in limine, limited to three pages each, shall be filed by **July 27, 2018**. Responses to motions in limine, limited to three pages each, shall be filed by **August 10, 2018**. No replies shall be filed.

Defendants may re-urge their motion in limine regarding Recovery death evidence (Doc. 9862) pursuant to the schedule set forth above. Memoranda on this issue may be up to 5 pages long. The parties shall not repeat arguments previously made. The issue was fully briefed for the Booker trial, and the Court has addressed Recovery death evidence in several orders. Docs. 10258, 10819, 10920, 11041.[1]

**D.  Deposition Designations.**

The parties shall provide deposition designations by **August 15, 2018**.

**E.  Proposed Final Pretrial Order.**

The proposed final pretrial order for the Kruse bellwether shall be submitted by **August 17, 2018**. The Court will enter a separate order governing the materials that should be submitted with the proposed final pretrial order.

**F.  Trial days.**

Trial in the Kruse bellwether will be held on **September 18-21** and **24-28**, and **October 1-5**. Plaintiff will be allotted **33 hours** of trial time and Defendants will be allotted **30 hours** of trial time. This schedule should allow the case to get to the jury by the morning of October 4, 2018.

**G.  Dr. Kandarpa.**

Kruse may use Dr. Kandarpa as a witness at trial. *See* Doc. 11320 at 4, ¶ 9.

---

[1] The Court stated that it would propose a new schedule for Plaintiffs' *Cisson* motion if the Mulkey case were to be replaced. Doc. 11549. Plaintiffs have made clear, however, that they do not intend to re-urge the motion regardless of which case is chosen for the third bellwether. Doc. 11639 at 3.

### III. The Sixth Bellwether: Tinlin.

Defendants propose the King case for the sixth bellwether, and Plaintiffs propose Tinlin. Docs. 11550, 11553. The five cases already selected for bellwether trials consist of three G2 cases (Booker, Kruse, and Hyde) and two Eclipse cases (Jones and Mulkey). The Court agrees with Plaintiffs that it is important to have a Recovery case as one of the six bellwether trials. Doc. 11553 at 2-3. The Tinlin case is the only potential bellwether that involves a Recovery filter. The Court previously found Tinlin to be a strong candidate for a bellwether, but expressed concern that she may not be able to endure the rigors of an out-of-state trial due to her illness. Doc. 5770 at 1-2. Plaintiffs, however, have confirmed that Tinlin is willing and able to travel to Arizona for trial. Doc. 11553 at 3.

For reasons stated on the record at the ninth case management conference, the Court does not view King as a helpful bellwether case. Doc. 5770 at 2. Defendants do not address those concerns in their memorandum. Moreover, King involves a G2 like three of the other bellwether cases. Defendants assert that the King case is representative of the MDL inventory as a whole because it involves perforation and an unsuccessful retrieval attempt. Doc. 1550 at 2. But even if this were true, the Court finds that it is more important for the sixth bellwether to be a Recovery case.[2]

Trial in the Tinlin bellwether will be held in **May 2019**. The Court will determine the specific trial dates after the Kruse trial.

### IV. Disposition of the SNF Cases.

The nearly 100 Simon Nitinol Filter ("SNF") cases should not be part of this MDL. The SNF is not part of the master complaint, which is limited to Bard retrievable filters. Doc. 364. The SNF cases have been filed by more than 20 different law firms. Defendants do not oppose the request by Plaintiffs' counsel to have 30 days to obtain

---

[2] Given the selection of Tinlin for the sixth bellwether, the Court need not consider Plaintiffs' alternative choice, DeWitt. Neither side proposes Nelson, Peterson, or Mixson as the final bellwether case.

responses from the firms representing the SNF plaintiffs as to what action should be taken in those cases. Doc. 11550 at 4. Plaintiffs shall file a notice regarding the status of the SNF cases by **July 16, 2018**.

**V.      Remand of the "Mature" Cases.**

More than two years ago, the parties estimated that the 10 mature cases would be "ripe for remand in 4-6 months." Doc. 914 at 2. Since that time, common fact discovery and expert disclosures in this MDL have been completed, and the Court has ruled on *Daubert* motions and Defendants' summary judgment motion based on preemption. The Court concludes that it is time to remand the mature cases to their home districts. The Court will look into the proper procedure for remand and invite briefing if necessary.

Dated this 28th day of June, 2018.

_____
David G. Campbell
United States District Judge

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

IN RE:  Bard IVC Filters Products Liability Litigation,

No. MDL 15-02641-PHX DGC

**CASE MANAGEMENT ORDER NO. 35**

As set forth in Case Management Order No. 34, the bellwether cases are scheduled for trial as follows:  Kruse (September 2018), Hyde (November 2018), Mulkey (February 2019), and Tinlin (May 2019).  Doc. 11659 at 1-4.  The Court has determined that it must grant summary judgment in favor of Defendants on the claims asserted by Plaintiff Kruse.  *See* Doc. 11839.  The Court held a conference call with the parties today to discuss scheduling issues and whether the Hyde case could be moved to the September bellwether slot in lieu of the Kruse case.  On the basis of the conference, the Court enters the following order:

**I.     September 2018 Bellwether:  Hyde.**

The parties agreed that in lieu of Kruse, and with certain scheduling modifications, the Hyde case can be tried in September.  The dates and deadlines set forth in Case Management Order No. 34 (Doc. 11659) are modified in part as follows for the Hyde trial:

    **A.     Jury Questionnaire and Selection.**

        1.     By **July 18, 2018**, the parties shall provide the Court with proposed

changes to the jury questionnaire used in the Jones trial. The Court will consider these proposals in finalizing the questionnaire for the Hyde trial.

2. The Clerk shall mail the questionnaire to 200 jurors no later than **July 20, 2018.** The questionnaire will instruct the prospective jurors to return it to the Court no later than **August 17, 2018**.

3. A thumb drive will be prepared for counsel (one for each side) containing copies of the questionnaires and will be available for pickup at the jury office on **August 24, 2018.** The thumb drive and any paper copies made by counsel must be returned to the Court by counsel on the day of jury selection.

4. On **August 30, 2018**, the Court will provide the parties with a list of prospective jurors the Court proposes to excuse for hardship on the basis of their responses to the first question in the questionnaire.

5. The Court will hold a final pretrial conference in the Hyde case on **September 6, 2018 at 10:00 a.m.** and will address with the parties juror excusals for hardship and challenges for cause. *See* Doc. 11320 at 2, ¶ 2(e).

6. On **September 18, 2018, at 9:00 a.m.**, 50 prospective jurors will be called to Court to appear for voir dire. Following voir dire, the Court will hear and rule on challenges for cause. The Court will seat 9 jurors. Each side will have 3 pre-emptory strikes. *See* Doc. 11320 at 2, ¶ 2(f).

**B.** **Motion for Summary Judgment.**

The Court will rule on the choice-of-law issue raised in the Hyde summary judgment motion (Doc. 7359) by **July 25, 2017**. The Court will endeavor to rule on the remaining summary judgment issues in Hyde as soon as possible.

**C.** **Motions in Limine.**

Motions in limine, limited to three pages each, shall be filed by **August 10, 2018**. Responses to motions in limine, limited to three pages each, shall be filed by **August 24, 2018**. No replies shall be filed.

Defendants may, if they so choose, re-urge their motion in limine regarding

- 2 -

Recovery death evidence (Doc. 9862) pursuant to the schedule set forth above. Memoranda on this issue may be up to 5 pages long. The parties shall not repeat arguments previously made. The issue was fully briefed for the Booker trial, and the Court has addressed Recovery death evidence in several orders. Docs. 10258, 10819, 10920, 11041.[1]

### D. Deposition Designations.

The parties shall provide deposition designations by **August 22, 2018**.

### E. Proposed Final Pretrial Order.

The proposed final pretrial order for the Hyde bellwether shall be submitted by **4:00 p.m.** on **August 24, 2018**. The Court will enter a separate order governing the materials that should be submitted with the proposed final pretrial order.

### F. Trial Days.

The trial dates for the Hyde bellwether will remain the same as those set for Kruse: **September 18-21** and **24-28**, and **October 1-5**. Plaintiff will be allotted **33 hours** of trial time and Defendants will be allotted **30 hours** of trial time. This schedule should allow the case to get to the jury by the morning of October 4, 2018. *See* Docs. 11320 at 3-4, 11659 at 3.

### G. Dr. Kandarpa.

Hyde may use Dr. Kandarpa as a witness at trial. *See* Doc. 11320 at 4, ¶ 9.

## II. November 2018 Bellwether.

Trial in this bellwether slot will be held on **November 5-9**, **13-16**, **19-20**, and **26-28**. The parties should note that these dates have been modified (*see* Doc. 11659 at 2) to allow for 14 trial days and account for the federal holiday on November 12 (Veterans Day). The Plaintiff for the fourth bellwether (Mulkey or Tinlin) will be determined after

---

[1] The Court previously stated that it would propose a new schedule for Plaintiffs' *Cisson* motion if a new case were selected for the September 2018 bellwether slot. Doc. 11549. Plaintiffs have made clear, however, that they do not intend to re-urge the motion regardless of which case is chosen for the third bellwether. Doc. 11639 at 3.

1    the parties file memoranda concerning Mulkey's health condition and the feasibility of

2    Tinlin's case being tried in November.

3    **III.    February 2019 Bellwether.**

4           Trial in this bellwether slot will be held on **February 11-15**, **19-22**, **25-28**, and

5    **March 1, 2019**.

6    **IV.    May 2019 Bellwether.**

7           The Court will determine whether a sixth bellwether trial should be held, and the

8    specific Plaintiff and dates for such bellwether, after the Hyde trial.

9           Dated this 13th day of July, 2018.

10

11

12

13    _____
             David G. Campbell
14           United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

**WO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:  Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX DGC<br><br>**CASE MANAGEMENT ORDER NO. 36** |

The Court has reviewed the parties' memoranda on Plaintiff Debra Mulkey's status and the possibility of trying the Tinlin case in November 2018.  Docs. 11951, 11952.  The memorandum on Ms. Mulkey makes clear that her case should not be scheduled for trial in November.  She continues to undergo medical testing attempting to identify the cause of her concerning health issues, and scheduling her for the stress of a three-week trial in November would be unwise.  The Court will try Ms. Mulkey's case in 2019.

The Court had fully intended to try a fourth bellwether trial in November, but the Court's grant of summary judgment in the Kruse case and the unavailability of Ms.  Mulkey for trial this year mean that the only remaining bellwether plaintiff is Debra Tinlin.   Unfortunately, much of the case-specific discovery and expert disclosures required for the Tinlin trial have not been completed.  Plaintiffs propose an aggressive schedule to have the Tinlin case ready for trial in November, but the Court concludes that the schedule is unrealistic.  A year's worth of medical records for Plaintiff Tinlin's many medical conditions will need to be collected, many treating physicians likely will need to

be deposed, plaintiff-specific expert reports must be prepared and disclosed, expert depositions must be completed, and *Daubert* and summary judgment motions must be briefed and decided. For a trial to begin on November 5, 2018, the Court would need to rule on the *Daubert* and summary judgment motions in early October, something that would be very difficult in light of the Court's administrative responsibilities that month and the fact that the Hyde bellwether trial will not end until October 5.

The Court is reluctant to lose the November bellwether trial slot, but circumstances make a Tinlin trial in November unreasonable. As a result, the Court will plan to try the Tinlin and Mulkey cases in February and May of 2019. The Court will decide the order of the trials, and the dates for the trial in May, after the Hyde trial.

The parties shall follow this schedule in preparing the Tinlin case for trial:

1.     Plaintiff shall provide an updated provider list and executed medical authorizations to Defendants by **August 10, 2018**.

2.     The parties shall obtain updated medical records from known treaters and newly identified treaters by **September 28, 2018**.

3.     The parties shall identify treating physicians and fact witnesses to be deposed, and shall complete the depositions on a rolling basis, by **October 5, 2018**.

4.     Plaintiff's case-specific expert disclosures shall be completed by **September 28, 2018**.

5.     Defendants' case-specific expert disclosures shall be completed by **October 26, 2018**.

6.     Case-specific experts shall be deposed by **November 16, 2018**.

7.     Dispositive and *Daubert* motions shall be filed by **December 7, 2018,** responses by **December 28, 2018,** and replies by **January 11, 2019**.

Dated this 2nd day of August, 2018.

_____
David G. Campbell
United States District Judge

- 2 -

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

IN RE: Bard IVC Filters Products Liability Litigation,

No. MDL 15-02641-PHX DGC

**CASE MANAGEMENT ORDER NO. 37**

The Court held a final pretrial conference with the parties on September 6, 2018. This Order will reflect matters discussed during the final pretrial conference.

**A.      Jury Selection.**

The Court will excuse for hardship the jurors listed in Docs. 12113 and 12375. In addition, the Court will excuse jurors 19 and 179 for hardship.

After hearing arguments from the parties, the Court excused the following jurors for cause: 9, 35, 40, 49, 61, 63, 66, 78, 80, 118, 146, 163, and 199.

The Court will call the 55 potential jurors listed below to appear for jury selection on the morning of September 18, 2018. By noon on September 14, 2018, the parties shall provide the Court with a list of witnesses to be provided to potential jurors on the morning of September 18, 2018.

2
3
4
5
6
15
16
18

20
21
22
23
25
28
29
30
31
32
38
42
44
46
50
51
52
58
59
62
64
67
68
70
71
72
74
75
76
82
83
84
85
86
87
88
90
92
95
103
105
106
107
109
110
111
114

The Court provided counsel with proposed voir dire questions. Counsel should be prepared to address those questions before the start of trial on September 18, 2018.

The Court provided counsel with proposed preliminary jury instructions. Counsel should be prepared to address any objections to those instructions before the start of trial on September 18, 2018.

**B.    Issues to be Resolved Before Trial.**

The Court took under advisement Defendants' argument that the negligence per se claim is preempted, Plaintiffs' objection to the use of Dr. Asch's previous trial testimony during trial, and Defendants' contention that the presumption in Wis. Stat. § 895.047(3)(B) should apply in this case. The Court has entered its Order (Doc. 12589) on this issue.

The parties have provided the Court with a number of additional deposition designations. The Court has reviewed the designations and entered its Order (Doc. 12590) on the designations by the parties.

**C.    Final Pretrial Order.**

The Court approved the parties' Final Pretrial Order (Doc. 12388) with a few modifications stated on the record. The Final Pretrial Order as approved will govern the trial in this case, and may be amended only upon the showing required by Federal Rule of Civil Procedure 16(e).

All other trial-related matters have been addressed in previous Orders of the Court.

Dated this 3rd day of October, 2018.

David G. Campbell
Senior United States District Judge

1
2
3
4
5
6          **IN THE UNITED STATES DISTRICT COURT**

7          **FOR THE DISTRICT OF ARIZONA**

8

9    IN RE: Bard IVC Filters Products Liability          No. MDL 15-02641-PHX-DGC
     Litigation,
10

11                                                        **CASE MANAGEMENT ORDER
                                                          NO. 38**
12

13

14

15          Following the close of evidence in the Hyde case, the Court conferred with the

16   parties regarding scheduling matters. On the basis of the conference, the Court enters the

17   following order.

18   **I.      Future Bellwether Trials.**

19          The Court confirmed that it will hold two more bellwether trials in this MDL

20   proceeding – Plaintiffs Mulkey and Tinlin. The Court will not hold a sixth bellwether

21   trial. Because discovery in the Tinlin case is still being completed and Ms. Mulkey's

22   health appears at this time to permit a trial, the Court will hold the Mulkey trial in

23   February and the Tinlin trial in May. In the meantime, the Tinlin discovery schedule set

24   forth in Doc. 12061, as modified by Doc. 12759, shall remain in place. The Court will

25   rule as promptly as possible on the motion for summary judgment in the Mulkey case. If

26   the Court grants summary judgment in Mulkey, the Tinlin trial will be held in February.

27   If Ms. Mulkey's health worsens, the Court will hear from the parties on whether the

28   Tinlin trial should be moved to February, but this issue should be raised with the Court

during the week of November 12, 2018, in light of the jury questionnaire schedule set forth below.

**II.     February Bellwether Trial**.

        **A.     Jury Questionnaire and Jury Selection.**

        1.     By **November 26, 2018**, the parties shall provide the Court with proposed changes to the questionnaire used in the Hyde bellwether trial.  The Court will consider these proposals in finalizing the questionnaire for the February trial.

        2.     The Clerk shall mail the questionnaire to 200 jurors no later than **November 30, 2018.**  The questionnaire will instruct the prospective jurors to return it to the Court no later than **January 4, 2019**.

        3.     A thumb drive will be prepared for counsel (one for each side) containing copies of the questionnaires and will be available for pickup at the jury office on **January 11, 2019.**  The thumb drive and any paper copies made by counsel must be returned to the Court by counsel on the day of jury selection.

        4.     On **January 18, 2019**, the Court will provide the parties with a list of prospective jurors the Court proposes to excuse for hardship on the basis of their responses to the first question in the questionnaire.

        5.     The Court will hold a final pretrial conference case on **January 28, 2019 at 10:00 a.m.**   At the final pretrial conference, counsel will be permitted to challenge the Court's excusal of any of the listed jurors for hardship.  If counsel do not object to the Court's proposed excusal of a particular juror for hardship, that juror will be excused from further involvement in this case.  After hearing counsel's objections to hardship excusals, the Court will determine which of the challenged jurors should be excused for hardship and which should appear for voir dire.  In addition, counsel shall be prepared to make challenges for cause to jurors on the basis of information contained in their questionnaires.  These challenges should be limited to jurors who clearly could not serve as a fair juror on the basis of their questionnaire answers.  The Court will rule on these challenges at the final pretrial conference.  All

prospective jurors who returned questionnaires and who have not been excused for hardship or successfully challenged for cause will be candidates for voir dire.

6. On **February 11, 2019, at 9:00 a.m.,** 50 prospective jurors will be called to Court to appear for voir dire. The Court will permit counsel to ask follow-up questions of individual jurors based on information contained in the juror questionnaires. Counsel should not venture into new subjects – they should limit their follow-up questions to the items covered in the questionnaire. Following voir dire, the Court will hear and rule on challenges for cause.

7. The Court will seat 9 jurors. Each side will have 3 pre-emptory strikes.

8. The Court anticipates that opening statements and evidence trial will begin on the afternoon of **February 11, 2019**.

**B.** **Dispositive and *Daubert* Motions**.

Dispositive and *Daubert* motions in the Tinlin case shall be filed by **December 7, 2018,** responses by **December 21, 2018,** and replies by **December 28, 2019**. *See* Doc. 12061 ¶ 7.

**C.** **Motions in Limine**.

Motions in limine, limited to three pages each, shall be filed by **December 14, 2018**. Responses to motions in limine, limited to three pages each, shall be filed by **December 28, 2019**. No replies shall be filed.

**D.** **Deposition Designations**.

The parties shall provide deposition designations by **December 14, 2019**.

**E.** **Final Pretrial Order.**

The proposed final pretrial order shall be submitted by **January 11, 2019**. The Court will enter a separate order governing the materials that should be submitted with the final pretrial order.

**F.** **Final Pretrial Conference.**

The Court will hold a final pretrial conference on **January 28, 2019 at 10:00 a.m.**

G. **Trial Days.**

Trial in will be held on **February 11-15**, **19-22**, **25-28**, and **March 1, 2019**. Plaintiff will be allotted 33 hours of trial time and Defendants will be allotted 30 hours of trial time. This schedule should allow the case to get to the jury by the morning of February 28, 2019.

III. **May Bellwether Trial**.

A. **Jury Questionnaire and Jury Selection.**

1. By **March 1, 2019**, the parties shall provide the Court with proposed changes to the questionnaire. The Court will consider these proposals in finalizing the questionnaire.

2. The Clerk shall mail the questionnaire to 200 jurors no later than **March 8, 2019**. The questionnaire will instruct the prospective jurors to return it to the Court no later than **April 5, 2019**.

3. A thumb drive will be prepared for counsel (one for each side) containing copies of the questionnaires and will be available for pickup at the jury office on **April 12, 2019**. The thumb drive and any paper copies made by counsel must be returned to the Court by counsel on the day of jury selection.

4. On **April 19, 2019**, the Court will provide the parties with a list of prospective jurors the Court proposes to excuse for hardship on the basis of their responses to the first question in the questionnaire.

5. The Court will hold a final pretrial conference case on **April 30, 2019 at 10:00 a.m.** At the final pretrial conference, counsel will be permitted to challenge the Court's excusal of any of the listed jurors for hardship. If counsel do not object to the Court's proposed excusal of a particular juror for hardship, that juror will be excused from further involvement in this case. After hearing counsel's objections to hardship excusals, the Court will determine which of the challenged jurors should be excused for hardship and which should appear for voir dire. In addition, counsel shall be prepared to make challenges for cause to jurors on the basis of information contained in

- 4 -

their questionnaires.  These challenges should be limited to jurors who clearly could not serve as a fair juror on the basis of their questionnaire answers.  The Court will rule on these challenges at the final pretrial conference.  All prospective jurors who returned questionnaires and who have not been excused for hardship or successfully challenged for cause will be candidates for voir dire.

        6.      On **May 13, 2019, at 9:00 a.m.,** 50 prospective jurors will be called to Court to appear for voir dire.  The Court will permit counsel to ask follow-up questions of individual jurors based on information contained in the juror questionnaires.  Counsel should not venture into new subjects – they should limit their follow-up questions to the items covered in the questionnaire.  Following voir dire, the Court will hear and rule on challenges for cause.

        7.      The Court will seat 9 jurors.  Each side will have 3 pre-emptory strikes.

        8.      The Court anticipates that opening statements and evidence will begin on the afternoon of **May 13, 2019**.

**B.**    **Dispositive and *Daubert* Motions**.

Dispositive and *Daubert* motions shall be filed by **February 1, 2019,** responses by **March 1, 2019,** and replies by **March 15, 2019**.

**C.**    **Motions in Limine**.

Motions in limine, limited to three pages each, shall be filed by **March 29, 2018**.  Responses to motions in limine, limited to three pages each, shall be filed by **April 12, 2019**.  No replies shall be filed.

**D.**    **Deposition Designations**.

The parties shall provide deposition designations by **March 29, 2019**.

**E.**    **Final Pretrial Order.**

The proposed final pretrial order shall be submitted by **April 12, 2019**.  The Court will enter a separate order governing the materials that should be submitted with the final pretrial order.

- 5 -

**F.     Final Pretrial Conference.**

The Court will hold a final pretrial conference on **April 30, 2019 at 10:00 a.m.**

**G.     Trial Days.**

Trial will be held on **May 13-17**, **20-24**, **and 28-31**.  Plaintiff will be allotted 33 hours of trial time and Defendants will be allotted 30 hours of trial time.  This schedule should allow the case to get to the jury by the morning of May 30, 2019.

**IV.     Motion to Seal Trial Exhibits.**

Defendants shall file any motion to seal trial exhibits in the Jones and Hyde cases by **October 26, 2018**.

**V.     Settlement Talks and Remand.**

Counsel shall meet in person and engage in good faith global settlement talks no later than **November 30, 2018**.  Within five working days after the talks, the parties shall file a joint report informing the Court that good faith settlement talks have been held and reporting generally on the outcome of such talks.

The Court intends to remand all cases in this MDL shortly after completion of the May 2019 bellwether trial.

**VI.     SNF Cases.**

Defendants shall, by **November 2, 2018**, file a motion with the panel on multidistrict litigation to expand this MDL to include the SNF cases or to create a new MDL including the SNF cases.  If the panel concludes that the motion should be granted in some respect, the undersigned judge will be willing to oversee the SNF cases.

Dated this 5th day of October, 2018.

David G. Campbell
United States District Judge

- 6 -

1
2
3
4
5
6 **IN THE UNITED STATES DISTRICT COURT**
7 **FOR THE DISTRICT OF ARIZONA**
8
9 IN RE: Bard IVC Filters Products Liability
10 Litigation,
   No. MDL 15-02641-PHX-DGC
11
   **CASE MANAGEMENT ORDER NO. 39**
   **(Tinlin Bellwether Case)**
12
13
14
15         In Case Management Order ("CMO") No. 36, issued August 2, 2018, the Court set
16 a schedule for the parties to follow in preparing the Tinlin bellwether case for trial.
17 Doc. 12061. Certain of those deadlines were extended two months later. Doc. 12759.
18 In CMO No. 38, the Court set a schedule for the final two bellwether trials, Mulkey and
19 Tinlin, to be held in February and May 2019. Doc. 12853 at 2-6. The Court determined
20 that Mulkey should be tried in February unless the Court were to grant summary
21 judgment in the case or Ms. Mulkey's health were to worsen. *Id.* at 1-2. The Court left
22 open the possibility that Tinlin could be tried in February instead of May. *Id.*
23         The parties have now filed a stipulation that Tinlin should be tried only in the May
24 bellwether slot given that the present schedule for completion of discovery in Tinlin is
25 not feasible. Docs. 12895, 12924. The parties propose an amended discovery schedule
26 for Tinlin. *Id.*
27         The Court will accept the parties' stipulation that Tinlin should be tried in May
28 and approve the proposed changes to the discovery schedule. This order will control the

schedule for the Tinlin trial.  The deadlines and dates for the February bellwether trial, as set forth in CMO 38, will continue to apply to Mulkey.  *See* Doc. 12538 at 2-4.

**I.      Tinlin Discovery Schedule.**

The parties shall follow this amended schedule in preparing the Tinlin case for trial in May 2019:

1.      The parties shall obtain updated medical records by **November 12, 2018**.

2.      The parties shall complete the depositions of treating physicians and fact witnesses by **December 10, 2018**.

3.      Plaintiff's case-specific expert disclosures shall be completed by **November 16, 2018**

4.      Defendants' case-specific expert disclosures shall be completed by **December 17, 2018**.

5.      Case-specific experts shall be deposed by **January 18, 2019**.

**II.     Tinlin Trial Schedule.**

**A.      Jury Questionnaire and Jury Selection.**

1.      By **March 1, 2019**, the parties shall provide the Court with proposed changes to the questionnaire.  The Court will consider these proposals in finalizing the questionnaire.

2.      The Clerk shall mail the questionnaire to 200 jurors no later than **March 8, 2019.**  The questionnaire will instruct the prospective jurors to return it to the Court no later than **April 5, 2019**.

3.      A thumb drive will be prepared for counsel (one for each side) containing copies of the questionnaires and will be available for pickup at the jury office on **April 12, 2019.**  The thumb drive and any paper copies made by counsel must be returned to the Court by counsel on the day of jury selection.

4.      On **April 19, 2019**, the Court will provide the parties with a list of prospective jurors the Court proposes to excuse for hardship on the basis of their

responses to the first question in the questionnaire.

5. The Court will hold a final pretrial conference on **April 30, 2019 at 10:00 a.m.** At the final pretrial conference, counsel will be permitted to challenge the Court's excusal of any of the listed jurors for hardship. If counsel do not object to the Court's proposed excusal of a particular juror for hardship, that juror will be excused from further involvement in this case. After hearing counsel's objections to hardship excusals, the Court will determine which of the challenged jurors should be excused for hardship and which should appear for voir dire. In addition, counsel shall be prepared to make challenges for cause to jurors on the basis of information contained in their questionnaires. These challenges should be limited to jurors who clearly could not serve as a fair juror on the basis of their questionnaire answers. The Court will rule on these challenges at the final pretrial conference. All prospective jurors who returned questionnaires and who have not been excused for hardship or successfully challenged for cause will be candidates for voir dire.

6. On **May 13, 2019, at 9:00 a.m.,** 50 prospective jurors will be called to Court to appear for voir dire. The Court will permit counsel to ask follow-up questions of individual jurors based on information contained in the juror questionnaires. Counsel should not venture into new subjects – they should limit their follow-up questions to the items covered in the questionnaire. Following voir dire, the Court will hear and rule on challenges for cause.

7. The Court will seat 9 jurors. Each side will have 3 pre-emptory strikes.

8. The Court anticipates that opening statements and evidence will begin on the afternoon of **May 13, 2019**.

**B.** **Dispositive and *Daubert* Motions**.

Dispositive and *Daubert* motions shall be filed by **February 1, 2019,** responses by **March 1, 2019,** and replies by **March 15, 2019**.

- 3 -

1    **C.**    **Motions in Limine**.

2    Motions in limine, limited to three pages each, shall be filed by **March 29, 2018**.

3 Responses to motions in limine, limited to three pages each, shall be filed by

4 **April 12, 2019**.  No replies shall be filed.

5    **D.**    **Deposition Designations**.

6    The parties shall provide deposition designations by **March 29, 2019**.

7    **E.**    **Final Pretrial Order.**

8    The proposed final pretrial order shall be submitted by **April 12, 2019**.  The Court

9 will enter a separate order governing the materials that should be submitted with the final

10 pretrial order.

11    **F.**    **Final Pretrial Conference.**

12    The Court will hold a final pretrial conference on **April 30, 2019 at 10:00 a.m.**

13    **G.**    **Trial Days.**

14    Trial will be held on **May 13-17**, **20-24**, **and 28-31**.  Plaintiff will be allotted 33

15 hours of trial time and Defendants will be allotted 30 hours of trial time.  This schedule

16 should allow the case to get to the jury by the morning of May 30, 2019.

17    Dated this 16th day of October, 2018.

David G. Campbell
Senior United States District Judge

- 4 -

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX-DGC<br><br>**CASE MANAGEMENT ORDER NO. 40 (Mulkey Bellwether Trial)** |

Plaintiffs have filed a motion to remove the Mulkey case from the bellwether trial schedule. Doc. 12990. The motion is fully briefed and no party has requested oral argument. Docs. 13118, 13170. The Court will grant the motion.

**I.     Background.**

In April 2017, the parties submitted memoranda proposing specific cases for bellwether trials from a pool of more than 40 cases. Docs. 5652, 5706. Both sides selected the Mulkey case. Docs. 5652 at 3, 5706 at 1. Based on the parties' submissions and oral arguments at the ninth case management conference, the Court selected Mulkey and four other cases for bellwether trials: Booker, Jones, Kruse, and Hyde. Doc. 5770 at 1. The Court stated that it would select a sixth bellwether case after two bellwether trials had been completed. *Id.* at 2.

The Booker case was tried in March 2018 and resulted in a $3.6 million jury verdict in the plaintiff's favor. Docs. 10595, 10596. The Jones case was tried two months later and resulted in a defense verdict. Doc. 11350.

Following the close of the Jones trial, the Court concluded that the order of the next three bellwether trials should be Kruse, Hyde, and Mulkey.  Doc. 11659 at 1.  The Court scheduled Kruse for September 2018, Hyde for November 2018, and Mulkey for February 2019.  *Id.* at 1-2.  The Court selected Tinlin, a Recovery case, for the sixth bellwether trial in May 2019.  *Id.* at 4.

The Court subsequently granted summary judgment in favor of Defendants in the Kruse case.  Doc. 12202.  The parties agreed that Hyde could be moved to the September 2018 bellwether trial slot in lieu of Kruse.  Doc. 11871 at 1.  The Hyde trial resulted in another defense verdict.  Doc. 12891.

Due to certain health issues experienced by Ms. Mulkey and the fact that discovery in Tinlin was ongoing, the Court determined that Mulkey should be tried in February 2019 and Tinlin three months later.  Docs. 12061, 12853, 12971.  The Court also determined that a sixth bellwether trial would not be necessary.  Doc. 12853 at 1.  The summary judgment granted in Kruse had resolved a sixth case.

Plaintiffs seek to remove Mulkey from the bellwether trial schedule, arguing that another trial involving an Eclipse filter would be redundant and a waste of resources.  Doc. 12990 at 4-6.  Defendants oppose the motion.  Doc. 13118.

**II.  Discussion.**

The primary purposes of this MDL – common discovery and ruling on common issues – have been accomplished.  The parties requested that the Court hold bellwether trials to provide insight into how their claims and defenses would be received by juries, with the hope that a global settlement could be achieved before the cases are remanded.  *See In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997); *Manual for Complex Litigation, Fourth* § 22.315 (Federal Judicial Center 2004).  The four bellwether cases resolved to date – Booker, Jones, Kruse, and Hyde – have served this purpose.

Booker involved a G2 filter that had experienced multiple failures, with a fractured strut migrating to the plaintiff's heart.  *See* Doc. 8873 at 2.  The jury found in favor of the plaintiff on the failure to warn and punitive damages claims, awarding $1.6

- 2 -

million in compensatory and $2 million in punitive damages. Docs. 10595, 10596. Plaintiffs have stated that this verdict provides sufficient information regarding the estimated value of G2 cases involving fractures and serious injuries (Doc. 13117 at 49), and neither side proposes trying another G2 bellwether case.

Jones involved an Eclipse filter that had experienced failures similar to the G2 filter in Booker. The trial resulted in a defense verdict.

Kruse was resolved in Defendants' favor on the basis of a statute of limitations defense. The same defense is asserted in other MDL cases.

Hyde was tried as both a G2X and Eclipse case, with Plaintiffs claiming that Ms. Hyde's filter was a G2X and Defendants claiming that it was an Eclipse. The parties agree that the Eclipse filter design is same as the G2X, with the exception of electro-polishing. The trial produced another defense verdict.

If Mulkey goes to trial, it would be the third trial involving an Eclipse filter. The parties have learned much about the strengths, weaknesses, and value of Eclipse cases from the Jones and Hyde trials. Defendants would present essentially the same liability evidence in Mulkey that they presented in Jones and Hyde.

Plaintiffs believe there is nothing to gain from trying another Eclipse case. Docs. 12990 at 4-6, 13117 at 7-8. The Court similarly concludes that there is little to gain, and that the limited knowledge to be acquired from another Eclipse trial is outweighed by the time, money, and judicial resources another three-week jury trial would consume.

Defendants assert that Mulkey is different from Jones and Hyde because it is a non-fracture case, and would be the only such case among the bellwether trials. Doc. 13118 at 3. But Plaintiffs dispute this assertion, and would present evidence at trial suggesting that a filter arm fractured. Docs. 12990 at 5, 13170 at 3 & n.2. Plaintiffs further claim that several filter limbs have perforated Ms. Mulkey's IVC wall, and imaging in January 2017 shows that the limbs are abutting the aorta and interacting with the duodenum and L3-L4 disc space. Doc. 12990 at 5. The Court does not agree with

- 3 -

Defendants' assertion that Mulkey "is close to a non-injury case." Doc. 13117 at 55-56; *see* Doc. 13118 at 4. And if another Eclipse defense verdict resulted from a Mulkey trial, as appears likely, the parties would learn nothing about the valuation of limited injuries in filter cases.

Defendants suggest that Plaintiff's motion is an attempt to game the bellwether trial process. The Court does not agree. The Court previously warned the parties that it would not tolerate attempts to manipulate the bellwether trial process, and still holds that view. Doc. 8871 at 1-2. Plaintiffs seek to eliminate the Mulkey trial because it would be the third trial to present Eclipse filter evidence, and the previous two have already resulted in defense verdicts. This is not, in the Court's view, an effort to skew the bellwether process, but a legitimate effort to avoid the expense of a trial that most likely will provide little new information.[1]

As the Court noted when the bellwether process began, "five or six cases should provide the parties with ample information to achieve global settlement if such settlement is possible." *Id*. at 2. With completion of the Tinlin trial, the Court will have resolved five bellwether cases on the merits – one on the statute of limitations defense and four through jury trials.

The Court will grant Plaintiffs' motion and remove Mulkey from the bellwether trial schedule. This decision is based not on Ms. Mulkey's withdrawal of her *Lexecon* waiver, but on the Court's decision that the time and expense of trying Mulkey would significantly outweigh any benefits to be derived from the trial.

**IT IS ORDERED:**

1. Plaintiffs' motion to amend the bellwether trial schedule to remove the Mulkey case (Doc. 12990) is **granted**.

---

[1] The Court also disagrees with Defendants' suggestion that Plaintiffs previously tried to skew the bellwether pool by failing to provide *Lexecon* waivers in two cases. As Defendants know, the Court specifically found otherwise. *See* Doc. 3214 at 1.

2.      The dates and deadlines for the February 2019 bellwether trial set forth in Case Management Order No. 38 (Doc. 12853 at 2-4) are **vacated**. The Court will try the Tinlin case in May 2019 as presently scheduled. *See* Doc. 12971 (CMO No. 39).

3.      The Court will hold a status conference with the parties on **December 6, 2018, at 10:00 a.m.** Out-of-state counsel may participate by phone. The purpose will be to discuss compliance with the Tinlin schedule and any other matters the parties deem relevant. The parties should file a joint status report three days before the conference.

Dated this 8th day of November, 2018.

David G. Campbell
Senior United States District Judge

1
2
3
4
5
6
7
8
9

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation | No. MDL 15-02641-PHX-DGC<br><br>**THIRD AMENDED CASE MANAGEMENT ORDER NO. 1** |

In Case Management Order (CMO) No. 1, entered October 30, 2015, the Court set appointments of Plaintiffs' leadership for a term of one year. Doc. 248. The Court entered Amended CMO No. 1 on November 16, 2016, re-appointing Co-Lead Counsel and appointing a Plaintiffs' Executive Committee for another one-year term. Doc. 4016. On March 21, 2017, the Court issued Second Amended CMO No. 1 re-appointing Co-Lead Counsel and Plaintiffs' Executive Committee through November 16, 2017. Doc 5285. The Court has reviewed Plaintiffs' Co-Lead/Liaison Counsel's Memorandum Re Leadership Appointments (Doc. 14418) and issues this Third Amended CMO No. 1 for the appointment of individuals to Plaintiffs' leadership in this MDL for the term of this Order.

**I.     Plaintiffs' Leadership Counsel Appointments.**

The Court having considered all of the applications submitted and other relevant information, appoints the following plaintiffs' counsel to leadership positions, as indicated and to be known as "Plaintiffs Leadership Counsel" (PLC):

| Plaintiffs' Co-Lead/Liaison Counsel and State/Federal Liaison Counsel | |
|---|---|
| Ramon R. Lopez | Lopez McHugh, LLP<br>100 Bayview Cir., Ste. 5600<br>Newport Beach, CA 92660 |
| Mark S. O'Connor | Beus Gilbert PLLC<br>701 N. 44th Street<br>Phoenix, AZ 85008 |

| Plaintiffs' Executive Committee (PEC) | |
|---|---|
| Julia Reed Zaic | Heaviside Reed Zaic<br>312 Broadway St., Ste. 203<br>Laguna Beach, CA 92651 |
| Howard L. Nations | The Nations Law Firm<br>3131 Briarpark Dr., #208<br>Houston, TX 77042 |
| Russell W. Budd | Baron & Budd, P.C.<br>3102 Oak Lawn Ave., Ste. 1100<br>Dallas, TX 75219 |
| Wendy R. Fleishman | Lieff, Cabraser, Heimann & Bernstein, LLP<br>250 Hudson St., 8th Floor<br>New York, NY 10013 |

| Plaintiffs' Steering Committee (PSC) | |
|---|---|
| Shannon Clark | Gallagher & Kennedy, PA<br>2575 E. Camelback Rd., Ste. 1100<br>Phoenix, AZ 85016 |
| John A. Dalimonte | Dalimonte Rueb, LLP<br>85 Devonshire St., Ste. 1000<br>Boston MA, 02109 |
| Ben C. Martin | Law Offices of Ben C. Martin<br>3219 McKinney Ave., Ste. 100<br>Dallas, TX 75204 |
| Joseph R. Johnson | Babbitt & Johnson, PA<br>1641 Worthington Rd., #100<br>West Palm Beach, FL 33409 |
| Thomas P. Cartmell | Wagstaff & Cartmell, LLP<br>4740 Grand Ave., #300<br>Kansas City, MO 64112 |
| Margaret Branch | Branch Law Firm<br>2025 Rio Grande Blvd, NW<br>Albuquerque, NM 87104 |

| Donald A. Migliori | Motley Rice, LLC<br>321 South Main St., 2nd Floor<br>Providence, RI 02903 |
|---|---|
| Sheila M. Bossier | Bossier & Associates PLLC<br>1520 North State St.<br>Jackson, MS 39202 |
| Stuart L. Goldenberg | Goldenberg Law, PLLC<br>800 Lasalle Ave., #2150<br>Minneapolis, MN 55402 |
| Christopher T. Kirchmer | Provost Umphrey Law Firm, LLP<br>490 Park St., P.O. Box 4905<br>Beaumont, TX 77704 |
| Michael A. Kelly | Walkup, Melodia, Kelly & Schoenberger<br>650 California St.<br>San Francisco, CA 94108 |
| Matthew McCarley | Fears Nachawati Law Firm<br>4925 Greenville Ave., Ste. 715<br>Dallas, TX 75206 |
| Hadley L. Matarazzo | Faraci Lange, LLP<br>First Federal Plaza<br>28 East Main St., Ste. 1100<br>Rochester, NY 14614 |
| Eric M. Terry | TorHoerman Law, LLC<br>210 Main St.<br>Edwardsville, IL 62025 |
| Joseph A. Osborne | Osborne & Associates Law Firm, PA<br>433 Plaza Real, Ste. 271<br>Boca Raton, FL 33432 |
| Michael T. Gallagher | The Gallagher Law Firm, LLP<br>2905 Sackett Street<br>Houston, TX 77098 |
| Calle Mendenhall | Farris, Riley & Pitt LLP<br>The Financial Center<br>505 20th Street North, Ste. 1700<br>Birmingham, AL 35203 |
| Matthew Schultz | Levin Papantonio Thomas Mitchell<br>Rafferty Proctor, PA<br>316 S. Baylen St.<br>Suite 600<br>Pensacola FL 32502 |
| Steven Rotman | Hausfeld, LLP<br>1700 K Street NW<br>Suite 650<br>Washington DC 20006 |

**II.     Responsibilities.**

    **A.     Procedural Matters.**

        1.     As noted in this Court's previous Order Setting Initial Case Management Conference dated September 15, 2015, the Clerk of this Court will maintain a master docket case file under the style "*In Re: Bard IVC Filters Products Liability Litigation*" and the identification "MDL No. 2641." Lead/Liaison will be (a) the only attorneys permitted to file in the Master Docket as to all actions, and (b) the only attorneys receiving Notices of Electronic Filing for pleadings and orders filed in the Master Docket for all actions.

        2.     With regard to the Master Docket, Plaintiffs' Lead/Liaison Counsel shall:

    a.     Serve as the recipient for all Court orders.

    b.     Coordinate service and filings for all plaintiffs whether presently included or subsequently added.

    c.     Maintain and distribute to co-counsel and to Defendants' Counsel an up-to-date service list.

    d.     Maintain responsibility for service upon all other attorneys and parties as to filings made in the master docket. Specifically, Lead/Liaison Counsel shall receive and distribute, to all other Plaintiffs' counsel, pleadings orders, and motions by email, overnight courier service, or telecopier, within two days after receipt, unless such service has been waived, in writing, by a receiving counsel.

    e.     Coordinate discovery and litigation with similar cases outside of this Court's jurisdiction.

        3.     Lead/Liaison Counsel is only responsible for service with regard to filings in the Master Docket. With regard to case-specific filings, all attorneys of record in the relevant member action will receive a Notice of Electronic Filing from the Court.

4. New counsel for later-filed or later-transferred cases that become part of this MDL shall be responsible for checking the Master Docket for all orders previously entered that may have relevance to such new cases.

  **B.** **Responsibilities Specific to Lead/Liaison Counsel.**

  In addition to the responsibilities identified above, Plaintiffs' Lead/Liaison Counsel shall:

   1. Coordinate the establishment of a document depository, real or virtual, to be available to all participating plaintiffs' counsel;

   2. Maintain and make available to all participating plaintiffs' counsel of record, at reasonable hours, a complete file of all documents served by or upon each party (except documents as may be available at a document depository);

   3. Prepare agendas for court conferences and periodically report regarding the status of the case; and

   4. Carry out such other duties as the Court may order.

  **C.** **Responsibilities of Plaintiffs' Executive Committee.**

  The PEC shall assist, advise, and collaborate with Co-Lead Counsel in the discharge of duties of liaison and Co-Lead Counsel outlined in Sections II. A and B above. The PEC, with the authority of Co-Lead counsel, and in coordination with their efforts and responsibilities, shall assist and collaborate with Co-Lead Counsel in the administration, organization, and strategic decisions of the PLC. At the direction of Co- Lead Counsel PEC members shall have the authority to make, supervise and oversee assignments to other PSC members.

  **D.** **Responsibilities Applicable to all Plaintiffs' Leadership Counsel.**

  Plaintiffs' Leadership Counsel shall have the following responsibilities:

   1. Discovery

   a. Initiate, coordinate, and conduct all pretrial discovery on behalf of plaintiffs in all actions which are consolidated with this MDL.

b. Develop and propose schedules for the commencement, execution, and completion of all discovery on behalf of all plaintiffs.

c. Cause to be issued in the name of all plaintiffs the necessary discovery requests, motions and subpoenas pertaining to any witnesses and documents needed to properly prepare for the trial of relevant issues found in the pleadings of this litigation.

d. Conduct all discovery in a coordinated and consolidated manner on behalf of and for the benefit of all plaintiffs.

2.    Hearings and Meetings

a. Call meetings of counsel for plaintiffs for any appropriate purpose, including coordinating responses to questions of other parties or of the Court. Initiate proposals, suggestions, schedules or joint briefs, and any other appropriate matters pertaining to pretrial proceedings.

b. Examine witnesses and introduce evidence on behalf of plaintiffs at hearings.

c. Act as spokespersons for all plaintiffs at pretrial proceedings and in response to any inquiries by the Court, subject to the right of any plaintiff's counsel to present non-repetitive individual or different positions.

3.    Miscellaneous

a. Submit and argue all verbal and written motions presented to the Court on behalf of Plaintiff's Leadership Counsel as well as oppose when necessary any motion submitted by defendants or other parties which involve matters within the sphere of the responsibilities of Plaintiffs' Leadership Counsel.

b. Negotiate and enter into stipulations with defendants regarding this litigation. All stipulations entered into by Plaintiffs' Leadership Counsel, except for strictly administrative details such as scheduling, must be submitted for Court approval and will not be binding until ratified by the

Court. Any attorney not in agreement with a non-administrative stipulation shall file with the Court a written objection within five (5) days after he/she knows or should have reasonably become of aware of the stipulation. Failure to object within the term allowed shall be deemed a waiver and the stipulation will automatically be binding on that party.

c. Explore, develop, and pursue all settlement options pertaining to any claim or portion thereof of any case filed in this litigation.

d. Maintain adequate files of all pretrial matters, including establishing and maintaining a document or exhibit depository, in either real or virtual format, and having those documents available, under reasonable terms and conditions for examinations by all MDL plaintiffs or their attorneys.

e. Perform any task necessary and proper for Plaintiffs Leadership Counsel to accomplish its responsibilities as defined by the Court's orders, including organizing subcommittees comprised of plaintiffs' lawyers not on Plaintiffs' Leadership Counsel.

f. Work with Lead/Liaison Counsel to coordinate the responsibilities of Plaintiffs' Leadership Counsel meetings, keep minutes or transcripts of these meetings, appear at periodic Court-noticed status conferences, perform other necessary administrative or logistic functions of Plaintiffs' Leadership Counsel, and carry out any duty as ordered by the Court.

g. Perform other such functions that may be expressly authorized by further Court Orders.

**E.     Reimbursement of Costs Expensed.**

Plaintiffs' Leadership Counsel shall be entitled to seek reimbursement for costs expended at the time and in a manner approved by the Court. Reimbursements will be governed by a further case management order to be proposed by Plaintiffs' Leadership Counsel and entered by the Court.

7

**III.    Term of Appointments.**

Appointments to all leadership positions in this order shall last until November 16, 2019 unless terminated earlier by the Court.  Thirty days before the expiration of this one-year term, Lead/Liaison Counsel shall file a memorandum notifying the Court of the need to make further appointments and making recommendations regarding these appointments.

Dated this 4th day of February, 2019.

David G. Campbell
Senior United States District Judge

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

IN RE: Bard IVC Filters Products Liability Litigation,

No. MDL 15-02641-PHX-DGC

**CASE MANAGEMENT ORDER NO. 41**

(Tinlin Trial, SNF Cases, Remand of Mature Cases, and Possible Settlement Procedures)

The Court held a case management conference with the parties on February 1, 2019. *See* Doc. 15070. The conference concerned issues raised in the parties' joint status report (Doc. 14870) and other matters. On the basis of the conference, the Court enters the following orders:

1. <u>Tinlin Trial</u>.

The Court reviewed with the parties the schedule for the Tinlin trial, as set forth in Case Management Order No. 39 (Doc. 12971), as modified by a later minute entry (Doc. 13587). With the exception of one expert deposition, the parties are on schedule. The Court agrees that the parties may complete the deposition of Dr. Morris during the month of February 2019. *See* Doc. 14870 at 2. The rest of the schedule will remain in place.

The Court discussed with the parties the ability of Ms. Tinlin to travel to Phoenix for trial. Plaintiff's counsel should provide an update to the Court on this issue by **March 1, 2019**. If Plaintiff's counsel learn that Ms. Tinlin cannot travel, counsel for

both sides should confer about her possible remote participation in the trial and, if she intends to testify, about compliance with Rule 43(a). Plaintiff's counsel will also need to begin making arrangements to have Ms. Tinlin participate in the trial from the federal court in Wisconsin. This topic should be addressed in the March 1, 2019 status report.

      2.  <u>Simon Nitinol Filter ("SNF") Cases</u>.

The Court agrees with the parties' assessment (*id.* at 2-3) that the recent order of the Judicial Panel on Multidistrict Litigation (Doc. 14112) confirms that the SNF cases are part of this MDL proceeding. The Court enters the following orders:

      a.  By **March 1, 2019**, Plaintiffs' lead counsel shall contact and confer with attorneys representing SNF clients in this MDL proceeding. Lead counsel will inform these attorneys that the Court is requiring them to organize into a plaintiffs' steering committee for SNF cases and to assist in the management and efficient litigation of those cases.

      b.  Attorneys responsible for those cases shall confer with defense counsel regarding an appropriate schedule and procedures for preparing the cases for trial. These discussions should include the five topics identified in the parties' joint status report (Doc. 14870 at 3).

      c.  The Court will hold a case management conference on **March 18, 2019, at 2:00 p.m.** Current lead counsel for Plaintiffs, defense counsel, and lawyers who agree to represent SNF plaintiffs in this MDL will participate in the conference. The purpose of the conference will be to identify leadership for the SNF plaintiffs and establish an efficient schedule for litigating the SNF cases. The parties shall file a joint status report regarding the SNF cases by **March 13, 2019**.

      d.  Once lead plaintiffs' counsel have been identified for the SNF cases, the Court will require them to reach agreement on the establishment of a common fund for the SNF cases. The Court presumes that this agreement will be similar to the common fund established for the rest of this MDL. *See* Doc. 372 (CMO No. 6).

      e.  The Court's intent will be to complete discovery and motion practice

on the SNF cases in the most efficient manner possible and, if necessary, hold one or two bellwether trials on the SNF cases.

      3.    <u>Remand of Mature Cases</u>.

The Court confirmed that an order for transfer of the record to the transferor districts for the mature cases has been entered. *See* Doc. 14973. The Clerk's office has sent a zip file to each of these districts containing the record on remand stipulated to by the parties. *See* Doc. 13158.

      4.    <u>Possible Establishment of Settlement Procedures</u>.

The Court and parties discussed the possibility of establishing a separate track in this MDL for cases likely to be resolved in settlement. Defense counsel proposed that cases which have been settled in principle, or which are near settlement in principle, could be placed on this track until the settlements could be consummated, rather than being remanded to transferor districts. The Court is willing to consider such a procedure, but directed the parties to confer and present a joint proposal by **March 1, 2019**. Any such proposal would need to specify the basis on which a case would be identified to be placed on a settlement track rather than being remanded to the transferor court, establish a schedule under which cases on the settlement track would either reach a completed settlement or be remanded, and a schedule for when the settlement track would be initiated and how long it would remain in place. After receiving this submission, the Court will consider whether such a settlement track would be appropriate in this case, or whether remand of all cases should simply begin after the Tinlin trial.

Dated this 8th day of February, 2019.

*David G. Campbell*
_____
David G. Campbell
Senior United States District Judge

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

IN RE:  Bard IVC Filters Products Liability Litigation,

No. MDL 15-02641-PHX-DGC

**CASE MANAGEMENT ORDER NO. 42**

(Tinlin Trial, SNF Cases, Duplicative Cases, Settlement Procedures and Remand or Transfer)

The Court held a case management conference with the parties on March 18, 2019.  Doc. 16093.  The conference concerned issues raised in the parties' joint status report (Doc. 15948) and other matters.  On the basis of the conference, the Court enters the following orders:

1.      Tinlin Trial (including change of pretrial conference date).

a.      Plaintiffs' counsel provided information suggesting that Mrs. Tinlin will not be able to travel to Phoenix for trial and asked that she be permitted to testify and observe portions of the trial remotely.  Doc. 15693.  Defendants do not oppose the request, but ask that various procedures be put in place to ensure that no prejudice results from her remote testimony and observation.  Doc. 15954.  Plaintiffs are directed to work with the Court's technology staff and the federal district court in Green Bay, Wisconsin, to arrange for Mrs. Tinlin's video testimony during trial.  Assuming adequate technical arrangements can be made, the Court further concludes that (1) Mrs. Tinlin will be alone in a room with a videographer and courtroom deputy clerk at the time of her testimony,

although counsel for both sides may be in the courthouse to deal with any issues that arise; (2) the parties shall confer about exhibits to be used during her testimony, and a complete set of marked exhibits will be provided for the clerk to place in front of Mrs. Tinlin during her testimony; (3) Plaintiffs shall pay any costs associated with the remote testimony; (4) the parties shall confer and propose a jury instruction that can be read during trial to explain Mrs. Tinlin's absence from trial and the reasons for her remote testimony; and (5) Mrs. Tinlin may observe other portions of the trial from the remote location, but will not appear via video while observing the proceedings. With these safeguards in place, the Court finds that Mrs. Tinlin's remote testimony satisfies the high standard in Federal Rule of Civil Procedure 43(a) for remote testimony during trial. Plaintiffs' motion (Doc. 15693) is **granted**.

b. Due to scheduling issues, the date for the final pretrial conference will be changed from April 30 to April 29, 2019. The conference will begin at **10:00 a.m. on April 29, 2019**.

c. Plaintiffs have filed a motion to seal their unredacted summary judgment materials. Doc. 15695; *see* Docs. 15071, 15072 (sealed lodged proposed documents). The motion fails to address the applicable compelling reasons standard. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). The Court denied a similar motion filed by Defendants. *See* Docs. 15072, 15175. Plaintiffs' motion to seal (Doc. 15695) is **denied without prejudice**. The parties shall have until March 29, 2019, to file new motions to seal that address the relevant legal standard.

2.    Simon Nitinol Filter ("SNF") Cases.

Case Management Order No. 41 directed Plaintiffs' lead counsel to contact and confer with attorneys representing SNF clients in this MDL proceeding, to inform these attorneys that the Court is requiring them to organize into a Plaintiffs' steering committee for SNF cases and to assist in the management and efficient litigation of those cases, to inform them that they must confer with defense counsel regarding an appropriate schedule and procedures for preparing the cases for trial, including the five topics

identified in the parties' previous joint status report (Doc. 14870 at 3), and to be prepared at the case management conference on March 18, 2019, to put in place the leadership structure for the SNF cases. Doc. 15176 at 2. Once lead plaintiffs' counsel were identified for the SNF cases, the Court would require them to reach agreement on the establishment of a common fund for the SNF cases, which the Court presumes would be similar to the common fund established for the rest of this MDL. *Id.*; *see* Doc. 372 (CMO No. 6). The Court's intent was to complete discovery and motion practice on the SNF cases in the most efficient manner possible and, if necessary, hold one or two bellwether trials on the SNF cases. *Id.* at 2-3.

Plaintiffs' lead counsel report that they have contacted all known attorneys who represent Plaintiffs in SNF cases transferred to or filed in this MDL, asking them to take leadership roles in the SNF cases. Doc. 15948 at 2. That communication was followed by further communications with some who expressed interest in taking on a leadership or committee position. No lawyer has stepped forward to lead the SNF cases. One attorney expressed a willingness to serve on a steering committee, but is not willing to serve as lead counsel. *See id.* Plaintiffs' lead counsel encouraged her to attend the hearing set for March 18, 2019, but she did not. Plaintiffs' lead counsel have also identified a few additional attorneys who are willing to serve on a steering committee, but are similarly reluctant to take on a lead counsel role.

Without Plaintiffs' lawyers who are willing to assume leadership of the SNF cases, those cases cannot be resolved expeditiously, the Court cannot manage the SNF-case docket in this MDL, and Defendants will be prejudiced. The Court will afford the SNF-case attorneys one more opportunity to organize a steering committee, designate lead counsel, confer with defense counsel, and undertake litigation of the SNF cases. *See* Doc. 15176 at 2-3. If those attorneys do not step forward and assume responsibility for litigating their cases, the Court will dismiss the SNF cases for lack of prosecution and failure to comply with the Court's orders. *See* Doc. 15948 at 3; Fed. R. Civ. P. 41(b); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988) ("In determining whether to dismiss

an action for lack of prosecution, the district court is required to weigh several factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions.") (quotation marks and citation omitted).

Attorneys in SNF cases shall have until **May 1, 2019**, to (a) organize into a Plaintiffs' steering committee for SNF cases; (b) designate lead counsel for such cases; (c) confer with defense counsel regarding an appropriate schedule and procedures for preparing the cases for trial, including the five topics identified in the parties' joint status report (Doc. 14870 at 3); and (d) file a memorandum identifying the attorneys recommended for the steering committee and lead counsel, explain why they are qualified and able to litigate the SNF cases, and setting forth the proposed schedule for this litigation. The Court will then schedule a hearing to appoint a steering committee and lead counsel and set a schedule for completing discovery and motion practice in the SNF cases.

**Attorneys with SNF cases are warned that the Court will dismiss those cases for lack of prosecution if they do not comply fully with this order.** *See* **Fed. R. Civ. P. 41(b). Existing lead counsel are directed, within seven days of this order, to share this order and the Court's directive with all attorneys who have SNF cases in this MDL.**

3. Duplicative Cases.

Defendants have filed a motion to dismiss duplicative complaints filed in this MDL. Doc. 15738. The motion includes a list of seven plaintiffs who have filed more than one complaint. *Id.* at 2.[1] Before filing the motion, Defendants sent multiple letters

---

[1] One of the plaintiffs, Pamela Smith, filed a motion to dismiss her second-filed action (Case No. CV17-3089), which has been granted. Docs. 15860, 15966. Another plaintiff not on the list, Leslie Sheffield, filed a stipulation to dismiss a duplicative complaint, which has been granted. Docs. 15955, 15996 (Case No. CV17-4288).

notifying Plaintiffs' Steering Committee and counsel for each individual plaintiff of the duplicative actions. *See* Doc. 15738-1. The letters explained that the duplicate complaints raise the same claims for the same individual as asserted in the initial complaints, and requested that one of the cases be dismissed. *See* Doc. 15738 at 3. Plaintiffs' lead counsel in this MDL do not oppose dismissal of the duplicate complaints, and counsel for the individual plaintiffs have not responded to Defendants' letters and the motion to dismiss (with the exceptions noted above).

The filing of duplicative complaints in this MDL is not appropriate. *See* Doc. 15738-2 at 3; *see also M.M. v. Lafayette Sch. Dist.* 681 F.3d 1082, 1091 (9th Cir. 2012) ("It is well established that a district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims."). Defendants' motion (Doc. 15738) is **granted** and the following duplicate complaints are dismissed:

- *Giambra, William*, CV-17-03891 (Oct. 24, 2017);
- *Holland, Betty*, CV-17-03440 (Oct. 04, 2017);
- *Mathis, Reginald*, CV-17-04302 (Nov. 27, 2017);
- *McBride, Bernardette*, CV-17-00876 (Mar. 24, 2017);
- *Pedersen, Charlene*, CV-17-04308 (Nov. 27, 2017); and
- *Pirl, Tracy*, CV-17-03025 (Sept. 6, 2017).[2]

4.     <u>Settlement Procedures and Remand or Transfer</u>.

The parties have suggested that the Court establish a schedule and procedure for possible settlement of MDL cases after conclusion of the Tinlin trial. The Court will accept the proposal, but advises the parties that it does not intend to delay remand or transfer of MDL cases after a reasonable opportunity to settle.

---

[2] The initial complaints remain part of this MDL. *See Giambra*, CV-17-00191 (Jan. 20, 2017); *Holland*, CV-16-03147 (Sept. 16, 2016); *Mathis*, CV-17-03469 (Oct. 4, 2017); *McBride*, CV-16-01090 (Apr. 18, 2016); *Pedersen*, CV-17-00941 (Mar. 29, 2017); *Pirl*, CV-17-00899 (Mar. 27, 2017).

a. By **July 1, 2019**, Plaintiffs' lead counsel and defense counsel shall file with the Court a joint memorandum identifying all cases in this MDL that fall within the two tracks:

**Track 1: Tentatively Resolved Cases.** These include cases or groups of cases that have been resolved in principle pursuant to an executed release or term sheet.

**Track 2: Cases Near Settlement.** These include cases or groups of cases that are the subject of substantive settlement negotiations and as to which both sides agree that discussions have progressed to the point where execution of a release or term sheet is likely in the near future.

b. By **July 15, 2019**, for all cases in this MDL that are not in Track 1 or Track 2, the Court will recommend that cases transferred to the MDL be remanded by the Judicial Panel on Multidistrict Litigation ("JPML") to the transferor districts (*see* JPML Rule 10.1(b)) and, if cases were directly filed in this MDL and did not originate in Arizona (*see* Doc. 363 at 3), will transfer these cases to the proper district under 28 U.S.C. § 1404(a).

c. On **August 1, 2019, and every first of the month thereafter until this MDL is concluded**, the parties shall file a joint report on the settlement status of cases in Track 1 and Track 2. Any case in either track may be removed from the track and from this MDL upon counsel for either side concluding that further settlement efforts in the case are not warranted. *See* Doc. 15629 at 3. The monthly report shall identify all cases that have been so designated or otherwise are not included in Track 1 or Track 2, and the Court will, by the 15th of the month, recommend remand by the JPML to the transferor district or make a § 1404(a) transfer of the case to the proper district. The monthly report shall state, with respect to each such case, (1) whether it was transferred by the JPML or directly filed in this MDL, and (2) the district from which it was transferred by the JPML or the district to which it should be transferred if it was directly filed in the MDL.

d. All cases in Track 1 for which a stipulated dismissal has not been filed by **November 1, 2019**, will be recommended to the JPML for remand or will be transferred

under § 1404(a).  Upon a showing of very good cause, cases in Track 1 may be put on a list for remand or transfer in an additional 30 days if a stipulated dismissal has not been filed.  Track 1 cases will not be continued in this MDL beyond the additional 30 days.

e.      All cases in Track 2 for which a release or term sheet has been executed by **November 1, 2019**, will be continued in Track 2 for an additional six months, to May 1, 2020, to allow time to complete settlement paperwork and file a stipulated dismissal.

f.      All cases in Track 2 for which a release or term sheet has not been executed by **November 1, 2019**, will be recommended to the JPML for remand or will be transferred under § 1404(a).

g.      All cases in Track 2 with a release or term sheet executed by November 1, 2019, but for which no stipulated dismissal has been filed by May 1, 2020, will be recommended to the JPML for remand or will be transferred under § 1404(a).

h.      By July 1, 2019, the parties shall (1) update and lodge with the Court the joint proposed report to be sent to the JPML with cases recommended for remand and to districts receiving transfers under § 1404(a) (*see* Doc. 12534); (2) update and file the stipulated designation of record to be sent with remanded and transferred cases (*see* Doc. 13158); and (3) provide the Clerk of Court with a ZIP file containing the documents identified in the updated designation of record (*see* Doc. 14973; JPML Rule 10.4).

i.      The parties may take videotaped trial testimony of key witnesses between June 1 and September 1, 2019, to be provided to counsel who will try cases after remand or transfer.

j.      The Court intends to set a closing date for new cases to be transferred to or directly filed in this MDL.  The Court will confer with the JPML and enter an order identifying such a date.

Dated this 21st day of March, 2019.

David G. Campbell
Senior United States District Judge

**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| IN RE: Bard IVC Filters Products Liability Litigation, | No. MDL 15-02641-PHX-DGC<br><br>**CASE MANAGEMENT ORDER NO. 43**<br><br>(Tinlin Trial, Common Benefit Fund Fee and Expense Accounts, Closing Date for New Cases and Remand or Transfer, and SNF Cases) |

The Tinlin bellwether trial will begin on May 13, 2019. Doc. 12971 at 3-4. The Court held a final pretrial conference with the parties on April 29, 2019. Doc. 17453. The conference concerned issues raised in the parties' trial briefs and proposed final pretrial order, and other matters. On the basis of the conference, the Court enters the following orders:

1. <u>Tinlin Trial</u>.

    a. By **May 8, 2019**, the parties shall file a joint witness list to give to the prospective jurors on the first day of trial.

    b. Plaintiffs shall file a memorandum regarding the ruling on MIL 1 (Docs. 16576, 17285) by the close of business on **May 1, 2019**. Defendants shall file a response by the close of business on **May 3, 2019**. The memoranda are limited to three pages each. No reply shall be filed.

    c. By **May 6, 2019**, the parties shall jointly file proposed jury instructions for the fraudulent concealment claim and revised proposed verdict forms.

d.      By close of business on **May 3, 2019**, Defendants shall file a response, limited to three pages, to Plaintiffs' argument that Wisconsin law does not allow a manufacturer to allocate fault to third parties on strict product liability claims. Doc. 17357 at 2.

e.      Plaintiffs shall notify the Court by the close of business on **May 1, 2019**, as to when the Tinlins will be testifying.  Plaintiffs are directed to make advanced arrangements with the courtroom deputy should the Tinlins wish to listen to any portion of the trial by telephone.

f.      By **May 3, 2019**, the parties shall jointly file a revised proposed preliminary instruction regarding video appearance that includes Mr. Tinlin.  *See* Doc. 17436 at 8.

2.      <u>Motion for Common Benefit Fund Fee and Expense Accounts</u>.

a.      By **May 10, 2019**, the parties shall file a joint proposed order for the establishment of common benefit fee and expense accounts and appointment of an escrow agent.  *See* Docs. 372 at 9, 16932 at 2-3.  The Court will decide whether to increase common benefit fee and cost assessments when the issue is fully briefed and the Court's schedule permits.  *See* Doc. 372 at 10.

b.      Plaintiffs' request for a one-week extension to file a reply brief is **granted**.

3.      <u>Closing Date for New Cases and Remand or Transfer of Cases</u>.

a.      The closing date for new cases to be transferred to or directly filed in this MDL is **May 31, 2019**.  *See* Doc. 16343 at 7.

b.      The parties' joint memorandum identifying all cases in this MDL that fall within the two settlement tracks, due **July 1, 2019** (*id.* at 6, ¶ 4(a)), shall (1) identify each case not included in Track 1 or Track 2, and (2) state for each such case whether it was transferred by the JPML or directly filed in this MDL, and identify the district from which it was transferred by the JPML or the district to which it should be transferred if it

was directly filed in the MDL (*see id.* ¶ 4(c)).

      4.    <u>Simon Nitinol Filter ("SNF") Cases.</u>

In Case Management Order 42, the Court gave attorneys in SNF cases until May 1, 2019 to, among other things, organize into a Plaintiffs' steering committee and designate lead counsel for SNF cases. *Id.* at 4. At the April 29 conference, attorney Nicole Maldonado appeared on behalf of attorneys with SNF cases. Based on the discussions with Ms. Maldonado and counsel for Defendants, the Court will not dismiss the SNF cases at this time. Ms. Maldonado shall file a report by **July 1, 2019** regarding the nature and status of the remaining SNF cases. The Court will then address how to proceed with the SNF cases.

Dated this 2nd day of May, 2019.

David G. Campbell
Senior United States District Judge

- 3 -