# Exhibit A

**WITNESS EXHIBIT**

All of the depositions and trial testimony of the witnesses identified in this exhibit are available through the Bard IVC filter MDL Plaintiffs' Steering Committee.

1. **Shari Allen O'Quinn**
   Former employee of BPV
   May be contacted through counsel of record for Bard

Ms. O'Quinn is a former employee of BPV who worked for BPV from 2003 to 2007. Ms. O'Quinn held three different positions while working for BPV, including Manager of Regulatory Affairs, Director of Regulatory Affairs, and Director of Regulatory and Clinical Affairs. In these roles, Ms. O'Quinn was involved with and has personal knowledge of the regulatory clearance process undertaken by BPV for certain if its IVC filters.

Additionally, Ms. O'Quinn may testify concerning BPV's overall regulatory strategy for its filter lines, including the regulatory approach taken by BPV concerning the certain filters. Moreover, Ms. O'Quinn may also testify concerning other regulatory options considered by BPV when it determined the best approach to gain FDA clearance for a new product. Ms. O'Quinn may testify regarding communications between the FDA and BPV concerning the clearance process. Ms. O'Quinn may also testify concerning BPV's decision to conduct a clinical trial, the EVEREST Study, the regulatory clearance process associated with that study, and BPV and the FDA's communications regarding that study. Ms. O'Quinn may also testify concerning other issues and events associated with or related to the EVEREST Study.

Ms. O'Quinn may also testify to matters that were the subject of her deposition and trial testimony.

2. **Robert Carr**
   Current employee of TVA Medical division
   May be contacted through counsel of record for Bard

Mr. Carr previously held the position of Director of Research and Development at BPV with responsibility for IVC filters.  Prior to joining BPV in 2002, Mr. Carr was employed by Nitinol Medical Technologies ("NMT"), where he was also responsible for that company's research and development of IVC filters.  Mr. Carr may provide testimony regarding biomedical and biomechanical engineering generally, as well as testimony regarding the design, development, manufacture, testing, clearance, evolution, and use of Bard IVC filters.

Additionally, Mr. Carr may testify regarding the fact that at the time the Bard filters was developed and first sold, and even today, there was and is a dearth of scientific information about the internal functioning of the inferior vena cava.

Mr. Carr may also testify regarding the fact that, in the medical literature and medical community, it is understood that, as with all IVC filters, the use of the Bard filters carry with the certain risks, such that each doctor is to weigh the risks and benefits of implanting the device based on each individual patient's medical condition and treatment needs.  The adverse vent rates of Bard's commercially-available filters remain below the guidelines established by the Society of Interventional Radiologists and Bard's action limits.  Upon receiving reports of fracture and migration, Bard was and has been proactive in investigating those reports and analyzing whether the risk of complications for its products is in line with industry standards.

Mr. Carr may also testify regarding the evolution and testing of Bard's IVC filters, including the fact that Bard is constantly evaluating the medical devices it sells, and it is constantly striving to improve the performance of those devices.  Additionally, Mr. Carr may testify regarding the effect, if any, that in-dwell time may have on the incidence of fracture in filters.  Such testimony may include discussion and analysis of medical literature and anecdotal reports on this topic.

Mr. Carr may further testify about the procedures followed by Bard to inspect and confirm the quality of the various materials (including nitinol wire) used to manufacture the IVC filters. Mr. Carr may also testify regarding Bard's processes for verifying the integrity and design of component parts and products supplied by various other companies, Bard's materials verification processes, the selection and auditing of vendors, routine testing done as part of the manufacturing process, internal and external audits of Bard's plants, and the manufacturing plant's role in product complaint investigation.

Mr. Carr may also testify to matters that were the subject of his deposition and trial testimony.

**3. Andre Chanduszko**
Current employee of BPV
May be contacted through counsel of record for Bard

Mr. Chanduszko is an employee of BPV working as a staff engineer with responsibilities related to the design, development, and testing of IVC filters. Mr. Chanduszko may provide testimony regarding biomedical and biomechanical engineering generally, as well as testimony regarding the design, development, manufacture, testing, clearance, evolution, and use of Bard IVC filters.

Mr. Chanduszko may testify to the physical and chemical properties of nitinol and to the utility and significance of that product in the design of Bard filters. He may testify about the design features of each of Bard's IVC filters and the evolution of those designs. He may testify about Bard's product verification and validation processes. He may testify about Bard's bench and other testing of Bard's IVC filters, the protocols for certain of those tests, the modifications to testing protocols for certain of those tests, and the results of certain of those tests.

Mr. Chanduszko may also testify regarding the fact that, in the medical literature and medical community, it is understood that, as with all IVC filters, the use of Bard IVC filters carry with them certain risks.

Mr. Chanduszko may further testify about the procedures followed by Bard to inspect and confirm the quality of the various materials (including nitinol wire) used to manufacture the IVC filters.  Mr. Chanduszko may also testify regarding Bard's processes for verifying the integrity and design of component parts and products supplied by various other companies, Bard's materials verification processes, the selection and auditing of vendors, routine testing done as part of the manufacturing process, internal and external audits of Bard's plants, and the manufacturing plant's role in product complaint investigation.

Mr. Chanduszko may also testify to matters that were the subject of his deposition and trial testimony.

**4.  David Ciavarella, M.D.**
    Current employee of Bard
    May be contacted through counsel of record for Bard

Dr. Ciavarella has worked for Bard since 2004.  He is currently Vice President, Global Clinical Development. In this role, Dr. Ciavarella has been involved with and has personal knowledge of Bard's broad policies and practices concerning its IVC filters, including, but not limited to, the company's clinical affairs and medical affairs. In this regard, Dr. Ciavarella may testify concerning how such policies and practices were developed, implemented, and reviewed.

Dr. Ciavarella may testify concerning any and all aspects of Bard's clinical affairs policies, procedures, and practices that are, or have been, in place with respect to Bard's IVC filters. Such testimony may include, but is not limited to, discussion of Bard's policies, procedures, and practices concerning any clinical trial involving Bard's IVC filters, including the EVEREST

Study.  Dr. Ciavarella may also testify concerning any and all aspects of Bard's medical affairs policies, procedures, and practices that are, or have been, in place with respect to Bard's IVC filters.  In this regard, Dr. Ciavarella may testify concerning Bard's efforts to analyze and understand potential medical implications of certain complications involving IVC filters.

Dr. Ciavarella may also testify concerning Bard's policies, procedures, and practices with respect to Bard's IVC filters with respect to its Health Hazard Evaluations. Dr. Ciavarella may also testify to matters that were the subject of his deposition testimony.

**5. Harvey Collins**
Former employee of Bard
May be contacted through counsel of record for Bard

Mr. Collins was an employee of C. R. Bard, working at Bard's Glen Falls Operation from 1966 until his retirement in 2007.  Mr. Collins held several supervisory positions in Manufacturing and Process Validation.  His title prior to retirement was that of Staff Engineer, and his role was to oversee the transfer of product design over to manufacturing.  As such, Mr. Collins may provide testimony regarding transfer of the filter designs to the manufacturing process.

Mr. Collins may testify as to the role of the BPV and Bard Design Review Committee.  Mr. Collins may also testify about the filter complaint processing system.

Mr. Collins's may also testify to matters that were the subject of his deposition testimony.

**6. John Dalimonte, Esq**
Dalimonte Rueb Stoller
85 Devonshire Street, Suite 1000
Boston, MA 02109

Mr. Dalimonte is counsel for Plaintiffs in various IVC filter cases. Consistent with the Delaware Superior Court's discussions at the September 14, 2018 pretrial conference in the *Bianca Fraser-Johnson, et al. v. C. R. Bard, Inc.*, et al. matter, Mr. Dalimonte may be a necessary fact witness relating to the origin of the 2015 FDA warning letter that was sent to Bard

and his communications and interactions with the FDA relating to Bard and Bard's IVC filters leading up to the 2015 FDA warning letter.

**7. Mary Edwards**
Former employee of BPV
May be contacted through counsel of record for Bard

Ms. Edwards is BPV's former Vice President for Regulatory/Clinical Affairs. Ms. Edwards was involved with and has personal knowledge of the regulatory clearance process undertaken by BPV for the Recovery® Filter including the 510(k) processes and actions taken by BPV. Additionally, Ms. Edwards may testify concerning BPV's overall regulatory strategy for its filter lines, including the regulatory approach taken by BPV concerning the Recovery® Filter. In addition, Ms. Edwards may also testify concerning other regulatory options considered by BPV when it determined the best approach to gain FDA clearance for its new product. Ms. Edwards may testify regarding the regulatory history of Bard's IVC filters, communications between the FDA and BPV concerning the Recovery® Filter, the clearance process for the Recovery® Filter, and post-clearance communications BPV had with the FDA while she was employed with BPV.

Ms. Edward's may also testify about matters that were the subject of her deposition testimony.

**8. Tom Ferari**
Consultant to BPV
May be contacted through counsel of record for Bard

Mr. Ferari has worked for BPV as a consultant since 2002. He is an Advanced Manufacturing Engineer ("AME"). He previously worked for Bard as a quality control employee.

Mr. Ferari may testify regarding any and all aspects of the manufacturing process of Bard's IVC filters.  Mr. Ferari may testify regarding the development of equipment, materials and components that are, or were, used to manufacture its filters. He may also testify regarding the

protocols, procedures, and testing that Bard has used as part of its manufacturing process and for qualifying equipment and products for manufacturing. Mr. Ferari may also testify regarding Bard's quality assurance, inspection, testing, complaint review, and validation processes for ensuring that filters are manufactured to the applicable specifications and industry standards, and that they are free of any nonconformities.

Mr. Ferari may also testify about matters that were the subject of his deposition testimony.

### 9. Ed Fitzpatrick
Former employee of C. R. Bard
May be contacted through counsel of record for Bard

Mr. Fitzpatrick was an employee of C. R. Bard at its manufacturing facility in Glens Falls, New York, and was an engineering manager.

Mr. Fitzpatrick may testify regarding any and all aspects of the manufacturing process of Bard's IVC filters. Mr. Fitzpatrick may testify regarding each step of Bard's process for manufacturing filters. Mr. Fitzpatrick may also testify regarding Bard's quality assurance, testing, and validation processes for ensuring that filters are manufactured to the applicable specifications and are free of any nonconformities.

Mr. Fitzpatrick may also testify about internal or external audits that have been done of C. R. Bard's manufacturing facilities as well as Bard's IVC filter manufacturing processes and procedures. Mr. Fitzpatrick may also testify regarding the manufacturing plant's role in investigating adverse event reports from the field regarding IVC filters and the results of those investigations.

Mr. Fitzpatrick may testimony on these matters will be consistent with documents that have been produced by Bard.

### 10. Christopher Ganser
Former employee of C. R. Bard

May be contacted through counsel of record for Bard

Mr. Ganser is a former employee of C. R. Bard, who had worked for Bard from 1989 until his retirement in 2011. He has held various positions while working for Bard, including Vice President of Quality Assurance; and Vice President of Quality Assurance and Environmental Services and Safety. In these roles, Mr. Ganser was involved with and has personal knowledge of Bard's broad and overarching policies and practices concerning its IVC filters, including, but not limited to, the company's business practices, quality control policies and procedures, field assurance practices, complaint investigation, remedial action plans, and registration and management of products. In this regard, Mr. Ganser may testify concerning how such policies, procedures, and practices were developed, implemented, and reviewed.

Mr. Ganser may also testify concerning any and all aspects of Bard's quality control and field assurance practices and procedures that are, or have been, in place with respect to Bard's IVC filters. Such testimony may include, but is not limited to, discussion of Bard's policies, processes, and procedures for adverse complaint handling, complaint investigation, trending analysis, root cause analysis, data integrity audits, failure investigation reporting, and design failure mode analysis relating to Bard's IVC filters.  Mr. Ganser may also testify regarding Bard's remedial action decisions.

Mr. Ganser may also testify concerning the evolution of the Bard IVC filters. He may testify that, upon receiving reports of adverse events, Bard was, and has been, proactive in investigating those reports and analyzing whether the risk of such adverse event for its product is in line with industry standards and guidelines.

Mr. Ganser may also testify to matters that were subject of his deposition testimony.

**11. Janet Hudnall**
Former employee of BPV

May be contacted through counsel of record for Bard

Ms. Hudnall worked for BPV from 1998 to 2008. While at BPV, Ms. Hudnall held various positions, including Product Development Engineer, Senior Product Manager, Marketing Manager, and Senior Marketing Manager. In those roles, Ms. Hudnall was involved with and has personal knowledge of, among other things, BPV's marketing strategies, policies, and practices with regard to the Bard's IVC filters.

Ms. Hudnall may testify concerning BPV's marketing strategies, policies, and practices with regard to IVC filters. In this regard, Ms. Hudnall may testify concerning the training offered by BPV to its sales force and the reasons and motivations underlying that training. Moreover, Ms. Hudnall may testify concerning the factual representations made by BPV in its marketing materials, including, but not limited to, BPV's representations regarding the safety and effectiveness of the filter, the known risks associated with the filter, the rate of complications and any enhancements made to the filter. Ms. Hudnall may also testify concerning BPV's policies and practices with regard to its marketing efforts toward specific hospitals and/or physicians. She may also testify concerning BPV's policies and procedures with regard to its attempts to obtain physician input regarding the filters in order to develop future generations of the product. Ms. Hudnall may also testify regarding how BPV processed and used such information to develop its product.

Ms. Hudnall may also testify concerning the training provided by BPV to physicians to familiarize them with the implantation and retrieval of Bard's IVC filters. Ms. Hudnall may also testify concerning BPV's practices and policies regarding complaints that were communicated by users.

Ms. Hudnall may also testify concerning BPV's decision to conduct a clinical trial, called the EVEREST Study, and issues and events associated with or related to the EVEREST Study. Ms. Hudnall may also testify about matters that were the subject of her deposition testimony.

**12. Brian Hudson**
Former employee of BPV
May be contacted through counsel of record for Bard

Mr. Hudson worked for BPV from 1999 to 2012.  Mr. Hudson's initial position with BPV was Quality Engineering Technician; however, he was subsequently promoted to Senior Engineering Technician, and then to Quality Engineer, at which point he was assigned quality management oversight responsibility for IVC filters.  Mr. Hudson may provide testimony regarding filter risk assessment and analysis, review of testing protocols and regulatory compliance data, and the creation of Failure Modes and Effects Analyses (FMEA) that assess the potential hazards related to filters and the mitigation of those hazards.

Mr. Hudson may also provide testimony regarding BPV's filter risk assessments and ISO risk management requirements, as well as testimony that testing regimens were based on FDA guidance documents and ISO standards.  Mr. Hudson may further provide testimony related to his role on a team of individuals at BPV that was assigned to filter fracture investigation, including analyzing complaint information and developing fault trees to determine potential causes of failure.  Mr. Hudson may also testify about matters that were the subject of his deposition testimony.

**13. John A. Kaufman, M.D.**
Consultant to BPV
May be contacted through counsel of record for Bard

Dr. Kaufman is an interventional radiologist and professor at the Dotter Interventional Institute of the Oregon Health & Science University, Portland, Oregon.

Dr. Kaufman has participated in laboratory and clinical research and has been involved at a national level in related clinical trials. He has been involved in several trials involving IVC filters, has written numerous articles about IVC filters, and has run consensus panels on utilization and research regarding IVC filters. Dr. Kaufman was involved in performing animal studies regarding the G2® Filters and was the principal investigator for the EVEREST Study evaluating the retrievability of the G2® Filter. See Binkert, C.A., et al., Technical Success and Safety of Retrieval of the G2 Filter in a Prospective, Multicenter Study, J Vasc Interv Radiol 2009; 20:1449-1453. He may discuss the conduct and results of his animal and clinical research with IVC filters in general and specifically with Bard's IVC filters. He has also consulted with Bard regarding IVC filter design and may testify regarding his relationship with Bard, as well as his role in communicating with and training other physicians regarding the use of Bard's IVC filters.

Additionally, Dr. Kaufman may testify regarding his clinical experience with IVC filters such as his experience with placing and retrieving IVC filters, as well as indications for IVC filters. He may also testify regarding the advantages of retrievable IVC filters. He may also discuss the benefits, risks, and potential complications of IVC filters. He may also testify regarding the MAUDE database and whether it can be used to determine the fracture rate of a medical device. He may also discuss the dynamic nature of the IVC as well as the body's reaction to and endothelialization of IVC filters. Dr. Kaufman may also testify about matters that were the subject of his deposition testimony.

**14. John McDermott**
Former employee of BPV
Address unknown

Mr. McDermott is a former employee of Bard. In 1996, he joined Bard as President of IMPRA, a division of Bard. Later, he also served as President of Global Sales for IMPRA and

Bard Peripheral Technologies. In 2002, Mr. McDermott assumed the position of President of BPV, and he held that position until 2007.

Mr. McDermott may testify concerning IMPRA and BPV's policies concerning IVC filters, including, but not limited to, the companies' business practices, research and development, manufacturing, marketing and sales policies, and regulatory strategies and policies.

Mr. McDermott may also testify concerning IMPRA and BPV's research and development strategies, policies, practices and Mr. McDermott may also testify concerning IMPRA and BPV's practices and policies regarding complaints. Mr. McDermott may also testify about matters that were the subject of his deposition.

### 15. Chad Modra
Current employee of BPV
May be contacted through counsel of record for Bard

Mr. Modra is currently Leader, Strategic Project Management for BPV. Mr. Modra may testify regarding any and all aspects of Bard's quality control processes that are in place or that have been in place for Bard's retrievable IVC filters. Mr. Modra may testify regarding Bard's processes and procedures for adverse complaint handling, complaint investigation, and reporting of adverse events to the FDA regarding its filters.

Based on reports received by Bard, he may also testify regarding the rates of complications with Bard's retrievable IVC filters and any analysis performed by Bard regarding adverse event rates.  Mr. Modra may also testify that the complication rates with Bard's commercially available IVC filters remain below the guidelines established by the Society of Interventional Radiologists and Bard's action limits. He may also testify that, upon receiving reports of adverse events, Bard was and has been proactive in investigating those reports and analyzing whether the risk of fracture for its products is in line with industry standards and guidelines, which it is and always has been.

Mr. Modra may also testify about matters that were the subject of his deposition and trial testimony.

**16. Avijit Mukherjee**
Former employee of BPV
May be contacted through counsel of record for Bard

Mr. Mukherjee is a former employee of BPV who held the position of Program Manager for IVC filters from July 2004 to April 2005. In this position, Mr. Mukherjee oversaw filter product development. He may provide general testimony regarding mechanical engineering and specific testimony regarding product design, technology development, and materials testing.

Mr. Mukherjee may also testify about nitinol, its chemical and biomechanical properties, and the effects of electropolishing. Mr. Mukherjee may also testify about matters that were the subject of his deposition.

**17. James O'Brien**
Current employee of BPV
May be contacted through counsel of record for Bard

Mr. O'Brien has been an employee of BPV since 2004. His initial job title was Quality Tech 2. Mr. O'Brien was promoted to Engineer 1 in 2008. Mr. O'Brien may provide testimony regarding migration and tensile testing related to the development of Bard's IVC filters, including testing performed. Mr. O'Brien may also testify about matters that were the subject of his deposition.

**18. Gin Schulz**
Retired from C. R. Bard
May be contacted through counsel of record for Bard

Ms. Schulz was with Bard from 2005 through her retirement in January, 2018. At the time of her retirement she was the Staff Vice President of Quality Assurance Operations. Prior to working in this capacity, she worked for BPV as a Vice President of Quality Assurance. Ms. Schulz

may testify regarding any and all aspects of Bard's quality control processes that are in place or that have been in place for Bard's IVC filters. Ms. Schulz may testify regarding Bard's processes and procedures for adverse complaint handling, complaint investigation, and reporting of adverse events to the FDA regarding its filters.

Based on reports received by Bard, she may also testify regarding the rates of complications with Bard's IVC filters and any analysis performed by Bard regarding adverse event rates. Ms. Schulz may also testify that the complication rates with Bard's commercially available filters remain below the guidelines established by the Society of Interventional Radiologists and Bard's action limits. She may also testify that, upon receiving reports of adverse events, Bard was and has been proactive in investigating those reports and analyzing whether the risk of fracture for its products is in line with industry standards and guidelines, which it is and always has been.

Ms. Schulz may also testify about matters that were the subject of here deposition testimony.

**19. Scott Trerotola, M.D.**
Consultant to BPV
Hospital Of The University Of Pennsylvania Radiology
3400 Spruce St Ofc
Philadelphia, PA 19104

Dr. Trerotola is an interventional radiologist. Currently he has a clinical practice in interventional radiology and serves as Chief of Interventional Radiology at the University of Pennsylvania Medical Center.

Dr. Trerotola has long experience in the use of IVC filters. He, and/or his practice partners, have been involved in several clinical trials involving IVC filters. He has written articles about IVC filters. He may testify about the conduct and results of his clinical experience with, and study of, IVC filters, both in general and specifically as to Bard's IVC filters. He has been a consultant

for Bard assisting in training and informing other physicians regarding the use of Bard's IVC filters and has assisted Bard in presenting information to the FDA regarding Bard IVC filters.

Additionally, Dr. Trerotola may testify regarding his clinical experience with IVC filters such as his experience with and techniques for placing and retrieving IVC filters, as well as indications for the use of IVC filters. He may also testify regarding the advantages of retrievable IVC filters. He may discuss the benefits, risks, and potential complications of IVC filters and the imaging and other evaluation of those events and their clinical significance, if any. He may also discuss the dynamic nature of the IVC as well as the body's reaction to and endothelialization of IVC filters. Dr. Trerotola may also testify about matters that were the subject of his deposition.

**20. Anthony VenbruxM.D.**
Consultant to BPV
900 23rd St NW
Washington, DC 20037

Dr. Venbrux is the Director of Cardiovascular and Interventional Radiology and Professor of Radiology and Surgery at The George Washington University Hospital.

Dr. Venbrux has participated in laboratory and clinical research of IVC filters and has been involved in several trials involving IVC filters. He has written several articles about IVC filters, and he may testify concerning any of those articles. Dr. Venbrux has consulted with Bard regarding the design and development of its IVC filters. He has also participated in animal studies involving Bard's IVC filters, and he was an investigator for the EVEREST Study evaluating the retrievability of the G2® Filter. Dr. Venbrux may testify concerning his involvement in these studies or the EVEREST Study. Dr. Venbrux also consulted with Bard assisting with physician training and informing other physicians regarding the use of Bard's IVC filters, and he has also assisted Bard in presenting information to the FDA regarding Bard's IVC filters. In this regard, Dr. Venbrux

may testify concerning any aspect of his involvement with Bard concerning such physician training and/or presentation of information to the FDA.

Additionally, Dr. Venbrux may testify concerning conduct and results of his clinical experience with, and study of, IVC filters, both in general and specifically with regard to Bard's IVC filters. He may also testify regarding the MAUDE database. He may also discuss the dynamic nature of the IVC as well as the body's reaction to and endothelialization of IVC filters. Dr. Venbrux may also testify about the matters that were the subject of his deposition.


**21. Natalie Wong**
Current employee of BPV
May be contacted through counsel of record for Bard

Ms. Wong is an employee of BPV, and began working for the company in 2002. She is currently a Quality Engineering Manager for BPV. Prior to working in this capacity, she worked for BPV as a Quality Engineering Manager in Field Assurance, and before that, she worked as a Senior Quality Engineer.

Ms. Wong may testify regarding Bard's quality control and field assurance processes that are, or have been, in place for Bard's IVC filters. She may testify regarding Bard's processes and procedures for adverse complaint handling, complaint investigation, trending analysis, root cause analysis, data integrity audits, and design failure mode analysis relating to Bard's IVC filters.

Based on reports received by Bard, she may also testify regarding the rates of complications with Bard's IVC filters and analyses performed by Bard regarding adverse event rates. Ms. Wong may also testify that the complication rates reported to Bard remain below the guidelines established by the Society of Interventional Radiologists and Bard's action limits. Ms. Wong may

also testify regarding Bard's processes and quality control measures used in auditing vendors who supply components and raw materials used to manufacture IVC filters.

Ms. Wong may also testify regarding the evolution of the Bard filters.  She may also testify that, upon receiving reports of adverse events, Bard was, and has been, proactive in investigating those reports and analyzing whether the risk for its products is in line with industry standards and guidelines. Ms. Wong may also testify to matters that were the subject of her deposition testimony.

**22. Murray Asch**
c/o Lakeridge Health Corporation
Director of Interventional Radiology
580 Harwood Ave. S
Oshawa, ON L1S 2J4

Dr. Asch is an Interventional Radiologist who was involved in a pilot study to assess the retrievability of the Recovery filter. Defendants expect that he is knowledgeable regarding the matters that were the subject of his study and work with Bard, as well as his deposition and his trial testimony.

**23. Brett Baird**
Former employee of BPV
May be contacted through counsel of record for Bard

Mr. Baird worked for BPV from 2008 to 2011 and was a marketing manager responsible for IVC filters.  He may testify regarding the matters that were the subject of his employment, including the marketing practices relating to IVC filters and Bard's response to inaccurate information in the marketplace.  He may also testify about matters that were the subject of his deposition and trial testimony.

**24. Brian Barry**
Former employee of BPV
May be contacted through counsel of record for Bard

17

Mr. Barry was a Vice President of Quality Assurance and Regulatory Affairs for C.R. Bard. He may testify about Bard's process for regulatory clearance of IVC filters and communication with the FDA. He may also testify regarding the matters that were the subject of his employment with Bard and his deposition.

**25. Kevin Boyle**
   Current employee of BPV
   May be contacted through counsel of record for Bard

Mr. Boyle is currently the Vice President of Research and Development for BPV. Mr. Boyle may testify about BPV's policies and procedures in place for its research and development of its products, including IVC filters. He may testify regarding the testing, development, and design of Bard's IVC filters. He may also testify about matters that were the subject of his deposition testimony.

**26. Robert Cortelezzi**
   Former employee of BPV
   May be contacted through counsel of record for Bard

Mr. Cortelezzi was an employee at BPV from approximately 1990 to 2008.  He was a Regional Sales Manager from 2004 through 2008. He may testify regarding the matters that were the subject of his employment with Bard and his deposition taken on November 11, 2016, in the Bard IVC Filter MDL.

**27. Joni Creal**
   Current employee of BPV
   May be contacted through counsel of record for Bard

Ms. Creal started with BPV in 2009. She is Associate Director of Regulatory Affairs. She may testify about BPV's overall regulatory strategy for its IVC filters. She may also testify concerning other regulatory options considered by BPV when it determined the best approach to gain FDA clearance for its products. Ms. Creal may testify regarding communications between the

FDA and BPV concerning the clearance process for its filters.  Ms. Creal may also testify regarding BPV's response to requests from the FDA. Ms. Creal may also testify concerning BPV's decision to conduct clinical trials, and the process and procedures for clinical trials and studies.

Ms. Creal may also testify regarding the steps that BPV took to ensure that the FDA was always abreast of complications, product improvements, and potential changes to IFUs for its filters. Ms. Creal may also testify to matters that were the subject of her deposition testimony.

**28. Len DeCant**
Former employee of BPV
May be contacted through counsel of record for Bard

Mr. DeCant served as Vice President of Research and Development for BPV from 2002 through 2007. Mr. DeCant may testify regarding any and all aspects of the design, development, testing, clearance, evolution, and use of Bard IVC filters, including Bard's policies and procedures for design, testing, and evaluation of filters. Mr. DeCant may also provide testimony that was the subject of his deposition testimony.

**29. John DeFord**
Current employee of Bard
May be contacted through counsel of record for Bard

Dr. DeFord is currently Senior Vice President of Science, Technology and Clinical Affairs of C. R. Bard. Dr. DeFord may testify regarding any and all aspects of the design, development, testing, clearance, evolution, and use of Bard filters, including Bard's policies and procedures for design, testing, and evaluation of IVC filters. Dr. DeFord may also provide testimony that was the subject of his deposition testimony, including his deposition specifically taken for preservation of testimony on August 15, 2019.

**30. Holly Glass**
Former employee of Bard
8280 Greensboro Drive, Suite 601

McLean, VA 22101
703-752-1115

Ms. Glass was Vice President Government & Public Relations at C. R. Bard from 2002 through 2009. She may testify regarding the matters that were the subject of her employment with Bard and her deposition testimony.

### 31. Mickey Graves
Current employee of BPV
May be contacted through counsel of record for Bard

Mr. Graves is a Senior Research and Development Engineer with BPV. Mr. Graves may testify about BPV's policies and procedures in place for its research and development of its products, including IVC Filters. He may testify regarding the testing, development, and design of Bard's IVC Filters. He may also testify regarding the evolution of Bard's IVC Filters, including the fact that Bard is constantly evaluating the medical devices it sells, and it is constantly striving to improve the performance of those devices. He may also testify about matters that were the subject of his deposition testimony.

### 32. John Lehman, M.D.
Former consultant for Bard
May be contacted through counsel of record for Bard

Dr. Lehman was Group Medical Director and Vice President of Medical Affairs for C. R. Bard from 1991 to 1995; he was a consultant and acting Medical Director for C. R. Bard in 2003 and 2004. He may provide testimony regarding the matters that were the subject of his work with Bard. He may also provide testimony regarding matters that were the subject of his deposition testimony.

### 33. William Little
Former employee of BPV
May be contacted through counsel of record for Bard

Mr. Little is BPV's former Vice President of Global Marketing. He may provide testimony regarding BPV's marketing strategies, policies, and practices with regard to Bard's IVC filter line of products. He may also testify regarding communications by Bard to health care providers regarding its filters and changes or revisions to those communications over time. He may also testify about matters that were the subject of his deposition testimony.

**34. Judy Ludwig**
   Current Employer of BPV
   May be contacted through counsel of record for Bard

Ms. Ludwig is currently Senior Manager of Field Assurance at BPV. Ms. Ludwig may testify regarding any and all aspects of Bard's quality assurance processes that are in place or that have been in place for Bard's retrievable IVC filters. Ms. Ludwig may testify regarding Bard's processes and procedures for adverse complaint handling, complaint investigation, and reporting of adverse events to the FDA regarding its filters. She may also testify to certain communications and inspections/audits with FDA. To the extent that evidence related to the FDA Warning and 483 Letters is admitted, Ms. Ludwig may offer testimony regarding the same. Ms. Ludwig may also provide testimony that was the subject of her previous deposition testimony.

**35. Patrick McDonald**
   Current Employee of BPV
   May be contacted through counsel of record for Bard

Mr. McDonald is an employee of BPV as a Sales Representative and Field Sales Trainer. He may testify regarding the matters that were the subject of his deposition.

**36. Daniel Orms**
   Former Employee of BPV
   May be contacted through counsel of record for Bard

Mr. Orms is a former employee of BPV. He may testify about matters that were the subject of his employment with Bard and his depositions.

**37. Mike Randall**
    Former employee of BPV
    May be contacted through counsel of record for Bard

Mr. Randall is a former employee of BPV and was the Director of Research and Development. Mr. Randall may provide testimony regarding biomedical and biomechanical engineering generally, as well as testimony regarding the design, development, manufacture, testing, clearance, evolution, and use of Bard IVC filters. He may also provide testimony about other manufacturer's IVC filters. Mr. Randall may also testify about matters that were the subject of his deposition and trial testimony.

**38. Kimberly Romney**
    Current employee of Bard
    May be contacted through counsel of record for Bard

Ms. Romney is currently the Senior Product Manager for C. R. Bard, Inc. She may provide testimony regarding BPV's marketing strategies, policies, and practices with regard to Bard's IVC filter line of products. Ms. Romney may also testify regarding communications by Bard to health care providers regarding its filters and changes or revisions to those communications over time. She may also testify about matters that were the subject of her deposition.

**39. William Stavropoulos, MD**
    May be contacted c/o Samantha Conway, Christie & Young, P.C.
    1880 John F. Kennedy Blvd, 10th Floor
    Philadelphia, PA 19103

Dr. Stavropoulos was the principal investigator for his facility on the EVEREST study. He has written articles concerning IVC filters. Additionally, Dr. Stavropoulos may testify regarding his clinical experience with IVC filters such as his experience with and techniques for placing and retrieving IVC filters, as well as indications for the use of IVC filters. He may also testify regarding

the advantages of retrievable IVC filters. He may discuss the benefits, risks, and potential complications of IVC filters, such as migration, fracture, and perforation, and the imaging and other evaluation of those events and their clinical significance, if any. He may also testify regarding the MAUDE database and whether it can be used to determine the fracture rate of a medical device. He may also discuss the dynamic nature of the IVC as well as the body's reaction to and endothelialization of IVC filters. He may also testimony about matters that were the subject of his deposition.

**40. Jack Sullivan**
Former employee of BPV
May be contacted through counsel of record for Bard

Mr. Sullivan was a former Regional Sales Manager for BPV from 2005 to 2013. Prior to 2005, he held other sales positions with BPV. He may testify about BPV's sales practices and procedures, and the sales person's role in interacting with a doctor and the responsibility of sales people to report adverse events. He may also testify about matters that were the subject of his deposition testimony.

**41. Mehdi Syed**
Current employee of Bard
May be contacted through counsel of record for Bard

Mr. Syed is the current Vice President of Operations Finance at C. R. Bard, Inc. Mr. Syed may testify about the net worth of BPV and C. R. Bard, Inc., as well as the percentage of Bard's revenue attributable to BPV and IVC filter products. Mr. Syed may also testify about the nature of Bard's shareholders and the process and rationale behind dividend payments. He may also testify about matters that were the subject of his deposition testimony.

**42. Alex Tessmer**
Current employee of BPV
May be contacted through counsel of record for Bard

23

Mr. Tessmer is a Product Manager at BPV. Mr. Tessmer was previously employed by BPV as an engineer between 1997 and June 2005. In that position, Mr. Tessmer contributed to IVC filter product development occurring during the period 2002 to June 2005. He may provide general testimony regarding mechanical engineering and specific testimony regarding IVC filter product design, technology development, and materials testing. He may also testify about matters that were the subject of his deposition and trial testimony.

**43. Doug Uelman**
Former employee of Bard
May be contacted through counsel of record for Bard

Mr. Uelmen was employed by Bard from 1996 to 2005 as Vice President for Quality Assurance. Prior to working in that capacity, Mr. Uelmen was BPV's Director of Quality Assurance. Mr. Uelmen may testify regarding any and all aspects of Bard's quality control processes that are in place or that have been in place for Bard's IVC filters. Mr. Uelmen may testify regarding Bard's processes and procedures for adverse complaint handling, complaint investigation, and reporting of adverse events to the FDA regarding its filters. He may also testify about matters that were the subject of his deposition testimony.

**44. John Van Vleet**
Former employee of BPV
May be contacted through counsel of record for Bard

Mr. Van Vleet is a former employee of BPV. While at BPV, Mr. Van Vleet was the Vice President of Regulatory and Clinical Affairs. Mr. Van Vleet may testify concerning any and all aspects of Bard's clinical affairs policies, procedures, and practices that are, or have been, in place with respect to Bard's IVC filters. Mr. Van Vleet may also testify regarding the regulatory clearance process and communications between the FDA and BPV. Mr. Van Vleet may also

provide testimony that was the subject of his deposition or trial testimony or the subject of declarations/affidavits he submitted in the Bard IVC filter MDL.

### 45. Carol Vierling
Former employee of BPV
May be contacted through counsel of record for Bard

Ms. Vierling is a former employee of BPV who held the position of Director of Regulatory Affairs from 1992 through June 2002. Ms. Vierling may also testify regarding the 510(k) submission submitted by Bard to the FDA for the Recovery® Filter in 2002. In this regard, she may testify regarding her signing of the Truthfulness and Accuracy Statement included in that submission. She may also testify regarding the cover letter to the FDA that accompanied the 510(k) submission, why it identified Kay Fuller as the new FDA contact person for this device, how she signed that cover letter, and why she signed the cover letter in the manner that she did. She may also testify to her interactions with Kay Fuller and that Ms. Fuller never expressed any concerns to her regarding the Recovery® Filter 510(k) submission, the testing of that device, the safety or efficacy of that device, or the Asch clinical study regarding that device. She may also provide testimony that was the subject of her deposition testimony.

### 46. Bryan Vogel
Current employee
May be contacted through counsel of record for Bard

Mr. Vogel is a Principal Clinical Assurance Specialist at BPV. He may testify regarding his role and Bard's processes, procedures, and practices for adverse complaint handling, complaint investigation, and reporting of adverse events to the FDA regarding its IVC filters. He may also testify regarding the qualifications and training of BPV's Field Assurance personnel. He may also provide testimony that was the subject of his previous deposition testimony.

### 47. John Weiland

Former employee of Bard
May be contacted through counsel of record for Bard

Mr. Weiland is a retired President and Chief Operating Officer of Bard. He may testify regarding the matters that were the subject of his deposition.

**48. John Wheeler**
Former of employee of BPV
May be contacted through counsel of record for Bard

Mr. Wheeler is a former Field Assurance Engineering Manager at BPV. He may testify regarding Bard's processes, procedures, and practices for adverse complaint handling, complaint investigation, and reporting of adverse events to the FDA regarding its filters. He may also testify regarding the qualifications and training of BPV's Field Assurance personnel. He may also testify regarding BPV's tracking and trending of complaints regarding Bard IVC filters. He may also testify about matters that were the subject of his deposition testimony.

**49. Steve Williamson**
Current employee of BPV
May be contacted through counsel of record for Bard

Mr. Williamson is the current President of BPV. Mr. Williamson may testify concerning BPV's broad and overarching policies as a company and specifically concerning Bard's IVC filters, including, but not limited to, the companies' business practices, research and development, manufacturing, marketing and sales policies, and regulatory strategies and policies. He may also provide testimony that was the subject of his deposition testimony.

**50. Mark Wilson**
Former employee of Bard
May be contacted through counsel of record for Bard

Mark Wilson was the Director of Sales, Training, and Development at C. R. Bard, Inc. from 2004 to 2011. Mr. Wilson may provide testimony regarding Bard's sales practices and

procedures. He may also testify regarding training programs for Bard's sales personnel. He may also testify about matters that were the subject of his deposition.

50. Additional employees of Bard and BPV may be called to rebut allegations made in the Complaint, as well as to address issues related to the design, manufacture, regulation, and marketing of Bard IVC filters.  The scope of the testimony for those witnesses may be refined as discovery proceeds in this matter.

51. The below witnesses are expected to offer testimony regarding the following article *"Prevalence of Fracture and Fragment Embolization of Bard Retrievable Vena Cava Filters and Clinical Implications Including Cardiac Perforation and Tamponade*," published in the Archives of Internal Medicine, Vol. 170 No. 20, November 8, 2010 as well as the underlying data and manner in which the study was conducted. To the extent they any of them have or may deposed, they are expected to testify consistent with their deposition testimony:

Nikhilesh Agarwal, M.D.
The Vein Center of Pennsylvania
15 Wyntre Brook Drive
York, PA 17403
Howard Goldberg, M.D.
York Hospital
WS Radiology/Rad. Oncology-WMG
35 Monument Road, Suite 201
York, PA 17403
Kevin McCullum, M.D.
James Mills, M.D.
Bill Nicholson, M.D.
Jay Nicholson, M.D.
Thomas Schryver, M.D.
Brian Schuler, M.D.
Lyle Siddoway, M.D.
Samuel Solomon, M.D.
Paul Tolerico, M.D.
Cardiac Diagnostic Associates
Apple Hill Medical Center

25 Monument Road, Suite 200
York, PA 17403